**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 1001
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RANDY ZORNBERG, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NAPCO SECURITY TECHNOLOGIES, INC., RICHARD L. SOLOWAY, and KEVIN S. BUCHEL,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Randy Zornberg ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, and announcements made by Defendants, public filings, wire and press releases published by and regarding NAPCO Security Technologies, Inc., ("NAPCO" or the "Company"), and information readily obtainable on the

1

Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded NAPCO securities between November 7, 2022 and August 18, 2023, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff Randy Zornberg, as set forth in the accompanying certification, incorporated by reference herein, purchased NAPCO securities during the Class Period and was economically damaged thereby.

7. NAPCO engages in the development, manufacture, and distribution of security products. Its products include access control systems, door security products, intrusion and fire alarm systems, video surveillance products, and cellular communication services.

8. The Company is incorporated in Delaware and its head office is located at 333 Bayview Avenue, Amityville, New York, 11701. NAPCO's common stock trades on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "NSSC".

9. Defendant Richard L. Soloway ("Soloway") served as the Company's Chief Executive Officer from March 2020 until July 2022.

10. Defendant Kevin S. Buchel ("Buchel") has served as the Company's Chief Financial Officer since March 2020.

11. Defendants Soloway and Buchel are collectively referred to herein as the "Individual Defendants."

12. Each of the Individual Defendants:

    (a) directly participated in the management of the Company;

    (b) was directly involved in the day-to-day operations of the Company at the highest levels;

    (c) was privy to confidential proprietary information concerning the Company and its business and operations;

  (d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

  (e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

  (f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

  (g) approved or ratified these statements in violation of the federal securities laws.

13. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

15. NAPCO and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading Statements Issued During the Class Period

16. On November 7, 2022, after market hours, the Company issued a press release announcing its unaudited first quarter financial results, which ended September 30, 2022, on Form 8-K. The unaudited first quarter financial results revealed the Company reported cost of sales of $21,326,000, gross profit of $18,167,000, operating income of $7,249,000, net income of $6,402,000, and inventory of $63,387,000, three months ended September 30, 2022.

17. That same day, the Company filed with the SEC its first quarter report on Form 10-Q for the quarter ended September 30, 2022 (the "1Q22 Report"). Attached to the 1Q22 report were certifications pursuant to the Sarbanes-Oxley Act of 2022 ("SOX") signed by Defendants Soloway and Buchel attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

18. The 1Q22 Report revealed substantively the same numbers as referenced in ¶17 regarding the Company's cost of goods sold, inventory, gross profit, operating income and net income.

19. The 1Q22 Report downplayed the severity of material weaknesses regarding the Company's internal controls by stating the following, in relevant part:

**ITEM 4: Controls and Procedures**

We maintain disclosure controls and procedures that are designed to ensure that information required to be disclosed in our Exchange Act reports is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to our management to allow timely decisions regarding required disclosure. Management necessarily applied its judgment in assessing the costs and benefits of such controls and procedures, which, by their nature, can provide only reasonable assurance regarding management's control objectives.

At the conclusion of the period ended September 30, 2022, we carried out an evaluation, under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures. As disclosed in our Annual Report on Form 10-K for the year ended June 30, 2022, management identified two material weaknesses in internal control.

One material weakness in internal control related to ineffective information technology general controls (ITGCs) in the area of user access and lack of effective program change-management over certain information technology (IT) systems that support the Company's financial reporting processes. Our business process controls (automated and manual) that are dependent on the affected ITGCs were also deemed ineffective because they could have been adversely impacted. We believe that these control deficiencies were a result of: IT control processes lacking sufficient documentation and risk-assessment procedures to assess changes in the IT environment and program change management of personnel that could impact internal controls over financial reporting. The material weakness did not result in

any identified misstatements to the financial statements and there were no changes to the previously released financial results. Based on this material weaknesses, the Company's management concluded that at June 30, 2022 the Company's internal controls over financial reporting were not effective.

The second material weakness in internal control related to the reserve for excess and slow-moving inventory. This control deficiency was a result of a lack of effective review and reconciliation controls over the forecasted sales and usage data. The material weakness did not result in a material misstatement to the financial statements. There were no changes to the previously released financial results.

Management is currently designing and implementing additional controls and procedures to remediate these items and expects to complete these actions during fiscal 2023. These include, but are not limited to, modifying its program change-management process over certain of its information technology (IT) systems that support the Company's financial reporting processes as well as implementing changes to its forecasted sales and usage data used in calculating its reserve for excess and slow-moving inventory.

During the three months ended September 30, 2022, *there were no changes in the Company's internal controls over financial reporting that have materially affected, or are reasonably likely to materially affect, the Company's internal controls over financial reporting*. As of September 30, 2022 the Company's controls over financial reporting were not effective.

(Emphasis added.)

20. On February 6, 2023, during market hours, the Company issued a press release announcing its unaudited first quarter financial results, which ended December 31, 2022, on Form 8-K. The unaudited second quarter financial results revealed the Company reported cost of sales of $22,852,000, gross profit of $19,462,000, operating income of $9,436,000, net income of $8,446,000, and inventory of $64,192,000, six months ended December 31, 2022.

21. That same day, the Company filed with the SEC its first quarter report on Form 10-Q for the quarter ended December 31, 2022 (the "2Q22 Report"). Attached to the 2Q22 report were certifications pursuant to SOX, signed by Defendants Soloway and Buchel attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

6

22. The 2Q22 Report revealed substantively the same numbers as referenced in ¶21 regarding the Company's cost of goods sold, inventory, gross profit, operating income and net income.

23. The 2Q22 Report downplayed the severity of material weaknesses regarding the Company's internal controls by stating the following, in relevant part:

**ITEM 4: Controls and Procedures**

We maintain disclosure controls and procedures that are designed to ensure that information required to be disclosed in our Exchange Act reports is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to our management to allow timely decisions regarding required disclosure. Management necessarily applied its judgment in assessing the costs and benefits of such controls and procedures, which, by their nature, can provide only reasonable assurance regarding management's control objectives.

At the conclusion of the period ended December 31, 2022, we carried out an evaluation, under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures. As disclosed in our Annual Report on Form 10-K for the year ended June 30, 2022, management identified two material weaknesses in internal control.

One material weakness in internal control related to ineffective information technology general controls (ITGCs) in the area of user access and lack of effective program change-management over certain information technology (IT) systems that support the Company's financial reporting processes. Our business process controls (automated and manual) that are dependent on the affected ITGCs were also deemed ineffective because they could have been adversely impacted. We believe that these control deficiencies were a result of: IT control processes lacking sufficient documentation and risk-assessment procedures to assess changes in the IT environment and program change management of personnel that could impact internal controls over financial reporting. The material weakness did not result in any identified misstatements to the financial statements and there were no changes to the previously released financial results. Based on this material weaknesses, the Company's management concluded that at June 30, 2022 the Company's internal controls over financial reporting were not effective.

The second material weakness in internal control related to the reserve for excess and slow-moving inventory. This control deficiency was a result of a lack of effective review and reconciliation controls over the forecasted sales and usage

data. The material weakness did not result in a material misstatement to the financial statements. There were no changes to the previously released financial results.

Management is currently designing and implementing additional controls and procedures to remediate these items and expects to complete these actions during fiscal 2023. These include, but are not limited to, modifying its program change-management process over certain of its information technology (IT) systems that support the Company's financial reporting processes as well as implementing changes to its forecasted sales and usage data used in calculating its reserve for excess and slow-moving inventory.

During the three and six months ended December 31, 2022, *there were no changes in the Company's internal controls over financial reporting that have materially affected, or are reasonably likely to materially affect, the Company's internal controls over financial reporting.* As of December 31, 2022, the Company's controls over financial reporting were not effective because of the two material weaknesses noted above.

(Emphasis added.)

24. On May 8, 2023, during market hours, the Company issued a press release announcing its unaudited third quarter financial results, which ended March 31, 2022, on Form 8-K. The unaudited third quarter financial results revealed the Company reported cost of sales of $20,861,000, gross profit of $22,671,000, operating income of $11,932,000, net income of $10,840,000, and inventory of $60,786,000, six months ended March 31, 2023.

25. That same day, the Company filed with the SEC its first quarter report on Form 10-Q for the quarter ended March 31, 2023 (the "3Q22 Report"). Attached to the 3Q22 report were certifications pursuant to SOX, signed by Defendants Soloway and Buchel attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

26. The 3Q22 Report revealed substantively the same numbers as referenced in ¶25 regarding the Company's cost of goods sold, inventory, gross profit, operating income and net income.

27. The 3Q22 Report downplayed the severity of material weaknesses regarding the Company's internal controls, by stating the following, in relevant part:

**ITEM 4: Controls and Procedures**

We maintain disclosure controls and procedures that are designed to ensure that information required to be disclosed in our Exchange Act reports is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to our management to allow timely decisions regarding required disclosure. Management necessarily applied its judgment in assessing the costs and benefits of such controls and procedures, which, by their nature, can provide only reasonable assurance regarding management's control objectives.

At the conclusion of the period ended March 31, 2023, we carried out an evaluation, under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures. As disclosed in our Annual Report on Form 10-K for the year ended June 30, 2022, management identified two material weaknesses in internal control.

One material weakness in internal control related to ineffective information technology general controls (ITGCs) in the area of user access and lack of effective program change-management over certain information technology (IT) systems that support the Company's financial reporting processes. Our business process controls (automated and manual) that are dependent on the affected ITGCs were also deemed ineffective because they could have been adversely impacted. We believe that these control deficiencies were a result of: IT control processes lacking sufficient documentation and risk-assessment procedures to assess changes in the IT environment and program change management of personnel that could impact internal controls over financial reporting. The material weakness did not result in any identified misstatements to the financial statements and there were no changes to the previously released financial results. Based on this material weaknesses, the Company's management concluded that at June 30, 2022 the Company's internal controls over financial reporting were not effective.

The second material weakness in internal control related to the reserve for excess and slow-moving inventory. This control deficiency was a result of a lack of effective review and reconciliation controls over the forecasted sales and usage data. The material weakness did not result in a material misstatement to the financial statements. There were no changes to the previously released financial results.

Management is currently designing and implementing additional controls and procedures to remediate these items and expects to complete these actions during fiscal 2023. These include, but are not limited to, modifying its program change-management process over certain of its information technology (IT) systems that

> support the Company's financial reporting processes as well as implementing changes to its forecasted sales and usage data used in calculating its reserve for excess and slow-moving inventory.
>
> During the three and nine months ended March 31, 2023, ***there were no changes in the Company's internal controls over financial reporting that have materially affected, or are reasonably likely to materially affect, the Company's internal controls over financial reporting.*** As of March 31, 2023, the Company's controls over financial reporting were not effective because of the two material weaknesses noted above.

(Emphasis added.)

28. The statements contained in ¶¶ 16-27 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) NAPCO failed to address any material weaknesses with internal controls regarding COGS and inventory; (2) NAPCO downplayed the severity of material weaknesses regarding their internal controls; (3) NAPCO's unaudited financial statements from September 30, 2022 to the present included "certain errors" such as overstating inventory and understanding net COGS, resulting in overstated gross profit, operating income and net income for each period; (4) as a result, NAPCO would need to restate its previously filed unaudited financial statements for certain periods; and (5) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

10

29. Then, on August 18, 2023, after market hours, the Company issued a press release on Form 8-K announcing it would restate its unaudited financial statements from September 30, 2022 to the present. The 8-K states in relevant part:

> On August 14, 2023, the Audit Committee of the Board of Directors of the Company, concluded that the Company's previously issued unaudited interim financial statements for the ***fiscal quarters ended September 30, 2022, December 31, 2022 and March 31, 2023, respectively, included in the Company's quarterly report on Form 10-Q for such respective quarters, should no longer be relied upon.***
>
> During the preparation of the Company's consolidated financial statements for the fiscal year ended June 30, 2023, management of the Company identified certain errors related to the Company's calculation of cost of goods sold ("COGS") and inventory for each of the first three quarters of fiscal 2023. Specifically, although the costs of several components fluctuated substantially during fiscal 2023, the Company's costing procedures did not appropriately account for such fluctuations. ***As a result, inventories were overstated and COGS was understated, resulting in overstated gross profit, operating income and net income for each period.***
>
> The Company is in the process of preparing amended Forms 10-Q for each of the first three quarters of fiscal 2023 and intends to file such amendments as soon
>
> \* \* \*
>
> Due to the aforementioned restatements, management of the Company has determined that a material weakness existed in the Company's internal controls over financial reporting for each of the first three quarters of fiscal 2023, rendering the Company's disclosure controls and procedures ineffective at the end of each such quarter. The Company has begun the process to enhance its internal control procedures for determining inventory cost in accordance with FIFO and COGS at the end of each fiscal quarter and will continue to refine these procedures and controls. While the Company has begun to take measures which it believes will remediate the underlying causes of this material weakness, there can be no assurance as to when the remediation plan will be fully developed and implemented and whether such measures will be effective. Until the Company's remediation plan is fully implemented and effective, the Company will continue to devote time, attention and financial resources to these efforts.

(Emphasis added.)

30. On this news, NAPCO's share price fell $17.30, or 45.04%, to close at $21.11 on August 21, 2023, the next trading day, damaging investors.

31. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired NAPCO securities publicly traded on the NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

34. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

37. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

38. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's securities met the requirements for listing, and were listed and actively traded on the NASDAQ, an efficient market;

- as a public issuer, the Company filed public reports;

- the Company communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

39. Based on the foregoing, the market for the Company securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the common units, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

40. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

### COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

41. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42. This Count asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

43. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

45. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

46. Individual Defendants, who are or were senior executives and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company's personnel to members of the investing public, including Plaintiff and the Class.

47. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

48. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

49. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

50. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

51. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's misstatement of revenue and profit and false financial statements.

53. As officers of a public business, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition

and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

54. Because of their positions of control and authority as senior executives and/or directors, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Company securities.

55. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 29, 2023            **THE ROSEN LAW FIRM, P.A.**

/s/Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*