**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RANDY ZORNBERG, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>NAPCO SECURITY TECHNOLOGIES, INC., RICHARD L. SOLOWAY, and KEVIN S. BUCHEL,<br><br>        Defendants. | Case No. 1:23-cv-06465-BMC<br><br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF RICHARD JAMISON FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS SELECTION OF CO-LEAD COUNSEL**

Proposed Lead Plaintiff Richard Jamison respectfully submits this memorandum of law in support of his motion: (1) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) for approval of his selection of Bleichmar Fonti & Auld LLP ("BFA") and the Schall Law Firm ("SLF") as Co-Lead Counsel for the Class; and (3) for any such further relief as the Court may deem just and proper.[1]

## PRELIMINARY STATEMENT

The above-captioned securities class action alleges that NAPCO Security Technologies, Inc. ("NAPCO" or the "Company") and certain of its senior officers (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  Specifically, the complaint alleges that from November 7, 2022 to August 18, 2023 (the "Class Period"), NAPCO downplayed the severity of two material weaknesses in its internal controls and that the Company's financial statements were materially false and misleading.

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-

---

[1] Mr. Jamison is prosecuting the claims of his spouse Sheila Jamison pursuant to a valid assignment and is fully empowered to prosecute the claims. *See* Declaration of Javier Bleichmar ("Bleichmar Decl."), Ex. A.  Courts routinely appoint Lead Plaintiff candidates that are prosecuting claims pursuant to an assignment. *See e.g., Xu v. FibroGen, Inc.*, 2021 WL 3861454, at *6-7 (N.D. Cal. Aug. 30, 2021).

4(a)(3)(B)(iii)(I).  For the reasons set forth below, Mr. Jamison is the "most adequate plaintiff" by virtue of, among other things, the approximately $36,000 in losses he incurred on his investments in NAPCO securities during the Class Period, as assessed under the U.S. Supreme Court's ruling in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  Mr. Jamison also satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure because his claims are typical of all members of the Class, and he will fairly and adequately represent the Class.  Indeed, Mr. Jamison fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and is willing and able to undertake the responsibilities entailed in acting as Lead Plaintiff to guarantee vigorous prosecution of this action.  *See* Bleichmar Decl., Ex. B.

Mr. Jamison has further demonstrated his adequacy by selecting BFA and SLF, law firms with substantial experience in successfully prosecuting securities class actions, to serve as Co-Lead Counsel for the Class.  Accordingly, Mr. Jamison respectfully requests that the Court appoint him Lead Plaintiff and otherwise grant his motion.

## FACTUAL BACKGROUND

NAPCO develops, manufactures, and distributes security products including access control systems, door security products, intrusion and fire alarm systems, video surveillance products, and cellular communication services.  ¶7.[2]  During the Class Period, the Company reported two material weaknesses in its internal controls.  One "related to ineffective information technology general controls . . . in the area of user access and lack of effective program change-management over certain information technology (IT) systems that support the Company's financial reporting processes," and the second "related to the reserve for excess and slow-moving inventory" and "was

---

[2] All citations to ¶__ refer to the complaint (ECF No. 1), unless otherwise indicated.

a result of a lack of effective review and reconciliation controls over the forecasted sales and usage data." ¶¶19, 23, 27.

Throughout the Class Period, Defendants consistently published statements assuring investors that its financial statements were accurate and downplaying the severity of the two material weaknesses. ¶¶16-27. For example, in NAPCO's financial reports filed with the SEC during the Class Period, the Company repeatedly stated that the material weakness related to its information technology general controls "did not result in any identified misstatements to the financial statements" and that the material weakness related to its inventory "did not result in a material misstatement to the financial statements." ¶¶19, 23, 25. NAPCO also repeatedly stated, "there were no changes in the Company's internal controls over financial reporting that have materially affected, or are reasonably likely to materially affect, the Company's internal controls over financial reporting," and NAPCO's Chief Executive Officer and Chief Financial Officer attested to the accuracy of the Company's financial reporting, the disclosure of any material changes to NAPCO's internal control over financial reporting, and the disclosure of all fraud throughout the Class Period. ¶¶19, 21, 23, 25, 27.

These statements were materially false and misleading. In truth, as alleged: (1) NAPCO failed to adequately address its material weaknesses; (2) NAPCO downplayed the severity of the material weaknesses; (3) NAPCO's financial statements included errors such as overstating inventory and understating cost of goods sold ("COGS"), resulting in overstated gross profit, operating income, and net income for each financial reporting period during the Class Period. ¶28.

On August 18, 2023, NAPCO disclosed that it would restate its financial statements from September 30, 2022 to the present. ¶29. In announcing the restatement, the Company stated, "inventories were overstated and COGS was understated, resulting in overstated gross profit,

3

operating income and net income for each period" and that "the Company has determined that a material weakness existed in the Company's internal controls over financial reporting for each of the first three quarters of 2023." *Id.*    This news caused the price of NAPCO stock to decline $17.30 per share, approximately 45%, from $38.41 per share on August 18, 2023 to $21.11 per share on August 21, 2023, the next trading day.  ¶30.

## ARGUMENT

### A.    Mr. Jamison Should Be Appointed Lead Plaintiff

Mr. Jamison respectfully submits that the Court should appoint him Lead Plaintiff because he is the movant "most capable of adequately representing the interests of class members."  15 U.S.C. §§ 78u-4(a)(3)(B)(i).    When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I); *see also Chilton v. Chiumento Grp.*, 365 F. App'x 298, 299 (2d Cir. 2010) (discussing qualifications for Lead Plaintiff presumption).  Here, Mr. Jamison believes that he is the presumptively "most adequate plaintiff" because he: (1) complied with the PSLRA's procedural requirements; (2) believes he asserts the largest financial interest in the relief sought by the Class; and (3) satisfies Rule 23's typicality and adequacy requirements.

#### 1.    Mr. Jamison Satisfied The PSLRA's Procedural Requirements

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A).  On August 29, 2023, Plaintiff Randy Zornberg filed the above-captioned action.  On the same day, counsel for Mr. Zornberg published a notice on *Business Wire*, which alerted investors to the pendency of the action and set the deadline to seek

4

Lead Plaintiff status by October 30, 2023. *See* Bleichmar Decl. Ex. C. Accordingly, Mr. Jamison satisfies the PSLRA's 60-day requirement through the filing of this motion.

        **2.**        **Mr. Jamison Believes He Has The Largest Financial Interest In The Relief Sought By The Class**

Mr. Jamison believes that he has the largest financial interest in the relief sought by the Class and thus should be appointed Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Mr. Jamison incurred a recoverable loss of roughly $36,000 on his investments in NAPCO securities during the Class Period as assessed under the Supreme Court's ruling in *Dura*. "Though *Dura* concerned a motion to dismiss a securities class action, courts nonetheless apply *Dura* when considering the financial interest for the purposes of appointing a lead plaintiff." *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 20-cv-9132 (AJN), 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021) (collecting cases). This is because "courts should consider only those losses that will actually be recoverable in the class action . . . and make determinations of largest financial interest only based on the facts alleged in the complaint." *Id.* at *3.

Certain courts also consider inventory accounting methodologies which do not account for *Dura*. More specifically, some courts look to the "last-in, first-out" or "LIFO" method to determine the movant with the largest financial interest, while a small minority consider the "first-in, first-out" or "FIFO" method. *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 & n.5 (S.D.N.Y. 2015). Under both the LIFO and FIFO methodologies, Mr. Jamison also incurred a loss of approximately $36,000 on his Class Period investments in NAPCO securities.[3]

---

[3] In addition to losses, courts may also consider other metrics, often referred to as "*Lax-Olsten* factors*,*" to further analyze a movant's financial interest when warranted. *See Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) (identifying: (1) total number of shares purchased; (2) number of net shares purchased; (3) total net funds expended; and (4) approximate losses suffered, as four factors for courts to consider when determining the largest financial interest); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998) (same).

To the best of Mr. Jamison's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in this litigation.[4]   Accordingly, Mr. Jamison believes he has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 3.    Mr. Jamison Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, Mr. Jamison otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  On a motion to serve as Lead Plaintiff, the movant must make only "a preliminary showing" that the movant satisfies the adequacy and typicality requirements of Rule 23(a).  *Ford v. Voxx Int'l Corp.*, No. 14-CV4183 (JS) (AYS), 2015 WL 4393798, at *3 (E.D.N.Y. July 16, 2015) (adopting report and recommendation).  Here, Mr. Jamison clearly satisfies both requirements.

Mr. Jamison's claims are typical of the claims of other purchasers of NAPCO securities. Typicality is satisfied "where the claims of the proposed lead plaintiff arise from the same conduct as those to be raised by the class as a whole, and class members will make similar arguments in support of liability."  *Id.*  Here, Mr. Jamison's and all other class members' claims arise from the same course of events and their legal arguments to prove Defendants' liability are nearly identical. Like all other class members, Mr. Jamison: (1) purchased NAPCO securities during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) was damaged as a result.  *See Woodley v. Gulfport Energy Corporation*,

---

[4] Mr. Jamison's PSLRA-required Certification is provided as Exhibit D to the Bleichmar Decl.  In addition, a chart setting forth calculations of Mr. Jamison's financial interest is provided as Exhibit E to the Bleichmar Decl.  Mr. Jamison's motion, PSLRA certification, and financial interest calculations provide all the trading information necessary to calculate his financial interest under all possible metrics and does not presuppose there is only one valid methodology.

6

20 Civ. 2357 (ER), 2021 WL 428634, at *3 (S.D.N.Y. Feb. 8, 2021) (finding typicality where, "like other class members," movant "purchased [company] securities during the Class Period," "was allegedly adversely affected by Defendants' false and misleading statements," and "seeks substantially the same relief, based on substantially the same legal theories"). As such, Mr. Jamison is a typical Class representative.

Mr. Jamison likewise satisfies the adequacy requirement of Rule 23. Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, a representative party must "fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4). A Lead Plaintiff must not have interests that are antagonistic to the class the movant seeks to represent, must have a sufficient interest in the outcome of the case to ensure vigorous advocacy, and must retain counsel that is capable and qualified to vigorously represent the interests of the Class. *See Lopez v. CTPartners Executive Search Inc.*, No. 15 Civ. 1476 (PAE), 2015 WL 2431484, at *2 (S.D.N.Y. May 18, 2015). Mr. Jamison satisfies these elements because his substantial financial stake in the litigation provides the ability and incentive to vigorously represent the Class's claims. Indeed, Mr. Jamison's interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Mr. Jamison and other Class members.

Moreover, Mr. Jamison is committed to discharge his obligations as a Lead Plaintiff under the PSLRA to oversee and supervise the litigation separate and apart from counsel and submitted a sworn declaration as to his willingness and ability to fulfill those duties. *See* Bleichmar Decl., Ex. B. What's more, Mr. Jamison's declaration provides the Court with additional information supporting his *bona fides*, including explaining who he is, a retired financial advisor with a Doctorate degree in molecular biology and a Masters' degree in business administration, that he is

7

an experienced investor, and given his substantial financial interest in the litigation, that he intends to continue to actively oversee counsel, confer with counsel regarding the litigation, and review and authorize the filing of important litigation documents. *See id*. ¶¶ 2-7.

Finally, Mr. Jamison has demonstrated his adequacy through his selection of BFA and SLF as Co-Lead Counsel to represent the Class in this action. As discussed more fully below, BFA and SLF are highly qualified and experienced in the area of securities class action litigation and have repeatedly demonstrated an ability to conduct complex securities class action litigation effectively.

**B.      Mr. Jamison Selected Well-Qualified Counsel To Represent The Class**

The Court should approve Mr. Jamison's selection of BFA and SLF as Co-Lead Counsel on behalf of the Class. The PSLRA provides that the Lead Plaintiff is to select and retain counsel to represent the Class it seeks to represent, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Aude v. Kobe Steel, Ltd.*, 17-CV-10085 (VSB), 2018 WL 1634872, at *4 (S.D.N.Y. Apr. 4, 2018).

BFA is among the foremost securities class action law firms in the country. BFA's partners have served as Lead and Co-Lead Counsel on behalf of dozens of investors in securities class actions and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades. *See* Bleichmar Decl. Ex. F. For example, BFA recently achieved a $420 million resolution on behalf of investors in *Ontario Teachers' Pension Plan Board v. Teva Pharms. Indus. Ltd.*, No. 3:17-cv-00558-SRU (D. Conn.). BFA also recently secured a $129 million resolution on behalf of investors in *The Police Retirement System of St. Louis v. Granite Construction Inc.*, No. 3:19-cv-04744-WHA (N.D. Cal.). Previously, BFA secured a $234 million resolution for the benefit of the class in *In re MF Global Holdings Ltd. Sec.*

8

*Litig.*, No. 1:11-cv-07866-VM (S.D.N.Y.), as well as a $120 million recovery in *Freedman v. Weatherford Int'l Ltd.*, No. 1:12-cv-02121-LAK (S.D.N.Y.).  BFA also secured a $219 million resolution in *In re Genworth Fin., Inc. Sec. Litig.*, 3:14-cv-00682-JAG (E.D. Va.), which represents the largest securities class action recovery ever achieved in the Eastern District of Virginia.

SLF likewise possesses a high degree of skill and professionalism, and has a history of successfully litigating complex matters, including several securities class actions throughout the United States.  *See* Bleichmar Decl. Ex. G.  Indeed, while serving as additional counsel, SLF played an integral role in *Erickson v. Snap Inc.*, No. 17-cv-03679 (C.D. Cal.), securing the second largest securities class action recovery in the United States in 2021.  SLF has also obtained substantial recoveries as additional counsel in: *Klein v. Altria Group, Inc.*, 3:20-cv-00075 (E.D. V.A.) ($90 million settlement) and *St. Clair County Employees' Retirement System v. Resideo Technologies, Inc.,* No. 0:19-CV-02863 (D. Minn.) ($55 million settlement).  Additionally, BFA and SLF have a history of successfully working together in securities class actions, including a recent $21 million resolution for investors in *Bilinsky v. Gatos Silver, Inc.*, 1:22-cv-00453 (D. Colo.) (pending court approval).  Thus, the Court may be assured that by granting this motion, the proposed Class will receive the highest caliber of legal representation.

## CONCLUSION

Mr. Jamison respectfully requests that the Court: (1) appoint him to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B); (2) approve his selection of BFA and SLF as Co-Lead Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

DATED: October 30, 2023                    Respectfully Submitted,

**BLEICHMAR FONTI & AULD LLP**

*/s/ Javier Bleichmar*

Javier Bleichmar
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960
jbleichmar@bfalaw.com

-and-

Ross Shikowitz
75 Virginia Road
White Plains, New York 10603
Telephone: (914) 265-2991
Facsimile: (212) 205-3960
rshikowitz@bfalaw.com

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac vice* forthcoming)
Chris Mooney
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (310) 301-3335
Facsimile: (877) 590-0482
brian@schallfirm.com
chris@schallfirm.com

*Counsel for Proposed Lead Plaintiff Richard Jamison and Proposed Co-Lead Counsel for the Class*