# Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

TELEPHONE:
FACSIMILE: +1-212-455-2502

Direct Dial Number
+1-212-455-3539

E-mail Address
jyoungwood@stblaw.com

**VIA ECF**                                                April 1, 2024

Re:    *Zornberg V. Napco Security Technologies, Inc. et al.*
       Case No: 1:23-cv-06465-BMC

Hon. Brian M. Cogan, U.S.D.J.
United States District Court
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Cogan:

Pursuant to Local Civil Rule 7.1(d) and Section III(A)(2) of Your Honor's Individual Practices, we write on behalf of NAPCO Securities Technologies, Inc. ("NAPCO" or the "Company") and the Individual Defendants to request a pre-motion conference regarding Defendants' proposed motion to dismiss the Amended Complaint (the "Complaint"). [1]  The primary bases for the motion are summarized below.

## I.    The Exchange Act Claims Should Be Dismissed For Failure to Plead Scienter

The core of Plaintiffs' scienter allegations is an alleged fraudulent scheme by the Company and Officer Defendants to "halt shipments of sold inventory before the end of the quarter," in order to understate sold equipment inventory which, in turn, reduced the quarterly cost of goods sold ("COGS") and inflate the Company's income-related metrics.  Compl. ¶¶ 9, 10.  As a threshold matter, this allegation is a non-sequitur for the simple reason that inventory is not deemed "sold" for financial reporting purposes—and revenue is not recognized—until the inventory is actually shipped.  *See, e.g.*, Feb. 6, 2023 10-Q at 11[2].

Moreover, allegations of this purported scheme are based solely on statements attributed to three anonymous former employees ("FE's"), none of which are sufficient to plead scienter. Among other things, the FE's are not alleged to have had any communications with Individual Defendants and there is no indication these individuals were privy to accounting or inventory decision-making.  Instead, many of the FE allegations are vague or conclusory—failing to specify when the purported fraud occurred and relying on what the FE "understood," "believed" or was

---

[1] The motion to dismiss will be made by all Defendants including Needham & Company, LLC and William Blair & Company, L.L.C., which are represented by DLA Piper LLC (US).

[2] The documents cited to in this letter are incorporated by reference in the Complaint.

BEIJING    HONG KONG    HOUSTON    LONDON    LOS ANGELES    PALO ALTO    SÃO PAULO    TOKYO    WASHINGTON, D.C.

told by unidentified individuals, without providing specific information regarding the alleged misconduct. Courts consistently reject such unsubstantiated confidential witness allegations. *See e.g., Local No. 38, Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 460 (S.D.N.Y. 2010) (discounting confidential sources who had no contact with Defendants).

Furthermore, Plaintiffs' allegations of fraud are not as "cogent and at least as compelling as any opposing non-fraudulent inference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). On August 18, 2023, when the Company announced that it was restating its financial statements for the first three fiscal quarters of 2023, it disclosed the non-fraudulent reason for the restatement. In preparing its audited fiscal year-end 2023 consolidated financial statements, the Company had "identified certain errors related to the Company's calculation of [COGS] and inventory for each of the first three quarters of fiscal 2023." Specifically, "although the costs of several components fluctuated substantially during fiscal 2023, the Company's costing procedures did not appropriately account for such fluctuations. As a result, inventories were overstated and COGS was understated[.]" *See* Aug. 18, 2023 Form 8-K at 2. This explanation is fully consistent with and supported by the Company's statements throughout (and after) the Class Period that supply chain shortages prior to fiscal 2023 led the Company to buy components at very high costs, which began to significantly decrease in fiscal 2023. *See e.g.,* May 8, 2023 Earnings Tr. at 7-8.

Allegations regarding stock sales by certain Defendants also fail to plead scienter. Plaintiffs allege "motive and opportunity" primarily because Defendants Soloway and Buchel sold shares generating over $100 million in gross proceeds during the Class Period. "The sale of a large volume of stock alone, however, is not enough to adequately plead scienter. Instead, Plaintiffs must plead facts charging that there was something 'unusual' or 'suspicious' about the timing of the sale or sales." *In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *23 (S.D.N.Y. May 10, 2012). Here, the sales (through a November 2022 Private Placement and a February 2023 SPO (the "SPO")) took place approximately nine months and six months prior to the alleged corrective disclosure. This timing cuts directly against a finding of scienter. *See In re Henry Schein Secs. Litig., Inc.,* 2019 WL 8638851, at *20 (E.D.N.Y. Sept. 27, 2019) ("delay of approximately nine and six months between Defendants' last sale during the Class Period and the date of the first purported corrective disclosure is too long to support an inference of scienter"). Furthermore, the SPO was pursuant to a shelf registration statement, filed on September 12, 2022 (nearly two months *before* the Class Period). Not only was there no fraud alleged at that time, but that Defendants sold shares in a public offering "cuts against an inference of scienter." C*ity of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp*., 450 F. Supp. 3d 379, 420 (S.D.N.Y. 2020).

Plaintiffs' other scienter allegations also fall short. That the Company restated its financials does not create an inference of scienter nor do allegations regarding the Officer Defendants' high level positions or that, months following the Class Period, the Company replaced its auditor.

## II.    The Claims Should Be Dismissed Because Plaintiffs Fail to Plead Loss Causation

Plaintiffs' failure to plead loss causation requires dismissal of the Exchange Act and Securities Act claims. Plaintiffs allege that the August 18, 2023 Restatement impacted NAPCO's stock price because the "nature and extent of the Exchange Act Defendants' fraud" was finally revealed. Compl. ¶ 128. However, the Restatement says nothing about the purported fraudulent scheme underlying Plaintiffs' Section 10(b) claim. In fact, Plaintiffs acknowledge that "[a]lthough NAPCO attempted to characterize the restatement as stemming from innocent accounting 'errors' in fact, it was the product of a fraudulent scheme[.]" Compl. ¶¶ 8, 107. Plaintiffs cannot have it

both ways.  On the one hand they assert a fraudulent scheme while on the other they admit that the purported corrective disclosure has nothing to do with such a scheme.  Thus, the Complaint, on its face, belies finding loss causation and Plaintiffs' claims should be dismissed.[3]  *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 285 (S.D.N.Y. 2008) (the corrective disclosure must "reveal to the market some part of the truth regarding the alleged fraud").

### III.    The Securities Act Claims Must Be Dismissed Because the City of Warren is Not a Proper Plaintiff

Although the original complaint alleged only Exchange Act claims, the Amended Complaint adds Securities Act claims brought by "Additional Plaintiff" the City of Warren.  These claims must be dismissed because they, and the City of Warren, were improperly added to this action.  The notice of class action, as required under the PSLRA, was published on August 29, 2023, and was limited to the Exchange Act claims.  Thereafter several plaintiffs submitted lead plaintiff applications and, on November 14, 2023, the Court ordered that plaintiff Donald Hutchings would be Lead Plaintiff.  The City of Warren did not participate in that process, as required by the PSLRA, nor did any plaintiffs who alleged to have purchased in or had shares traceable to the February 2023 SPO.  The City of Warren should not now be able to end-run the lead plaintiff process mandated by the PSLRA.  This is especially true since the Securities Act claims "assert[] entirely new factual and legal allegations" regarding "separate transactions [that] affect[] a new class of plaintiffs," *see In re Select Comfort Corp. Secs. Litig.,* 2000 WL 35529101, at *7 (D. Minn. Jan. 27, 2000), and the failure to provide notice denied putative class members the opportunity to compete for appointment as lead plaintiff for these claims.

### IV.    Additional Plaintiff Lacks Standing to Bring the Section 12(a)(2) Claim

Additional Plaintiff may only bring a claim under Section 12(a)(2) against "statutory sellers" who "pass[] title, or other interest in the security, to the buyer for value," or "successfully solict[] the purchase [of a security]" through the use of a prospectus containing materially false statements or omissions.  *See In re Morgan Stanley Info. Fund Sec. Litig*., 592 F.3d 347, 359 (2d Cir. 2010).  Additional Plaintiff, however, fails to satisfy either prong.  Its conclusory allegations that all "Defendants were sellers and offer[or]s and/or solicitors of purchasers of the common stock offered," and that it "purchased or otherwise acquired" NAPCO stock "pursuant to the Offering" (Compl.¶ 197) do not plead standing for a Section 12(a)(2) claim.  Further, the added generic allegations regarding the participation of the Underwriter Defendants in the preparation of the prospectus and activities in connection with the Offering also will not suffice.  *See In re Orion Sec. Litig.*, 2009 WL 2601952, at *2 (S.D.N.Y. Aug. 20, 2009).

### V.    The Complaint Fails to State Control Person Liability

Plaintiffs' control persons claims (Section 15 of the Securities Act and Section 20 of the Exchange Act) must be dismissed because Plaintiffs have failed to plead a primary violation.  Additionally, the Section 20 claim separately fails because Plaintiffs' do not allege that any of the purported control persons were "in some meaningful sense, a culpable participant in the controlled person's fraud."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

---

[3] In pleading its Securities Act claims, Plaintiff City of Warren attempts to disclaim its own Section 10(b) allegations.  However, a plaintiff cannot separate itself from its own allegations, and as such, there is no loss causation for the Securities Act claims as well as Plaintiffs' Section 10(b) claim.

Hon. Brian M. Cogan                              -4-                                      April 1, 2024

Respectfully submitted,

*/s/ Jonathan K. Youngwood*

Jonathan K. Youngwood