UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RANDY ZORNBERG, Individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No. 1:23-cv-06465-BMC |
| v. | CLASS ACTION |
| NAPCO SECURITY TECHNOLOGIES, INC., RICHARD L. SOLOWAY, KEVIN S. BUCHEL, PAUL STEPHEN BEEBER, RICK LAZIO, DONNA SOLOWAY, ROBERT UNGAR, ANDREW J. WILDER, NEEDHAM & COMPANY, LLC, and WILLIAM BLAIR & COMPANY, L.L.C., | **Oral Argument Requested** |
| Defendants. | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..........................................................................................................................1

    I.    THE EXCHANGE ACT CLAIMS MUST BE DISMISSED...........................................1

        A. Plaintiffs' FE Allegations Do Not Plead Scienter ...........................................1

        B. The Stock Sales Do Not Support An Inference Of Scienter ........................................3

        C. Additional Circumstantial Evidence Allegations Do Not Allege Scienter ...................4

        D. Plaintiffs' Theory of Fraud is Not as Compelling as Any Opposing Inference ............5

    II.    THE EXCHANGE AND SECURITIES ACT CLAIMS MUST BE DISMISSED BECAUSE THERE IS NO LOSS CAUSATION..............................................................7

    III.    THE SECURITIES CLAIMS ARE ASSERTED IN VIOLATION OF THE PSLRA..................................................................................................................................7

    IV.    The Section 12(a)(2) Claim Must Be Dismissed..................................................................8

    V.    THE SECTION 11 CLAIM AGAINST THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED..................................................................................................10

CONCLUSION .....................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Boluka Garment Co. v. Canaan Inc.*,
547 F. Supp. 3d 439 (S.D.N.Y. 2021) ...............................................................................7

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008) ...............................................................................4

*Dube v. Signet Jewelers Ltd.*,
2017 WL 1379385 (S.D.N.Y. Apr. 14, 2017) ....................................................................8

*Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*,
987 F. Supp. 2d 369 (S.D.N.Y. 2013) .............................................................................10

*Hall v. The Children's Place Retail Stores, Inc.*,
580 F. Supp. 2d 212 (S.D.N.Y. 2008) ...............................................................................6

*Hevesi v. Citigroup, Inc.*,
366 F.3d 70 (2d Cir. 2004) .................................................................................................8

*In re Canopy Growth Sec. Litig.*,
2024 WL 3445436 (S.D.N.Y. Jul. 17, 2024).....................................................................2

*In re Citigroup Inc. Sec. Litig.*,
753 F. Supp. 2d 206 (S.D.N.Y. 2010) ...............................................................................3

*In re Henry Schein Secs. Litig., Inc.*,
2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019) ...................................................................4

*In re Lehman Brothers Sec. & ERISA Litig.*,
799 F. Supp. 2d 258 (S.D.N.Y. 2011) .............................................................................10

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010) ...............................................................................................9

*In re Pall Corp.*,
2009 WL 3111777 (E.D.N.Y. Sept. 21, 2009) ...................................................................5

*In re Pareteum Sec. Litig.*,
2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021) ....................................................................9

*In re Plug Power, Inc. Sec. Litig.*,
2022 WL 4631892, at *15 (S.D.N.Y. Sept. 29, 2022) .......................................................3

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001) .................................................................................................4

*In re Vivendi Universal, S.A.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003) ....................................................................10

*Lozada v. TaskUs, Inc.*,
  2024 WL 68571 (S.D.N.Y. Jan. 5, 2024) ..................................................................3

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
  518 F. Supp. 3d 772 (S.D.N.Y. 2021) .......................................................................3

*New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*,
  80 F.4th 158 (2d Cir. 2023) ......................................................................................9

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ......................................................................................5

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
  367 F. Supp. 3d 16 (S.D.N.Y. 2019) .........................................................................5

*Okla. Police Pension Fund & Ret. Sys. v. Teligent, Inc.*,
  2020 WL 3268531 (S.D.N.Y. Jun. 17, 2020) ............................................................7

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co. Inc.*,
  714 F. Supp. 2d 475 (S.D.N.Y. 2010) .......................................................................9

*Ret. Sys. of Gov't of the V.I. v. Blanford*,
  794 F.3d 297 (2d Cir. 2015) ..................................................................................3, 4

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
  2024 WL 1898512 (S.D.N.Y. May 1, 2024) .............................................................5

*Tellabs, Inc. v. Makor*,
  551 U.S. 308 (2007) ...............................................................................................6, 7

*Wilbush v. Ambac Fin. Grp., Inc.*,
  271 F. Supp. 3d 473 (S.D.N.Y. 2017) .......................................................................7

*Winter v. Stronghold Digit. Mining, Inc.*,
  2023 WL 5152177 (S.D.N.Y. Aug. 10, 2023) ...........................................................9

*Youngers v. Virtus Inv. Partners Inc.*,
  195 F. Supp. 3d 499 (S.D.N.Y. 2016) .....................................................................10

**Statutes and Rules**

17 C.F.R. § 230.430B(f)..............................................................................................10

**Other Authorities**

Securities Offering Reform, Securities Act Release No. 8591, Exchange Act
  Release No. 75, 2005 WL 1692642 (Aug. 3, 2005) .................................................10

## PRELIMINARY STATEMENT[1]

Plaintiffs' Opposition Brief attempts to piece together a fraudulent narrative stemming from NAPCO's timely financial restatement after discovering an inadvertent accounting error that resulted in the understatement of the cost of goods sold (referred to as "COGS") and the overstatement of income.  Plaintiffs claim there was no error; instead they assert the Company concocted a story to conceal a scheme to halt the shipments of already "sold" inventory in order to understate COGS and overstate income.  This purported scheme is based exclusively on vague and speculative allegations attributed to three unidentified former employees (the "FEs"), who Plaintiffs admit had no involvement in (or even knowledge of) NAPCO's accounting practices, and, therefore, no knowledge of the purported effect any such alleged scheme could have on NAPCO's reported financial results.  Plaintiffs also concede that these FEs had no interactions with any  Defendant.  Plaintiffs' attempts to bolster the FE allegations—characterizing them as "consistent accounts" or "corroborat[ing]" each other—are unavailing.  The inference Plaintiffs urge—*i.e.,* allegedly halting shipments resulted in the improper accounting of COGS—is entirely unwarranted and does not plead scienter.  For this reason, as well as those set forth below, the Exchange Act and Securities Act claims must be dismissed.

## ARGUMENT

### I.    THE EXCHANGE ACT CLAIMS MUST BE DISMISSED

#### A.    Plaintiffs' FE Allegations Do Not Plead Scienter

Plaintiffs do not dispute that the FEs lacked knowledge of the Company's accounting practices (including the accounting for inventory, COGS, or net income), financial reporting, or

---

[1] Unless otherwise stated, citations and quotations are omitted.  Citations to the Complaint are "¶_" and citations to "Ex. _" refer to Exhibits attached to the Decl. of Jonathan K. Youngwood filed with Defendants' Opening Brief.

internal controls and that they had no contact or communications with the Exchange Act Defendants (Messrs. Buchel or Soloway). Opp. at 10. Plaintiffs' theory of fraud is completely dependent on the way inventory is accounted for. Given that the FEs admittedly have no knowledge of the Company's accounting practices, there is no basis for Plaintiffs' leap that the alleged delay in shipments resulted in an earnings overstatement. For instance, if revenue is recognized only *after* inventory is shipped (as disclosed in NAPCO's SEC filings and as required by generally accepted accounting principles, *see* ¶¶61, 62)—regardless of whether an unidentified midlevel manager calls it "sold" or alleges that shipments were intentionally halted—then that revenue would be properly offset by the COGS, and net income would not be inflated. Thus, Plaintiffs' assertion that the FEs "need not also have knowledge of NAPCO's accounting practices" (Opp. Br. at 11) is incorrect. This is exactly the knowledge the FEs must possess to tie Plaintiffs' case together, and, without it, Plaintiffs' ultimate conclusion that "the conduct described by the FEs was done for the purpose of inflating NAPCO's income" (*id*.) is pure speculation. *In re Canopy Growth Sec. Litig.*, 2024 WL 3445436, at \*14 (S.D.N.Y. Jul. 17, 2024).

Plaintiffs do not credibly contest the many other problems with their FE allegations that were identified in Defendants' Opening Brief. MTD Br. at 11-14. With respect to Mr. Soloway, to say that there is "no smoking gun" (Opp. at 10) is a vast understatement—there is not a single allegation linking him to the purported inventory scheme. And to infer scienter because it is "neither cogent nor compelling" that he was "blissfully unaware" or was "will[fully] blind[]" to the fraud is an entirely circular, conclusory argument. *Id.* As to Mr. Buchel, no FE is alleged to have had any direct contact with him and allegations that he purportedly directed to halt inventory shipments rest on vague statements attributable to second-hand sources. MTD Br. at 12. Under Plaintiffs' allegations, even if Mr. Buchel did direct shipments to be halted, that does not equate

2

to fraud, as there could be legitimate business reasons for such practice (and, in fact, two FEs alleged the practice occurred for years prior to the Class Period (¶¶ 9, 44) supporting that it was an ordinary course practice). Further, while the FEs may allegedly have "firsthand knowledge" about the halting of shipments, *see* Opp. at 11, they had no basis to know the reason for any such practice, or if it would have any impact at all on NAPCO's accounting and financial reporting. *See Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 780-781 (S.D.N.Y. 2021). Plaintiffs' argument that the FEs corroborate one another also fails for the same reason; not a single FE is alleged to have the requisite "actual knowledge" to be corroborated. *See, e.g., Lozada v. TaskUs, Inc.*, 2024 WL 68571, at *25 (S.D.N.Y. Jan. 5, 2024). Further, vague and speculative allegations that shipments were halted to "sandbag numbers" or employees were told to "keep quiet" (Opp. at 11-12) do not plead fraud. Courts frequently reject unwarranted characterizations (*see, e.g., In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 245 (S.D.N.Y. 2010)) and Plaintiffs' reliance on *Emps.' Ret. Sys. v. Blanford*, 794 F.3d 297, 308 (2d Cir. 2015) is misplaced.

## B.    The Stock Sales Do Not Support An Inference Of Scienter

Contrary to Plaintiffs' assertions, Defendants Soloway and Buchel's stock sales during the Class Period were not unusual or suspicious as required under Second Circuit law to plead motive and opportunity. Among other things, the sales occurred during the Company's open window period; they were made pursuant to a Form S-3 Registration statement (filed two months before the Class Period) that publicly disclosed their intent to sell stock; after the sales at issue, both Mr. Soloway and Mr. Buchel retained over 50% of their shares and the price of NAPCO's stock had progressively increased; Mr. Soloway made a number of sales before the Class Period (*see* Reply Declaration of Jonathan K. Youngwood, Ex. A (Soloway Form 4s))[2]; and, notably, the trades at

---

[2] *See In re Plug Power, Inc. Sec. Litig.*, 2022 WL 4631892, at *15 (S.D.N.Y. Sept. 29, 2022).

issue took place six and nine months before the alleged corrective disclosure occurred. *See* MTD Br. at 14-17. All of these factors weigh strongly against an inference of scienter. *See City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 475-76 (S.D.N.Y. 2008) (sales not suspicious where stock price was rising, one defendant sold during open trading window, and "10-plus week gap" between the sales and the corrective disclosure).

Plaintiffs argue that the close proximity of these trades to the issuance of the alleged misstatements make them suspiciously timed. Opp. at 15. However, in the cases Plaintiffs rely on, courts also look to the proximity of stock sales to the alleged corrective disclosure. And in each of Plaintiffs' cases, the sales occurred within weeks or a month of the corrective disclosure. *See, e.g., In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74 (2d Cir. 2001) (defendant sold 80 percent of his holdings a month before the corrective disclosure); *Blanford*, 794 F.3d at 308 (finding majority of trades made within three months before end of class period with last sale in the final month). Here, in contrast, the sales at issue were six and nine months before the Restatement, which courts find is simply "too long to support an inference of scienter" regardless of their proximity to the alleged misstatements. *In re Henry Schein Secs. Litig., Inc.*, 2019 WL 8638851, at *20 (E.D.N.Y. Sept. 27, 2019) (finding sales by defendants, made between a few days and few weeks after the alleged misstatements, were not suspicious where there was "a delay of approximately nine and six months between Defendants' last sale . . . and the date of the first purported corrective disclosure.").

### C.    Additional Circumstantial Evidence Allegations Do Not Allege Scienter

Plaintiffs' "additional circumstantial evidence" similarly fails to raise an inference of scienter. As set forth in Defendants' Opening Brief, Courts routinely hold that the fact of a restatement is insufficient to plead scienter. MTD Br. at 17-18. Disregarding such authority, Plaintiffs argue that the magnitude of the Restatement suggests "more than a careless mistake"

4

(Opp. at 13), but courts do not find magnitude to be in any way determinative. *See, e.g., Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).  And, in *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 38 (S.D.N.Y. 2019), on which Plaintiffs rely, a large inventory drawdown (of $50 to $70 million) "suggest[ed] more than a careless mistake or trivial miscalculation" only because plaintiffs also sufficiently alleged defendants had actual knowledge of the true numbers prior to the restatement.

Plaintiffs also argue that NAPCO's disclosure of internal control weaknesses, Messrs. Buchel and Soloway's purported failure ''to ensure that the SEC filings they signed were truthful and accurate'', and that the explanation for the Restatement was allegedly a false pretext (Opp. at. 13) all are probative of scienter.  These circular arguments, however, are, at best, conclusory and cannot succeed, especially where, as here, there are no allegations that Messrs. Buchel or Soloway contemporaneously knew of such weaknesses (or the accounting error that was disclosed) at any time during the Class period.[3]  Finally, that the Company replaced Baker Tilly as its auditor approximately three months after the Restatement does not support a finding of scienter (Opp. at 14) and the case they cite in support involves very different facts.  *See Hall v. The Children's Place Retail Stores, Inc.,* 580 F. Supp. 2d 212, 233 (S.D.N.Y. 2008) (auditor resigned 15 days after the disclosure and the CEO had been forced to resign immediately).

### D.    Plaintiffs' Theory of Fraud is Not as Compelling as Any Opposing Inference

To plead scienter, Plaintiffs must plead an inference that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor*, 551 U.S.

---

[3] Plaintiffs cases, *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 2024 WL 1898512, at \*9-10 (S.D.N.Y. May 1, 2024) and *In re Pall Corp.*, 2009 WL 3111777, at \*8 (E.D.N.Y. Sept. 21, 2009), are not to the contrary.  Both include particularized allegations that defendants contemporaneously "pushed for" or knew of the misconduct during the class period.

308, 314 (2007). Plaintiffs' speculative theory of fraud, however, is not nearly as compelling as the logical opposing inference: NAPCO made an accounting error which it discovered while preparing its fiscal year-end audited 2023 consolidated financial statements. Ex. 6 (Aug. 18, 2023 Form 8-K) at 2. At that time, NAPCO explained the reason for the error: "although the costs of several components fluctuated substantially during fiscal 2023, the Company's costing procedures did not appropriately account for such fluctuations. As a result, inventories were overstated and COGS was understated[.]" *Id.* This reason is entirely consistent with NAPCO's earlier SEC filings, which disclosed that, by the end of calendar year 2021, as a result of the global supply chain crisis, NAPCO experienced shortages resulting in higher prices paid for inventory. *See* Ex. 1 (Aug. 29, 2022 Form 10-K) at 22. By late-2022/early-2023 fiscal years, however, the supply shortage began to dissipate and the price of parts (inventory) decreased. Ex. 5 (Aug. 29, 2023 Tr.) at 5. Thus, the inference that NAPCO made an accounting mistake due to a decline in component prices is much more compelling than Plaintiffs' convoluted theory of fraud, based on speculative allegations of FEs with no accounting knowledge. This is especially true as Plaintiffs' scheme conflicts with NAPCO's disclosures as to how it accounts for sales (revenue is recorded after it leaves the warehouse, *see* MTD Br. at 9).

Plaintiffs also have no credible response to the fact that NAPCO's earlier SEC filings—disclosing price fluctuations due to supply chain shortages—are entirely consistent with the reason later disclosed for the Restatement. Opp. at 17. Instead, Plaintiffs complain about the length of the exhibits attached to Defendants' Opening Brief and argue that the opposing inference suggested by Defendants is an improper alternative factual narrative. *Id.* But there is nothing improper with Defendants' exhibits—all of which were incorporated by reference in the Complaint or are documents, like SEC filings, which courts take judicial notice of in securities fraud cases

6

(MTD Br. at 5 n.2). Nor is it improper to consider such disclosures to provide context when weighing competing inferences. *Tellabs,* 551 U.S. at 322 (courts "must consider the complaint in its entirety . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Wilbush v. Ambac Fin. Grp., Inc.,* 271 F. Supp. 3d 473, 496 (S.D.N.Y. 2017) (CW allegations did not "contradict the public statements" in the 10-K and "appear[ed] to be consistent with [the] statement during the Earnings Conference Call").

## II.    THE EXCHANGE AND SECURITIES ACT CLAIMS MUST BE DISMISSED BECAUSE THERE IS NO LOSS CAUSATION

Plaintiffs argue that they meet their burden to plead loss causation because NAPCO's stock price declined following the Restatement's announcement. Opp. at 18. But this argument ignores their allegations that, on the one hand, the stock drop was a "direct result of the nature and extent of the Exchange Act Defendants' fraud finally being revealed to investors" (¶ 128), while, on the other hand, rather than revealing the fraud (or the truth), the Restatement itself was a "concocted" "nonculpable story" to conceal the truth. Opp. at 18; ¶¶ 8, 107. According to Plaintiffs' contradictory pleading, there was no fraud (or truth) revealed and, on the face of the Complaint, there is no loss causation. This is fatal to both Plaintiffs' Exchange and Securities Act claims. *See Boluka Garment Co. v. Canaan Inc.*, 547 F. Supp. 3d 439, 445-46 (S.D.N.Y. 2021). Plaintiffs' alternative argument, that there was a materialization of concealed risk, also fails because Plaintiffs have not alleged a concealed risk. *See Okla. Police Pension Fund & Ret. Sys. v. Teligent, Inc.*, 2020 WL 3268531, at *19 (S.D.N.Y. Jun. 17, 2020) (complaint alleged regulatory non-compliance, evidenced by letters from the FDA, that materialized into the disclosed problems).

## III.    THE SECURITIES CLAIMS ARE ASSERTED IN VIOLATION OF THE PSLRA

Under the PSLRA, "the role of the lead plaintiff is 'to empower investors so that they – not their lawyers – exercise primary control over private securities litigation.'" *Hevesi v. Citigroup,*

7

*Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004). That is not the situation here. The Additional Plaintiff was not tested in a lead plaintiff competition, has minimal alleged damages, and has been named a plaintiff in at least seven securities cases filed by the same law firm. *See* Appendix A. Further, investors in the SPO had no chance to seek appointment as lead plaintiff (and none did) because neither the original complaint nor the PSLRA notice mentioned the SPO or any potential claims based on the offering materials. *See* Doc. 1; Doc. 10-3. Dismissal of the Securities Act claims is warranted because the lead plaintiff competition omitted an "entire class[]" of potential lead plaintiffs. *Dube v. Signet Jewelers Ltd.*, 2017 WL 1379385 at *1 (S.D.N.Y. Apr. 14, 2017).[4]

Plaintiffs assert that their contravention of the PSLRA was proper because they "have not expanded the Class Period." Opp. at 20. But the class definition changed significantly as Plaintiffs added Securities Act claims on behalf of an entirely new class. *Compare* Doc. 1 ¶ 32 ("all persons . . . who acquired NAPCO securities publicly traded on the NASDAQ during the Class Period") *with* ¶ 30 ("all those who purchased or acquired NAPCO common stock: (i) during the Class Period . . . ; and (ii) pursuant or traceable to the Offering Materials . . ."). Plaintiffs also argue that, even if the Exchange Act claims were to be dismissed, Lead Plaintiff (Zornberg) can still remain in the case to oversee the litigation. Opp at 21-22. Under these circumstances, it is hard to imagine how Lead Plaintiff could satisfy the requirements of Rule 23 to represent a Securities Act class.

## IV.    THE SECTION 12(a)(2) CLAIM MUST BE DISMISSED

To assert a claim under section 12(a)(2), a plaintiff must have purchased securities in the offering, not just traceable to it, and ultimately to prevail must show that it purchased directly from

---

[4] In *Hevesi*, the Second Circuit deferred to the district court's "managerial judgment" in its decision to certify a class and declined to adopt a *per se* rule against the addition of plaintiffs to "help the lead plaintiff represent the interests of the class as a whole." 366 F.3d at 83-84. All of the in-Circuit decisions ordering republication cited in the briefing were issued after *Hevesi*, which does not stand in the way of dismissal in the circumstances here.

one of the underwriters.  *Winter v. Stronghold Digit. Mining, Inc.*, 2023 WL 5152177 at *11 (S.D.N.Y. Aug. 10, 2023).    The Complaint does not allege either, nor does the Additional Plaintiff's certification.    The Complaint itself is confused and inconsistent as to whether the Additional Plaintiff's shares were acquired "pursuant and traceable to the Offering," ¶ 19, "pursuant or traceable to the Registration Statement for the Offering," *id.* ¶ 191, or "pursuant to the Offering," *id.* ¶ 197.[5]    Additional Plaintiff's argument, that its purchase price of shares is an "additional fact" supporting standing, should be rejected because it is based on *In re Pareteum Sec. Litig.*, 2021 WL 3540779, at *20 n.6 (S.D.N.Y. Aug. 11, 2021), which examined the more lenient standards for pleading standing under Section 11, rather than Section 12.

The Complaint also fails to allege that any Defendant is a statutory seller (*i.e.*, passed title to or solicited its investment) as required.  *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010).    Additional Plaintiff argues that all Defendants solicited stock purchases  (Opp. at 22-23), but there are no particularized allegations that support this argument. Contrary to Additional Plaintiff's assertion, the filing and dissemination of offering materials alone are insufficient to allege solicitation.  *See Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 522 (S.D.N.Y. 2016) (no solicitation where the "complaint does not allege that [defendants] actively or directly marketed the [investment] to investors").    Additional Plaintiff's reliance on *Vivendi* ignores solicitation allegations in that case, which were far different from here.  *See In re*

---

[5] Additional Plaintiff argues that it alleged it purchased shares "pursuant to the Prospectus" and that this is sufficient under *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 180 (2d Cir. 2023).  Opp. at 22.  However, the allegations in *DeCarlo* went beyond those here*, id.* (sufficient allegations were "pursuant to the 'pertinent offering documents' or in the relevant offerings"), and courts routinely find that pleading purchases that may be traceable is too vague to allege a plaintiff "directly purchased" securities in the offering.  *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co. Inc*., 714 F. Supp. 2d 475, 484 (S.D.N.Y. 2010).

*Vivendi Universal, S.A.*, 381 F. Supp. 2d 158, 186-87 (S.D.N.Y. 2003) (alleging that the defendant executive "regularly appeared before investors and financial news agencies to tout the financial vitality of [the company] and thereby encourage investors to purchase [the] securities").

## V.    THE SECTION 11 CLAIM AGAINST THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED

The Registration Statement at issue was filed on September 12, 2022 and, for the Individual Defendants, was effective as of that date.  *See* MTD Br. at 25.  Additional Plaintiff's argument—that the effective date should be when prospectus supplements were filed in February 2023—runs contrary to the SEC's guidance: "under Rule 430B, [unless the enumerated exceptions apply], the prospectus filing will not create a new effective date for directors or signing officers of the issuer." Securities Offering Reform, Securities Act Release No. 8591, Exchange Act Release No. 75, 2005 WL 1692642, at *86 (Aug. 3, 2005).[6]  No exception applies here and Additional Plaintiff's argument that, by incorporating by reference updated financials, the February prospectuses were a "fundamental change" is unsupported by the authority cited.  *See Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*, 987 F. Supp. 2d 369, 376 (S.D.N.Y. 2013) (prospectus supplements containing material information were a "fundamental change" where shelf registration "contain[ed] only a base prospectus with generic information").

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

---

[6] *In re Lehman Brothers Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 316 (S.D.N.Y. 2011), which is not dispositive, was limited to finding a defendant liable "based on statements made in [a Form 10-K] that she signed and that were incorporated by reference in [the Registration] Statement."

Dated:    August 1, 2024                  Respectfully submitted,
              New York, New York

SIMPSON THACHER & BARTLETT LLP

By: */s/ Jonathan K. Youngwood*

Jonathan K. Youngwood
Janet A. Gochman
425 Lexington Avenue
New York, NY 10017
Phone: (212) 455-3539
Fax: (212) 455-2502
jyoungwood@stblaw.com
jgochman@stblaw.com

*Counsel for Defendants NAPCO Securities Technologies, Inc., Richard L. Soloway, Kevin S. Buchel, Paul Stephen Beeber, Rick Lazio, Donna Soloway, Robert Ungar, and Andrew J. Wilder*

DLA PIPER LLP (US)                     DLA PIPER LLP (US)

John R. Loftus*                       *By: /s/ John J. Clarke, Jr.*
2000 Avenue of the Stars            1251 Avenue of the Americas
Los Angeles, California 90067       New York, New York  10020
Phone: (310) 595-3000               Phone: (212) 335-4500
jake.loftus@us.dlapiper.com         john.clarke@us.dlapiper.com

 *Of Counsel*                         *Counsel for Defendants Needham & Company, LLC, and William Blair & Company, L.L.C.*

* *Pro hac vice* application to be filed

11

## Appendix A

1. *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent't, Inc.*, No. 1:20-cv-2031 (S.D.N.Y.)

2. *York Cty. v. Rambo*, No. 3:19-cv-0994 (N.D. Cal.)

3. *City of Warren Police & Fire Ret. Sys. v. Chew*, No. CGC-18-570820 (Cal. Super. San Fran.)

4. *City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, No. 1:18-cv-1492 (E.D.N.Y.)

5. *City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, No. 2:17-cv-4412 (E.D.N.Y.)

6. *City of Warren Police & Fire Ret. Sys. v. Natera, Inc.*, No. CIV537409 (Cal. Super. San Mateo)

7. *City of Warren Police & Fire Ret. Sys. v. Revance Therapeutics, Inc.*, No. CIV533635 (Cal. Super. San Mateo).

12