1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------x
                                         23-CV-6465(BMC)
RANDY ZORNBERG,
                                         United States Courthouse
          Plaintiff,                     Brooklyn, New York

          - versus -                     April 12, 2024
                                         2:15 p.m.
NAPCO SECURITY TECHNOLOGIES,
INC., et al.,

          Defendants.

-------------------------------x


        TRANSCRIPT OF CIVIL CAUSE FOR PREMOTION CONFERENCE
                ALL PRESENT VIA VIDEOCONFERENCE
              BEFORE THE HONORABLE BRIAN M. COGAN
              UNITED STATES SENIOR DISTRICT JUDGE


APPEARANCES

Attorney for Plaintiff:  ROBBINS GELLER RUDMAN & DOWD, LLP
                         58 South Service Road - Suite 200
                         Melville, New York 11747
                         BY:  ERIN WHITNEY BOARDMAN, ESQ.


                         HOLZER HOLZER & FISTEL, LLC
                         200 Ashford Center North - Suite 300
                         Atlanta, Georgia 30338
                         BY:  MICHAEL I. FISTEL, ESQ.



Attorney for Defendant:  SIMPSON THACHER & BARTLETT, PC
NAPCO Security            425 Lexington Avenue
Technologies, Inc.       New York, New York 10017-3954
                         BY:  JONATHAN K. YOUNGWOOD, ESQ.
                              JANET GOCHMAN, ESQ.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

2

APPEARANCES (CONTINUED)


Attorney for Defendants: DLA PIPER LLP (US)
Needham & Company, LLC    1251 Avenue of the Americas
William Blair             New York, New York 10020
                          BY:  JOHN J. CLARKE, JR., ESQ.




Court Reporter:           LINDA D. DANELCZYK, RPR, CSR, CCR
                          Phone:  718-613-2330
                          Fax:    718-804-2712
                          Email:  LindaDan226@gmail.com


Proceedings recorded by mechanical stenography.  Transcript produced by computer-aided transcription.

PROCEEDINGS                    3

(In open court; all present via videoconference.)

THE COURTROOM DEPUTY:  Good afternoon.  Zornberg versus NAPCO Security Technologies, Inc., et al.

Please state your appearance for the record, starting with the plaintiff.

MS. BOARDMAN:  Good afternoon, Your Honor.

Erin Boardman from Robbins Geller Rudman & Dowd on behalf of the plaintiff.

MR. FISTEL:  Good afternoon, Your Honor.

Michael Fistel, Holzer & Fistel on behalf of plaintiff.

MR. YOUNGWOOD:  Good afternoon, Your Honor.

Jonathan Youngwood of Simpson Thacher & Bartlett. With me in my office but not on the screen is Janet Gochman. We represent the defendants, other than the underwriters.

MR. CLARKE:  Good afternoon, Your Honor.

John Clarke from DLA Piper New York office on behalf of Needham & Company and William Blair, the underwriter defendants.

THE COURT:  Okay.  This is a premotion conference on the defendants' proposed motion to dismiss, which I know is already coming, we've got a schedule set for it and it's going to happen.  The purpose of the conference is to see if we can streamline the motion in any way.  That's the first thing I want to do.

LINDA D. DANELCZYK, RPR, CSR, CCR
Official Court Reporter

And the other thing I want to do is, you know, if the defendants' letter has caused plaintiffs any concern that can be remedied, that is if a seconded amended complaint could obviate some portion of the motion, I really much rather have that now then after the motion is granted, if it is granted.

I really -- these securities fraud cases, it seems all the time that there's always another amended complaint, and I rather get it out of the way. I'm speaking to the plaintiffs now, you know.

The defendants have laid out for you pretty much what their arguments are. If there's a way you can plead aloud those arguments and you want to do that, now is the time to do it.

Is it possible that you want to do that?

MS. BOARDMAN: Good afternoon, Your Honor. This is Erin Boardman for the plaintiffs.

So the evidence raised in defendants' letter -- first of all, they don't challenge falsity.

THE COURT: Say that again. I missed that. They don't what?

MS. BOARDMAN: We don't challenge falsity.

THE COURT: Ms. Boardman, the reporter is having a hard time hearing you, and so am I, you have to speak more slowly and a little clearer.

Linda, what she said was they don't challenge

falsity.

Go ahead, Ms. Boardman.

MS. BOARDMAN:  With respect to the element of scienter, we have three former employees who form the basis of our allegations.  We also have insider sales.  So I don't see anything that is going to change barring, perhaps, an additional witness or two.  Going forward at this time, we have done what we have.

With respect to loss, you know, (indiscernible) is not going to change, so I don't see anything in defendants' letter that would (indiscernible) that allegation.

With respect to the 12(a)(2) claims, we satisfied the statutory requirement.  The plaintiff (indiscernible) City of Warren purchased pursuant to the offering document.  Again, there's nothing there that we need to amend.

Because we've pled primary violations, we've adequately pled controlled person liability.  And there's simply no basis here to reopen the lead plaintiff's process. City of Warren is not a plaintiff.

So I don't see anything in their letter that would cause us to do anything other than their forthcoming motion to dismiss.

THE COURT:  Do I take it, then, that you are willing to forego the opportunity to file a second amended complaint? If I do, and I'm not saying I do, obviously I have no view in

any of the arguments that have been made, but you're saying you are not going to need to file a second amended complaint, you're going to rise or fall on this complaint?

MS. BOARDMAN:  There's nothing raised in the defendants' letter that we think warrants the filing of a second amended complaint.

THE COURT:  Okay.  And so if I accept their arguments, any of them, that will give you cause to appeal, but it won't give you cause to ask me for leave to file a second amended complaint.

MS. BOARDMAN:  I think that's correct, Your Honor. The only thing, as I previously alluded to, is sometimes when you see (indiscernible) it does happen that additional former employees might, you know, come forward in the interim, and that would be a different circumstance.  So I'm not -- I'm not saying that if that happens then, you know, we would still stick -- rise and fall on this complaint.

THE COURT:  Okay.  With regard to the employees, can you get them any closer to see management, or have you given us all you have on that?

MS. BOARDMAN:  Well, Your Honor, I think what we've provided is quite substantial in this case.

And I think it's important to keep in mind this is not a huge company like American Express with a bunch of different departments.  This is a Long Island company that's

relatively small.  They have, I believe, one warehouse facility in the United States.  It's a small company.

All of these witnesses were based at the company's corporate headquarter's facility.  And one of the witnesses personally received the directive.  And these were also -- these aren't low-level employees, they were witnesses who were in a position to know that that's what they provided.

And the most telling circumstance here is the fact that they all told us the same story.  Their admonitions are incredibly consistent.  They each -- they -- all three of the witnesses say essentially the same thing about the fraud.

And -- (indiscernible) received a draft, and there's no requirement that the witnesses have personally interacted with the executives.  That would be essentially impossible for plaintiffs to satisfy, and that is not the legal standard.

THE COURT:  I'm not saying that you haven't got it, okay?  Like I said, I haven't decided that at all, I just wanted to make sure what you've got, everything you've got on that is in the pleading so that, again, we don't have to have another amended pleading where you say actually one of these guys had dinner with another guy in senior management and was told the following.

You know, if you don't have that, that's fine.  I'm not in any way suggesting that you don't have enough.  I just -- I haven't gotten to the motion yet so I'm not forming

any opinions on it.  I just wanted to make sure what we've got is there.

MS. BOARDMAN:  We're not holding anything back, Your Honor.  Spoke to each of these witnesses multiple times.  I have personally spoke with them, and what's in the complaint is what we've got.

THE COURT:  Okay.  All right.

Let me ask the defense a couple of questions.

First of all, do we really have to have even a page or two in your brief on control personal liability?

You know, if I sustain the main complaint, odds are high I'm going to keep the control person liability, right?

MR. YOUNGWOOD:  My experience, Your Honor, is odds are high you're going to keep the control people and you sustain it otherwise.

THE COURT:  So why don't we just agree to that for now.  You can raise it again on summary judgment.  But, you know, reserve your rights, but don't --

MR. YOUNGWOOD:  That's fine, Your Honor.  We'll note it in a footnote or something, but that's fine.

THE COURT:  Okay.

And then the only other thing I saw that I thought was a pretty weak argument on your point is the City of Warren is a proper plaintiff here.  They are not lead plaintiffs.  No one's saying that.  And I don't see why notice had to go out

naming them for that reason.  I think they can join as an individual plaintiff.

Do you have authority to the contrary?

MR. CLARKE:  Your Honor, we do have authority to the contrary.

I would just note that the plaintiff's cited the *Thornburg Mortgage* case, it suggests that in Securities Act claims here didn't change the claims, but in that case they didn't add an additional plaintiff that was not in the lead plaintiff process.

Judge Furman has looked at this issue in several cases, and the standard that he and Judge Schuman have articulated in these cases, going back to 2005, makes it clear that if there's a real possibility that based on criteria set forth in the PSLRA, the lead plaintiffs are not best situated to assert the claims, then that justifies republication.  And that is basis for a dismissal without prejudice.

And I would cite to you the *Sandridge* case, Judge West decided in 2015, 2015 WL 3652526 in the Western District of Oklahoma, where the lead plaintiffs added a Securities Act claims related to some *Sandridge* royalty trusts in the amended complaint and Judge West found that that was -- that subverted the PSLRA process, compared to the first lead but more completely addressed that in the motion.

THE COURT:  Let me ask you this.

What if the plaintiffs were to stipulate that under no circumstances will City of Warren seek or accept the addition of lead plaintiff?

MR. CLARKE:  Well, Your Honor, I don't -- I don't know how that would address the problem of the lead plaintiffs basically finding a plaintiff so that they could purport to represent a Securities Act class here that was not contemplated in the notice process.

THE COURT:  I need to understand that better.

MR. CLARKE:  Sure.

THE COURT:  The City of Warren's claim is for the City of Warren, it's not a representative claim; is it?

MR. CLARKE:  It's asserting a claim on behalf of investors in the offering.

THE COURT:  Is it a class claim where they need to be certified?

MR. CLARKE:  My understanding is, yes, sir, that Securities Act claims are asserted on behalf of a class.

THE COURT:  Do you ever have class members intervene in a Securities class action to assert their individual claims?

MR. CLARKE:  I think that has happened in the history of Rule 23, but I don't have a specific example to cite to you.

THE COURT:  I think it happens with some frequency.

I've certainly seen it before, and maybe I misread the statement -- maybe I didn't read closely enough the City of Warren's allegations, but I didn't understand that they were seeking to appear as a class representative.  I thought somehow they had their own investments that they were seeking to protect.

Do you think I got it wrong?

MR. YOUNGWOOD:  Your Honor, I can jump in.

Page 43 of the complaint paragraph 149 says precisely that they are seeking to act on behalf of those who purchased or otherwise acquired NAPCO common stock pursuant or traceable to the offering.

THE COURT:  Okay, I think I got it wrong.

MS. BOARDMAN:  Your Honor, I think perhaps (indiscernible) City of Warren is an additional plaintiff, not a lead plaintiff and, therefore, not subject to the PSLRA notice provisions.

And what happened here is we did bring City of Warren into the case as an additional plaintiff with standing on a Securities Act claim.  And this is something that is routinely done in the securities context.

So I think what's critical here, first of all, is that these claims are encompassed by the notice.  The PSLRA notice in this case was issued by the Rosen law firm who filed the initial complaint.  And it references the class period

between November 7th, 2022 and August 18th, 2023, and seeks to recover for damages to investors under the federal securities laws. So the PSLRA notice speaks to claims under the federal securities laws, and we have added City of Warren to have standing to bring claims under the federal securities laws.

Now in cases where courts have found that the PSLRA notice provision needs to be reopened, those have been situations where an amended complaint dramatically changed either the class period and/or the nature of the allegations.

So, for example, cases where there was a one-month class period and then the amended complaint alleged a three-year class period based on entirely different factual allegations.

And that's simply not the situation here. We have not essentially changed the factual allegations. We have not changed the class period at all, it (indiscernible) to the day. And the Securities Act claims are captured by the notice that was issued in this case, so there's no reason to reopen that process.

And I think it's telling that in defendants' letter they cite a case from 2000, and it's a report and recommendation by a magistrate judge. And that's just simply --

THE COURT: Magistrate judges can --

MS. BOARDMAN: It's a report and recommendation. So

I think that the reason the district adopted that reasoning apart from the district court also relied, in part, on the fact -- in that particular case, it wasn't clear that the plaintiff has standing.  And so those concerns combined (indiscernible) and that case, again, was 24 years ago (indiscernible) the notice process.

There's no need to do that here.  The class members who were -- you know, who are and were encompassed by the dates in the class period, they may or may not have purchased in a secondary offering, but because the lead plaintiff did not purchase in the secondary offering, which occurred during the class period, we added an additional plaintiff with standing on solely the Securities Act claims.  And that's something that happens all the time, and there's no need to (indiscernible) process here, it's routine, and it's completely proper.

THE COURT:  Okay.

Go ahead.

MR. YOUNGWOOD:  If I could.  What Ms. Boardman just said is part of the problem.  The lead plaintiff doesn't have standing to bring this claim, he didn't even purchase near the offerings.

And you might, therefore, (indiscernible), for example, to grant the motion to dismiss as to Section 10, thereby dismissing all the plaintiff's claims, be in a very

peculiar situation if you didn't otherwise dismiss the Section 11 and 12 claims, you would be left with a plaintiff that was not the lead plaintiff in the case, and that's what PSLRA is designed to avoid.

THE COURT:  -- notice at that point?

MR. YOUNGWOOD:  I don't know what one would do at that point.  It might be -- again, I don't know how quickly this will get decided, I don't know if you could -- I suppose you could re-notice if you dismissed it without prejudice, perhaps, but the lead plaintiff that is named doesn't have standing to bring these claims, go through the process.

THE COURT:  Okay.

MR. CLARKE:  And, Your Honor, I would just add that in that *Sandridge* case I mentioned, Judge West noted that his conclusions were buttressed by the fact that the plaintiffs that were alleged to be the Securities Act plaintiffs had insubstantial purchases, which is also the case for the Securities Act additional plaintiff here, which has very, very insubstantial purchases, would be unlikely to prevail if they were a lead plaintiff competition to represent the Securities Act subclass or class here, and is basically somebody offered up by lead plaintiff's counsel, which is exactly the opposite of the arrangement the PSLRA is designed to advance.

THE COURT:  Okay.  Sounds like a round of litigation.  I'll see it in the motions.

PROCEEDINGS                                    15

Okay, anything else I need to be ready for?  And, obviously, the big issues I'm ready.  Anything else that's coming that needs a heads up?

Okay.  I thank you all for calling in.

MR. YOUNGWOOD:  Your Honor, the only thing I would add is I think our briefs are scheduled due early next week.  We had this conference.  If we could have a modest extension, because I think we wanted to incorporate this conference in what we're doing.  I know your rules allow for -- suggest two weeks after the conference.  If we could have that, we would appreciate it.

THE COURT:  That's fine.  You may set the schedule for two weeks starting today.

MR. YOUNGWOOD:  Thank you, Your Honor.

MR. CLARKE:  Thank you, Your Honor.

MS. BOARDMAN:  Thank you, Your Honor.

THE COURT:  Thanks for calling in.

Have a good weekend, everybody.

(Whereupon, the matter was concluded.)

*     *     *     *     *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

    s/ Linda D. Danelczyk                    December 27, 2024

    LINDA D. DANELCZYK                        DATE

MR. CLARKE: [9]
MR. FISTEL: [1]  3/9
MR. YOUNGWOOD: [8]
MS. BOARDMAN: [11]
THE COURT: [24]
THE COURTROOM DEPUTY: [1]
 3/2

-

----------------------------
-x [2]  1/2 1/9

1

10 [1]  13/24
10017-3954 [1]  1/22
10020 [1]  2/3
11 [1]  14/2
11747 [1]  1/15
12 [3]  1/5 5/12 14/2
1251 [1]  2/3
149 [1]  11/9
18th [1]  12/1

2

200 [2]  1/15 1/18
2000 [1]  12/21
2005 [1]  9/13
2015 [2]  9/19 9/19
2022 [1]  12/1
2023 [1]  12/1
2024 [2]  1/5 15/24
23 [1]  10/23
23-CV-6465 [1]  1/3
2330 [1]  2/7
24 [1]  13/5
27 [1]  15/24
2712 [1]  2/7
2:15 [1]  1/6

3

300 [1]  1/18
30338 [1]  1/18
3652526 [1]  9/19
3954 [1]  1/22

4

425 [1]  1/21
43 [1]  11/9

5

58 [1]  1/15

6

6465 [1]  1/3

7

718-613-2330 [1]  2/7
718-804-2712 [1]  2/7
7th [1]  12/1

A

above-entitled [1]  15/23
accept [2]  6/7 10/2

acquired [1]  11/11
act [11]
action [1]  10/20
add [3]  9/9 14/13 15/6
added [3]  9/20 12/4 13/12
addition [1]  10/3
additional [7]  5/7 6/13 9/9
 11/15 11/19 13/12 14/18
address [1]  10/5
addressed [1]  9/24
adequately [1]  5/17
admonitions [1]  7/9
adopted [1]  13/1
advance [1]  14/23
afternoon [6]  3/2 3/6 3/9
 3/12 3/16 4/15
ago [1]  13/5
agree [1]  8/16
ahead [2]  5/2 13/18
aided [1]  2/10
al [2]  1/7 3/3
allegation [1]  5/11
allegations [5]  5/5 11/3
 12/9 12/13 12/15
alleged [2]  12/11 14/16
allow [1]  15/9
alluded [1]  6/12
aloud [1]  4/12
amend [1]  5/15
amended [10]
American [1]  6/24
Americas [1]  2/3
apart [1]  13/2
appeal [1]  6/8
appear [1]  11/4
appearance [1]  3/4
APPEARANCES [2]  1/13 1/24
appreciate [1]  15/11
April [1]  1/5
argument [1]  8/23
arguments [4]  4/11 4/12 6/1
 6/8
arrangement [1]  14/23
articulated [1]  9/13
Ashford [1]  1/18
assert [2]  9/16 10/20
asserted [1]  10/18
asserting [1]  10/13
Atlanta [1]  1/18
August [1]  12/1
August 18th [1]  12/1
authority [2]  9/3 9/4
Avenue [2]  1/21 2/3
avoid [1]  14/4

B

barring [1]  5/6
BARTLETT [2]  1/21 3/13
based [3]  7/3 9/14 12/12
basis [3]  5/4 5/18 9/17
because [3]  5/16 13/10 15/8
behalf [6]  3/8 3/10 3/17
 10/13 10/18 11/10
best [1]  9/15

big [1]  15/2
Blair [2]  2/3 3/18
BMC [1]  1/3
BOARDMAN [6]  1/16 3/7 4/16
 4/22 5/2 13/19
BRIAN [1]  1/11
brief [1]  8/10
briefs [1]  15/6
Brooklyn [1]  1/4
bunch [1]  6/24
buttressed [1]  14/15

C

captured [1]  12/17
case [13]
cases [5]  4/6 9/12 9/13 12/6
 12/10
caused [1]  4/2
CCR [1]  2/6
Center [1]  1/18
certainly [1]  11/1
certified [1]  10/16
certify [1]  15/22
challenge [3]  4/18 4/21 4/25
change [3]  5/6 5/10 9/8
changed [3]  12/8 12/15 12/16
circumstance [2]  6/15 7/8
circumstances [1]  10/2
cite [3]  9/18 10/24 12/21
cited [1]  9/6
City [10]
CIVIL [1]  1/10
claim [6]  10/11 10/12 10/13
 10/15 11/20 13/21
claims [15]
CLARKE [2]  2/4 3/17
class [15]
clear [2]  9/13 13/3
clearer [1]  4/24
closely [1]  11/2
closer [1]  6/19
COGAN [1]  1/11
combined [1]  13/4
coming [2]  3/22 15/3
common [1]  11/11
company [5]  2/3 3/18 6/24
 6/25 7/2
company's [1]  7/3
compared [1]  9/23
competition [1]  14/20
complaint [15]
completely [2]  9/24 13/16
computer [1]  2/10
computer-aided [1]  2/10
concern [1]  4/2
concerns [1]  13/4
concluded [1]  15/20
conclusions [1]  14/15
conference [6]  1/10 3/20
 3/23 15/7 15/8 15/10
consistent [1]  7/10
contemplated [1]  10/8
context [1]  11/21
CONTINUED [1]  2/1

**C**

contrary **[2]**    9/3  9/5
control **[3]**    8/10  8/12  8/14
controlled **[1]**    5/17
corporate **[1]**    7/4
correct **[2]**    6/11  15/22
counsel **[1]**    14/22
couple **[1]**    8/8
Courthouse **[1]**    1/4
courts **[1]**    12/6
criteria **[1]**    9/14
critical **[1]**    11/22
CSR **[1]**    2/6
CV **[1]**    1/3

**D**

damages **[1]**    12/2
DANELCZYK **[3]**    2/6  15/24  15/25
DATE **[1]**    15/25
dates **[1]**    13/9
December **[1]**    15/24
decided **[3]**    7/17  9/19  14/8
Defendant **[1]**    1/21
defendants **[5]**    1/8  2/2  3/15  3/19  4/10
defendants' **[6]**    3/21  4/2  4/17  5/10  6/5  12/20
defense **[1]**    8/8
departments **[1]**    6/25
designed **[2]**    14/4  14/23
different **[3]**    6/15  6/25  12/12
dinner **[1]**    7/21
directive **[1]**    7/5
dismiss **[4]**    3/21  5/22  13/24  14/1
dismissal **[1]**    9/17
dismissed **[1]**    14/9
dismissing **[1]**    13/25
district **[6]**    1/1  1/1  1/12  9/20  13/1  13/2
DLA **[2]**    2/2  3/17
document **[1]**    5/14
done **[2]**    5/8  11/21
DOWD **[2]**    1/14  3/7
draft **[1]**    7/12
dramatically **[1]**    12/8
due **[1]**    15/6

**E**

early **[1]**    15/6
EASTERN **[1]**    1/1
either **[1]**    12/9
element **[1]**    5/3
Email **[1]**    2/8
employees **[4]**    5/4  6/14  6/18  7/6
encompassed **[2]**    11/23  13/8
entirely **[1]**    12/12
entitled **[1]**    15/23
ERIN **[3]**    1/16  3/7  4/16
ESQ **[5]**    1/16  1/19  1/22  1/23  2/4

essentially **[3]**    7/11  7/14  12/15
et **[2]**    1/7  3/3
evidence **[1]**    4/17
exactly **[1]**    14/22
example **[3]**    10/23  12/10  13/24
executives **[1]**    7/14
experience **[1]**    8/13
Express **[1]**    6/24
extension **[1]**    15/7

**F**

facility **[2]**    7/2  7/4
fact **[3]**    7/8  13/3  14/15
factual **[2]**    12/12  12/15
fall **[2]**    6/3  6/17
falsity **[3]**    4/18  4/21  5/1
Fax **[1]**    2/7
federal **[3]**    12/2  12/3  12/5
file **[3]**    5/24  6/2  6/9
filed **[1]**    11/24
filing **[1]**    6/5
fine **[4]**    7/23  8/19  8/20  15/12
firm **[1]**    11/24
first **[5]**    3/24  4/18  8/9  9/23  11/22
FISTEL **[4]**    1/17  1/19  3/10  3/10
following **[1]**    7/22
footnote **[1]**    8/20
forego **[1]**    5/24
foregoing **[1]**    15/22
form **[1]**    5/4
former **[2]**    5/4  6/13
forming **[1]**    7/25
forth **[1]**    9/15
forthcoming **[1]**    5/21
forward **[2]**    5/7  6/14
fraud **[2]**    4/6  7/11
frequency **[1]**    10/25
Furman **[1]**    9/11

**G**

GELLER **[2]**    1/14  3/7
Georgia **[1]**    1/18
given **[1]**    6/19
gmail.com **[1]**    2/8
GOCHMAN **[2]**    1/23  3/14
grant **[1]**    13/24
granted **[2]**    4/5  4/5
guy **[1]**    7/21
guys **[1]**    7/21

**H**

hard **[1]**    4/23
headquarter's **[1]**    7/4
heads **[1]**    15/3
high **[2]**    8/12  8/14
history **[1]**    10/23
holding **[1]**    8/3
HOLZER **[3]**    1/17  1/17  3/10
Honor **[19]**

HONORABLE **[1]**    1/11
huge **[1]**    6/24

**I**

important **[1]**    6/23
impossible **[1]**    7/14
INC **[3]**    1/7  1/22  3/3
incorporate **[1]**    15/8
incredibly **[1]**    7/10
indiscernible **[11]**
individual **[2]**    9/2  10/20
initial **[1]**    11/25
insider **[1]**    5/5
insubstantial **[2]**    14/17  14/19
interacted **[1]**    7/13
interim **[1]**    6/14
intervene **[1]**    10/19
investments **[1]**    11/5
investors **[2]**    10/14  12/2
Island **[1]**    6/25
issue **[1]**    9/11
issued **[2]**    11/24  12/18
issues **[1]**    15/2

**J**

JANET **[2]**    1/23  3/14
JOHN **[2]**    2/4  3/17
join **[1]**    9/1
JONATHAN **[2]**    1/22  3/13
JR **[1]**    2/4
judge **[7]**    1/12  9/11  9/12  9/19  9/22  12/22  14/14
Judge Furman **[1]**    9/11
Judge Schuman **[1]**    9/12
Judge West **[3]**    9/19  9/22  14/14
judges **[1]**    12/24
judgment **[1]**    8/17
jump **[1]**    11/8
justifies **[1]**    9/16

**K**

keep **[3]**    6/23  8/12  8/14

**L**

laid **[1]**    4/10
law **[1]**    11/24
laws **[3]**    12/3  12/4  12/5
lead **[15]**
leave **[1]**    6/9
left **[1]**    14/2
legal **[1]**    7/15
letter **[6]**    4/2  4/17  5/11  5/20  6/5  12/20
level **[1]**    7/6
Lexington **[1]**    1/21
liability **[3]**    5/17  8/10  8/12
LINDA **[4]**    2/6  4/25  15/24  15/25
LindaDan226 **[1]**    2/8
litigation **[1]**    14/25
LLC **[2]**    1/17  2/3
LLP **[2]**    1/14  2/2

**L**

looked [1]   9/11
loss [1]   5/9
low [1]   7/6
low-level [1]   7/6

**M**

magistrate [2]   12/22 12/24
main [1]   8/11
management [2]   6/19 7/21
matter [2]   15/20 15/23
mechanical [1]   2/10
Melville [1]   1/15
members [2]   10/19 13/7
mentioned [1]   14/14
MICHAEL [2]   1/19 3/10
might [3]   6/14 13/23 14/7
mind [1]   6/23
misread [1]   11/1
missed [1]   4/19
modest [1]   15/7
month [1]   12/10
Mortgage [1]   9/7
most [1]   7/8
motion [8]
motions [1]   14/25
Ms. Boardman [3]   4/22 5/2
 13/19
multiple [1]   8/4

**N**

named [1]   14/10
naming [1]   9/1
NAPCO [4]   1/6 1/21 3/3 11/11
nature [1]   12/9
near [1]   13/21
need [7]   5/15 6/2 10/9 10/15
 13/7 13/14 15/1
Needham [2]   2/3 3/18
needs [2]   12/7 15/3
next [1]   15/6
North [1]   1/18
note [2]   8/19 9/6
noted [1]   14/14
nothing [2]   5/15 6/4
notice [11]
November [1]   12/1
November 7th [1]   12/1

**O**

obviate [1]   4/4
obviously [2]   5/25 15/2
occurred [1]   13/11
odds [2]   8/11 8/13
offered [1]   14/21
offering [5]   5/14 10/14
 11/12 13/10 13/11
offerings [1]   13/22
office [2]   3/14 3/17
Oklahoma [1]   9/20
one's [1]   8/25
one-month [1]   12/10
open [1]   3/1
opinions [1]   8/1

opportunity [1]   5/24
opposite [1]   14/22
otherwise [3]   8/15 11/11
 14/1
own [1]   11/5

**P**

p.m [1]   1/6
Page 43 [1]   11/9
paragraph [1]   11/9
paragraph 149 [1]   11/9
part [2]   13/2 13/20
particular [1]   13/3
PC [1]   1/21
peculiar [1]   14/1
perhaps [3]   5/6 11/14 14/10
period [7]   11/25 12/9 12/11
 12/12 12/16 13/9 13/12
person [2]   5/17 8/12
personal [1]   8/10
personally [3]   7/5 7/13 8/5
Phone [1]   2/7
PIPER [2]   2/2 3/17
plaintiff [25]
plaintiff's [4]   5/18 9/6
 13/25 14/22
plaintiffs [11]
plead [1]   4/11
pleading [2]   7/19 7/20
pled [2]   5/16 5/17
point [3]   8/23 14/5 14/7
portion [1]   4/4
position [1]   7/7
possibility [1]   9/14
possible [1]   4/14
precisely [1]   11/10
prejudice [2]   9/17 14/9
premotion [2]   1/10 3/20
present [2]   1/11 3/1
pretty [2]   4/10 8/23
prevail [1]   14/19
previously [1]   6/12
primary [1]   5/16
problem [2]   10/5 13/20
proceedings [2]   2/10 15/23
process [8]
produced [1]   2/10
proper [2]   8/24 13/16
proposed [1]   3/21
protect [1]   11/6
provided [2]   6/22 7/7
provision [1]   12/7
provisions [1]   11/17
PSLRA [8]
purchase [2]   13/11 13/21
purchased [3]   5/14 11/11
 13/9
purchases [2]   14/17 14/19
purport [1]   10/6
purpose [1]   3/23
pursuant [2]   5/14 11/11

**Q**

questions [1]   8/8

quickly [1]   14/7
quite [1]   6/22

**R**

raise [1]   8/17
raised [2]   4/17 6/4
RANDY [1]   1/3
rather [2]   4/4 4/8
re [1]   14/9
re-notice [1]   14/9
read [1]   11/2
ready [2]   15/1 15/2
real [1]   9/14
really [3]   4/4 4/6 8/9
reason [3]   9/1 12/18 13/1
reasoning [1]   13/1
received [2]   7/5 7/12
recommendation [2]   12/22
 12/25
record [2]   3/4 15/23
recorded [1]   2/10
recover [1]   12/2
references [1]   11/25
regard [1]   6/18
related [1]   9/21
relatively [1]   7/1
relied [1]   13/2
remedied [1]   4/3
reopen [2]   5/18 12/18
reopened [1]   12/7
report [2]   12/21 12/25
reporter [2]   2/6 4/22
represent [3]   3/15 10/7
 14/20
representative [2]   10/12
 11/4
republication [1]   9/16
requirement [2]   5/13 7/13
reserve [1]   8/18
respect [3]   5/3 5/9 5/12
rights [1]   8/18
rise [2]   6/3 6/17
Road [1]   1/15
ROBBINS [2]   1/14 3/7
Rosen [1]   11/24
round [1]   14/24
routine [1]   13/15
routinely [1]   11/21
royalty [1]   9/21
RPR [1]   2/6
RUDMAN [2]   1/14 3/7
Rule [1]   10/23
Rule 23 [1]   10/23
rules [1]   15/9

**S**

sales [1]   5/5
Sandridge [3]   9/18 9/21
 14/14
satisfied [1]   5/12
satisfy [1]   7/15
saw [1]   8/22
schedule [2]   3/22 15/12
scheduled [1]   15/6

**S**

**Schuman [1]**   9/12
**scienter [1]**   5/4
**screen [1]**   3/14
**second [4]**   5/24  6/2  6/6  6/10
**secondary [2]**   13/10  13/11
**seconded [1]**   4/3
**Section [2]**   13/24  14/2
**Section 10 [1]**   13/24
**Section 11 [1]**   14/2
**securities [16]**
**SECURITY [3]**   1/6  1/21  3/3
**seek [1]**   10/2
**seeking [3]**   11/4  11/5  11/10
**seeks [1]**   12/1
**senior [2]**   1/12  7/21
**Service [1]**   1/15
**set [3]**   3/22  9/14  15/12
**several [1]**   9/11
**simply [3]**   5/18  12/14  12/23
**SIMPSON [2]**   1/21  3/13
**situated [1]**   9/15
**situation [2]**   12/14  14/1
**situations [1]**   12/8
**slowly [1]**   4/24
**small [2]**   7/1  7/2
**solely [1]**   13/13
**Sounds [1]**   14/24
**South [1]**   1/15
**speaking [1]**   4/8
**speaks [1]**   12/3
**specific [1]**   10/23
**standard [2]**   7/15  9/12
**standing [6]**   11/19  12/5  13/4
 13/13  13/21  14/11
**starting [2]**   3/5  15/13
**state [1]**   3/4
**statement [1]**   11/2
**STATES [4]**   1/1  1/4  1/12  7/2
**statutory [1]**   5/13
**stenography [1]**   2/10
**stick [1]**   6/17
**stipulate [1]**   10/1
**stock [1]**   11/11
**story [1]**   7/9
**streamline [1]**   3/24
**subclass [1]**   14/21
**subject [1]**   11/16
**substantial [1]**   6/22
**subverted [1]**   9/23
**suggest [1]**   15/9
**suggesting [1]**   7/24
**suggests [1]**   9/7
**Suite [2]**   1/15  1/18
**summary [1]**   8/17
**suppose [1]**   14/8
**sustain [2]**   8/11  8/15

**T**

**TECHNOLOGIES [3]**   1/6  1/22
 3/3
**THACHER [2]**   1/21  3/13
**thereby [1]**   13/25
**therefore [2]**   11/16  13/23

**Thornburg [1]**   9/7
**three [3]**   5/4  7/10  12/12
**three-year [1]**   12/12
**today [1]**   15/13
**traceable [1]**   11/12
**trusts [1]**   9/21
**two [4]**   5/7  8/10  15/9  15/13

**U**

**underwriter [1]**   3/18
**underwriters [1]**   3/15
**UNITED [4]**   1/1  1/4  1/12  7/2
**unlikely [1]**   14/19

**V**

**versus [2]**   1/5  3/3
**via [2]**   1/11  3/1
**videoconference [2]**   1/11  3/1
**view [1]**   5/25
**violations [1]**   5/16

**W**

**warehouse [1]**   7/1
**warrants [1]**   6/5
**Warren [8]**
**Warren's [2]**   10/11  11/3
**weak [1]**   8/23
**week [1]**   15/6
**weekend [1]**   15/18
**weeks [2]**   15/10  15/13
**West [3]**   9/19  9/22  14/14
**Western [1]**   9/19
**WHITNEY [1]**   1/16
**William [2]**   2/3  3/18
**willing [1]**   5/23
**witness [1]**   5/7
**witnesses [6]**   7/3  7/4  7/6
 7/11  7/13  8/4
**WL [1]**   9/19

**Y**

**year [1]**   12/12
**years [1]**   13/5
**YORK [8]**
**YOUNGWOOD [2]**   1/22  3/13

**Z**

**ZORNBERG [2]**   1/3  3/2