UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

RANDY ZORNBERG, Individually and on
Behalf of All Others Similarly Situated,

               Plaintiff,

       -against-                         Case No. 1:23-cv-06465-BMC

NAPCO SECURITY TECHNOLOGIES, INC.,
RICHARD L. SOLOWAY, KEVIN S.
BUCHEL, PAUL STEPHEN BEEBER,
RICK LAZIO, DONNA SOLOWAY,
ROBERT UNGAR, ANDREW J. WILDER,
NEEDHAM & COMPANY, LLC, and
WILLIAM BLAIR & COMPANY, L.L.C.,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

### ANSWER OF DEFENDANTS NEEDHAM & COMPANY, LLC AND WILLIAM BLAIR & COMPANY, L.L.C.

Defendants Needham & Company, LLC and William Blair & Company, L.L.C. (the "Underwriter Defendants"), for their answer to the amended complaint dated February 16, 2024 (the "Complaint") [Doc. No. 40], filed by plaintiff Donald W. Hutchings, individually and as trustee of various trusts, and additional plaintiff City of Warren Police and Fire Retirement System, state as follows:

### INTRODUCTION AND GENERAL DENIALS

The Complaint purports to assert claims against the Underwriter Defendants under the Securities Act of 1933 (the "Securities Act") with respect to a public offering of common stock of NAPCO Security Technologies, Inc. ("NAPCO") pursuant to a registration statement on Form S-3 filed with the U.S. Securities and Exchange Commission on September 12, 2022 and a prospectus supplement filed on February 10, 2023 pursuant to Rule 424(b)(7).  The Complaint asserts claims

against other defendants under the Securities Act and under other federal securities laws.  The Complaint purports to segregate its allegations between those related to claims under the Securities Act and those related to claims under the Securities Exchange Act of 1934 (the "Exchange Act"). No claims are asserted against the Underwriter Defendants under the Exchange Act.

In responding to the Complaint in this answer, the Underwriter Defendants (i) will respond only as to allegations directed to each of them individually, and neither of them should be deemed to be responding to allegations that are directed solely to a different defendant; (ii) answer and aver that, as members of an underwriting syndicate for the IPO, they performed reasonable and customary due diligence and, as a result of their due diligence, had reasonable grounds to believe that the statements in the offering materials were true and complete or had no reasonable grounds to believe that the statements in the offering materials were untrue or not complete, as applicable; (iii) incorporate into each response a denial of all allegations in the Complaint (including those outside of the knowledge and information of the Underwriter Defendants) to the extent those allegations assert or suggest that the offering materials were false or misleading in any respect, or to the extent any factual allegations are inconsistent with, or contrary to, the relevant offering materials, to which the Underwriter Defendants respectfully refer the Court for the complete and accurate contents thereof as of the time of the challenged offering; and (iv) deny any averments in the headings and subheadings of the Complaint, which are repeated in this answer solely for the convenience of the Court.

The Underwriter Defendants deny any allegation in the unnumbered introductory paragraph of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning the plaintiffs or their investigation.

2

## I.   INTRODUCTION

**1.     This is a federal securities class action alleging two distinct sets of claims.**

1.   The Underwriter Defendants deny the allegations contained in paragraph 1, except admit that plaintiffs purport to describe the claims asserted in the Complaint.

**2.     The first set of claims alleged are fraud claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, on behalf of those who purchased or otherwise acquired NAPCO common stock between November 7, 2022 and August 18, 2023, inclusive (the "Class Period") and were damaged thereby.**

2.   The Underwriter Defendants deny the allegations contained in paragraph 2, except admit that plaintiffs purport to describe certain of the claims asserted in the Complaint and the putative class on behalf of which plaintiffs purportedly assert them.

**3.     The second set of claims alleged are non-fraud claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), on behalf of those who purchased or otherwise acquired NAPCO common stock pursuant or traceable to the registration statement and prospectuses issued in connection with the offering of NAPCO common stock on or about February 13, 2023 (the "Offering") and were damaged thereby.**

3.   The allegations contained in paragraph 3 state legal conclusions as to which no responsive pleading is required.  To the extent any response is deemed to be required, the Underwriter Defendants deny the allegations contained in paragraph 3, except admit plaintiffs purport to describe the Securities Act claims asserted in the Complaint.

**4.     Headquartered in Amityville, New York, defendant NAPCO designs and manufactures security solutions, including access control devices, intrusion and fire alarm systems, and video surveillance products.  Its fiscal year ends on June 30.**

4.   The Underwriter Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 4, except (i) admit that at

3

the time of the offering NAPCO had its principal place of business in Amityville, New York and reported its results in accordance with a fiscal year ending on June 30, and (ii) refer to the offering materials for a complete description of NAPCO's business and operations as of the time of the offering.

> **5.      On August 18, 2023, NAPCO announced that it would need to restate its interim financial statements for the first three quarters of fiscal 2023, and that its previously-issued financial results for those quarters "should no longer be relied upon."  The Company explained that its inventories had been overstated and its cost of goods sold had been understated, "resulting in overstated gross profit, operating income and net income," and gave preliminary estimates of its overstatement of net income.  NAPCO also admitted that a previously-undisclosed material weakness existed in its internal controls over financial reporting.**

5.      According to the Complaint, the allegations contained in paragraph 5 relate solely to the Exchange Act claims and no responsive pleading therefore is required from the Underwriter Defendants.  Compl. ¶¶ 13, 149-51, 183, 195, 203.  To the extent any response is deemed to be required, the Underwriter Defendants (i) deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 5 and (ii) refer for its contents to the Form 8-K filed by NAPCO with the SEC on August 18, 2023.

> **6.      Shortly thereafter, on September 1, 2023, the Company filed amended quarterly reports, which confirmed the severity of its financial misstatements.  The restatement showed that during the Class Period, NAPCO's net income had been overstated by as much as *114.97%*, its income per share had been overstated by as much as *112.5%*, its operating income had been overstated by as much as *118.02%*, and its gross profit and gross margins had been overstated by as much as *35.59%*.**

6.      According to the Complaint, the allegations contained in paragraph 6 relate solely to the Exchange Act claims and no responsive pleading therefore is required from the Underwriter Defendants.  Compl. ¶¶ 13, 149-51, 183, 195, 203.  To the extent any response is deemed to be required, the Underwriter Defendants (i) deny knowledge or information sufficient to form a belief

4

as to the truth or falsity of the allegations contained in paragraph 6 and (ii) refer for their contents to the Forms 10-Q/A filed by NAPCO with the SEC on September 1, 2023 for the quarterly periods ending September 30, 2022, December 31, 2022, and March 31, 2023.

**7.      When NAPCO revealed that it would need to restate its financial results and provided preliminary estimates for restated net income at the end of the Class Period, the price of its common stock fell more than *45%*.**

7.      According to the Complaint, the allegations contained in paragraph 7 relate solely to the Exchange Act claims and no responsive pleading therefore is required from the Underwriter Defendants.  Compl. ¶¶ 13, 149-51, 183, 195, 203.  To the extent any response is deemed to be required, the Underwriter Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 7.

**8.      Although NAPCO attempted to characterize the restatement as stemming from innocent accounting "errors," in fact, it was the product of a fraudulent scheme to inflate NAPCO's income-related metrics, orchestrated by the Exchange Act Defendants.  [FN. 2: The "Exchange Act Defendants" are NAPCO, its founder and Chief Executive Officer ("CEO") Richard L. Soloway ("Soloway"), and its Chief Financial Officer ("CFO") Kevin S. Buchel ("Buchel").].**

8.      According to the Complaint, the allegations contained in paragraph 8 relate solely to the Exchange Act claims and no responsive pleading therefore is required from the Underwriter Defendants.  Compl. ¶¶ 13, 149-51, 183, 195, 203.  To the extent any response is deemed to be required, the Underwriter Defendants refer to and incorporate by reference their responses to paragraphs 39-148 as if stated herein and therefore deny the allegations contained in paragraph 8.

**9.      Prior to and during the Class Period, NAPCO employees were directed to halt shipments of sold inventory before the end of the quarter, and to instead ship the inventory to customers after the beginning of the next quarter.  In these instances, the sold inventory was already in NAPCO's warehouse facilities, ready for shipment to customers.  The directive to withhold shipments of sold inventory was issued by defendant Buchel, and was given to the Vice President of**

5

**Sales and the Vice President of Operations, and in turn, to sales directors.**

9.     According to the Complaint, the allegations contained in paragraph 9 relate solely to the Exchange Act claims and no responsive pleading therefore is required from the Underwriter Defendants.  Compl. ¶¶ 13, 149-51, 183, 195, 203.  To the extent any response is deemed to be required, the Underwriter Defendants refer to and incorporate by reference their responses to paragraphs 39-148 as if stated herein and therefore deny the allegations contained in paragraph 9.

**10.     By withholding the shipment of sold product, the Exchange Act Defendants were able to improperly count sold product as inventory at the end of the quarter.  This understated the cost of the equipment inventory NAPCO had sold during the quarter—*i.e.*, the cost of goods sold.  Because cost of goods sold has a direct bearing on a company's income-related metrics, the Exchange Act Defendants' financial manipulation allowed them to inflate NAPCO's reported net income and related results during the Class Period.**

10.     According to the Complaint, the allegations contained in paragraph 10 relate solely to the Exchange Act claims and no responsive pleading therefore is required from the Underwriter Defendants.  Compl. ¶¶ 13, 149-51, 183, 195, 203.  To the extent any response is deemed to be required, the Underwriter Defendants refer to and incorporate by reference their responses to paragraphs 39-148 as if stated herein and therefore deny the allegations contained in paragraph 10.

**11.     As the Exchange Act Defendants intended, the fraud enabled NAPCO to meet—and exceed—market expectations.  For example, when discussing the Company's financial results for the first quarter of fiscal 2023, defendant Soloway highlighted that NAPCO had "easily exceed[ed] published street consensus estimates" by reporting earnings per share ("EPS") of $0.17.  In truth, NAPCO would not have met—let alone exceeded—the analysts' consensus estimate of EPS of $0.13—because its actual EPS for the quarter was just $0.08.**

11.     According to the Complaint, the allegations contained in paragraph 11 relate solely to the Exchange Act claims and no responsive pleading therefore is required from the Underwriter Defendants.  Compl. ¶¶ 13, 149-51, 183, 195, 203.  To the extent any response is deemed to be

6

required, the Underwriter Defendants refer to and incorporate by reference their responses to paragraphs 39-148 as if stated herein and therefore deny the allegations contained in paragraph 11.

**12.    During the time that NAPCO's income-related metrics were grossly inflated, defendants Soloway and Buchel each cashed out nearly half of their personally-held NAPCO stock over a three-month time period, with Soloway selling *48.5%* of his shares for proceeds of approximately *$104 million*, and Buchel selling *45.5%* of his shares for proceeds of approximately *$4.5 million.***

12.    According to the Complaint, the allegations contained in paragraph 12 relate solely to the Exchange Act claims and no responsive pleading therefore is required from the Underwriter Defendants.  Compl. ¶¶ 13, 149-51, 183, 195, 203.  To the extent any response is deemed to be required, the Underwriter Defendants refer to and incorporate by reference their responses to paragraphs 39-148 as if stated herein and therefore deny the allegations contained in paragraph 12.

**13.    Separately, with respect to the Securities Act claims, Plaintiff City of Warren *Police* and Fire Retirement System expressly disclaims the allegations set forth in ¶2 and ¶¶4-12 above, and in §VI below.  For these claims, Plaintiff pleads in the alternative that Defendants (defined below) violated the Securities Act by incorporating by reference NAPCO's materially false and misleading financial statements for the first two quarters of fiscal 2023 in the registration statement and prospectuses for the Offering.**

13.    The Underwriter Defendants deny the allegations contained in paragraph 13, except admit plaintiffs purport to describe the Securities Act claims asserted in the Complaint.

## II.    JURISDICTION AND VENUE

**14.    The claims asserted herein arise under:  (i) Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5); and (ii) Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§77k, 77l(a)(2) and 77o).**

14.    The allegations contained in paragraph 14 state legal conclusions as to which no responsive pleading is required.  To the extent any response is deemed to be required, the Underwriter Defendants deny the allegations contained in paragraph 14.

7

**15.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, Section 27 of the Exchange Act (15 U.S.C. §78aa), and Section 22 of the Securities Act (15 U.S.C. §77v).**

15.    The allegations contained in paragraph 15 state legal conclusions as to which no responsive pleading is required.  To the extent any response is deemed to be required, the Underwriter Defendants deny the allegations contained in paragraph 15, except admit that plaintiffs purport to describe the alleged basis for the Court's jurisdiction.

**16.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b), Section 27 of the Exchange Act, and Section 22 of the Securities Act.  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.  In addition, the Company's principal executive offices are located in this District.**

16.    The allegations contained in paragraph 16 state legal conclusions as to which no responsive pleading is required.  To the extent any response is deemed to be required, the Underwriter Defendants deny the allegations contained in paragraph 16, except admit that at the time of the offering NAPCO's principal place of business was located within the Eastern District of New York.

**17.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mail, interstate telephone communications, and the facilities of the NASDAQ Global Select Market ("NASDAQ"), a national securities exchange.**

17.    The allegations contained in paragraph 17 state legal conclusions as to which no responsive pleading is required.  To the extent any response is deemed to be required, the Underwriter Defendants deny the allegations contained in paragraph 17, except admit that NAPCO common stock is listed on the NASDAQ Global Select Market, a national securities exchange.

8

### III.     PARTIES

**18.     As set forth in his certification previously filed with the Court and incorporated herein by reference, Lead Plaintiff purchased NAPCO common stock during the Class Period, and was damaged thereby.  *See* ECF 22-2.**

18.     The Underwriter Defendants deny the allegations contained in paragraph 18, deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that the lead plaintiff purchased NAPCO common stock, and refer for its contents to the certification alleged in that paragraph.

**19.     Plaintiff City of Warren Police and Fire Retirement System, as set forth in the attached certification, purchased NAPCO common stock during the Class Period, and pursuant and traceable to the Offering, and was damaged thereby.**

19.     The Underwriter Defendants deny the allegations contained in paragraph 19, deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that the additional plaintiff purchased NAPCO common stock, and refer for its contents to the certification alleged in that paragraph.

**20.     Defendant NAPCO provides security devices and systems.  The Company's principal executive offices are located at 333 Bayview Avenue, Amityville, New York 11701.  NAPCO's common stock is listed and trades on the NASDAQ, an efficient market, under the symbol "NSSC."**

20.     The Underwriter Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20, except (i) refer to the offering materials for a complete description of the Company and its business at the time of the offering, and (ii) admit that at the time of the offering NAPCO's principal place of business was 333 Bayview Avenue in Amityville, New York and its common stock traded on NASDAQ under the symbol "NSSC."

9

**21.     Defendant Soloway—NAPCO's founder—is, and was at all relevant times, the Company's CEO, President, Secretary, and Chairman of the Board of Directors.  Defendant Soloway was also a selling stockholder in the Offering and signed the Offering Materials (defined below).**

21.     The Underwriter Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 21, except (i) admit that defendant Richard L. Soloway was a selling stockholder in the offering and (ii) admit that at the time of the offering Mr. Soloway was NAPCO's chief executive officer, president, and secretary and chairman of NAPCO's board of directors.

**22.     Defendant Buchel is, and was at all relevant times, NAPCO's CFO, Executive Vice President of Operations, Treasurer, and a Director.  Defendant Buchel was also a selling stockholder in the Offering and signed the Offering Materials.**

22.     The Underwriter Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 22, except (i) admit that defendant Kevin S. Buchel was a selling stockholder in the offering and (ii) admit that at the time of the offering Mr. Buchel was executive vice president of operations, chief financial officer, and treasurer of NAPCO.

**23.     Defendants Soloway and Buchel are collectively referred to as the "Officer Defendants" and, together with NAPCO, as the "Exchange Act Defendants."**

23.     Because paragraph 23 contains no factual allegations, no responsive pleading is required to it.

**24.     Defendants Paul Stephen Beeber, Rick Lazio, Donna Soloway, Robert Ungar, and Andrew J. Wilder each served as a director of the Company at the time of the Offering and signed the Offering Materials.  They are collectively referred to as the "Director Defendants" (and, together with the Officer Defendants (*i.e.*, Soloway and Buchel), as the "Individual Defendants").**

10

24.    Because the second sentence of paragraph 24 contains no factual allegations, no responsive pleading is required to it.  The remaining allegations contained in paragraph 24 are not asserted against the Underwriter Defendants and therefore the Underwriter Defendants are not required to answer such allegations.  To the extent any response is deemed to be required, the Underwriter Defendants deny that the allegations in paragraph 24 present an accurate, fair, or complete description of the offering or the Individual Defendants' role in the offering, except refer to the offering materials for their contents as of the time of the offering.

**25.    Defendants Needham & Company, LLC ("Needham") and William Blair & Company, L.L.C. ("William Blair") served as joint bookrunners of the Offering and representatives of the underwriters.  They each received commissions and other professional fees in connection with the Offering.  Needham and William Blair are collectively referred to as the "Underwriter Defendants."**

25.    The Underwriter Defendants deny that the allegations contained in paragraph 25 present an accurate, fair, or complete description of the offering or the role of the Underwriter Defendants in the offering, except (i) refer for its contents to the underwriting agreement entered into between NAPCO, the selling stockholders, and the underwriters for the offering, and (ii) admit that each of the Underwriter Defendants served as an underwriter in connection with the offering.

**26.    The Underwriter Defendants received and offered the following number of shares for sale:**

| Underwriter | Number of Shares |
|---|---|
| Needham & Company, LLC | 1,050,000 |
| William Blair & Company, L.L.C. | 1,050,000 |
| Total | 2,100,000 |

26.    The Underwriter Defendants admit upon information and belief the allegations in paragraph 26.

**27.    The Underwriter Defendants also received an option— which they exercised in full—to purchase on a *pro rata* basis up to**

**300,000 additional shares at the Offering price, less the underwriting discounts and commissions.**

27.     The Underwriter Defendants admit upon information and belief the allegations in paragraph 27.

**28.     The Underwriter Defendants participated in drafting and disseminating the Offering Materials, soliciting investors for the Offering, and marketing and pricing the Offering.  The Underwriter Defendants failed to conduct adequate due diligence in connection with the Offering, and were negligent in failing to ensure that the Offering Materials were prepared accurately and in accordance with the rules and regulations governing their preparation.   The Underwriter Defendants' negligence was a substantial factor leading to the harm complained of herein.**

28.     The Underwriter Defendants deny the allegations in paragraph 28, except (i) admit that each of the Underwriter Defendants served as an underwriter in connection with the offering, and (ii) admit and aver that the Underwriter Defendants performed reasonable and customary due diligence and, as a result of their due diligence, had reasonable grounds to believe that the statements in the offering materials for the offering were true and complete or had no reasonable grounds to believe that the statements in the offering materials were untrue or not complete, as applicable.

**29.     NAPCO,   the   Individual   Defendants,   and   the Underwriter Defendants are collectively referred to as "Defendants."**

29.     Because paragraph 29 contains no factual allegations, no responsive pleading is required to it.

## IV.     CLASS ACTION ALLEGATIONS

**30.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class consisting of all those who purchased or otherwise acquired NAPCO common stock:  (i) during the Class Period, seeking to pursue remedies under the Exchange Act; and (ii) pursuant or traceable to the Offering Materials, including purchasers who were successfully solicited by any defendant,   seeking   to   pursue   remedies   under   the   Securities Act**

12

**(collectively, the "Class") and were damaged thereby.  Excluded from the Class are:  (i) Defendants and members of their immediate families; (ii) the officers and directors of the Company, at all relevant times, and members of their immediate families; (iii) the legal representatives, heirs, successors, or assigns of any of the foregoing; and (iv) any entity in which any Defendant has or had a controlling interest.**

30.     No response is required to the allegations contained in paragraph 30, but to the extent any response is deemed to be required, the Underwriter Defendants (i) deny that plaintiffs are entitled to assert any claim for relief against the Underwriter Defendants on behalf of themselves or the putative class as alleged in that paragraph, and (ii) admit that plaintiffs purport to assert the claims alleged on behalf of the class alleged therein and reserve all of the Underwriter Defendants' defenses, rights, and arguments with respect thereto.

**31.     The members of the Class are so numerous that joinder of all members is impracticable.  NAPCO common stock is actively traded on the NASDAQ and millions of shares were sold in the Offering.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, there are likely hundreds, if not thousands, of members in the proposed Class.  Record owners and other Class members may be identified from records maintained by NAPCO or its transfer agent and may be notified of the pendency of this action using a form of notice customarily used in securities class actions.**

31.     No response is required to the allegations contained in paragraph 31, but to the extent any response is deemed to be required, the Underwriter Defendants (i) deny that plaintiffs are entitled to assert any claim for relief against the Underwriter Defendants on behalf of themselves or the putative class as alleged in that paragraph, and (ii) deny plaintiffs' allegations concerning their methods of identification of alleged members of the putative class and notification of the pendency of this action and reserve all of the Underwriter Defendants' defenses, rights, and arguments with respect thereto.

**32.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs have retained competent counsel experienced in class action litigation under**

13

**the federal securities laws to further ensure such protection and intend
to prosecute this action vigorously.**

32.     The Underwriter Defendants deny knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations contained in paragraph 32, except (i) deny that

plaintiffs are entitled to assert any claim for relief against the Underwriter Defendants on behalf

of themselves or the putative class as alleged in that paragraph, and (ii) reserve all of the

Underwriter Defendants' defenses, rights, and arguments with respect thereto.

**33.     Plaintiffs' claims are typical of the claims of the other
members of the Class because Plaintiffs and all the Class members'
damages arise from and were caused by the same false and misleading
representations and omissions made by or chargeable to Defendants.
Plaintiffs do not have any interests antagonistic to, or in conflict with,
those of the Class.**

33.     The Underwriter Defendants deny the allegations contained in paragraph 33 and

deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

in the last sentence of that paragraph.

**34.     Common questions of law and fact exist as to all Class
members and predominate over any questions solely affecting
individual Class members, including:**

**(a)     whether Defendants violated the Exchange Act and/or the
Securities Act;**

**(b)     whether Defendants misrepresented and/or omitted
material facts; and**

**(c)     whether and to what extent Class members have
sustained damages, as well as the appropriate measure of
damages.**

34.     No response is required to the allegations contained in paragraph 34, but to the

extent any response is deemed to be required, the Underwriter Defendants (i) deny that plaintiffs

are entitled to assert any claim for relief against the Underwriter Defendants on behalf of

themselves or the putative class as alleged in that paragraph, and (ii) reserve all of the Underwriter

Defendants' defenses, rights, and arguments with respect thereto.

**35.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it exceedingly difficult, if not impossible, for Class members to individually seek redress for the wrongful conduct alleged.  Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.**

35.    No response is required to the allegations contained in paragraph 35, but to the

extent any response is deemed to be required, the Underwriter Defendants (i) deny that plaintiffs

are entitled to assert any claim for relief against the Underwriter Defendants on behalf of

themselves or the putative class as alleged in that paragraph, and (ii) reserve all of the Underwriter

Defendants' defenses, rights, and arguments with respect thereto.

## V.    THE COMPANY AND ITS BUSINESS

**36.    Defendant NAPCO designs and manufactures electronic security devices, provides wireless communication services for intrusion and fire alarm systems, and offers school safety solutions. The security systems it provides include access control, door-locking, intrusion and fire alarm, and video surveillance.  The Company sells its products primarily to independent distributors, dealers, and installers of security equipment.**

36.    The Underwriter Defendants deny that the allegations contained in paragraph 36

present an accurate, fair, or complete description of NAPCO's business, operations, and/or public

disclosures, except refer to the offering materials for a complete description of such matters as of

the time of the offering.

**37.    Approximately two-thirds of NAPCO's revenues are generated by equipment sales.  The remainder are recurring revenues from monthly subscription fees it charges to provide wireless services for communicating security breaches and fire alarms.**

15

37.     The Underwriter Defendants deny that the allegations contained in paragraph 37 present an accurate, fair, or complete description of NAPCO's business, operations, and/or public disclosures, except refer to the offering materials for a complete description of such matters as of the time of the offering.

**38.     The Company is headquartered in Amityville, New York, and manufactures its products in the Dominican Republic. NAPCO's fiscal year begins on July 1 and ends on June 30. Accordingly, its first quarter ("1Q") ends on September 30, its second quarter ("2Q") ends on December 31, its third quarter ("3Q") ends on March 31, and its fourth quarter ("4Q") ends on June 30.**

38.     The Underwriter Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38, except (i) refer to the offering materials for a complete description of the Company and its business at the time of the offering, and (ii) admit that at the time of the offering NAPCO's principal place of business was in Amityville, New York and the Company reported results in a fiscal year ending June 30.

## VI.     ALLEGATIONS UNDER THE EXCHANGE ACT

39-148.     According to the Complaint, the allegations contained in paragraphs 39 through 148 relate solely to the Exchange Act claims and are not alleged against the Underwriter Defendants. Compl. ¶¶ 13, 149-51, 183, 195, 203.  No responsive pleading therefore is required to those paragraphs from the Underwriter Defendants.  To the extent any response is deemed to be required, the Underwriter Defendants generally deny any allegation in paragraphs 39 through 148 and refer to the Underwriter Defendants' responses to paragraphs in the Complaint that are specific to the Securities Act claims.

## VII.     ALLEGATIONS UNDER THE SECURITIES ACT

**149.     In this section of the Complaint, Plaintiff City of Warren Police and Fire Retirement System asserts strict liability and negligence claims against Defendants pursuant to the Securities Act, on behalf of**

**those who purchased or otherwise acquired NAPCO common stock pursuant or traceable to the Offering.**

149. The Underwriter Defendants deny the allegations contained in paragraph 149, except admit that plaintiffs purport to describe the claims asserted in Section VII of the Complaint and the putative class on behalf of which the additional plaintiff purportedly asserts them.

**150.  The Securities Act allegations herein are based in strict liability and negligence, and Plaintiff expressly disclaims any allegation or inference of fraud or scienter for these allegations.  Accordingly, in this section of the complaint, Plaintiff expressly disclaims all allegations above pertaining to the Exchange Act claims, including the allegations in ¶2 and ¶¶4-12, and in §VI. For avoidance of doubt, the only allegations above that Plaintiff incorporates by reference in this section of the complaint are those pertaining to the Securities Act claims set forth in:  the preamble paragraph; ¶1, ¶¶3-4, and ¶13 (Introduction); ¶¶14-17 (Jurisdiction and Venue); ¶¶10-22 and ¶¶24-29 (Parties); ¶¶30-35 (Class Action Allegations); and ¶¶36-38 (The Company and Its Business).**

150. The Underwriter Defendants deny the allegations contained in paragraph 150, except admit that plaintiffs purport to describe the claims asserted in Section VII of the Complaint.

**151.  On September 12, 2022, NAPCO filed a registration statement on Form S-3 (the "Registration Statement").  The Registration Statement provided that defendants Soloway and Buchel––identified as the "selling stockholders"—may, over time, offer and sell up to 3,830,449 shares of their NAPCO common stock in one or more offerings.**

151. The Underwriter Defendants deny the allegations contained in paragraph 151, except (i) admit upon information and belief that on September 12, 2022, NAPCO filed with the SEC its registration statement on Form S-3, and (ii) refer to that Form S-3, which is referred to and partially quoted from in paragraph 151, for the contents thereof.

**152.  Under the "automatic shelf" registration process, the Registration Statement became effective upon its filing, and allowed the selling stockholders to register securities for sale while leaving them on the "shelf" until they decided to conduct an offering—provided that the Registration Statement met all of the requirements of applicable securities rules and regulations.**

152.    The allegations contained in paragraph 152 state legal conclusions as to which no responsive pleading is required.  To the extent a response is deemed to be required, the Underwriter Defendants deny the allegations contained in paragraph 152.

**153.    On February 8, 2023, NAPCO filed a preliminary prospectus supplement to the Registration Statement (Registration No. 333-267376) pursuant to Rule 424(b)(7) (the "Preliminary Prospectus"), in which the Company announced an offering of its common stock by the selling stockholders, pursuant to the Registration Statement.  The Preliminary Prospectus identified Needham and William Blair as the underwriters for the offering.**

153.    The Underwriter Defendants deny the allegations contained in paragraph 153, except (i) admit upon information and belief that NAPCO filed a prospectus supplement to the registration statement with the SEC on February 8, 2023, and (ii) refer to that prospectus supplement for the contents thereof.

**154.    On February 10, 2023, NAPCO filed a subsequent prospectus supplement to the Registration Statement pursuant to Rule 424(b)(7) (the "Prospectus Supplement," together with the Preliminary Prospectus, the "Prospectus," and together with the Registration Statement, the "Offering Materials").  The Prospectus Supplement stated that the selling stockholders, defendants Soloway and Buchel, were offering 2.1 million shares of their NAPCO common stock to the public at $31.50 per share, which would collectively yield them $64,827,000 in proceeds, before expenses.  It further stated that Soloway and Buchel were granting the Underwriter Defendants, Needham and William Blair, the option to purchase up to an additional 300,000 shares of their common stock at the offering price, less underwriting discounts and commissions, within 30 days.**

154.    The Underwriter Defendants deny the allegations contained in paragraph 154, except (i) admit upon information and belief that NAPCO filed a prospectus supplement to the registration statement with the SEC on February 10, 2023, and (ii) refer to that prospectus supplement for the contents thereof.

**155.    The Offering closed on February 13, 2023, with defendants Soloway and Buchel, respectively, selling 2,012,500 and 87,500 shares of their NAPCO common stock.  On February 15, 2023,**

18

**the Underwriter Defendants exercised in full their over-allotment option to purchase 300,000 additional shares from the selling stockholders, bringing the total number of shares sold in the Offering by Soloway and Buchel to 2.4 million—and increasing their total proceeds (before expenses) to $74,088,000. NAPCO did not receive any proceeds from the Offering, and incurred expenses of $496,000 in connection with the Offering.**

155. The Underwriter Defendants deny the allegations contained in paragraph 155, except admit that on May 8, 2023 NAPCO filed a Form 10-Q with the SEC and (ii) refer to that Form 10-Q for a description of the offering.

**156.    The Offering Materials incorporated by reference the following filings NAPCO made with the SEC, each of which contained materially inaccurate statements of fact:  (i) the quarterly report on Form 10-Q for the first quarter of fiscal 2023, ended September 30, 2022, filed on November 7, 2022 (the "1Q23 Form 10-Q"); and (ii) the quarterly report on Form 10-Q for the second quarter of fiscal 2023, ended December 31, 2022, filed on February 6, 2023 (the "2Q23 Form 10-Q").**

156. The Underwriter Defendants deny the allegations contained in paragraph 156, except refer to the Form S-3 filed by NAPCO with the SEC on September 12, 2022 and the other offering materials for the contents thereof.

**157.    The Offering Materials were negligently prepared and, as a result, contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation.**

157. The Underwriter Defendants deny the allegations contained in paragraph 157.

**158.    Specifically, as set forth below, NAPCO's financial results incorporated by reference in the Offering Materials violated GAAP, and were materially misstated with respect to numerous metrics.  The Offering Materials also failed to disclose an existing, additional material weakness in the Company's internal controls over financial reporting.**

158. The Underwriter Defendants deny the allegations contained in paragraph 158.

**159.    On August 18, 2023, NAPCO admitted that its previously-issued interim financial statements for, inter alia, the quarters ended September 30, 2022 ("1Q23") and December 31, 2022 ("2Q23") would need to be restated and "should no longer be relied upon."  On September 1, 2023, NAPCO filed with the SEC amended quarterly reports on Form 10-Q/A that restated, *inter alia*, NAPCO's interim financial statements for 1Q23 and 2Q23 (the "Restatement").**

159.    The Underwriter Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 159, except (i) admit upon information and belief that NAPCO filed with the SEC a current report on Form 8-K on August 18, 2023, (ii) admit upon information and belief that NAPCO filed with the SEC amended quarterly reports on Form 10-Q/A on September 1, 2023, and (iii) refer to the Form 8-K and Forms 10-Q/A for the contents thereof.

**160.    In announcing the need for the Restatement, NAPCO acknowledged that the inaccurate financial metrics the Company had reported in the 1Q23 Form 10-Q and the 2Q23 Form 10-Q stemmed from the overstatement of inventory and understatement of cost of goods sold, "resulting in overstated gross profit, operating income and net income" for those quarters.**

160.    The Underwriter Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 160, except (i) admit upon information and belief that NAPCO filed a current report on Form 8-K with the SEC on August 18, 2023, and (ii) refer to the Form 8-K for the contents thereof.

**161.    Generally Accepted Accounting Principles ("GAAP") generally encompasses those conventions, rules and procedures necessary to define accepted accounting practices at a particular time. SEC Regulation S-X states that financial statements filed with the SEC that are not prepared in compliance with GAAP are "presumed to be misleading or inaccurate."  17 C.F.R. §210.4-01(a)(1).  Regulation S-X also requires that interim financial statements filed with the SEC comply with GAAP. 17 C.F.R. §210.10-01(a).**

20

161.    The allegations contained in paragraph 161 state legal conclusions as to which no responsive pleading is required.  To the extent a response is deemed to be required, the Underwriter Defendants deny the allegations contained in paragraph 161.

**162.    NAPCO has now admitted that the interim financial statements it issued to investors and filed with the SEC for, *inter alia*, the first two quarters of fiscal 2023 were materially inaccurate, presented in violation of GAAP, and "should no longer be relied upon." Accordingly, each of the interim financial statements for those quarters is presumed to be misleading and inaccurate pursuant to the SEC's Regulation S-X.**

162.    The Underwriter Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 162, except refer to the Form 8-K filed by NAPCO with the SEC on August 18, 2023 for its contents.

**163.    By virtue of the Restatement, *NAPCO itself* has concluded that the now-restated interim financial statements contained in the 1Q23 Form 10-Q and the 2Q23 Form 10-Q and incorporated by reference in the Offering Materials were materially misstated—since only materially misstated financial statements are to be corrected and re-reported on a retroactive basis.  [FN. 7: *See, e.g.*, Financial Accounting Standards Board's ("FASB") Accounting Standards Codification ("ASC") Topic 250, *Accounting Changes and Error Corrections*, SEC Codification of Staff Accounting Bulletins ("CSAB") Topic 1M *Financial Statements, Materiality* and Topic 1-N, *Considering the Effects of Prior Year Misstatements When Quantifying Misstatements in Current Year Financial Statements*. According to the FASB, ASC is the source of authoritative GAAP to be applied to nongovernmental entities.]**

163.    No responsive pleading is required from the Underwriter Defendants to the allegations in paragraph 163.  To the extent any responsive pleading is deemed to be required, the Underwriter Defendants deny the allegations contained in paragraph 163.

**164.    Thus, there is no dispute that the Offering Materials contained materially inaccurate financial statements.**

164.    The Underwriter Defendants deny the allegations contained in paragraph 164.

**165.   NAPCO has also admitted that, in addition to the Company's preexisting internal control deficiencies, the Restatement "demonstrated an additional material weakness in [its] internal controls over financial reporting." [FN. 8: A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement in an entity's financial statements will not be prevented or detected on a timely basis.]**

165.   The Underwriter Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 165, except (i) refer for its contents to the Form 8-K filed by NAPCO with the SEC on August 18, 2023, and (ii) the footnote contained in paragraph 165 states a legal conclusion as to which no responsive pleading is required.

**166.   GAAP, as set forth in ASC Topic No. 250, *Accounting Changes and Error* Corrections, provides that errors in previously-issued financial statements are to be corrected via a restatement of the previously-issued financial statements. Adjustments related thereto are to be reported in the restatement as "error corrections."**

166.   The allegations contained in paragraph 166 state legal conclusions as to which no responsive pleading is required. To the extent a response is deemed to be required, the Underwriter Defendants deny the allegations contained in paragraph 166.

**167.   When NAPCO issued the Restatement on September 1, 2023, it filed with the SEC amended quarterly reports on Form 10-Q/A that corrected errors in the 1Q23 Form 10-Q and the 2Q23 Form 10-Q related to the Company's reported inventory, cost of goods sold, net income, income per share, operating income, gross profit, and gross margins.**

167.   The Underwriter Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 167, except (i) admit upon information and belief that on September 1, 2023, NAPCO filed with the SEC amended quarterly reports on Form 10-Q/A, and (ii) refer to those Forms 10-Q/A for the contents thereof.

**168.   The Offering Materials represented that NAPCO's "financial information [was] presented in accordance with U.S. GAAP . . . ." That representation was materially false and misleading**

22

**because—as NAPCO has now admitted—the 1Q23 Form 10-Q and the 2Q23 Form 10-Q, which were incorporated by reference in the Offering Materials, overstated NAPCO's inventory, understated its cost of goods sold, and overstated its net income and related metrics.**

168.    The Underwriter Defendants deny the allegations contained in paragraph 168.

**169.    The basic accounting precept that expenses be recorded in the same period in which the corresponding benefit is realized is arguably the most fundamental tenet of accrual accounting. *See* FASB Statement of Financial Accounting Concepts No. 8, *Conceptual Framework for Financial Reporting.***

169.    The allegations contained in paragraph 169 state legal conclusions as to which no responsive pleading is required. To the extent a response is deemed to be required, the Underwriter Defendants deny the allegations contained in paragraph 169.

**170.    GAAP, as set forth in ASC Topic No. 330, *Inventories*, provides that the primary objective of accounting for inventories is the proper determination of income, through the process of matching appropriate costs against revenues.**

170.    The allegations contained in paragraph 170 state legal conclusions as to which no responsive pleading is required. To the extent a response is deemed to be required, the Underwriter Defendants deny the allegations contained in paragraph 170.

**171.    These accounting principles are neither complex, nor a matter of subjective interpretation or opinion. Because the Offering Materials incorporated by reference the 1Q23 Form 10-Q and the 2Q23 Form 10-Q, which were presented in violation of these provisions of GAAP, the Offering Materials were materially false and misleading.**

171.    The allegations contained in paragraph 171 state legal conclusions as to which no responsive pleading is required. To the extent a response is deemed to be required, the Underwriter Defendants deny the allegations contained in paragraph 170 and refer for its contents to the offering materials alleged in that paragraph.

**172.    The Offering Materials incorporated by reference the 1Q23 Form 10-Q, which NAPCO had filed with the SEC on November 7, 2022. For the quarter, the 1Q23 Form 10-Q reported:**

23

- **Total inventory (current and non-current) of $63,837,000 as of September 30, 2022;**

- **Cost of goods sold of $21,326,000;**

- **Net income of $6,402,000;**

- **Income per share of $0.17;**

- **Operating income of $7,249,000;**

- **Gross profit of $18,167,000; and**

- **Gross margins of 46%.**

172. The Underwriter Defendants deny that the allegations contained in paragraph 172 present an accurate, fair, or complete description of NAPCO's business, except refer to the offering materials and the Form 10-Q filed by NAPCO with the SEC on November 7, 2022 for the contents thereof.

**173.   The statements referenced above in ¶172 were untrue statements of material fact because—as NAPCO has now admitted:  (i) its financial statements were presented in violation of GAAP; and (ii) for 1Q23, its actual financial results were as follows:**

- **Total inventory (current and non-current) was $60,236,000 as of September 30, 2022, and had been overstated by *5.98%*;**

- **Cost of goods sold was $24,927,000, and had been understated by *14.45%*;**

- **Net income was $3,084,000, and had been overstated by *107.59%*;**

- **Income per share was $0.08, and had been overstated by *112.5%*;**

- **Operating income was $3,648,000, and had been overstated by *98.71%*;**

- **Gross profit was $14,566,000, and had been overstated by *24.72%*; and**

- **Gross margins were approximately 36.9%, and had been overstated by *24.72%*.**

173. The Underwriter Defendants deny the allegations contained in paragraph 173, except (i) refer to the Form 8-K filed by NAPCO with the SEC on August 18, 2023 and the Forms 10-Q/A filed by NAPCO with the SEC on September 1, 2023 for the contents thereof, and

(ii) admit and aver that the Underwriter Defendants performed reasonable and customary due diligence and, as a result of their due diligence, had reasonable grounds to believe that the statements in the offering materials for the offering were true and complete or had no reasonable grounds to believe that the statements in the offering materials were untrue or not complete, as applicable.

**174.     In addition, the 1Q23 Form 10-Q represented that NAPCO had two preexisting "material weaknesses in internal control." One material weakness "related to ineffective information technology general controls (ITGCs) in the area of user access and lack of effective program change-management over certain information technology (IT) systems that support the Company's financial reporting processes." The second material weakness "related to the reserve for excess and slow-moving inventory" and "was a result of a lack of effective review and reconciliation controls over [] forecasted sales and usage data." The 1Q23 Form 10-Q further stated that, although "the Company's internal controls over financial reporting were not effective" as a result of these material weaknesses, the material weaknesses had "not result[ed] in any identified misstatements to [NAPCO's] financial statements and there were no changes to [its] previously released financial results."**

174.    The Underwriter Defendants deny the allegations contained in paragraph 174, except refer to the Form 10-Q filed by NAPCO with the SEC on November 7, 2022 for the contents thereof.

**175.     The statements referenced above in ¶174 were untrue statements of material fact because—as NAPCO has now admitted:  (i) it suffered from additional material weaknesses in internal controls over financial reporting; and (ii) those additional material weaknesses in internal controls *had* "result[ed] in . . . misstatements to the [Company's] financial statements" for 1Q23.**

175.    The Underwriter Defendants deny the allegations contained in paragraph 175, except (i) refer to the Form 8-K filed by NAPCO with the SEC on August 18, 2023 for the contents thereof, and (ii) admit and aver that the Underwriter Defendants performed reasonable and customary due diligence and, as a result of their due diligence, had reasonable grounds to believe

that the statements in the offering materials for the offering were true and complete or had no reasonable grounds to believe that the statements in the offering materials were untrue or not complete, as applicable.

**176.   The Offering Materials also incorporated by reference the 2Q23 Form 10-Q, which NAPCO had filed with the SEC on February 6, 2023.  For the quarter, the 2Q23 Form 10-Q reported:**

- **Total inventory (current and non-current) of $64,192,000 as of December 31, 2022;**

- **Cost of goods sold of $22,852,000;**

- **Net income of $8,446,000;**

- **Income per share of $0.23;**

- **Operating income of $9,436,000;**

- **Gross profit of $19,462,000; and**

- **Gross margins of approximately 46%.**

176.   The Underwriter Defendants deny that the allegations contained in paragraph 176 present an accurate, fair, or complete description of NAPCO's business, except refer to the offering materials and the Form 10-Q filed by NAPCO with the SEC on February 6, 2023 for the contents thereof.

**177.   The statements referenced above in ¶176 were untrue statements of material fact because—as NAPCO has now admitted:  (i) its financial statements were presented in violation of GAAP; and (ii) for 2Q23, its actual financial results were as follows:**

- **Total inventory (current and non-current) was $55,483,000 as of December 31, 2022, and had been overstated by *15.7%*;**

- **Cost of goods sold was $27,960,000, and had been understated by *18.27%*;**

- **Net income was $3,929,000, and had been overstated by *114.97%*;**

- **Income per share was $0.11, and had been overstated by *109.1%*;**

- **Operating income was $4,328,000, and had been overstated by *118.02%*;**

26

- **Gross profit was $14,354,000, and had been overstated by *35.59%*; and**
- **Gross margins were approximately 33.9%, and had been overstated by *35.59%.***

177. The Underwriter Defendants deny the allegations contained in paragraph 177, except (i) refer to the Form 8-K filed by NAPCO with the SEC on August 18, 2023 and the Forms 10-Q/A filed by NAPCO with the SEC on September 1, 2023 for the contents thereof, and (ii) admit and aver that the Underwriter Defendants performed reasonable and customary due diligence and, as a result of their due diligence, had reasonable grounds to believe that the statements in the offering materials for the offering were true and complete or had no reasonable grounds to believe that the statements in the offering materials were untrue or not complete, as applicable.

**178. In addition, for the first six months of fiscal 2023, ended December 31, 2022, the 2Q23 Form 10-Q reported:**

- **Cost of goods sold of $44,178,000;**
- **Net income of $14,848,000;**
- **Income per share of $0.40;**
- **Operating income of $16,685,000;**
- **Gross profit of $37,629,000; and**
- **Gross margins of 46%.**

178. The Underwriter Defendants deny the allegations contained in paragraph 178, except refer for its contents to the Form 10-Q filed by NAPCO with the SEC on February 6, 2023 for the contents thereof.

**179. The statements referenced above in ¶178 were untrue statements of material fact because—as NAPCO has now admitted: (i) its financial statements were presented in violation of GAAP; and (ii) for the first six months of fiscal 2023, its actual financial results were as follows:**

- **Cost of goods sold was $52,887,000, and had been understated by *16.47%*;**

- **Net income was $7,013,000, and had been overstated by *111.72%*;**

- **Income per share was $0.19, and had been overstated by *110.53%*;**

- **Operating income was $7,976,000, and had been overstated by *109.2%*;**

- **Gross profit was $28,920,000, and had been overstated by *30.11%*; and**

- **Gross margins were approximately 35.4%, and had been overstated by 30.11%.**

179. The Underwriter Defendants deny the allegations contained in paragraph 179, except (i) refer to the Form 8-K filed by NAPCO with the SEC on August 18, 2023 and the Forms 10-Q/A filed by NAPCO with the SEC on September 1, 2023 for the contents thereof, and (ii) admit and aver that the Underwriter Defendants performed reasonable and customary due diligence and, as a result of their due diligence, had reasonable grounds to believe that the statements in the offering materials for the offering were true and complete or had no reasonable grounds to believe that the statements in the offering materials were untrue or note complete, as applicable.

**180. In addition, the 2Q23 Form 10-Q reiterated that NAPCO had two preexisting "material weaknesses in internal control." One material weakness "related to ineffective information technology general controls (ITGCs) in the area of user access and lack of effective program change- management over certain information technology (IT) systems that support the Company's financial reporting processes." The second material weakness "related to the reserve for excess and slow-moving inventory" and "was a result of a lack of effective review and reconciliation controls over [] forecasted sales and usage data." The 2Q23 Form 10-Q further stated that, although "the Company's internal controls over financial reporting were not effective" as a result of these material weaknesses, the material weaknesses had "not result[ed] in any identified misstatements to [NAPCO's] financial statements and there were no changes to [its] previously released financial results."**

28

180. The Underwriter Defendants deny the allegations contained in paragraph 180, except refer to the Form 10-Q filed by NAPCO with the SEC on February 6, 2023 for the contents thereof.

**181. The statements referenced above in ¶180 were untrue statements of material fact because—as NAPCO has now admitted: (i) it suffered from additional material weaknesses in internal controls over financial reporting; and (ii) those additional material weaknesses in internal controls *had* "result[ed] in . . . misstatements to the [Company's] financial statements" for 1Q23.**

181. The Underwriter Defendants deny the allegations contained in paragraph 181.

## COUNT III

### For Violations of Section 11 of the Securities Act
### Against All Defendants

**182. For purposes of this Count, Plaintiff City of Warren Police and Fire Retirement System repeats, incorporates, and realleges each and every allegation set forth above relating to the Securities Act claims as if fully set forth herein, and expressly disclaims each and every allegation relating to the Exchange Act claims, including any allegation or implication of fraud, recklessness, or intentional misconduct.**

182. The Underwriter Defendants repeat and reallege each and every response set forth in paragraphs 1 through 181 above as if fully set forth herein.

**183. For avoidance of doubt, the only allegations that Plaintiff incorporates by reference in this Count are those pertaining to the Securities Act claims set forth in: the preamble paragraph; ¶1, ¶¶3-4, and ¶13 (Introduction); ¶¶14-17 (Jurisdiction and Venue); ¶¶10-22 and ¶¶24-29 (Parties); ¶¶30-35 (Class Action Allegations); ¶¶36-38 (The Company and Its Business); and §VII (Allegations Under the Securities Act, ¶¶149-181). Plaintiff expressly disclaims all allegations above pertaining to the Exchange Act claims, including the allegations in ¶2 and ¶¶4-12, and in §VI.**

183. No response is required to the allegations contained in paragraph 183, but to the extent any response is deemed to be required, the Underwriter defendants (i) deny that plaintiffs are entitled to assert any claim for relief against the Underwriter Defendants on behalf of

themselves or the putative class as alleged in that paragraph, and (ii) reserve all of the Underwriter

Defendants' defenses, rights, and arguments with respect thereto.

**184. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants. This Count does not allege, and does not intend to allege, fraud or scienter, which are not elements of a Section 11 claim, and any implication of fraud or scienter is expressly disclaimed.**

184. No response is required to the allegations contained in paragraph 184, but to the

extent any response is deemed to be required, the Underwriter Defendants (i) deny that plaintiffs

are entitled to assert any claim for relief against the Underwriter Defendants on behalf of

themselves or the putative class as alleged in that paragraph, and (ii) reserve all of the Underwriter

Defendants' defenses, rights, and arguments with respect thereto.

**185. The Registration Statement, which was incorporated in and formed part of the Offering Materials, contained inaccurate and misleading statements of material fact, omitted facts necessary to render statements therein non-misleading, and omitted to state material facts required to be stated therein.**

185. The Underwriter Defendants deny the allegations contained in paragraph 185.

**186. NAPCO was the registrant for the Offering. As an issuer of securities to the public, NAPCO is strictly liable to Plaintiff and the Class for the misstatements and omissions.**

186. The Underwriter Defendants deny the allegations contained in paragraph 186,

except admit that NAPCO was the issuer of the shares of NAPCO common stock in the offering.

**187. The Individual Defendants each signed and/or authorized the signing of the Registration Statement. Each of the Individual Defendants had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement. They had a duty to ensure that such statements were true and accurate, that there were no omissions of material fact that would make the statements misleading, and that the Registration Statement contained all facts required to be stated therein. By virtue of the Individual Defendants' failure to exercise reasonable care, the Registration Statement contained**

30

**material misstatements and/or omissions of material facts.  As such, the Individual Defendants are strictly liable to Plaintiff and the Class.**

187. No responsive pleading is required from the Underwriter Defendants to paragraph 187.  To the extent any response is deemed to be required, the Underwriter Defendants deny the allegations in paragraph 187.

**188. The Underwriter Defendants failed to perform adequate due diligence in connection with their role as underwriters and were negligent in failing to ensure that the Registration Statement for the Offering was prepared properly and accurately.  The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.  As such, the Underwriter Defendants are strictly liable to Plaintiff and the Class.**

188. The Underwriter Defendants deny the allegations contained in paragraph 188.

**189. Defendants were responsible for the contents and dissemination of the Registration Statement.  None of the Defendants made a reasonable investigation or possessed reasonable grounds to believe that the statements in the Offering Materials were complete, accurate or non-misleading.**

189. The Underwriter Defendants deny the allegations contained in paragraph 189.

**190. By reason of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.**

190. The Underwriter Defendants deny the allegations contained in paragraph 190.

**191. Plaintiff and the other members of the Class purchased NAPCO common stock pursuant or traceable to the Registration Statement for the Offering and have sustained damages as a result.  The price of the stock has declined substantially subsequent and due to Defendants' violations.**

191. The Underwriter Defendants deny the allegations contained in paragraph 191.

**192. At the time of their purchases of NAPCO common stock, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein, and could not have reasonably discovered those facts prior to the disclosures herein.**

192.   The Underwriter Defendants deny the allegations contained in paragraph 192.

**193.   Less than one year has elapsed from the time that Plaintiff discovered, or reasonably could have discovered, the facts upon which this claim is based to the time this action was filed.  Less than three years has elapsed between the time the securities were offered to the public and the time this action was filed.**

193.   The Underwriter Defendants deny the allegations contained in paragraph 193, except admit that this action was brought within three years after the date of the offering.

## COUNT IV

### For Violations of Section 12(a)(2) of the Securities Act
### Against All Defendants

**194.   For purposes of this Count, Plaintiff City of Warren Police and Fire Retirement System repeats, incorporates, and realleges each and every allegation set forth above relating to the Securities Act claims as if fully set forth herein, and expressly disclaims each and every allegation relating to the Exchange Act claims, including any allegation or implication of fraud, recklessness, or intentional misconduct.**

194.   The Underwriter Defendants repeat and reallege each and every response set forth in paragraphs 1 through 193 above as if fully set forth herein.

**195.   For avoidance of doubt, the only allegations that Plaintiff incorporates by reference in this Count are those pertaining to the Securities Act claims set forth in:  the preamble paragraph; ¶1, ¶¶3-4, and ¶13 (Introduction); ¶¶14-17 (Jurisdiction and Venue); ¶¶10-22 and ¶¶24-29 (Parties); ¶¶30-35 (Class Action Allegations); ¶¶36-38 (The Company and Its Business); §VII (Allegations Under the Securities Act, ¶¶149-181); and ¶¶182-193 (Count III).  Plaintiff expressly disclaims all allegations above pertaining to the Exchange Act claims, including the allegations in ¶2 and ¶¶4-12, and in §VI.**

195.   No response is required to the allegations contained in paragraph 195, but to the extent any response is deemed to be required, the Underwriter defendants (i) deny that plaintiffs are entitled to assert any claim for relief against the Underwriter Defendants on behalf of

themselves or the putative class as alleged in that paragraph, and (ii) reserve all of the Underwriter

Defendants' defenses, rights, and arguments with respect thereto.

**196.    This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l, on behalf of the Class, against all Defendants.  This Count does not allege, and does not intend to allege, fraud or scienter, which are not elements of a Section 12(a)(2) claim, and any implication of fraud or scienter is expressly disclaimed.**

196.    No response is required to the allegations contained in paragraph 196, but to the

extent any response is deemed to be required, the Underwriter Defendants (i) deny that plaintiffs

are entitled to assert any claim for relief against the Underwriter Defendants on behalf of

themselves or the putative class as alleged in that paragraph, and (ii) reserve all of the Underwriter

Defendants' defenses, rights, and arguments with respect thereto.

**197.    Defendants were sellers and offerors and/or solicitors of purchasers of the common stock offered pursuant to the Offering Materials and issued in connection with the Offering.  Plaintiff and other members of the Class purchased or otherwise acquired NAPCO common stock pursuant to the Offering.  The Offering Materials contained a defective and inaccurate Prospectus that Defendants used to induce Plaintiff and the other members of the Class to purchase the common stock registered in the Offering.**

197.    The Underwriter Defendants deny the allegations contained in paragraph 197.

**198.    The Underwriter Defendants participated in the preparation and dissemination of the defective and inaccurate Prospectus for their own financial benefit.  But for their participation in the Offering, including their solicitation, the Offering could not, and would not, have been accomplished.  Specifically, the Underwriter Defendants:**

**(a)    made the decision to conduct the Offering and do it at the price set forth in the Prospectus.  The Underwriter Defendants drafted, revised and/or approved the Prospectus.  The Prospectus was calculated to create interest in NAPCO common stock and was widely distributed by, or on behalf of, the Underwriter Defendants for that purpose; and**

**(b)    conceived and planned the Offering and orchestrated all activities necessary to affect the sale of NAPCO common stock to the**

**investing public by issuing, promoting and supervising the distribution and ultimate sale of NAPCO common stock to the investing public.**

198.    The Underwriter Defendants deny the allegations contained in paragraph 198, except admit that each of the Underwriter Defendants was an underwriter for the offering.

**199.    The Prospectus contained untrue statements of material fact, and/or concealed or failed to disclose material facts, as detailed above. Defendants owed Plaintiff and the other members of the Class who purchased NAPCO common stock pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.**

199.    The Underwriter Defendants deny the allegations contained in paragraph 199, and admit and aver that the Underwriter Defendants conducted reasonable and customary due diligence prior to the offering and, as a result of their due diligence, had reasonable grounds to believe that the statements in the offering materials for such offering were true and complete or had no reasonable grounds to believe that the statements in the offering materials were untrue or not complete, as applicable.

**200.    Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus at the time Plaintiff acquired NAPCO common stock.**

200.    The Underwriter Defendants deny the allegations contained in paragraph 200 and deny knowledge or information sufficient to form a belief as to whether plaintiffs acquired NAPCO common stock.

**201.    By reason of the conduct alleged herein, Defendants violated Section 12(a)(2) of the Securities Act. As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased NAPCO common stock pursuant to the Prospectus sustained damages in connection with their purchases. Accordingly, Plaintiff and the other members of the Class who hold the common stock issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby**

34

tender their shares to the defendants sued herein.  Class members who have sold their common stock seek damages to the extent permitted by law.

201.    The Underwriter Defendants deny the allegations contained in paragraph 201.

## COUNT V

### For Violations of Section 15 of the Securities Act
### Against the Individual Defendants

**202.    For purposes of this Count, Plaintiff City of Warren Police and Fire Retirement System repeats, incorporates, and realleges each and every allegation set forth above relating to the Securities Act claims as if fully set forth herein, and expressly disclaims each and every allegation relating to the Exchange Act claims, including any allegation or implication of fraud, recklessness, or intentional misconduct.**

**203.    For avoidance of doubt, the only allegations that Plaintiff incorporates by reference in this Count are those pertaining to the Securities Act claims set forth in:  the preamble paragraph; ¶1, ¶¶3-4, and ¶13 (Introduction); ¶¶14-17 (Jurisdiction and Venue); ¶¶10-22 and ¶¶24-29 (Parties); ¶¶30-35 (Class Action Allegations); ¶¶36-38 (The Company and Its Business); §VII (Allegations Under the Securities Act, ¶¶149-181); ¶¶182-193 (Count III); and ¶¶194-201 (Count IV). Plaintiff expressly disclaims all allegations above pertaining to the Exchange Act claims, including the allegations in ¶2 and ¶¶4-12, and in §VI.**

**204.    This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. §77o, on behalf of the Class, against the Individual Defendants.  This Count does not allege, and does not intend to allege, fraud or scienter, which are not elements of a Section 15 claim, and any implication of fraud or scienter is expressly disclaimed.**

**205.    The Individual Defendants each were control persons of NAPCO by virtue of their positions as directors and/or senior officers of NAPCO. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of NAPCO.**

**206.    The Individual Defendants each were culpable participants in the primary violations of Sections 11 and 12(a)(2) of the Securities Act alleged herein, based on their having signed or authorized the signing of the Offering Materials and having otherwise**

35

**participated in the process which allowed the Offering to be successfully completed.**

202-206. The allegations contained in paragraphs 202-206 are not directed at the Underwriter Defendants and no responsive pleading is required from the Underwriter Defendants. To the extent any response is deemed to be required, the Underwriter Defendants refer to and incorporate their responses to paragraphs 182-201 as if stated herein and therefore deny the allegations in paragraphs 202-206.

## PRAYER FOR RELIEF

**WHEREFORE, Lead Plaintiff prays for relief and judgment, as follows:**

A. **Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying Lead Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Lead Plaintiff's counsel as Lead Counsel;**

B. **Awarding damages in favor of Lead Plaintiff and the Class against all Defendants, jointly and severally, in an amount to be proven at trial, including interest thereon;**

C. **Awarding Lead Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;**

D. **Awarding rescission or a rescissory measure of damages on Count II; and**

E. **Such equitable/injunctive or other relief as deemed appropriate by the Court.**

Answering plaintiffs' prayer for relief, the Underwriter Defendants deny that either plaintiffs or the putative class they purport to represent are entitled to relief against the Underwriter Defendants.

## JURY DEMAND

**Lead Plaintiff demands trial by jury.**

The Underwriter Defendants deny the allegations contained in plaintiff's jury demand, except admit upon information and belief that plaintiff purports to make such a demand.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming the burden of proof on any matters where that burden rests with plaintiffs, the Underwriter Defendants assert the following affirmative and other defenses to the Complaint.  Use of the term "plaintiffs" in these defenses refers to lead plaintiffs, the additional plaintiff, and any member of the putative plaintiff class alleged in the Complaint.

## FIRST DEFENSE

Plaintiffs fail to state a claim against the Underwriter Defendants upon which relief can be granted.

## SECOND DEFENSE

The Underwriter Defendants are informed and believe, and on that basis allege, that plaintiffs' claims are barred by the applicable statute of limitations in section 13 of the Securities Act, 15 U.S.C. § 77m, or otherwise.

## THIRD DEFENSE

The Underwriter Defendants are informed and believe, and on that basis allege, that plaintiffs lack standing to sue under the Securities Act against any of the Underwriter Defendants.

## FOURTH DEFENSE

The Underwriter Defendants are informed and believe, and on that basis allege, that the Underwriter Defendants are not liable to plaintiffs because the offering materials did not contain any false or misleading statements of material fact or omission of material fact, bespoke caution about the risks of investing in the Company, and the Underwriter Defendants are not responsible in law or fact for any alleged false or misleading statement or omission of material fact by others, or for any statements not contained in the offering materials.

## FIFTH DEFENSE

Plaintiffs are not entitled to any recovery from the Underwriter Defendants because any allegedly untrue statements of material fact, and/or omissions of material fact, in the offering materials were not material to the investment decisions of a reasonable investor.

## SIXTH DEFENSE

Plaintiffs are not entitled to any recovery under the Securities Act from the Underwriter Defendants because the Underwriter Defendants acted at all times in good faith and had no knowledge, and were not reckless in not knowing, that any alleged statement or omission was false or misleading.

## SEVENTH DEFENSE

Plaintiffs are not entitled to any recovery under the Securities Act from the Underwriter Defendants because the Underwriter Defendants did not know, and in the exercise of reasonable care could not have known, of the alleged misstatements or omissions of fact in the offering materials.

## EIGHTH DEFENSE

Plaintiffs are not entitled to any recovery under the Securities Act from the Underwriter Defendants because, at all relevant times, the Underwriter Defendants conducted a reasonable and diligent investigation and had reasonable grounds to believe, and did believe, at the time the offering materials became effective, that the statements in the offering materials were true and that there were no misstatements of material fact or omissions of material fact that were necessary to make the statements therein not misleading.

**NINTH DEFENSE**

Plaintiffs are not entitled to any recovery from the Underwriter Defendants because, with respect to portions of the offering materials purporting to be made on the authority of experts retained to assist in preparing such documents (other than the Underwriter Defendants), the Underwriter Defendants had no reasonable grounds to believe, and did not believe, at the time such part of the offering materials became effective, that the statements therein were untrue or that there was an omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading, or that such part of the registration statement did not fairly represent the statement of the expert.

**TENTH DEFENSE**

The Underwriter Defendants are informed and believe, and on that basis allege, that any damages or injuries suffered by plaintiffs (if any) were not caused by any act or omission on the part of the Underwriter Defendants.

**ELEVENTH DEFENSE**

The Underwriter Defendants are informed and believe, and on that basis allege, that if and to the extent the offering materials and materials incorporated therein are found to have false or misleading statements (which the Underwriter Defendants deny), the actual facts which plaintiffs allege to have been misrepresented or omitted were in fact known to and entered the securities market through credible sources.

**TWELFTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because at all relevant times, the Underwriter Defendants relied in good faith on the representations, reports, expert opinions, and advice of others.

## THIRTEENTH DEFENSE

The Underwriter Defendants are entitled to recover contribution from others for any liability they incur as a result of any of the alleged misrepresentations, omissions, and conduct alleged in the Securities Act claims against the Underwriter Defendants.

## FOURTEENTH DEFENSE

The Underwriter Defendants are informed and believe, and on that basis allege, that none of the Underwriter Defendants is liable under section 11 of the Securities Act for damages in excess of the total price at which the specific offered securities underwritten and distributed by such underwriter to the public were offered to the public.

## FIFTEENTH DEFENSE

The Underwriter Defendants are informed and believe, and on that basis allege, that plaintiffs' claims against the Underwriter Defendants are barred in whole or in part by laches, equitable estoppel, waiver, or other related equitable doctrines.

## SIXTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because certain of the challenged statements contain expressions of opinion that plaintiffs have not alleged, and cannot prove, either were not honestly held or contained embedded statements of false, material facts.

## SEVENTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the offering materials complied with applicable statutes, rules, and regulations of the SEC, and any other statutes, rules, or regulations in effect at the time of the conduct alleged in the Complaint.

40

**EIGHTEENTH DEFENSE**

The Underwriter Defendants are informed and believe, and on that basis allege, that plaintiffs' claims are barred, in whole or in part, to the extent that they did not purchase shares in the offering, did not purchase shares traceable to the offering, or purchased shares not subject to a prospectus covered by the Securities Act of 1933.

**NINETEENTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because plaintiffs assumed the risks disclosed in the registration statement associated with the securities in question and any alleged losses were caused by those risks coming to fruition.

**TWENTIETH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, to the extent plaintiff fails to prove that those who "acquired the security after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement . . . acquired the security relying upon such untrue statement in the registration statement or relying upon the registration statement and not knowing of such omissions." 15 U.S.C. § 77k(a).

**TWENTY-FIRST DEFENSE**

Plaintiffs' claims are barred, in whole or in part, to the extent they seek damages "which exceed the price at which the security was offered to the public." 15 U.S.C. § 77k(g).

**TWENTY-SECOND DEFENSE**

Plaintiffs' claims are barred, in whole or in part, to the extent that they held, disposed of, or could have disposed of the securities at a price in excess of the offering price.

41

42

### TWENTY-THIRD DEFENSE

Without admitting that plaintiffs suffered damages in any amount, or that any defendants are or should be liable for any such damages, to the extent that plaintiffs failed to mitigate, minimize, or avoid any loss or damage referred to in the Complaint, any recovery against defendants must be reduced by that amount or eliminated.

### TWENTY-FOURTH DEFENSE

The Underwriter Defendants adopt by reference any applicable defense pled by any other defendant not expressly set forth herein.

### TWENTY-FIFTH DEFENSE

The Underwriter Defendants reserve the right to raise any additional defenses, cross-claims, and third-party claims not asserted herein of which they may become aware through discovery or other investigation, as may be appropriate at a later time.

43

WHEREFORE the Underwriter Defendants demand judgment dismissing the Complaint, requiring plaintiffs to post an undertaking for the payment of the costs of this suit, awarding attorneys' fees and costs and other, further and different relief as the Court deems just and proper.

Dated: New York, New York.
      May 12, 2025

Respectfully submitted,

DLA PIPER LLP (US)


By:  /s/ John J. Clarke, Jr.
      John J. Clarke, Jr.
      john.clarke@dlapiper.com
      Steven M. Rosato
      steven.rosato@dlapiper.com

1251 Avenue of the Americas
New York, New York  10020-1104
212.335.4500

Attorneys for Defendants
  Needham & Company, LLC and
  William Blair & Company, L.L.C.