**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RANDY ZORNBERG, Individually and on Behalf of All Others Similarly Situated, | : Civil Action No. 1:23-cv-06465-BMC |
| | : |
| | : <u>CLASS ACTION</u> |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| NAPCO SECURITY TECHNOLOGIES, INC., RICHARD L. SOLOWAY, KEVIN S. BUCHEL, PAUL STEPHEN BEEBER, RICK LAZIO, DONNA SOLOWAY, ROBERT UNGAR, ANDREW J. WILDER, NEEDHAM & COMPANY, LLC, and WILLIAM BLAIR & COMPANY, L.L.C. | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| Defendants. | : |
| | : |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO <u>PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT</u>

Defendants NAPCO Securities Technologies, Inc. ("NAPCO" or the "Company"), Richard L. Soloway, Kevin S. Buchel, Paul Stephen Beeber, Rick Lazio, Donna Soloway, Robert Ungar, and Andrew J. Wilder (collectively "Defendants")[1] by and through their undersigned counsel, hereby respond to the Amended Complaint, filed by Lead Plaintiff Donald W. Hutchings and Additional Plaintiff City of Warren Police and Fire Retirement System ("Plaintiffs"), as follows:

Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' investigation as described in the unnumbered introductory paragraph of the Amended Complaint, and otherwise deny any allegations in the unnumbered introductory paragraph.

Defendants deny each and every allegation in the Amended Complaint, including without limitation, allegations appearing in headings and subheadings, except as expressly admitted herein. Defendants deny that the headings and sub-headings of the Amended Complaint constitute allegations requiring a response. To the extent that any response is required to the headings and sub-headings of the Amended Complaint, which are repeated in this Answer solely for the convenience of the Court, Defendants deny any allegations or averments purportedly set forth therein. In its April 11, 2025 Ruling on Defendants' Motion to Dismiss, Docket Entry No. 59 (the "Order"), the Court granted in part and denied in part Defendants' motion to dismiss. The fact that Defendants have responded to all allegations set forth herein should not be construed as a

---

[1] As used herein, "Exchange Act Defendants" refers to NAPCO, Defendant Richard L. Soloway, and Defendant Kevin S. Buchel collectively; "Officer Defendants" refers to Defendant Richard L. Soloway and Defendant Kevin S. Buchel collectively; "Director Defendants" refers to Defendants Beeber, Lazio, Donna Soloway, Ungar, and Wilder; and "Individual Defendants" refers to Defendants Richard L. Soloway, Buchel, Beeber, Lazio, Donna Soloway, Ungar, and Wilder.

waiver of any argument that Plaintiffs' claims are barred, in whole or in part by the Order, and

Defendants expressly reserve all rights thereunder.  Moreover, the fact that Defendants made

answers to each Paragraph of the Amended Complaint should not be construed as a waiver of any

argument, and Defendants expressly reserve all rights they may have to seek relief by appropriate

motions to the allegations in the Amended Complaint.

Defendants reserve the right to amend and/or supplement this Answer.

## RESPONSES TO SPECIFIC ALLEGATIONS

### I. INTRODUCTION

#### A. Introduction to All Claims

1.     This is a federal securities class action alleging two distinct sets of claims.

**ANSWER:**  Paragraph 1 contains Plaintiffs' characterization of their claims to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 1, except admit that Plaintiffs purport to describe the claims asserted in the Amended Complaint.

2.     The first set of claims alleged are fraud claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, on behalf of those who purchased or otherwise acquired NAPCO common stock between November 7, 2022 and August 18, 2023, inclusive (the "Class Period") and were damaged thereby.

**ANSWER:** Paragraph 2 contains Plaintiffs' characterization of their claims to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 2, except admit that Plaintiffs purport to describe the Exchange Act claims and putative Class asserted in the Amended Complaint.

3.     The second set of claims alleged are non-fraud claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), on behalf of those who purchased or otherwise acquired NAPCO common stock pursuant or traceable to the registration statement and

prospectuses issued in connection with the offering of NAPCO common stock on or about February 13, 2023 (the "Offering") and were damaged thereby.

**ANSWER:**  Paragraph 3 contains Plaintiffs' characterization of their claims to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 3, except admit that Plaintiffs purport to describe the Securities Act claims and putative Class asserted in the Amended Complaint.

4.      Headquartered in Amityville, New York, defendant NAPCO designs and manufactures security solutions, including access control devices, intrusion and fire alarm systems, and video surveillance products. Its fiscal year ends on June 30.

**ANSWER:**  Defendants admit the allegations in Paragraph 4.

**B.      Introduction to the Exchange Act Claims**

5.      On August 18, 2023, NAPCO announced that it would need to restate its interim financial statements for the first three quarters of fiscal 2023, and that its previously-issued financial results for those quarters "should no longer be relied upon." The Company explained that its inventories had been overstated and its cost of goods sold had been understated, "resulting in overstated gross profit, operating income and net income," and gave preliminary estimates of its overstatement of net income. NAPCO also admitted that a previously-undisclosed material weakness existed in its internal controls over financial reporting.

**ANSWER:**   To the extent the allegations in Paragraph 5 purport to characterize, rely on, or quote NAPCO's August 18, 2023 Form 8-K, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 5.  The allegations in Paragraph 5 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 5.

6.      Shortly thereafter, on September 1, 2023, the Company filed amended quarterly reports, which confirmed the severity of its financial misstatements. The restatement showed that

during the Class Period, NAPCO's net income had been overstated by as much as *114.97%*, its income per share had been overstated by as much as *112.5%*, its operating income had been overstated by as much as *118.02%*, and its gross profit and gross margins had been overstated by as much as *35.59%*.

**ANSWER:**  Exchange Act Defendants admit that, on September 1, 2023, the Company filed Form 10-Q/As.  To the extent the allegations in Paragraph 6 purport to characterize or rely on NAPCO's September 1, 2023 Form 10-Q/As, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 6.  The allegations in Paragraph 6 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 6.

7.      When NAPCO revealed that it would need to restate its financial results and provided preliminary estimates for restated net income at the end of the Class Period, the price of its common stock fell more than *45%*.

**ANSWER:**  Exchange Act Defendants admit that NAPCO's common stock price closed at $38.41 on August 18, 2023 and closed at $21.11 on August 21, 2023.  Exchange Act Defendants otherwise deny the allegations in Paragraph 7.  The allegations in Paragraph 7 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 7.

8.      Although NAPCO attempted to characterize the restatement as stemming from innocent accounting "errors," in fact, it was the product of a fraudulent scheme to inflate NAPCO's income-related metrics, orchestrated by the Exchange Act Defendants.[2]

**ANSWER:**  Paragraph 8 purports to state legal conclusions to which no response is required.  To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 8.  The allegations in Paragraph 8 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 8.

---

[2] The "Exchange Act Defendants" are NAPCO, its founder and Chief Executive Officer ("CEO") Richard L. Soloway ("Soloway"), and its Chief Financial Officer ("CFO") Kevin S. Buchel ("Buchel").

9. Prior to and during the Class Period, NAPCO employees were directed to halt shipments of sold inventory before the end of the quarter, and to instead ship the inventory to customers after the beginning of the next quarter. In these instances, the sold inventory was already in NAPCO's warehouse facilities, ready for shipment to customers. The directive to withhold shipments of sold inventory was issued by defendant Buchel, and was given to the Vice President of Sales and the Vice President of Operations, and in turn, to sales directors.

**ANSWER:** Exchange Act Defendants deny the allegations in Paragraph 9.

10. By withholding the shipment of sold product, the Exchange Act Defendants were able to improperly count sold product as inventory at the end of the quarter. This understated the cost of the equipment inventory NAPCO had sold during the quarter—*i.e.*, the cost of goods sold. Because cost of goods sold has a direct bearing on a company's income-related metrics, the Exchange Act Defendants' financial manipulation allowed them to inflate NAPCO's reported net income and related results during the Class Period.

**ANSWER:** Exchange Act Defendants deny the allegations in Paragraph 10. The allegations in Paragraph 10 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 10.

11. As the Exchange Act Defendants intended, the fraud enabled NAPCO to meet—and exceed—market expectations. For example, when discussing the Company's financial results for the first quarter of fiscal 2023, defendant Soloway highlighted that NAPCO had "easily exceed[ed] published street consensus estimates" by reporting earnings per share ("EPS") of $0.17. In truth, NAPCO would not have met—let alone exceeded—the analysts' consensus estimate of EPS of $0.13—because its actual EPS for the quarter was just $0.08.

**ANSWER:** To the extent the allegations in Paragraph 11 purport to characterize, rely on, or quote NAPCO's November 7, 2022 conference call, its November 7, 2022 press release, and its

September 1, 2023 Form 10Q/A for Q1 2023, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 11. The allegations in Paragraph 11 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 11.

12. During the time that NAPCO's income-related metrics were grossly inflated, defendants Soloway and Buchel each cashed out nearly half of their personally-held NAPCO stock over a three-month time period, with Soloway selling *48.5%* of his shares for proceeds of approximately *$104 million*, and Buchel selling *45.5%* of his shares for proceeds of approximately *$4.5 million*.

**ANSWER:** Exchange Act Defendants deny the allegations in Paragraph 12, except admit that Defendant Richard Soloway and Kevin Buchel sold stock in November 2022 and February 2023 worth approximately $104 million and $4.5 million. The allegations in Paragraph 12 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 12.

## C. Introduction to the Securities Act Claims

13. Separately, with respect to the Securities Act claims, Plaintiff City of Warren Police and Fire Retirement System expressly disclaims the allegations set forth in ¶2 and ¶¶4-12 above, and in §VI below. For these claims, Plaintiff pleads in the alternative that Defendants (defined below) violated the Securities Act by incorporating by reference NAPCO's materially false and misleading financial statements for the first two quarters of fiscal 2023 in the registration statement and prospectuses for the Offering.

**ANSWER:** Paragraph 13 contains Plaintiffs' characterization of their claims to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 13, except admit that Plaintiffs purport to describe the Securities Act claims asserted in the Amended Complaint.

## II.    JURISDICTION AND VENUE

14.    The claims asserted herein arise under: (i) Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5); and (ii) Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§77k, 77l(a)(2) and 77o).

**ANSWER:**  Paragraph 14 purports to state legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 14.

15.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, Section 27 of the Exchange Act (15 U.S.C. §78aa), and Section 22 of the Securities Act (15 U.S.C. §77v).

**ANSWER:**  Paragraph 15 purports to state legal conclusions to which no response is required.

16.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b), Section 27 of the Exchange Act, and Section 22 of the Securities Act. Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. In addition, the Company's principal executive offices are located in this District.

**ANSWER:**  The first two sentences of Paragraph 16 purport to state legal conclusions to which no response is required.  Defendants otherwise deny the allegations in Paragraph 16, except admit that the Company's principal executive offices are located in Suffolk County, New York.

17.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mail, interstate telephone communications, and the facilities of the NASDAQ Global Select Market ("NASDAQ"), a national securities exchange.

**ANSWER:**  Paragraph 17 purports to state legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 17.

- 7 -

### III.   PARTIES

18.   As set forth in his certification previously filed with the Court and incorporated herein by reference, Lead Plaintiff purchased NAPCO common stock during the Class Period, and was damaged thereby. *See* ECF 22-2.

**ANSWER:**  Paragraph 18 purports to state legal conclusions to which no response is required.  To the extent a response is required, Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 18 and on that basis deny them.  The allegations in Paragraph 18 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 18.

19.   Plaintiff City of Warren Police and Fire Retirement System, as set forth in the attached certification, purchased NAPCO common stock during the Class Period, and pursuant and traceable to the Offering, and was damaged thereby.

**ANSWER:**  Paragraph 19 purports to state legal conclusions to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 19 and on that basis deny them.

20.   Defendant NAPCO provides security devices and systems. The Company's principal executive offices are located at 333 Bayview Avenue, Amityville, New York 11701. NAPCO's common stock is listed and trades on the NASDAQ, an efficient market, under the symbol "NSSC."

**ANSWER:**  Defendants admit the allegations set forth in the first two sentences of Paragraph 20 and admit that NAPCO's common stock is listed and trades on the NASDAQ under the symbol "NSSC."  Whether the market in which NAPCO traded is, at all times, an "efficient market" is a legal conclusion to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of this allegation and on that basis deny it.

21.   Defendant Soloway—NAPCO's founder—is, and was at all relevant times, the Company's CEO, President, Secretary, and Chairman of the Board of Directors. Defendant

- 8 -

Soloway was also a selling stockholder in the Offering and signed the Offering Materials (defined below).

**ANSWER:** Defendants deny the allegations in the first sentence of Paragraph 21, except admit that Defendant Soloway is NAPCO's founder, and was NAPCO's CEO, President, Secretary, and Chairman of the Board of Directors during the Class Period, and is currently NAPCO's CEO, Secretary, and Chairman of the Board of Directors. Defendants deny the allegations in the second sentence of Paragraph 21, except admit that Mr. Soloway was a selling stockholder in the Offering and that he signed the Registration Statement.

22.    Defendant Buchel is, and was at all relevant times, NAPCO's CFO, Executive Vice President of Operations, Treasurer, and a Director. Defendant Buchel was also a selling stockholder in the Offering and signed the Offering Materials.

**ANSWER:** Defendants deny the allegations in the first sentence of Paragraph 22, except admit that Defendant Buchel was NAPCO's CFO, Executive Vice President, Treasurer, and a Director during the Class Period, and is currently NAPCO's CFO, COO, President, Treasurer, and a Director. Defendants deny the allegations in the second sentence of Paragraph 22, except admit that Mr. Buchel was a selling stockholder in the Offering and that he signed the Registration Statement.

23.    Defendants Soloway and Buchel are collectively referred to as the "Officer Defendants" and, together with NAPCO, as the "Exchange Act Defendants."

**ANSWER:** Paragraph 23 contains Plaintiffs' characterization of the defendants to which no response is required.   To the extent a response is required, Defendants admit that Plaintiffs purport to collectively refer to NAPCO and Defendants Soloway and Buchel as the Exchange Act Defendants.

24.    Defendants Paul Stephen Beeber, Rick Lazio, Donna Soloway, Robert Ungar, and Andrew J. Wilder each served as a director of the Company at the time of the Offering and signed the Offering Materials. They are collectively referred to as the "Director Defendants" (and, together with the Officer Defendants (*i.e.*, Soloway and Buchel), as the "Individual Defendants").

**ANSWER:** Defendants deny the allegations in the first sentence of Paragraph 24, except admit that Defendants Paul Stephen Beeber, Rick Lazio, Donna Soloway, Robert Ungar, and Andrew J. Wilder each served as a director of the Company at the time of the Offering and that they signed the Registration Statement.  The second sentence of Paragraph 24 contains Plaintiffs'

- 9 -

characterization of the defendants to which no response is required.  To the extent a response is required, Defendants admit that Plaintiffs purport to collectively refer to Defendants Beeber, Lazio, Donna Soloway, Ungar, and Wilder as "Director Defendants" and Defendants Soloway and Buchel as the "Officer Defendants."

25.    Defendants Needham & Company, LLC ("Needham") and William Blair & Company, L.L.C. ("William Blair") served as joint bookrunners of the Offering and representatives of the underwriters. They each received commissions and other professional fees in connection with the Offering. Needham and William Blair are collectively referred to as the "Underwriter Defendants."

**ANSWER:**  The allegations in Paragraph 25 are not directed at Defendants and therefore no response is required.  Additionally, the third sentence of Paragraph 25 contains Plaintiffs' characterization of the defendants to which no response is required.  To the extent a response is required, Defendants deny that the allegations in Paragraph 25 are an accurate, fair, or complete description of the Offering or the role of the Underwriter Defendants, except admit that the first sentence of Paragraph 25 purports to describe the claims asserted in the Amended Complaint, that Plaintiffs purport to collectively refer to Defendants Needham & Company, LLC and William Blair & Company, L.L.C.  as "Underwriter Defendants," and that the Underwriter Defendants served as underwriters in connection with the Offering.  Defendants respectfully refer to the underwriting agreement entered into for the Offering, for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.

26.    The Underwriter Defendants received and offered the following number of shares for sale:

| Underwriter | Number of Shares |
|---|---|
| Needham & Company, LLC | 1,050,000 |
| William Blair & Company, L.L.C. | 1,050,000 |
| Total | 2,100,000 |

**ANSWER:**  The allegations in Paragraph 26 are not directed at Defendants and therefore no response is required.  To the extent a response is required, Defendants admit the allegations in Paragraph 26.

- 10 -

27.     The Underwriter Defendants also received an option—which they exercised in full–– to purchase on a *pro rata* basis up to 300,000 additional shares at the Offering price, less the underwriting discounts and commissions.

**ANSWER:**  The allegations in Paragraph 27 are not directed at Defendants and therefore no response is required.  To the extent a response is required, Defendants admit the allegations in Paragraph 27.

28.     The Underwriter Defendants participated in drafting and disseminating the Offering Materials, soliciting investors for the Offering, and marketing and pricing the Offering. The Underwriter Defendants failed to conduct adequate due diligence in connection with the Offering, and were negligent in failing to ensure that the Offering Materials were prepared accurately and in accordance with the rules and regulations governing their preparation. The Underwriter Defendants' negligence was a substantial factor leading to the harm complained of herein.

**ANSWER:**  The allegations in Paragraph 28 are not directed at Defendants and therefore no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 28 and on that basis deny them.

29.     NAPCO, the Individual Defendants, and the Underwriter Defendants are collectively referred to as "Defendants."

**ANSWER:**  Paragraph 29 contains Plaintiffs' characterization of the defendants to which no response is required.  To the extent a response is required, Defendants admit that Plaintiffs purport to collectively refer to NAPCO, Individual Defendants, and Underwriter Defendants as "Defendants."

## IV.    CLASS ACTION ALLEGATIONS

30.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class consisting of all those who purchased or otherwise acquired NAPCO common stock: (i) during the Class Period, seeking to pursue remedies

- 11 -

under the Exchange Act; and (ii) pursuant or traceable to the Offering Materials, including purchasers who were successfully solicited by any defendant, seeking to pursue remedies under the Securities Act (collectively, the "Class") and were damaged thereby. Excluded from the Class are: (i) Defendants and members of their immediate families; (ii) the officers and directors of the Company, at all relevant times, and members of their immediate families; (iii) the legal representatives, heirs, successors, or assigns of any of the foregoing; and (iv) any entity in which any Defendant has or had a controlling interest.

**ANSWER:** Paragraph 30 purports to state legal conclusions and contains Plaintiffs' characterization of their claims and the putative class to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 30, except admit that Plaintiffs purport to assert the claims alleged in the Amended Complaint on behalf of the putative class alleged therein.

31.     The members of the Class are so numerous that joinder of all members is impracticable. NAPCO common stock is actively traded on the NASDAQ and millions of shares were sold in the Offering. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, there are likely hundreds, if not thousands, of members in the proposed Class. Record owners and other Class members may be identified from records maintained by NAPCO or its transfer agent and may be notified of the pendency of this action using a form of notice customarily used in securities class actions.

**ANSWER:** Paragraph 31 purports to state legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 31, except admit that NAPCO common stock traded on the NASDAQ during Class Period.

32.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intend to prosecute this action vigorously.

**ANSWER:** Paragraph 32 purports to state legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 32 and on that basis deny them.

33. Plaintiffs' claims are typical of the claims of the other members of the Class because Plaintiffs and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants. Plaintiffs do not have any interests antagonistic to, or in conflict with, those of the Class.

**ANSWER:** Paragraph 33 purports to state legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 33 regarding Plaintiffs' and alleged Class members' claims and damages or their respective interests, and on that basis deny them. Defendants otherwise deny the allegations in Paragraph 33.

34. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including:

      (a)     whether Defendants violated the Exchange Act and/or the Securities Act;

      (b)     whether Defendants misrepresented and/or omitted material facts; and

      (c)     whether and to what extent Class members have sustained damages, as

well as the appropriate measure of damages.

**ANSWER:** Paragraph 34 purports to state legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 34.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it exceedingly difficult, if not impossible, for Class members to individually seek redress for the wrongful conduct alleged. Plaintiffs know of no

- 13 -

difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

**ANSWER:** Paragraph 35 purports to state legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 35.

## V.    THE COMPANY AND ITS BUSINESS

36.    Defendant NAPCO designs and manufactures electronic security devices, provides wireless communication services for intrusion and fire alarm systems, and offers school safety solutions. The security systems it provides include access control, door-locking, intrusion and fire alarm, and video surveillance. The Company sells its products primarily to independent distributors, dealers, and installers of security equipment.

**ANSWER:** Defendants deny the allegations in Paragraph 36, except admit that NAPCO manufactures and designs high-tech electronic security devices, cellular communication services for intrusion and fire alarm systems as well as provides school safety solutions. Defendants further admit that its security products encompass access control systems, door-locking products, intrusion and fire alarm systems and video surveillance products, which are sold principally to independent distributors, dealers, and installers of security equipment.

37.    Approximately two-thirds of NAPCO's revenues are generated by equipment sales. The remainder are recurring revenues from monthly subscription fees it charges to provide wireless services for communicating security breaches and fire alarms.

**ANSWER:** Defendants admit that NAPCO generates revenue from equipment sales and wireless services provided for equipment. Defendants deny the remaining allegations in Paragraph 37.

38.    The Company is headquartered in Amityville, New York, and manufactures its products in the Dominican Republic. NAPCO's fiscal year begins on July 1 and ends on June 30. Accordingly, its first quarter ("1Q") ends on September 30, its second quarter ("2Q") ends on December 31, its third quarter ("3Q") ends on March 31, and its fourth quarter ("4Q") ends on June 30.

- 14 -

**ANSWER:** Defendants admit the allegations in Paragraph 38.

## VI.    ALLEGATIONS UNDER THE EXCHANGE ACT

### A.    The Exchange Act Defendants' Fraudulent Scheme to Manage NAPCO's Income-Related Metrics by Manipulating Its Inventory and Cost of Goods Sold

39.    At the end of the Class Period, on August 18, 2023, NAPCO admitted that its previously-issued interim financial statements for the first three quarters of fiscal 2023, ended September 30, 2022 ("1Q23"), December 31, 2022 ("2Q23"), and March 31, 2023 ("3Q23") would need to be restated and "should no longer be relied upon." On September 1, 2023, NAPCO filed with the SEC amended quarterly reports on Form 10-Q/A that restated NAPCO's interim financial statements for 1Q23, 2Q23, and 3Q23 (the "Restatement").

**ANSWER:** Exchange Act Defendants admit that, on September 1, 2023, the Company filed Form 10-Q/As. To the extent the remaining allegations in Paragraph 39 purport to characterize, rely on, or quote NAPCO's August 18, 2023 Form 8-K or the September 1, 2023 Form 10-Q/As, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 39. The allegations in Paragraph 39 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 39.

40.    In announcing the need for the Restatement, NAPCO acknowledged that the inaccurate financial metrics the Company had reported for 1Q23, 2Q23, and 3Q23 stemmed from the improper overstatement of the inventory NAPCO possessed at the end of each affected quarter. This overstatement of inventory resulted in a concomitant: (i) understatement of the equipment inventory the Company had sold—*i.e.*, cost of goods sold; and (ii) overstatement of NAPCO's income-related metrics.

**ANSWER:** To the extent the allegations in Paragraph 40 purport to characterize or rely on NAPCO's August 18, 2023 Form 8-K, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants

otherwise deny the allegations in Paragraph 40.  The allegations in Paragraph 40 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 40.

41.     Several former employees ("FEs") of NAPCO described a practice in which, during certain quarters, NAPCO employees were directed to delay shipping sold inventory to customers until after the beginning of the next quarter. On such occasions, the sold inventory remained warehoused at the Company's facilities.

**ANSWER:**  Exchange Act Defendants lack knowledge or information as to the identity of or basis of knowledge of the alleged Former Employees ("FEs") relied upon by Plaintiffs sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 41 and on that basis deny them.  The allegations in Paragraph 41 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 41.

42.     FE1, FE2, and FE3 each recounted NAPCO's practice of halting shipments of sold inventory to customers before the close of a fiscal quarter. FE1 was midlevel manager within NAPCO's Continental Access business for over a decade, including throughout the Class Period. FE2 worked at NAPCO for a number of years, including during NAPCO's 1Q23 and 2Q23. FE2's responsibilities included acquiring and shipping inventory within his[3] business division, and he had access to inventory levels at NAPCO. FE3 was a midlevel manager at NAPCO for several years, until early 2023.

**ANSWER:**  Exchange Act Defendants lack knowledge or information as to the identity of or basis of knowledge of the FE1, FE2, and FE3 relied upon by Plaintiffs sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 42 and on that basis deny them.  The allegations in Paragraph 42 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 42.

---

[3] All FEs are referenced using male gender pronouns to protect their identities. Likewise, the job descriptions and dates of employment of these FEs are intentionally vague in order to protect their identities.

43.     According to FE1 and FE2, the Company would stop shipping out inventory, and would instead ship that inventory during the following quarter. FE1 and FE2 both stated that in many of these instances, the inventory was already sitting in NAPCO's warehouse facilities. FE1 further stated that in those situations, the warehoused inventory had been prepared for shipment to customers. FE3 confirmed that in such instances, the warehoused inventory had already been sold to customers.

**ANSWER:**  Exchange Act Defendants lack knowledge or information as to the identity of or basis of knowledge of the FE1 and FE2 relied upon by Plaintiffs sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 43 and on that basis deny them.  The allegations in Paragraph 43 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 43.

44.     FE1 reported that NAPCO's practice of withholding shipments occurred frequently during his employment, and believed that it likely occurred during 1Q23, 2Q23, and 3Q23. FE3 stated that this practice occurred during the quarter before the Class Period (ended June 30, 2022), 1Q23 and 2Q23. FE2 and FE3 further stated that NAPCO had been engaging in the practice for years.

**ANSWER:**  Exchange Act Defendants lack knowledge or information as to the identity of or basis of knowledge of the FE1, FE2, and FE3 relied upon by Plaintiffs sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 44 and on that basis deny them.  The allegations in Paragraph 44 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 44.

45.     FE3 relayed that NAPCO withheld shipments of sold inventory in order to "sandbag the numbers," and characterized the practice as intentional.

**ANSWER:**  Exchange Act Defendants lack knowledge or information as to the identity of or basis of knowledge of the FE3 relied upon by Plaintiffs sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 45 and on that basis deny them.  The allegations in Paragraph 45 are not directed at Director Defendants and therefore no response is required.  To the

extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 45.

46.    FE1 reported that he was informed by insiders at NAPCO that the directive to halt shipments prior to the end of the quarter came from defendant Buchel. As FE1 explained, this directive was, in turn, given to the Vice President of Sales and the Vice President of Operations.

**ANSWER:**  Exchange Act Defendants lack knowledge or information as to the identity of or basis of knowledge of the FE1 relied upon by Plaintiffs sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 46 and on that basis deny them.  The allegations in Paragraph 46 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 46.

47.    FE2 personally received directives not to ship out inventory, and confirmed that he received that instruction from the Company's Vice President of Operations. FE2 understood that the Vice President of Operations had received the directive to stop shipping inventory from defendant Buchel.

**ANSWER:**  Exchange Act Defendants deny that FE2 personally received directives not to ship out inventory.  Defendants otherwise lack knowledge or information as to the identity of or basis of knowledge of the FE2 relied upon by Plaintiffs sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 47 and on that basis deny them.  The allegations in Paragraph 47 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 47.

48.    FE3 identified two sales directors at NAPCO who were told by NAPCO's executive team to stop shipping inventory. According to FE3, one of these sales directors was instructed to keep the practice "quiet." FE3 recounted that the other sales director personally told him about the practice.

**ANSWER:**  Exchange Act Defendants lack knowledge or information as to the identity of or basis of knowledge of the FE3 relied upon by Plaintiffs sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 48 and on that basis deny them.  The allegations in Paragraph 48 are not directed at Director Defendants and therefore no response is required.  To the

- 18 -

extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 48.

49.    FE1 and FE3 both reported that NAPCO's practice of withholding shipments of sold inventory was well-known within the Company. According to FE3, employees openly discussed the practice amongst themselves, but were afraid to raise it with upper management. FE3 recounted being told by co-workers, "It is what it is."

**ANSWER:**  Exchange Act Defendants lack knowledge or information as to the identity of or basis of knowledge of the FE1 and FE3 relied upon by Plaintiffs sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 49 and on that basis deny them.  The allegations in Paragraph 49 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 49.

50.    Upon information and belief, when NAPCO withheld the shipment of sold inventory, the Exchange Act Defendants overstated NAPCO's reported inventory, by improperly counting sold product as inventory, and thus understated the cost of the equipment inventory the Company sold during the quarter—*i.e.*, the cost of goods sold.

**ANSWER:**  Exchange Act Defendants deny the allegations in Paragraph 50.  The allegations in Paragraph 50 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 50.

51.    Because cost of goods sold has a direct bearing on a company's income-related metrics, this enabled the Exchange Act Defendants to inflate NAPCO's reported net income and related results during 1Q23, 2Q23, and 3Q23. Through this scheme, the Exchange Act Defendants reverse-engineered and artificially managed NAPCO's financial results in order to meet internal targets and market expectations, including analysts' estimates.

**ANSWER:**  Exchange Act Defendants deny the allegations in Paragraph 51.  The allegations in Paragraph 51 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 51.

**B.**     **The Restatement Is an Admission that NAPCO's Interim Financial Statements for Fiscal 2023 Violated GAAP and Were Materially Inaccurate**

52.     Generally Accepted Accounting Principles ("GAAP") generally encompasses those conventions, rules and procedures necessary to define accepted accounting practices at a particular time. SEC Regulation S-X states that financial statements filed with the SEC that are not prepared in compliance with GAAP are "presumed to be misleading or inaccurate." 17 C.F.R. §210.4-01(a)(1). Regulation S-X also requires that interim financial statements filed with the SEC comply with GAAP. 17 C.F.R. §210.10-01(a).

**ANSWER:**  To the extent the allegations in Paragraph 52 purport to characterize, rely on, or quote GAAP and 17 C.F.R. §210.4-01(a)(1), Exchange Act Defendants respectfully refer to them for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 52.  The allegations in Paragraph 52 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 52.

53.     NAPCO has now admitted that the interim financial statements it issued to investors and filed with the SEC for the first three quarters of fiscal 2023 were materially inaccurate, presented in violation of GAAP, and "should no longer be relied upon." Accordingly, each of the interim financial statements for those quarters is presumed to be misleading and inaccurate pursuant to the SEC's Regulation S-X.

**ANSWER:**  Paragraph 53 purports to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 53 purport to characterize, rely on, or quote NAPCO's August 18, 2023 Form 8-K, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 53.  The allegations in Paragraph 53 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 53.

54.     By virtue of the Restatement, *NAPCO itself* has concluded that the now-restated interim financial statements for 1Q23, 2Q23, and 3Q23 that the Company issued during the Class

- 20 -

Period were materially misstated—since only materially misstated financial statements are to be corrected and re-reported on a retroactive basis.[4]

**ANSWER:**  Paragraph 54 purports to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 54 purport to characterize or rely on NAPCO's August 18, 2023 Form 8-K or September 1, 2023 Form 10-Q/As and FASB, ASC, and CSAB accounting materials cited by Plaintiffs, Exchange Act Defendants respectfully refer to such documents and materials for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 54.  The allegations in Paragraph 54 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 54.

55.    Thus, there is no dispute that NAPCO's financial statements and financial disclosures were materially inaccurate throughout the Class Period.

**ANSWER:**  Paragraph 55 purports to state legal conclusions to which no response is required.  To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 55, except admit that certain aspects of NAPCO's financial statements were restated in the September 1, 2023 Form 10-Q/As.  The allegations in Paragraph 55 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 55.

56.    The Exchange Act Defendants have also admitted that, in addition to NAPCO's preexisting internal control deficiencies, the Restatement "demonstrated an additional material weakness in [its] internal controls over financial reporting."[5]

---

[4] *See, e.g.*, Financial Accounting Standards Board's ("FASB") Accounting Standards Codification ("ASC") Topic 250, *Accounting Changes and Error Corrections*, SEC Codification of Staff Accounting Bulletins ("CSAB") Topic 1M *Financial Statements, Materiality* and Topic 1-N, *Considering the Effects of Prior Year Misstatements When Quantifying Misstatements in Current Year Financial Statements*. According to the FASB, ASC is the source of authoritative GAAP to be applied to nongovernmental entities.

[5] A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement in an entity's financial statements will not be prevented or detected on a timely basis.

**ANSWER:**  To the extent the allegations in Paragraph 56 purport to characterize, rely on, or quote NAPCO's August 18, 2023 Form 8-K, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 56.  The allegations in Paragraph 56 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 56.

57.    GAAP, as set forth in ASC Topic No. 250, *Accounting Changes and Error Corrections*, provides that errors in previously-issued financial statements are to be corrected via a restatement of the previously-issued financial statements. Adjustments related thereto are to be reported in the restatement as "error corrections."

**ANSWER:**  To the extent the allegations in Paragraph 57 purport to characterize, rely on, or quote ASC Topic No. 250, Exchange Act Defendants respectfully refer to the document for its complete and accurate contents, deny any allegations inconsistent with it, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 57.  The allegations in Paragraph 57 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 57.

58.    When NAPCO issued the Restatement on September 1, 2023, after the Class Period, it filed with the SEC amended quarterly reports on Form 10-Q/A that restated NAPCO's interim financial statements for 1Q23, 2Q23 and 3Q23 to correct errors related to the Company's reported inventory, cost of goods sold, net income, income per share, operating income, gross profit, and gross margins.

**ANSWER:**  Exchange Act Defendants admit that, on September 1, 2023, the Company filed Form 10-Q/As.  To the extent the allegations in Paragraph 58 purport to characterize or rely on NAPCO's September 1, 2023 Form 10-Q/As, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 58.  The allegations in Paragraph 58 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 58

59.     Throughout the Class Period, the Exchange Act Defendants knew, or recklessly disregarded, that they had caused NAPCO to issue interim financial statements for 1Q23, 2Q23, and 3Q23 that were not presented in accordance with GAAP because those financial statements overstated NAPCO's net income and related metrics, by improperly overstating the Company's inventory and understating its cost of goods sold.

**ANSWER:**  Paragraph 59 purports to state legal conclusions to which no response is required.  To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 59.  The allegations in Paragraph 59 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 59.

60.     By doing so, the Exchange Act Defendants violated the provisions set forth in Section 13 of the Exchange Act, which required them to: (i) present NAPCO's business activities in a manner that accurately and fairly reflected its transactions; and (ii) maintain a system of internal accounting controls sufficient to provide reasonable assurances that NAPCO's financial statements conformed to GAAP, as follows:

> Every issuer which has a class of securities registered pursuant to Section 78I of this title and every issuer which is required to file reports pursuant to Section 78o(d) of this title shall --
>
> A.     make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer;
>
> B.     devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that --
>
> > (I)     transactions are executed in accordance with management's general or specific authorization;
> >
> > (II)     transactions are recorded as necessary (I) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (II) to maintain accountability for assets;
> >
> > (III)     access to assets is permitted only in accordance with management's general or specific authorization; and

(IV) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences[.] 15 U.S.C. §77m(2)(A)-(B)(i)-(iv).

**ANSWER:** Paragraph 60 purports to state legal conclusions to which no response is required. To the extent the allegations in Paragraph 60 purport to characterize or rely on 15 U.S.C. §77m(2)(A)-(B)(i)-(iv), Exchange Act Defendants respectfully refer to such statute for its complete and accurate contents, deny any allegations inconsistent with it, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 60. The allegations in Paragraph 60 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 60.

61.     The basic accounting precept that expenses be recorded in the same period in which the corresponding benefit is realized is arguably the most fundamental tenet of accrual accounting. *See* FASB Statement of Financial Accounting Concepts No. 8, *Conceptual Framework for Financial Reporting*.

**ANSWER:** To the extent the allegations in Paragraph 61 purport to characterize or rely on FASB Statement of Financial Accounting Concepts No. 8, *Conceptual Framework for Financial Reporting*, Exchange Act Defendants respectfully refer to the document for its complete and accurate contents, deny any allegations inconsistent with it, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 61 and on that basis deny the allegations in Paragraph 61. The allegations in Paragraph 61 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 61.

62.     GAAP, as set forth in ASC Topic No. 330, *Inventories*, provides that the primary objective of accounting for inventories is the proper determination of income, through the process of matching appropriate costs against revenues.

**ANSWER:** To the extent the allegations in Paragraph 62 purport to characterize or rely on ASC Topic No. 330, Exchange Act Defendants respectfully refer to the document for its complete and accurate contents, deny any allegations inconsistent with it, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis deny the allegations in Paragraph 62. The allegations in Paragraph 62 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 62.

63.     These accounting principles are neither complex, nor a matter of subjective interpretation or opinion. The Exchange Act Defendants knew, or recklessly ignored, that NAPCO's interim financial statements for 1Q23, 2Q23, and 3Q23 were presented in violation of these provisions of GAAP, and were materially false and misleading.

**ANSWER:**  Paragraph 63 purports to state legal conclusions to which no response is required.  To the extent a response is required, Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 63 and on that basis deny the allegations in the first sentence of Paragraph 63.  The Exchange Act Defendants deny the allegations in the second sentence of Paragraph 63.  The allegations in Paragraph 63 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 63.

### C.     NAPCO's Fraudulent Financial Reporting of Inventory, Cost of Goods Sold, and Income-Related Metrics

64.     The Exchange Act Defendants' scheme to manage NAPCO's quarterly results by retaining sold inventory had the intended effect for 1Q23, 2Q23, and 3Q23 of understating the cost of equipment inventory NAPCO sold (*i.e.*, cost of goods sold), which in turn, overstated its income-related metrics for each of those quarters. The quantitative impact of the Exchange Act Defendants' scheme is set forth below.

**ANSWER:**  Exchange Act Defendants deny the allegations in Paragraph 64.

65.     For 1Q23, ended September 30, 2022, NAPCO's cost of goods sold was understated by *14.45%*, which in turn, overstated its income-related metrics as follows:

- Net income was overstated by *107.59%*;

- Income per share was overstated by *112.5%*;

- Operating income was overstated by *98.71%*; and

- Gross profit and gross margins were each overstated by *24.72%*.

**ANSWER:**  To the extent the allegations in Paragraph 65 purport to characterize or rely on NAPCO's November 7, 2022 Form 10-Q or September 1, 2023 Form 10-Q/A for Q1 2023, Exchange Act Defendants respectfully refer to these documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 65.P The allegations in Paragraph 65 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 65.

66.     For 2Q23, ended December 31, 2022, NAPCO's cost of goods sold was understated by *18.27%*, which in turn, overstated its income-related metrics as follows:

- Net income was overstated by *114.97%*;

- Income per share was overstated by *109.1%*;

- Operating income was overstated by *118.02%*; and

- Gross profit and gross margins were each overstated by *35.59%*.

**ANSWER:**  To the extent the allegations in Paragraph 66 purport to characterize or rely on NAPCO's February 6, 2023 Form 10-Q or September 1, 2023 Form 10-Q/A for Q2 2023, Exchange Act Defendants respectfully refer to these documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 66.  The allegations in Paragraph 66 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 66.

67.     In addition, for the first six months of fiscal 2023, ended December 31, 2022, NAPCO's cost of goods sold was understated by *16.47%*, which in turn, overstated its income-related metrics as follows:

- Net income was overstated by *111.72%*;

- Income per share was overstated by *110.53%*;

- Operating income was overstated by *109.2%*; and

- Gross profit and gross margins were each overstated by *30.11*%.

- 26 -

**ANSWER:** To the extent the allegations in Paragraph 67 purport to characterize or rely on NAPCO's February 6, 2023 Form 10-Q or September 1, 2023 Form 10-Q/A for Q2 2023, Exchange Act Defendants respectfully refer to these documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 67. The allegations in Paragraph 67 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 67.

68.    For 3Q23, ended March 31, 2023, NAPCO's cost of goods sold was understated by *6.26%*, which in turn, overstated its income-related metrics as follows:

- Net income was overstated by *13.52%*;

- Income per share was overstated by *11.5%*;

- Operating income was overstated by *13.21%*; and

- Gross profit and gross margins were each overstated by *6.54%*.

**ANSWER:** To the extent the allegations in Paragraph 68 purport to characterize or rely on NAPCO's May 8, 2023 Form 10-Q or September 1, 2023 Form 10-Q/A for Q3 2023, Exchange Act Defendants respectfully refer to these documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 68. The allegations in Paragraph 68 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 68.

69.    In addition, for the first nine months of fiscal 2023, ended March 31, 2023, NAPCO's cost of goods sold was understated by *13.44%*, which in turn, overstated its income-related metrics as follows:

- Net income was overstated by *55.1%*;

- Income per share was overstated by *55.56%*;

- Operating income was overstated by *54.55%*; and

- Gross profit and gross margins were each overstated by *20.12%*.

- 27 -

**ANSWER:** To the extent the allegations in Paragraph 69 purport to characterize or rely on NAPCO's Form 10-Q or September 1, 2023 Form 10-Q/A for Q3 2023, Exchange Act Defendants respectfully refer to these documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 69. The allegations in Paragraph 69 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 69.

70.    As planned, the Exchange Act Defendants' fraud enabled NAPCO to meet—and even exceed—analysts' estimates during the Class Period. For example, as defendant Soloway highlighted in the Company's press release for 1Q23, NAPCO had "easily exceed[ed] published street consensus estimates" by reporting EPS of $0.17.[6] In reality, NAPCO would not have met— let alone exceeded—the analysts' consensus estimate of 1Q23 EPS of $0.13, since its actual EPS for 1Q23 was just $0.08. Likewise, when discussing NAPCO's financial results for 2Q23 during its February 6, 2023 conference call, defendant Soloway stated that NAPCO had been "able to beat published Street consensus estimates" by reporting EPS of $0.23. As with the previous quarter, NAPCO would not have met or exceeded the analysts' consensus estimate of 2Q23 EPS of $0.14, since its actual EPS for 2Q23 was $0.11.

**ANSWER:** The first sentence of Paragraph 70 purports to state legal conclusions to which no response is required. To the extent the allegations in Paragraph 70 purport to characterize, rely on, or quote NAPCO's November 7, 2022 press release or February 6, 2023 earnings call, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 70. The allegations in Paragraph 70 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 70.

---

[6] EPS is equivalent to income per share.

D.      **Materially False and Misleading Statements Made During the Class Period**

1.      **1Q23 Financial Results**

71.      The Class Period begins on November 7, 2022, when NAPCO filed with the SEC its quarterly report on Form 10-Q for the first quarter of fiscal 2023, September 30, 2022 (the "1Q23 Form 10-Q"), which was signed by defendants Soloway and Buchel. For the quarter, the 1Q23 Form 10-Q reported:

- Total inventory (current and non-current) of $63,837,000 as of September 30, 2022;

- Cost of goods sold of $21,326,000;

- Net income of $6,402,000;

- Income per share of $0.17;

- Operating income of $7,249,000;

- Gross profit of $18,167,000; and

- Gross margins of 46%.

**ANSWER:**  The first sentence of Paragraph 71 purports to state a legal conclusion to which no response is required.  Exchange Act Defendants admit that, on November 7, 2022, the Company filed a Form 10-Q which was signed by Defendants Soloway and Buchel.  To the extent the allegations in Paragraph 71 purport to characterize or rely on NAPCO's November 7, 2022 Form 10-Q, Exchange Act Defendants respectfully refer to this document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 71.  The allegations in Paragraph 71 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 71.

72.      The statements referenced above in ¶71 were materially false and misleading when made because the Exchange Act Defendants had engaged in a scheme to reverse-engineer and artificially manage NAPCO's financial results by retaining sold product at the end of the quarter

- 29 -

and improperly counting it as inventory, which overstated the Company's reported inventory and understated its cost of goods sold—and in turn, inflated NAPCO's income. As a result—as the Company has now admitted—(i) NAPCO's financial results were presented in violation of GAAP and were materially inaccurate; and (ii) for 1Q23, NAPCO's actual financial results were as follows:

- Total inventory (current and non-current) was $60,236,000 as of September 30, 2022, and had been overstated by **5.98%**;

- Cost of goods sold was $24,927,000, and had been understated by **14.45%**;

- Net income was $3,084,000, and had been overstated by **107.59%**;

- Income per share was $0.08, and had been overstated by **112.5%**;

- Operating income was $3,648,000, and had been overstated by **98.71%**;

- Gross profit was $14,566,000, and had been overstated by **24.72%**; and

- Gross margins were approximately 36.9%, and had been overstated by **24.72%**.

**ANSWER:**  Paragraph 72 purports to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 72 purport to characterize or rely on NAPCO's November 7, 2022 Form 10-Q or September 1, 2023 Form 10-Q/A for Q1 2023, Exchange Act Defendants respectfully refer to these documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 72.  The allegations in Paragraph 72 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 72.

73.    In addition, the 1Q23 Form 10-Q represented that NAPCO had two preexisting "material weaknesses in internal control." One material weakness "related to ineffective information technology general controls (ITGCs) in the area of user access and lack of effective program change-management over certain information technology (IT) systems that support the Company's financial reporting processes." The second material weakness "related to the reserve

- 30 -

for excess and slow-moving inventory" and "was a result of a lack of effective review and reconciliation controls over [] forecasted sales and usage data." The 1Q23 Form 10-Q further stated that, although "the Company's internal controls over financial reporting were not effective" as a result of these material weaknesses, the material weaknesses had "not result[ed] in any identified misstatements to [NAPCO's] financial statements and there were no changes to [its] previously released financial results."

**ANSWER:** To the extent the allegations in Paragraph 73 purport to characterize, rely on, or quote NAPCO's November 7, 2022 Form 10-Q, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 73.  The allegations in Paragraph 73 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 73.

74.     The statements referenced above in ¶73 were materially false and misleading when made because the Exchange Act Defendants knew, or recklessly disregarded, but failed to disclose that: (i) NAPCO suffered from additional material weaknesses in internal controls over financial reporting; (ii) those material weaknesses had allowed the Exchange Act Defendants to reverse-engineer and artificially manage NAPCO's financial results by retaining sold product at the end of the quarter and improperly counting it as inventory; and (iii) as a result, NAPCO's material weaknesses in internal controls *had* "result[ed] in . . . misstatements to the [Company's] financial statements" for 1Q23.

**ANSWER:** Paragraph 74 purports to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 74 purport to characterize or rely on NAPCO's September 1, 2023 Form 10-Q/A for Q1 2023, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 74.  The allegations in Paragraph 74 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 74.

- 31 -

75.     Also on November 7, 2022, NAPCO issued a press release announcing its financial results for 1Q23. The Company filed the press release with the SEC as an exhibit to a Current Report on Form 8-K, which was signed by defendant Buchel.

**ANSWER:**  Exchange Act Defendants admit the allegations in Paragraph 75.  The allegations in Paragraph 75 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 75.

76.     The press release reported the same metrics for the quarter as the 1Q23 Form 10-Q with respect to inventory, cost of goods sold, net income, income per share, operating income, gross profit, and gross margins. Those reported results were materially false and misleading for the reasons set forth above in ¶72.

**ANSWER:**  The second sentence of Paragraph 76 purports to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 76 purport to characterize or rely on NAPCO's November 7, 2022 press release and September 1, 2023 Form 10-Q/A for Q1 2023, Exchange Act Defendants respectfully refer to these documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 76.  The allegations in Paragraph 76 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 76.

77.     In the press release, defendant Soloway commented that "NAPCO executed exceptionally well in the first quarter, easily exceeding published street consensus estimates for Q1 on . . . Net Income[] [and] EPS . . . ." During a conference call held later in the day on November 7, 2022, defendant Soloway described NAPCO's "fiscal first quarter [of] 2023" as "a record breaking successful one."

**ANSWER:**  To the extent the allegations in Paragraph 77 purport to characterize, rely on, or quote NAPCO's November 7, 2022 press release or November 7, 2022 conference call, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 77. The allegations in Paragraph 77 are not directed at Director Defendants and therefore no response is

required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 77.

78.     The statements referenced above in ¶77 were materially false and misleading when made because the Exchange Act Defendants had engaged in a scheme to reverse-engineer and artificially manage NAPCO's financial results by retaining sold product at the end of the quarter and improperly counting it as inventory, which overstated the Company's reported inventory and understated its cost of goods sold—and in turn, inflated NAPCO's income. As a result—as the Company has now admitted—NAPCO's financial results for 1Q23 were presented in violation of GAAP and were materially inaccurate, as set forth above in ¶72. In truth, NAPCO had not merely "executed exceptionally well in the first quarter," but had also benefited from the Exchange Act Defendants' fraud. In addition, 1Q23 had not been "a record breaking successful" quarter, and NAPCO had only been able to "easily exceed[] published street consensus estimates for Q1 on" net income and EPS because of the Exchange Act Defendants' fraud.

**ANSWER:**  Paragraph 78 purports to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 78 purport to characterize, rely on, or quote NAPCO's November 7, 2022 press release, November 7, 2022 conference call, or September 1, 2023 Form 10-Q/A for Q1 2023, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 78.  The allegations in Paragraph 78 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 78.

### 2. 2Q23 Financial Results

79.     On February 6, 2023, NAPCO filed with the SEC its quarterly report on Form 10-Q for the second quarter of fiscal 2023, ended December 31, 2022 (the "2Q23 Form 10-Q"), which was signed by defendants Soloway and Buchel. For the quarter, the 2Q23 Form 10-Q reported:

- Total inventory (current and non-current) of $64,192,000 as of December 31, 2022;

- Cost of goods sold of $22,852,000;

- Net income of $8,446,000;

- Income per share of $0.23;

- Operating income of $9,436,000;

- Gross profit of $19,462,000; and

- Gross margins of 46%.

**ANSWER:** Exchange Act Defendants admit that, on February 6, 2023, the Company filed a Form 10-Q that was signed by Defendants Soloway and Buchel. To the extent the allegations in Paragraph 79 purport to characterize or rely on NAPCO's February 6, 2023 Form 10-Q, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 79. The allegations in Paragraph 79 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 79.

80.     The statements referenced above in ¶79 were materially false and misleading when made because the Exchange Act Defendants had engaged in a scheme to reverse-engineer and artificially manage NAPCO's financial results by retaining sold product at the end of the quarter and improperly counting it as inventory, which overstated the Company's reported inventory and understated its cost of goods sold—and in turn, inflated NAPCO's income. As a result—as the Company has now admitted—(i) NAPCO's financial results were presented in violation of GAAP

and were materially inaccurate; and (ii) for 2Q23, NAPCO's actual financial results were as follows:

- Total inventory (current and non-current) was $55,483,000 as of December 31, 2022, and had been overstated by *15.7%*;

- Cost of goods sold was $27,960,000, and had been understated by *18.27%*;

- Net income was $3,929,000, and had been overstated by *114.97%*;

- Income per share was $0.11, and had been overstated by *109.1%*;

- Operating income was $4,328,000, and had been overstated by *118.02%*;

- Gross profit was $14,354,000, and had been overstated by *35.59%*; and

- Gross margins were approximately 33.9%, and had been overstated by *35.59%*.

**ANSWER:**  Paragraph 80 purports to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 80 purport to characterize or rely on NAPCO's February 6, 2023 Form 10-Q, or September 1, 2023 Form 10-Q/A for Q2 2023, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 80.  The allegations in Paragraph 80 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 80.

81.    In addition, for the first six months of fiscal 2023, ended December 31, 2022, the 2Q23 Form 10-Q reported:

- Cost of goods sold of $44,178,000;

- Net income of $14,848,000;

- Income per share of $0.40;

- Operating income of $16,685,000;

- Gross profit of $37,629,000; and

- Gross margins of 46%.

**ANSWER:** To the extent the allegations in Paragraph 81 purport to characterize or rely on NAPCO's February 6, 2023 Form 10-Q, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 81. The allegations in Paragraph 81 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 81.

82.     The statements referenced above in ¶81 were materially false and misleading when made because the Exchange Act Defendants had engaged in a scheme to reverse-engineer and artificially manage NAPCO's financial results by retaining sold product at the end of the quarter and improperly counting it as inventory, which overstated the Company's reported inventory and understated its cost of goods sold—and in turn, inflated NAPCO's income. As a result—as the Company has now admitted—(i) NAPCO's financial results were presented in violation of GAAP and were materially inaccurate; and (ii) for the first six months of fiscal 2023, NAPCO's actual financial results were as follows:

- Cost of goods sold was $52,887,000, and had been understated by *16.47%*;

- Net income was $7,013,000, and had been overstated by *111.72%*;

- Income per share was $0.19, and had been overstated by *110.53%*;

- Operating income was $7,976,000, and had been overstated by *109.2%*;

- Gross profit was $28,920,000, and had been overstated by *30.11%*; and

- Gross margins were approximately 35.4%, and had been overstated by *30.11%*.

**ANSWER:** Paragraph 82 purports to state legal conclusions to which no response is required. To the extent the allegations in Paragraph 82 purport to characterize or rely on NAPCO's February 6, 2023 Form 10-Q or September 1, 2023 Form 10-Q/A for Q2 2023, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 82. The allegations in Paragraph 82 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 82.

83.     In addition, the 2Q23 Form 10-Q reiterated that NAPCO had two preexisting "material weaknesses in internal control." One material weakness "related to ineffective information technology general controls (ITGCs) in the area of user access and lack of effective program change-management over certain information technology (IT) systems that support the Company's financial reporting processes." The second material weakness "related to the reserve for excess and slow-moving inventory" and "was a result of a lack of effective review and reconciliation controls over [] forecasted sales and usage data." The 2Q23 Form 10-Q further stated that, although "the Company's internal controls over financial reporting were not effective" as a result of these material weaknesses, the material weaknesses had "not result[ed] in any identified misstatements to [NAPCO's] financial statements and there were no changes to [its] previously released financial results."

**ANSWER:**  To the extent the allegations in Paragraph 83 purport to characterize, rely on, or quote NAPCO's February 6, 2023 Form 10-Q, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 83.  The allegations in Paragraph 83 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 83.

84.     The statements referenced above in ¶83 were materially false and misleading when made because the Exchange Act Defendants knew, or recklessly disregarded, but failed to disclose that: (i) NAPCO suffered from additional material weaknesses in internal controls over financial reporting; (ii) those material weaknesses had allowed the Exchange Act Defendants to reverse-engineer and artificially manage NAPCO's financial results by retaining sold product at the end of the quarter and improperly counting it as inventory; and (iii) as a result, NAPCO's material

weaknesses in internal controls *had* "result[ed] in . . . misstatements to the [Company's] financial statements" for 2Q23.

**ANSWER:**  Paragraph 84 purports to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 84 purport to characterize or rely on NAPCO's September 1, 2023 Form 10-Q/A for Q2 2023, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 84.  The allegations in Paragraph 84 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 84.

85.    Also on February 6, 2023, NAPCO issued a press release announcing its financial results for 2Q23. The Company filed the press release with the SEC as an exhibit to a Current Report on Form 8-K, which was signed by defendant Buchel.

**ANSWER:**  Exchange Act Defendants admit the allegations in Paragraph 85.  The allegations in Paragraph 85 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 85.

86.    The press release reported the same metrics for the quarter as the 2Q23 Form 10-Q with respect to inventory, cost of goods sold, net income, income per share, operating income, gross profit, and gross margins. Those reported results were materially false and misleading for the reasons set forth above in ¶80.

**ANSWER:**  The second sentence of Paragraph 86 purports to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 86 purport to characterize or rely on NAPCO's February 6, 2023 press release or September 1, 2023 Form 10-Q/A for Q2 2023, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 86.  The allegations in Paragraph 86 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 86.

87.    The press release also reported the same metrics for the first six months of fiscal 2023 as the 2Q23 Form 10-Q with respect to inventory, cost of goods sold, net income, income

- 38 -

per share, operating income, and gross profit. Those reported results were materially false and misleading for the reasons set forth above in ¶82.

**ANSWER:** The second sentence of Paragraph 87 purports to state legal conclusions to which no response is required. To the extent the allegations in Paragraph 87 purport to characterize or rely on NAPCO's February 6, 2023 press release or September 1, 2023 Form 10-Q/A for Q2 2023, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 87. The allegations in Paragraph 87 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 87.

88.    In addition, the press release emphasized that NAPCO's "[n]et income for the quarter *was a quarterly record $8.4 million or $0.23 per diluted share*." Commenting on the quarterly results, defendant Soloway likewise highlighted that "*net income of $8.4 million [was] the largest quarterly net income in the Company's history*." He further stated that "*[o]verall gross margins were 46%*," representing "*a significant increase over last year's Q2 gross margin of 34%*." defendant Soloway emphasized that "*NAPCO continued to execute exceptionally well in the second quarter, with strong growth in Q2 on*" metrics including "*Net Income*" and "*EPS*," and attributed "*NAPCO's outstanding record breaking results for the first half of fiscal 2023*" to "*the strong demand [for] each of our product lines . . . .*"

**ANSWER:** To the extent the allegations in Paragraph 88 purport to characterize, rely on, or quote NAPCO's February 6, 2023 press release, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 88. The allegations in Paragraph 88 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 88.

89.    The statements referenced above in ¶88 were materially false and misleading when made because the Exchange Act Defendants had engaged in a scheme to reverse-engineer and artificially manage NAPCO's financial results by retaining sold product at the end of the quarter

and improperly counting it as inventory, which overstated the Company's reported inventory and understated its cost of goods sold—and in turn, inflated NAPCO's income. As a result—as the Company has now admitted—NAPCO's financial results for 2Q23 and for the first six months of fiscal 2023 were presented in violation of GAAP and were materially inaccurate, as set forth above in ¶80 and ¶82. Because of the Exchange Act Defendants' fraud, NAPCO's 2Q23 "net income" was not "$8.4 million," but was actually $3.9 million, and therefore was not "a quarterly record" or "the largest quarterly net income in the Company's history." Indeed, NAPCO's actual net income for 2Q23 was far below its quarterly record of $7.8 million, reported in the first quarter of fiscal 2022. Likewise, EPS was not "$0.23 per . . . share," but was actually just $0.11 per share. In addition, "[o]verall gross margins" were not "46%," but were actually 33.9%, and had not "increase[d]" "significant[ly] . . . over last year's Q2 gross margin[s] of 34%." Finally, NAPCO had not "execute[d] exceptionally well in the second quarter," its "strong growth" in net income and EPS was illusory, and its "outstanding record breaking results for the first half of fiscal 2023" were attributable in part to the Exchange Act Defendants' fraud, and not solely to "strong demand" for NAPCO's products.

**ANSWER:**  The first, second, third, and seventh sentences of Paragraph 89 purport to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 89 purport to characterize, rely on, or quote NAPCO's February 6, 2023 press release or September 1, 2023 Form 10-Q/A for Q2 2023, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 89.  The allegations in Paragraph 89 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 89.

90.     Later in the day on February 6, 2023, NAPCO held a conference call to discuss the 2Q23 financial results, during which defendant Soloway stated that NAPCO had been "*able to beat published Street consensus estimates for . . . EPS[] [and] net income*," and attributed the

Company's "*outstanding performance*" to "*the continued strong demand for each of [its] product lines* . . . ." Also during the call, defendant Buchel attributed "*[t]he significant increase in gross profit dollars as well as gross margin* for equipment sales for both[] the 3 and the 6 months ended December 31, 2022," in part to the "*lower cost of certain components*" due to "*improvements within the company's supply chain*."

**ANSWER:** Exchange Act Defendants admit that, on February 6, 2023, the Company hosted a conference call in connection with its Q2 2023 financial results. To the extent the allegations in Paragraph 90 purport to characterize, rely on, or quote NAPCO's February 6, 2023 conference call, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 90. The allegations in Paragraph 90 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 90.

91.    The statements referenced above in ¶90 were materially false and misleading when made because the Exchange Act Defendants had engaged in a scheme to reverse-engineer and artificially manage NAPCO's financial results by retaining sold product at the end of the quarter and improperly counting it as inventory, which overstated the Company's reported inventory and understated its cost of goods sold—and in turn, inflated NAPCO's income. As a result—as the Company has now admitted—NAPCO's financial results for 2Q23 and for the first six months of fiscal 2023 were presented in violation of GAAP and were materially inaccurate, as set forth above in ¶80 and ¶82. In truth, NAPCO had only been "able to beat published Street consensus estimates for" EPS and net income because of the Exchange Act Defendants' fraud. Likewise, NAPCO's "outstanding performance," including "[t]he significant increase in gross profit" and "gross margin[s]" were attributable in part to the Exchange Act Defendants' fraud, and not solely to "continued strong demand" for NAPCO's products or "improvements within" its "supply chain."

**ANSWER:** Paragraph 91 purports to state legal conclusions to which no response is required. To the extent the allegations in Paragraph 91 purport to characterize, rely on, or quote

NAPCO's February 6, 2023 conference call or September 1, 2023 Form 10-Q/A for Q2 2023, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 91. The allegations in Paragraph 91 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 91.

### 3.    3Q23 Financial Results

92.    On May 8, 2023, NAPCO filed with the SEC its quarterly report on Form 10-Q for the third quarter of fiscal 2023, ended March 31, 2023 (the "3Q23 Form 10-Q"), which was signed by defendants Soloway and Buchel. For the quarter, the 3Q23 Form 10-Q reported:

- Total inventory (current and non-current) of $60,786,000 as of March 31, 2023;

- Cost of goods sold of $20,861,000;

- Net income of $10,840,000;

- Income per share of $0.29;

- Operating income of $11,932,000;

- Gross profit of $22,671,000; and

- Gross margins of 52.1%.

**ANSWER:** Exchange Act Defendants admit that, on May 8, 2023, the Company filed a Form 10-Q which was signed by Defendants Soloway and Buchel. To the extent the allegations in Paragraph 92 purport to characterize or rely on NAPCO's May 8, 2023 Form 10-Q, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 92. The allegations in Paragraph 92 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 92.

93.    The statements referenced above in ¶92 were materially false and misleading when made because the Exchange Act Defendants had engaged in a scheme to reverse-engineer and artificially manage NAPCO's financial results by retaining sold product at the end of the quarter

- 42 -

and improperly counting it as inventory, which overstated the Company's reported inventory and understated its cost of goods sold—and in turn, inflated NAPCO's income. As a result—as the Company has now admitted—(i) NAPCO's financial results were presented in violation of GAAP and were materially inaccurate; and (ii) for 3Q23, NAPCO's actual financial results were as follows:

- Total inventory (current and non-current) was $50,685,000 as of March 31, 2023, and had been overstated by *19.93%*;

- Cost of goods sold was $22,253,000, and had been understated by *6.26%*;

- Net income was $9,549,000, and had been overstated by *13.52%*;

- Income per share was $0.26, and had been overstated by *11.5%*;

- Operating income was $10,540,000, and had been overstated by *13.21%*;

- Gross profit was $21,279,000, and had been overstated by *6.54%*; and

- Gross margins were approximately 48.9%, and had been overstated by *6.54%*.

**ANSWER:**  Paragraph 93 purports to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 93 purport characterize or rely on NAPCO's May 8, 2023 Form 10-Q or September 1, 2023 Form 10-Q/A for Q3 2023, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 93.  The allegations in Paragraph 93 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 93.

94.     In addition, for the first nine months of fiscal 2023, ended March 31, 2023, the 3Q23 Form 10-Q reported:

- Cost of goods sold of $65,039,000;

- Net income of $25,688,000;

- Income per share of $0.70 (basic);

- Operating income of $28,617,000;

- Gross profit of $60,300,000; and

- Gross margins of 48.1%.

**ANSWER:** To the extent the allegations in Paragraph 94 purport to characterize or rely on NAPCO's May 8, 2023 Form 10-Q, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 94. The allegations in Paragraph 94 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 94.

95. The statements referenced above in ¶94 were materially false and misleading when made because the Exchange Act Defendants had engaged in a scheme to reverse-engineer and artificially manage NAPCO's financial results by retaining sold product at the end of the quarter and improperly counting it as inventory, which overstated the Company's reported inventory and understated its cost of goods sold—and in turn, inflated NAPCO's income. As a result—as the Company has now admitted—(i) NAPCO's financial results were presented in violation of GAAP and were materially inaccurate; and (ii) for the first nine months of fiscal 2023, NAPCO's actual financial results were as follows:

- Cost of goods sold was $75,140,000, and had been understated by *13.44%*;

- Net income was $16,562,000, and had been overstated by *55.1%*;

- Income per share was $0.45 (basic), and had been overstated by *55.56%*;

- Operating income was $18,516,000, and had been overstated by *54.55%*;

- Gross profit was $50,199,000, and had been overstated by *20.12%*; and

- Gross margins were approximately 40.1%, and had been overstated by *20.12%*.

**ANSWER:** Paragraph 95 purports to state legal conclusions to which no response is required. To the extent the allegations in Paragraph 95 purport to characterize or rely on NAPCO's May 8, 2023 Form 10-Q or September 1, 2023 Form 10-Q/A for Q3 2023, Exchange Act

- 44 -

Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 95. The allegations in Paragraph 95 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 95.

96.    In addition, the 3Q23 Form 10-Q reiterated that NAPCO had two preexisting "material weaknesses in internal control." One material weakness "related to ineffective information technology general controls (ITGCs) in the area of user access and lack of effective program change-management over certain information technology (IT) systems that support the Company's financial reporting processes." The second material weakness "related to the reserve for excess and slow-moving inventory" and "was a result of a lack of effective review and reconciliation controls over [] forecasted sales and usage data." The 3Q23 Form 10-Q further stated that, although "the Company's internal controls over financial reporting were not effective" as a result of these material weaknesses, the material weaknesses had "not result[ed] in any identified misstatements to [NAPCO's] financial statements and there were no changes to [its] previously released financial results."

**ANSWER:**  To the extent the allegations in Paragraph 96 purport to characterize, rely on, or quote NAPCO's May 8, 2023 Form 10-Q, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 96. The allegations in Paragraph 96 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 96.

97.    The statements referenced above in ¶96 were materially false and misleading when made because the Exchange Act Defendants knew, or recklessly disregarded, but failed to disclose that: (i) NAPCO suffered from additional material weaknesses in internal controls over financial reporting; (ii) those material weaknesses had allowed the Exchange Act Defendants to reverse-

- 45 -

engineer and artificially manage NAPCO's financial results by retaining sold product at the end of the quarter and improperly counting it as inventory; and (iii) as a result, NAPCO's material weaknesses in internal controls *had* "result[ed] in . . . misstatements to the [Company's] financial statements" for 3Q23.

**ANSWER:**   Paragraph 97 purports to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 97 purport to characterize or rely on NAPCO's September 1, 2023 Form 10-Q/A for Q3 2023, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 97.  The allegations in Paragraph 97 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 97.

98.     Also on May 8, 2023, NAPCO issued a press release announcing its financial results for 3Q23. The Company filed the press release with the SEC as an exhibit to a Current Report on Form 8-K, which was signed by defendant Buchel.

**ANSWER:**   Exchange Act Defendants admit the allegations in Paragraph 98.  The allegations in Paragraph 98 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 98.

99.     The press release reported the same metrics for the quarter as the 3Q23 Form 10-Q with respect to inventory, cost of goods sold, net income, income per share, operating income, gross profit, and gross margins. Those reported results were materially false and misleading for the reasons set forth above in ¶93.

**ANSWER:**   The second sentence of Paragraph 99 purports to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 99 purport to characterize or rely on NAPCO's May 8, 2023 press release or September 1, 2023 Form 10-Q/A for Q3 2023, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 99.  The allegations in Paragraph 99 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 99.

- 46 -

100.   The press release also reported the same metrics for the first nine months of fiscal 2023 as the 3Q23 Form 10-Q with respect to inventory, cost of goods sold, net income, income per share, operating income, and gross profit. Those reported results were materially false and misleading for the reasons set forth above in ¶95.

**ANSWER:** The second sentence of Paragraph 100 purports to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 100 purport to characterize or rely on NAPCO's May 8, 2023 press release or September 1, 2023 Form 10-Q/A for Q3 2023, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 100.  The allegations in Paragraph 100 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 100.

101.   In addition, the press release highlighted NAPCO's "Quarterly Record Net Income of $10.8 [million]," and defendant Soloway similarly emphasized that "net income of $10.8 million in Q3 was a record-breaker for any quarter in the Company's history," and "the largest quarterly net income in the Company's history . . . ." Defendant Soloway also attributed "NAPCO's outstanding record breaking results, for both Q3 and the first nine months of fiscal 2023" to "strong sales of each of our product lines . . . ."

**ANSWER:**  To the extent the allegations in Paragraph 101 purport to characterize, rely on, or quote NAPCO's May 8, 2023 press release, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 101.  The allegations in Paragraph 101 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 101.

102.   The statements referenced above in ¶101 were materially false and misleading when made because the Exchange Act Defendants had engaged in a scheme to reverse-engineer and artificially manage NAPCO's financial results by retaining sold product at the end of the

- 47 -

quarter and improperly counting it as inventory, which overstated the Company's reported inventory and understated its cost of goods sold—and in turn, inflated NAPCO's income. As a result—as the Company has now admitted—NAPCO's financial results for 3Q23 and for the first nine months of fiscal 2023 were presented in violation of GAAP and were materially inaccurate, as set forth above in ¶93 and ¶95. In truth, NAPCO's 3Q23 "net income" was not "$10.8 million," but was actually $9.5 million, and its "record" and "largest" quarterly net income "in the Company's history" was due in part to the Exchange Act Defendants' fraud. Likewise, "NAPCO's outstanding record breaking results, for both Q3 and the first nine months of fiscal 2023" were attributable in part to the Exchange Act Defendants' fraud, and not solely to "strong sales of each of [its] product lines. . . ."

**ANSWER:**  Paragraph 102 purport to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 102 purport to characterize, rely on, or quote NAPCO's May 8, 2023 press release or September 1, 2023 Form 10-Q/A for Q3 2023, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 102.  The allegations in Paragraph 102 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 102.

103.    During a conference call held later in the day on May 8, 2023, defendant Soloway reiterated that NAPCO's "*fiscal third quarter 2023 was a record-breaking successful one*," and pointed to "the *10th consecutive quarterly [growth] streak*" that the Company was "now on." He further stated that NAPCO had "*a pristine balance sheet* . . . ." During the call, defendant Buchel represented that "*[t]he significant increase in gross profit dollars* as well as gross margin for equipment sales for both the 3 and the 9 months ended March 31, 2023 *[was] primarily due to . . . increases in equipment revenues*[,]" as well as "*the increased availability and lower costs of*

*certain components, lower transportation expenses*," and "*a favorable shift in product mix . . . .*"

**ANSWER:** To the extent the allegations in Paragraph 103 purport to characterize, rely on, or quote NAPCO's May 8, 2023 conference call, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 103. The allegations in Paragraph 103 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 103.

104. The statements referenced above in ¶103 were materially false and misleading when made because the Exchange Act Defendants had engaged in a scheme to reverse-engineer and artificially manage NAPCO's financial results by retaining sold product at the end of the quarter and improperly counting it as inventory, which overstated the Company's reported inventory and understated its cost of goods sold—and in turn, inflated NAPCO's income. As a result—as the Company has now admitted—NAPCO's financial results for 3Q23 and for the first nine months of fiscal 2023 were presented in violation of GAAP and were materially inaccurate, as set forth above in ¶93 and ¶95. In truth, NAPCO's "record-breaking successful" results for 3Q23 were attributable in part to the Exchange Act Defendants' fraud. Likewise, "[t]he significant increase[s] in gross profit dollars as well as gross margin for equipment sales for both the 3 and the 9 months ended March 31, 2023" were attributable in part to the Exchange Act Defendants' fraud, and therefore were not "primarily due to . . . increases in equipment revenues," "the increased availability and lower costs of certain components, lower transportation expenses," and "a favorable shift in product mix . . . ." In addition, NAPCO was not on a "10th consecutive quarterly [growth] streak" because the Company's actual financial results for 1Q23 and 2Q23 had broken any purported growth streak. Finally, NAPCO's "balance sheet" was not "pristine" because its net income, income per share, operating income, gross profit, gross margins, inventory, and

cost of goods sold were each materially misstated as a result of the Exchange Act Defendants'

fraud.

**ANSWER:** Paragraph 104 purports to state legal conclusions to which no response is required. To the extent the allegations in Paragraph 104 purport to characterize, rely on, or quote NAPCO's May 8, 2023 conference call or September 1, 2023 Form 10-Q/A for Q3 2023, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 104. The allegations in Paragraph 104 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 104.

### E.    NAPCO Announces the Restatement

105.    On August 18, 2023, after the close of the markets, NAPCO issued a press release

revealing that the Company would need to restate its financial results for 1Q23, 2Q23, and 3Q23,

and that its previously-issued interim financial statements for those quarters "***should no longer be***

***relied upon***." The press release disclosed that, for those quarters, "inventories were overstated and

COGS [cost of goods sold] was understated, resulting in ***overstated gross profit, operating income***

***and net income for each period***." It further explained that NAPCO was "in the process of

preparing amended Forms 10-Q for each of the first three quarters of fiscal 2023," and provided

the following "preliminary" estimates of NAPCO's overstatement of net income:

| Period End | Net Income - Previously Reported | Net Income - Restated Estimate | $ Difference |
|---|---|---|---|
| First quarter ended September 30, 2022 | $6.4M | $2.9M | $3.5M |
| Second quarter ended December 31, 2022 | $8.4M | $3.7M | $4.7M |
| Third quarter ended March 31, 2023 | $10.8M | $9.5M | $1.3M |

**ANSWER:** Exchange Act Defendants admit that, on August 18, 2023, the Company issued press release with respect to the financial results from the first three quarters of 2023. To the extent the allegations in Paragraph 105 purport to characterize, rely on, or quote NAPCO's August 18, 2023 press release, Exchange Act Defendants respectfully refer to such document for

its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 105.  The allegations in Paragraph 105 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 105.

106.    Finally, the press release revealed that "[d]ue to the . . . restatements, management of the Company has determined that a material weakness existed in the Company's internal controls over financial reporting for each of the first three quarters of fiscal 2023, rendering the Company's disclosure controls and procedures ineffective at the end of each such quarter."

**ANSWER:**  To the extent the allegations in Paragraph 106 purport to characterize, rely on, or quote NAPCO's August 18, 2023 press release, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 106.  The allegations in Paragraph 106 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 106.

107.    Although the press release attempted to characterize the restatement as stemming from innocent "errors" in calculating inventory and cost of goods sold, the significant scope of the estimated overstatements of net income, and the disclosure that a number of additional income-related metrics had been overstated during the first three quarters of fiscal 2023, caused the Company's share price to plummet.

**ANSWER:** Paragraph 107 purport to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 107 purport to characterize, rely on, or quote NAPCO's August 18, 2023 press release, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Exchange Act Defendants otherwise deny the allegations in Paragraph 107.  The allegations in Paragraph 107 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 107.

108.    In response to the press release, the price of NAPCO common stock fell more than *45%*, from a closing price of $38.41 per share on August 18, 2023, to close at $21.11 per share on

- 51 -

Monday, August 21, 2023 (the next trading day), on more than 40 times the previous day's trading volume.

**ANSWER:** Exchange Act Defendants admit that the price of NAPCO common stock closed at $38.41 per share on August 18, 2023 and $21.11 per share on August 21, 2023. Exchange Act Defendants otherwise deny the allegations in Paragraph 108. The allegations in Paragraph 108 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 108.

### F.      Post-Class Period Events

109.    On September 1, 2023, NAPCO filed with the SEC amended Forms 10-Q/A containing the restated financial results for 1Q23, 2Q23, and 3Q23. The Restatement confirmed that NAPCO's income-related metrics had been grossly overstated during the first three quarters of fiscal 2023. For 1Q23, 2Q23, and 3Q23, respectively: (i) net income had been overstated by 107.59%, 114.97%, and 13.52%; (ii) income per share had been overstated by 109.1%, and 11.5%; (iii) operating income had been overstated by 98.71%, 118.02%, and 13.21%; and (iv) gross profit and gross margins had each been overstated by 24.72%, 35.59%, and 6.54%.

**ANSWER:** Exchange Act Defendants admit that, on September 1, 2023, the Company filed Form 10-Q/As. To the extent the allegations in Paragraph 109 purport to characterize, rely on, or quote NAPCO's September 1, 2023 Form 10-Q/As, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 109. The allegations in Paragraph 109 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 109.

110.    On October 27, 2023, NAPCO announced that it would "dismiss its current independent registered public accounting firm, Baker Tilly US, LLP ('Baker Tilly')"—which had served as NAPCO's auditor since 2008—"effective on the Company's filing of its Form 10-Q for

the quarter ending September 30, 2023." Shortly thereafter, on November 3, 2023, NAPCO announced that Baker Tilly would be replaced by Deloitte & Touche LLP.

**ANSWER:** Exchange Act Defendants admit that, on October 27, 2023, the Company disclosed through its Form 8-K that the Company was conducting a competitive selection process for a new independent registered public accounting firm, and, on November 3, 2023, disclosed through its Form 8-K that the Company selected Deloitte & Touche LLP. To the extent the allegations in Paragraph 110 purport to characterize, rely on, or quote NAPCO's October 27, 2023 Form 8-K or November 3, 2023 Form 8-K, Exchange Act Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 110. The allegations in Paragraph 110 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 110.

### G.    Additional Scienter Allegations

111.    As alleged herein, the Exchange Act Defendants acted with scienter in that the Exchange Act Defendants: (i) knew, or at the very least were reckless in not knowing, that the public documents and statements they issued or disseminated in the name of the Company or in their own names during the Class Period were materially false and misleading when made; (ii) knew that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

**ANSWER:** Paragraph 111 purports to state legal conclusions to which no response is required. To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 111. The allegations in Paragraph 111 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 111.

112.    The Exchange Act Defendants, by virtue of their receipt of information reflecting the true facts regarding NAPCO, their control over, and/or receipt and/or modification of NAPCO's allegedly materially misleading misstatements and/or their associations with the

Company which made them privy to confidential proprietary information concerning NAPCO, were active and culpable participants in the fraudulent scheme alleged herein.

**ANSWER:** Paragraph 112 purports to state legal conclusions to which no response is required. To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 112. The allegations in Paragraph 112 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 112.

113. The Exchange Act Defendants knew and/or recklessly disregarded the false and misleading nature of the information which they caused to be disseminated to the investing public. The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity or, at least, the reckless disregard of the personnel at the highest levels of the Company, including the Officer Defendants (*i.e.*, defendants Soloway and Buchel).

**ANSWER:** Paragraph 113 purports to state legal conclusions to which no response is required. To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 113. The allegations in Paragraph 113 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 113.

114. The Officer Defendants, by virtue of their high-level positions with the Company, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels, and were privy to confidential proprietary information concerning the Company and its business, operations, and prospects, as alleged herein. The Officer Defendants had the ultimate authority over and were involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein; were aware, or recklessly disregarded, that the false and misleading statements regarding the Company were being issued; and approved or ratified these statements, in violation of the federal securities laws.

**ANSWER:** Paragraph 114 purports to state legal conclusions to which no response is required. To the extent a response is required, Officer Defendants deny the allegations in Paragraph 114, except admit that Defendant Richard Soloway served as NAPCO's Chief Executive Officer during the Class Period and Defendant Kevin Buchel served as NAPCO's Chief Financial Officer during the Class Period and that in these roles they participated in the management of the Company. The allegations in Paragraph 114 are not directed at NAPCO or Director Defendants and therefore no response is required. To the extent a response is required, NAPCO and Director Defendants incorporate Officer Defendants' response to Paragraph 114.

115.    NAPCO, as an entity, acted with corporate scienter throughout the Class Period because its officers, management, and agents had actual knowledge of the misrepresentations and omissions of material facts set forth herein (for which they had a duty to disclose), or acted with reckless disregard for the truth because they failed to ascertain and disclose such facts, even though such facts were available to them. Such material misrepresentations and/or omissions were done knowingly or with recklessness, and without a reasonable basis, for the purpose and effect of concealing the true facts from investors.

**ANSWER:** Paragraph 115 purports to state legal conclusions to which no response is required. To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 115. The allegations in Paragraph 115 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 115.

116.    The replacement of NAPCO's long-standing auditor, Baker Tilly, shortly after the Restatement, provides additional circumstantial evidence of scienter. The inference that Baker Tilly was replaced because it discovered the Exchange Act Defendants' fraudulent financial manipulations is as least as likely as any innocent inference.

**ANSWER:** Paragraph 116 purports to state legal conclusions to which no response is required. To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 116. The allegations in Paragraph 116 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 116.

117.    In addition, the Exchange Act Defendants were motivated to engage in the alleged fraudulent course of conduct in order to enable certain Company insiders, including Defendants Soloway and Buchel, to collectively sell 3,744,150 shares of their personally-held NAPCO common stock during the Class Period, for proceeds of more than *$108 million*, under circumstances that were unusual and suspicious, as set forth below:

| Insider | Date | Price | Shares Sold | Proceeds | Rule 10b5-1 Plan | % Sold |
|---|---|---|---|---|---|---|
| **Defendant Soloway** (CEO, Chairman) | 11/15/2022 02/13/2023 02/15/2023 | $24.79 $31.50 $31.50 | 1,271,442 2,012,500 287,500 **3,571,442** | $31,519,047 $63,393,750 $9,056,250 **$103,969,047** | No No No | **48.5%** |
| **Defendant Buchel** (CFO) | 11/15/2022 02/13/2023 02/15/2023 | $24.79 $31.50 $31.50 | 52,977 87,500 12,500 **152,977** | $1,313,300 $2,756,250 $393,750 **$4,463,300** | No No No | **45.5%** |
| **Paul Stephen Beeber** (Director) | 11/23/2022 | $26.10 | **1,731** | **$45,179** | No | **14.6%** |
| **Michael Carrieri** (Senior Vice President of Engineering Development) | 11/23/2022 11/30/2022 | $26.45 $26.05 | 9,000 9,000 **18,000** | $238,050 $234,450 **$472,500** | No No | **29%** |
| | **Total:** | | **3,744,150** | **$108,950,026** | | |

**ANSWER:**  Paragraph 117 purports to state legal conclusions to which no response is required.  To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 117, except admit that Defendant Richard Soloway sold 3,571,442 shares of NAPCO stock during the Class Period valued at approximately $104 million, Defendant Kevin Buchel sold 152,977 shares of NAPCO stock during the Class Period valued at approximately $4.5 million, Defendant Paul Stephen Beeber sold 1,731 shares of NAPCO stock during the Class Period valued at approximately $45,000, and Defendant Michael Carrieri sold 18,000 shares of NAPCO stock during the Class Period valued at approximately $470,000.  The allegations in Paragraph 117 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 117.

118.    These insider sales were suspiciously-timed because each of the insiders who sold stock did so in November 2022, shortly after NAPCO's announcement on November 7, 2022 of 1Q23 financial results that were inflated by the Exchange Act Defendants' scheme to overstate NAPCO's income-related metrics by retaining sold product at the end of the quarter and improperly counting it as inventory, which overstated the Company's reported inventory and understated its cost of goods sold. At the time of these sales, NAPCO had recently reported quarterly results that overstated its 1Q23: net income by 107.59%, income per share by 112.5%, operating income by 98.71%, and gross profit and gross margins by 24.72%.

**ANSWER:**  Exchange Act Defendants deny the allegations in Paragraph 118, except admit that each of the sales in Paragraph 118 were executed after the Company filed its November 7, 2022 Form 10-Q.  To the extent the allegations in Paragraph 118 purport to characterize or rely on NAPCO's November 7, 2022 Form 10-Q, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  The allegations in Paragraph 118 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 118.

119.    Defendants Soloway and Buchel made substantial sales on November 15, 2022, with Soloway selling 1,271,442 shares of his personally-held NAPCO common stock for proceeds of approximately *$31.5 million*, and Buchel selling 52,997 shares of his personally-held NAPCO common stock for proceeds of approximately *$1.3 million*.

**ANSWER:**  Exchange Act Defendants admit that, on November 15, 2022, Defendant Richard Soloway sold 1,271,442 shares of NAPCO stock valued at approximately $31.5 million and Defendant Kevin Buchel sold 52,997 shares NAPCO stock valued at approximately $1.3 million.  Exchange Act Defendants otherwise deny the allegations in Paragraph 119.  The allegations in Paragraph 119 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 119.

120.    Soloway and Buchel made even larger insider sales in February 2023—orchestrating an offering in order to enable Soloway to unload an additional 2,300,000 shares of

his personally-held NAPCO common stock for proceeds of approximately *$72.5 million*, and Buchel to unload an additional 100,000 shares of his personally-held NAPCO common stock for proceeds of approximately *$3.2 million*.

**ANSWER:** Exchange Act Defendants deny the allegations in Paragraph 120, except admit that, pursuant to a Secondary Public Offering that closed February 15, 2023, Defendant Richard Soloway sold 2,300,000 shares of NAPCO stock valued at approximately $72.5 million and Defendant Kevin Buchel sold 100,000 shares of NAPCO stock valued at approximately $3.2 million.   The allegations in Paragraph 120 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 120.

121.    These sales insider were suspiciously-timed because they took place on February 13, 2023 and February 15, 2023, shortly after NAPCO's announcement on February 6, 2023 of 2Q23 financial results that were inflated by the Exchange Act Defendants' scheme to overstate NAPCO's income-related metrics by retaining sold product at the end of the quarter and improperly counting it as inventory, which overstated the Company's reported inventory and understated its cost of goods sold. And they were made pursuant to offering materials that incorporated by reference NAPCO's inflated financial results for both 1Q23 and 2Q23. Indeed, NAPCO announced the Offering on February 8, 2023, almost immediately after it issued the inflated 2Q23 financial results. At the time of these sales, NAPCO had recently reported quarterly results that overstated its 2Q23: net income by 114.97%, income per share by 109.1%, operating income by 118.02%, and gross profit and gross margins by 35.59%.

**ANSWER:** Exchange Act Defendants deny the allegations in Paragraph 121, except admit that the sales referenced in Paragraph 121 were made through a secondary public offering which took place after the Company filed its February 6, 2023 Form 10-Q.  To the extent the allegations in Paragraph 121 purport to characterize or rely on NAPCO's February 6, 2023 Form 10-Q, Exchange Act Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  The allegations in Paragraph 121 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 121.

122.    In total, defendant Soloway sold **48.5%** of his personally-held NAPCO common stock during the Class Period for proceeds of approximately **$104 million**, and defendant Buchel sold **45.5%** his personally-held NAPCO common stock during the Class Period for proceeds of approximately **$4.5 million**.

**ANSWER:** Exchange Act Defendants admit that Defendant Soloway sold NAPCO stock valued at approximately $104 million during the class period and Defendant Buchel sold NAPCO stock valued at approximately $4.5 million during the Class Period. Exchange Act Defendants otherwise deny the allegations in Paragraph 122. The allegations in Paragraph 122 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 122.

123.    By contrast, **none** of the insiders who sold stock during the Class Period made **any** stock sales during the year before the Class Period. Defendants Soloway and Buchel, and insider Michael Carrieri, also have not made any stock sales since the Class Period.

**ANSWER:** Exchange Act Defendants admit the allegations in the first sentence of Paragraph 123. Exchange Act Defendants otherwise deny the allegations in Paragraph 123. The allegations in Paragraph 123 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 123.

124.    Notably, defendant Buchel—who himself engaged in insider trading during the Class Period while playing a key role in the fraud—is, and was, NAPCO's "Insider Trading Compliance Officer." In that role, Buchel was required, pursuant to the Company's Insider Trading Policy, to "pre-clear each proposed trade or transfer" of NAPCO securities by its "executive officers and directors and their [f]amily [m]embers[.]" At the very least, this presented a clear conflict of interest with respect to his own insider sales.

**ANSWER:** The first and last sentences of Paragraph 124 purport to state legal conclusions to which no response is required. To the extent a response is required, Exchange Act Defendants respectfully refer to the insider trading policy for its complete and accurate contents, deny any allegations inconsistent with the policy, and deny any characterization of the content contained therein. Exchange Act Defendants otherwise deny the allegations in Paragraph 124, except admit

- 59 -

that, during the Class Period, NAPCO maintained an Insider Trading Policy and Defendant Buchel was the Company's Insider Trading Compliance Officer.  The allegations in Paragraph 124 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 124.

125.    Finally, *none* of the Class Period sales were made pursuant to Rule 10b5-1 trading plans—which underscores the suspicious nature of those sales.

**ANSWER:** Exchange Act Defendants deny the allegations in Paragraph 125, except admit that none of the stock sales referenced in the complaint were made pursuant to a Rule 10b5-1 trading plan.  The allegations in Paragraph 125 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 125.

### H.    Loss Causation and Economic Loss

126.    During the Class Period, as detailed herein, the Exchange Act Defendants made false and misleading statements and/or engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of NAPCO common stock and operated as a fraud or deceit on Class Period purchasers of NAPCO common stock. As detailed above in ¶¶105-108, when the Exchange Act Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of NAPCO common stock fell precipitously as the prior artificial inflation dissipated. As a result of their purchases of NAPCO common stock during the Class Period, Lead Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

**ANSWER:** Paragraph 126 purports to state legal conclusions to which no response is required.  To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 126.  The allegations in Paragraph 126 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 126.

127.    By failing to disclose to investors the adverse facts detailed herein, the Exchange Act Defendants presented a misleading picture of NAPCO's business and prospects. The Exchange

Act Defendants' false and misleading statements and omissions had the intended effect and caused NAPCO common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $41.25 per share on June 13, 2023.

**ANSWER:** Paragraph 127 purports to state legal conclusions to which no response is required. To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 127, except admit that the highest price of NAPCO Common Stock on June 13, 2023 was $41.25. The allegations in Paragraph 127 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 127.

128.    The precipitous decline in the price of NAPCO common stock was a direct result of the nature and extent of the Exchange Act Defendants' fraud finally being revealed to investors and the market and/or the risks concealed by the Exchange Act Defendants' fraud materializing and causing losses to investors. The timing and magnitude of the decline in the price of NAPCO securities negates any inference that the loss suffered by Lead Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Exchange Act Defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by Lead Plaintiff and the other Class members was a direct result of the Exchange Act Defendants' fraudulent scheme to artificially inflate the price of NAPCO common stock and the subsequent significant decline in the value of NAPCO common stock when the Exchange Act Defendants' prior misrepresentations and other fraudulent conduct were revealed and/or the risks concealed by the Exchange Act Defendants' fraud materialized.

**ANSWER:** Paragraph 128 purports to state legal conclusions to which no response is required. To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 128. The allegations in Paragraph 128 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 128.

### I.   No Safe Harbor

129.   NAPCO's "safe harbor" warnings accompanying its purportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. The specific statements pled herein were not FLS or identified as such, but rather were statements of present or historical fact. To the extent any statements can properly be considered forward-looking, such statements were not accompanied by meaningful cautionary language identifying important facts that could cause actual results to differ materially from those in the purportedly FLS.

**ANSWER:**  Paragraph 129 purports to state legal conclusions to which no response is required.  To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 129.  The allegations in Paragraph 129 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 129.

130.   The Exchange Act Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and/or the FLS was authorized and approved by an executive officer of the Company who knew that the FLS was false or misleading. None of the historic or present tense statements made by the Exchange Act Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions when made, nor were any of the projections or forecasts made by the Exchange Act Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

**ANSWER:**  Paragraph 130 purports to state legal conclusions to which no response is required.  To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 130.  The allegations in Paragraph 130 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 130.

### J.    A Presumption of Reliance Applies

131.    Lead Plaintiff is entitled to a presumption of reliance under the fraud-on-the market doctrine, because the market for NAPCO's publicly-traded stock was open, well-developed, and efficient at all relevant times. As a result of the materially false and misleading statements and failures to disclose alleged herein, NAPCO common stock traded at artificially inflated prices during the Class Period. Lead Plaintiff and other Class members purchased NAPCO common stock in reliance on the integrity of the market price of the stock and the market information relating to NAPCO, and were damaged thereby.

**ANSWER:**  Paragraph 131 purports to state legal conclusions to which no response is required.  To the extent a response is required, Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 131 and on that basis deny them.  The allegations in Paragraph 131 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 131.

132.    At all relevant times, the market for NAPCO common stock was efficient for at least the following reasons:

(a)    NAPCO common stock met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient, electronic stock market;

(b)    NAPCO common stock traded at volumes during the Class Period that reflected the impact of available information, and the trading price of the stock reacted promptly to publicly available news and information;

(c)    NAPCO filed periodic public reports with the SEC and otherwise regularly communicated with analysts and investors using established market communication mechanisms, including press releases; and

(d)    securities analysts and investors followed NAPCO and issued reports on its prospects and performance, and information on NAPCO regularly entered the marketplace and was reflected in the trading price of its stock.

**ANSWER:** Paragraph 132 purports to state legal conclusions to which no response is required. To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 132, except admit that (i) NAPCO common stock was listed and traded on the NASDAQ, (ii) the Company filed periodic public reports with the U.S. Securities and Exchange Commission, (iii) the Company would from time to time issue press releases, and (iv) the Company was followed by multiple securities analysts. The allegations in Paragraph 132 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 132.

133.    As a result, the market for NAPCO common stock promptly digested relevant information from publicly available sources and the trading price of the stock reflected such information. Under these circumstances, all purchasers of NAPCO common stock during the Class Period suffered similar injury by purchasing NAPCO common stock at artificially inflated prices and a presumption of reliance applies.

**ANSWER:** Paragraph 133 purports to state legal conclusions to which no response is required. To the extent a response is required, Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 133 and on that basis deny them. The allegations in Paragraph 133 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 133.

134.    A class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). Because the claims alleged are predicated in part upon omissions of material fact for which there was a duty to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have

considered them important in making investment decisions. Given the importance of the Exchange Act Defendants' material omissions set forth above, that requirement is satisfied here.

**ANSWER:** Paragraph 134 purports to state legal conclusions to which no response is required. To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 134. The allegations in Paragraph 134 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 134.

### K.    Exchange Act Counts

### COUNT I

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Against the Exchange Act Defendants

135.    Plaintiffs repeat, incorporate, and reallege each and every allegation set forth above, except those that pertain only to the Securities Act claims and/or disclaim fraud or scienter (including ¶3 and ¶13), as if fully set forth herein.

**ANSWER:** Paragraph 135 contains Plaintiffs' characterization of their complaint to which no response is required. To the extent a response is required, Exchange Act Defendants repeat and incorporate their answers to the paragraphs realleged therein. The allegations in Paragraph 135 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 135.

136.    This Count is brought pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5, on behalf of the Class, against the Exchange Act Defendants (*i.e.*, defendants NAPCO, Soloway and Buchel).

**ANSWER:** Paragraph 136 contains Plaintiffs' characterization of their claims to which no response is required. To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 136, except admit that Plaintiffs purport to describe the Exchange Act claims asserted in the Amended Complaint. The allegations in Paragraph 136 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 136.

137.    During the Class Period, the Exchange Act Defendants carried out a plan, scheme, and course of conduct which was intended to, and did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other Class members to purchase NAPCO common stock at artificially inflated prices.

**ANSWER:**  Paragraph 137 purports to state legal conclusions to which no response is required.  To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 137.  The allegations in Paragraph 137 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 137.

138.    During the Class Period, the Exchange Act Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

**ANSWER:**  Paragraph 138 purports to state legal conclusions to which no response is required.  To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 138.  The allegations in Paragraph 138 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 138.

139.    The Exchange Act Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

**ANSWER:**  Paragraph 139 purports to state legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 139.  The allegations in Paragraph 139 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 139.

140.    As alleged herein, the Exchange Act Defendants acted with scienter in that they knew that the public documents and statements they issued, approved, or otherwise disseminated were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

**ANSWER:**  Paragraph 140 purports to state legal conclusions to which no response is required.  To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 140.  The allegations in Paragraph 140 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 140.

141.    Additionally, the Exchange Act Defendants participated in the fraudulent scheme alleged herein by virtue of their receipt of information reflecting the true facts, their control over the allegedly materially false and misleading statements and omissions, and their access to nonpublic information.

**ANSWER:**  Paragraph 141 purports to state legal conclusions to which no response is required.  To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 141.  The allegations in Paragraph 141 are not directed at Director Defendants and therefore no response is required.  To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 141.

142.    Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for NAPCO common stock. Plaintiffs and the Class would not have purchased NAPCO common stock at the prices they paid, or at all, had they been aware that the market prices had been artificially and falsely inflated by the Exchange Act Defendants' misleading statements and/or omissions.

**ANSWER:**  Paragraph 142 purports to state legal conclusions to which no response is required.  To the extent a response is required, Exchange Act Defendants deny the allegations in

- 67 -

Paragraph 142. The allegations in Paragraph 142 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 142.

143. As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of NAPCO common stock during the Class Period.

**ANSWER:** Paragraph 143 purports to state legal conclusions to which no response is required. To the extent a response is required, Exchange Act Defendants deny the allegations in Paragraph 143. The allegations in Paragraph 143 are not directed at Director Defendants and therefore no response is required. To the extent a response is required, Director Defendants incorporate Exchange Act Defendants' response to Paragraph 143.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Officer Defendants

144. Plaintiffs repeat, incorporate, and reallege each and every allegation set forth above, except those that pertain only to the Securities Act claims and/or disclaim fraud or scienter (including ¶3 and ¶13), as if fully set forth herein.

**ANSWER:** Paragraph 144 contains Plaintiffs' characterization of their complaint to which no response is required. To the extent a response is required, Officer Defendants repeat and incorporate their answers to the paragraphs realleged therein. The allegations in Paragraph 144 are not directed at NAPCO or Director Defendants and therefore no response is required. To the extent a response is required, NAPCO and Director Defendants incorporate Officer Defendants' response to Paragraph 144.

145. This Count is brought pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. §78t(a), on behalf of the Class, against the Officer Defendants (*i.e.*, defendants Soloway and Buchel).

**ANSWER:** Paragraph 145 contains Plaintiffs' characterization of their claims to which no response is required. To the extent a response is required, Officer Defendants deny the allegations in Paragraph 145, except admit that Plaintiffs purport to describe the Exchange Act claims asserted in the Amended Complaint. The allegations in Paragraph 145 are not directed at NAPCO or Director Defendants and therefore no response is required. To the extent a response is

required, NAPCO and Director Defendants incorporate Officer Defendants' response to Paragraph 145.

146. The Officer Defendants acted as controlling persons of NAPCO within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and/or directors of NAPCO, the Officer Defendants had, and exercised, power and authority to cause NAPCO to engage in the wrongful conduct complained of herein.

**ANSWER:** Paragraph 146 purports to state legal conclusions to which no response is required. To the extent a response is required, Officer Defendants deny the allegations in Paragraph 146. The allegations in Paragraph 146 are not directed at NAPCO or Director Defendants and therefore no response is required. To the extent a response is required, NAPCO and Director Defendants incorporate Officer Defendants' response to Paragraph 146.

147. As set forth above, NAPCO and the Officer Defendants violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. Moreover, by virtue of their positions as controlling persons, the Officer Defendants are liable pursuant to Section 20(a) of the Exchange Act for NAPCO's Section 10(b) and Rule 10b-5 violations. To the extent necessary, each of the Officer Defendants culpably participated in the underlying violations given their knowledge of and/or involvement in the wrongful conduct alleged herein.

**ANSWER:** Paragraph 147 purports to state legal conclusions to which no response is required. To the extent a response is required, Officer Defendants deny the allegations in Paragraph 147. The allegations in Paragraph 147 are not directed at NAPCO or Director Defendants and therefore no response is required. To the extent a response is required, NAPCO and Director Defendants incorporate Officer Defendants' response to Paragraph 147.

148. As a direct and proximate result of the Officer Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period. By reason of such conduct, the Officer Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**ANSWER:** Paragraph 148 purports to state legal conclusions to which no response is required. To the extent a response is required, Officer Defendants deny the allegations in

Paragraph 148.   The allegations in Paragraph 148 are not directed at NAPCO or Director Defendants and therefore no response is required.  To the extent a response is required, NAPCO and Director Defendants incorporate Officer Defendants' response to Paragraph 148.

## VII.   ALLEGATIONS UNDER THE SECURITIES ACT

149.   In this section of the Complaint, Plaintiff City of Warren Police and Fire Retirement System asserts strict liability and negligence claims against Defendants pursuant to the Securities Act, on behalf of those who purchased or otherwise acquired NAPCO common stock pursuant or traceable to the Offering.

**ANSWER:**  Paragraph 149 contains Plaintiffs' characterization of their claims to which no response is required.  Additionally, no response is required to the allegations in Paragraph 149 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent a response is required, Defendants deny the allegations in Paragraph 149, except admit that Plaintiffs purport to describe the Securities Act claims asserted in the Amended Complaint.

150.   The Securities Act allegations herein are based in strict liability and negligence, and Plaintiff expressly disclaims any allegation or inference of fraud or scienter for these allegations. Accordingly, in this section of the complaint, Plaintiff expressly disclaims all allegations above pertaining to the Exchange Act claims, including the allegations in ¶2 and ¶¶4-12, and in §VI. For avoidance of doubt, the only allegations above that Plaintiff incorporates by reference in this section of the complaint are those pertaining to the Securities Act claims set forth in: the preamble paragraph; ¶1, ¶¶3-4, and ¶13 (Introduction); ¶¶14-17 (Jurisdiction and Venue); ¶¶10-22 and ¶¶2429 (Parties); ¶¶30-35 (Class Action Allegations); and ¶¶36-38 (The Company and Its Business).

**ANSWER:**  Paragraph 150 contains Plaintiffs' characterization of their claims to which no response is required.  Additionally, no response is required to the allegations in Paragraph 150 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent a response is required,

Defendants deny the allegations in Paragraph 150, except admit that Plaintiffs purport to describe the Securities Act claims asserted in the Amended Complaint.

### A.    The Offering

151.    On September 12, 2022, NAPCO filed a registration statement on Form S-3 (the "Registration Statement"). The Registration Statement provided that defendants Soloway and Buchel—identified as the "selling stockholders"—may, over time, offer and sell up to 3,830,449 shares of their NAPCO common stock in one or more offerings.

**ANSWER:**   No response is required to the allegations in Paragraph 151 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent the allegations in Paragraph 151 purport to characterize, rely on, or quote NAPCO's September 12, 2022 Registration Statement, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Defendants otherwise deny the allegations in Paragraph 151, except admit that, on September 12, 2022, the Company filed a Form S-3 Registration Statement.

152.    Under the "automatic shelf" registration process, the Registration Statement became effective upon its filing, and allowed the selling stockholders to register securities for sale while leaving them on the "shelf" until they decided to conduct an offering—provided that the Registration Statement met all of the requirements of applicable securities rules and regulations.

**ANSWER:**   No response is required to the allegations in Paragraph 152 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent the allegations in Paragraph 152 purport to characterize, rely on, or quote NAPCO's September 12, 2022 Registration Statement, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Defendants otherwise admit to the allegations in Paragraph 152.

153.    On February 8, 2023, NAPCO filed a preliminary prospectus supplement to the Registration Statement (Registration No. 333-267376) pursuant to Rule 424(b)(7)(the "Preliminary Prospectus"), in which the Company announced an offering of its common stock by

the selling stockholders, pursuant to the Registration Statement. The Preliminary Prospectus identified Needham and William Blair as the underwriters for the offering.

**ANSWER:**   No response is required to the allegations in Paragraph 153 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent a response is required, Defendants admit that on February 8, 2023, the Company filed a preliminary prospectus supplement to the September 12, 2022 Registration Statement and respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.

154.   On February 10, 2023, NAPCO filed a subsequent prospectus supplement to the Registration Statement pursuant to Rule 424(b)(7) (the "Prospectus Supplement," together with the Preliminary Prospectus, the "Prospectus," and together with the Registration Statement, the "Offering Materials"). The Prospectus Supplement stated that the selling stockholders, defendants Soloway and Buchel, were offering 2.1 million shares of their NAPCO common stock to the public at $31.50 per share, which would collectively yield them $64,827,000 in proceeds, before expenses. It further stated that Soloway and Buchel were granting the Underwriter Defendants, Needham and William Blair, the option to purchase up to an additional 300,000 shares of their common stock at the offering price, less underwriting discounts and commissions, within 30 days.

**ANSWER:**   No response is required to the allegations in Paragraph 154 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent a response is required, Defendants admit that on February 10, 2023, the Company filed a preliminary subsequent prospectus supplement to the September 12, 2022 Registration Statement and to the extent the allegations in Paragraph 154 purport to characterize, rely on, or quote NAPCO's February 10, 2023 Prospectus Supplement, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Defendants otherwise deny the allegations in Paragraph 154, except admit that, on February 10, 2023, the Company filed a preliminary subsequent prospectus supplement to the September 12, 2022 Registration Statement.

155.   The Offering closed on February 13, 2023, with defendants Soloway and Buchel, respectively, selling 2,012,500 and 87,500 shares of their NAPCO common stock. On February

15, 2023, the Underwriter Defendants exercised in full their over-allotment option to purchase 300,000 additional shares from the selling stockholders, bringing the total number of shares sold in the Offering by Soloway and Buchel to 2.4 million—and increasing their total proceeds (before expenses) to $74,088,000. NAPCO did not receive any proceeds from the Offering, and incurred expenses of $496,000 in connection with the Offering.

**ANSWER:** No response is required to the allegations in Paragraph 155 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants. To the extent Paragraph 155 purports to characterize or rely on NAPCO's May 8, 2023 Form 10-Q, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Defendants otherwise deny the allegations in Paragraph 155.

156.     The Offering Materials incorporated by reference the following filings NAPCO made with the SEC, each of which contained materially inaccurate statements of fact: (i) the quarterly report on Form 10-Q for the first quarter of fiscal 2023, ended September 30, 2022, filed on November 7, 2022 (the "1Q23 Form 10-Q"); and (ii) the quarterly report on Form 10-Q for the second quarter of fiscal 2023, ended December 31, 2022, filed on February 6, 2023 (the "2Q23 Form 10-Q").

**ANSWER:** No response is required to the allegations in Paragraph 156 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants. Further, Paragraph 156 purports to state legal conclusions to which no response is required. To the extent the allegations in Paragraph 156 purport to characterize or rely on the Prospectus, NAPCO's November 7, 2022 Form 10-Q, or NAPCO's February 6, 2023 Form 10-Q, Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Defendants otherwise deny the allegations in Paragraph 156.

**B.      The Offering Materials Contained Inaccurate Statements of Material Fact and Omitted Material Information Required to Be Disclosed Therein**

157.    The Offering Materials were negligently prepared and, as a result, contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation.

**ANSWER:**  No response is required to the allegations in Paragraph 157 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  Further, Paragraph 157 purports to state legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 157.

158.    Specifically, as set forth below, NAPCO's financial results incorporated by reference in the Offering Materials violated GAAP, and were materially misstated with respect to numerous metrics. The Offering Materials also failed to disclose an existing, additional material weakness in the Company's internal controls over financial reporting.

**ANSWER:**  No response is required to the allegations in Paragraph 158 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  Further, Paragraph 158 purports to state legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 158.

**1.      NAPCO's Materially Inaccurate Financial Reporting**

159.    On August 18, 2023, NAPCO admitted that its previously-issued interim financial statements for, *inter alia*, the quarters ended September 30, 2022 ("1Q23") and December 31, 2022 ("2Q23") would need to be restated and "should no longer be relied upon." On September 1, 2023, NAPCO filed with the SEC amended quarterly reports on Form 10-Q/A that restated, *inter alia*, NAPCO's interim financial statements for 1Q23 and 2Q23 (the "Restatement").

**ANSWER:**  No response is required to the allegations in Paragraph 159 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent the allegations in Paragraph 159

purport to characterize, rely on, or quote NAPCO's August 18, 2023 Form 8-K, November 7, 2022 Form 10-Q, or February 6, 2023 Form 10-Q, Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Defendants otherwise deny the allegations in Paragraph 159.

160.    In announcing the need for the Restatement, NAPCO acknowledged that the inaccurate financial metrics the Company had reported in the 1Q23 Form 10-Q and the 2Q23 Form 10-Q stemmed from the overstatement of inventory and understatement of cost of goods sold, "resulting in overstated gross profit, operating income and net income" for those quarters.

**ANSWER:**  No response is required to the allegations in Paragraph 160 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent the allegations in Paragraph 160 purport to characterize, rely on, or quote NAPCO's August 18, 2023 Form 8-K, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Defendants otherwise deny the allegations in Paragraph 160.

161.    Generally Accepted Accounting Principles ("GAAP") generally encompasses those conventions, rules and procedures necessary to define accepted accounting practices at a particular time. SEC Regulation S-X states that financial statements filed with the SEC that are not prepared in compliance with GAAP are "presumed to be misleading or inaccurate." 17 C.F.R. §210.4-01(a)(1). Regulation S-X also requires that interim financial statements filed with the SEC comply with GAAP. 17 C.F.R. §210.10-01(a).

**ANSWER:**  No response is required to the allegations in Paragraph 161 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent the allegations in Paragraph 161 purport to characterize, rely on, or quote GAAP and 17 C.F.R. §210.4-01(a)(1), Defendants respectfully refer to them for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Defendants otherwise deny the allegations in Paragraph 161.

162.    NAPCO has now admitted that the interim financial statements it issued to investors and filed with the SEC for, *inter alia*, the first two quarters of fiscal 2023 were materially

- 75 -

inaccurate, presented in violation of GAAP, and "should no longer be relied upon." Accordingly, each of the interim financial statements for those quarters is presumed to be misleading and inaccurate pursuant to the SEC's Regulation S-X.

**ANSWER:**  No response is required to the allegations in Paragraph 162 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  Further, Paragraph 162 purports to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 162 purport to characterize, rely on, or quote NAPCO's August 18, 2023 Form 8-K, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Defendants otherwise deny the allegations in Paragraph 162.

163.    By virtue of the Restatement, *NAPCO itself* has concluded that the now-restated interim financial statements contained in the 1Q23 Form 10-Q and the 2Q23 Form 10-Q and incorporated by reference in the Offering Materials were materially misstated—since only materially misstated financial statements are to be corrected and re-reported on a retroactive basis.[7]

**ANSWER:**  No response is required to the allegations in Paragraph 163 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent the allegations in Paragraph 163 purport to characterize, rely on, or quote NAPCO's August 18, 2023 Form 8-K or September 1, 2023 Form 10-Q/As or the FASB, ASC, and CSAB accounting materials cited by Plaintiffs, Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Defendants otherwise deny the allegations in Paragraph 163.

164.    Thus, there is no dispute that the Offering Materials contained materially inaccurate financial statements.

---

[7] *See, e.g.*, Financial Accounting Standards Board's ("FASB") Accounting Standards Codification ("ASC") Topic 250, *Accounting Changes and Error Corrections*, SEC Codification of Staff Accounting Bulletins ("CSAB") Topic 1M *Financial Statements, Materiality* and Topic 1-N, *Considering the Effects of Prior Year Misstatements When Quantifying Misstatements in Current Year Financial Statements*. According to the FASB, ASC is the source of authoritative GAAP to be applied to nongovernmental entities.

**ANSWER:**  No response is required to the allegations in Paragraph 164 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  Further, Paragraph 164 purports to state legal conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 164, except admit that certain aspects of NAPCO's financial statements were restated in the September 1, 2023 Form 10-Q/As.

165.    NAPCO has also admitted that, in addition to the Company's preexisting internal control deficiencies, the Restatement "demonstrated an additional material weakness in [its] internal controls over financial reporting."[8]

**ANSWER:**  No response is required to the allegations in Paragraph 165 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent the remaining allegations in Paragraph 165 purport to characterize, rely on, or quote NAPCO's August 18, 2023 Form 8-K, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. To the extent that a response is required, Defendants deny the allegations in Paragraph 165.

166.    GAAP, as set forth in ASC Topic No. 250, *Accounting Changes and Error Corrections*, provides that errors in previously-issued financial statements are to be corrected via a restatement of the previously-issued financial statements. Adjustments related thereto are to be reported in the restatement as "error corrections."

**ANSWER:** No response is required to the allegations in Paragraph 166 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent the allegations in Paragraph 166 purport to characterize or rely on ASC Topic No. 250, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with it, and deny any characterization of the content contained therein.  Defendants otherwise deny the allegations in Paragraph 166.

---

[8] A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement in an entity's financial statements will not be prevented or detected on a timely basis.

167.    When NAPCO issued the Restatement on September 1, 2023, it filed with the SEC amended quarterly reports on Form 10-Q/A that corrected errors in the 1Q23 Form 10-Q and the 2Q23 Form 10-Q related to the Company's reported inventory, cost of goods sold, net income, income per share, operating income, gross profit, and gross margins.

**ANSWER:**    No response is required to the allegations in Paragraph 167 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent the allegations in Paragraph 167 purport to characterize or rely on NAPCO's September 1, 2023 Form 10-Q/As, Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Defendants otherwise deny the allegations in Paragraph 167 except admit that, on September 1, 2023, the Company filed Form 10-Q/As.

168.    The Offering Materials represented that NAPCO's "financial information [was] presented in accordance with U.S. GAAP . . . ." That representation was materially false and misleading because—as NAPCO has now admitted—the 1Q23 Form 10-Q and the 2Q23 Form 10Q, which were incorporated by reference in the Offering Materials, overstated NAPCO's inventory, understated its cost of goods sold, and overstated its net income and related metrics.

**ANSWER:**    No response is required to the allegations in Paragraph 168 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  The second sentence of Paragraph 168 purports to state legal conclusions to which no response is required. To the extent the allegations in Paragraph 168 purport to characterize, rely on, or quote the  Prospectus, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Defendants otherwise deny the allegations in Paragraph 168.

169.    The basic accounting precept that expenses be recorded in the same period in which the corresponding benefit is realized is arguably the most fundamental tenet of accrual accounting. *See* FASB Statement of Financial Accounting Concepts No. 8, *Conceptual Framework for Financial Reporting*.

**ANSWER:** No response is required to the allegations in Paragraph 169 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants. To the extent the allegations in Paragraph 169 purport to characterize or rely on FASB Statement of Financial Accounting Concepts No. 8, *Conceptual Framework for Financial Reporting*, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with it, and deny any characterization of the content contained therein. Defendants otherwise deny the allegations in Paragraph 169.

170. GAAP, as set forth in ASC Topic No. 330, *Inventories*, provides that the primary objective of accounting for inventories is the proper determination of income, through the process of matching appropriate costs against revenues.

**ANSWER:** No response is required to the allegations in Paragraph 170 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants. To the extent the allegations in Paragraph 170 purport to characterize or rely on ASC Topic No. 330, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Defendants otherwise deny the allegations in Paragraph 170.

171. These accounting principles are neither complex, nor a matter of subjective interpretation or opinion. Because the Offering Materials incorporated by reference the 1Q23 Form 10-Q and the 2Q23 Form 10-Q, which were presented in violation of these provisions of GAAP, the Offering Materials were materially false and misleading.

**ANSWER:** No response is required to the allegations in Paragraph 171 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants. Further, Paragraph 171 purports to state legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 171.

### 2. The Materially Inaccurate 1Q23 Form 10-Q Was Incorporated in the Offering Materials

172. The Offering Materials incorporated by reference the 1Q23 Form 10-Q, which NAPCO had filed with the SEC on November 7, 2022. For the quarter, the 1Q23 Form 10-Q reported:

- Total inventory (current and non-current) of $63,837,000 as of September 30, 2022;

- Cost of goods sold of $21,326,000;

- Net income of $6,402,000;

- Income per share of $0.17;

- Operating income of $7,249,000;

- Gross profit of $18,167,000; and

- Gross margins of 46%.

**ANSWER:**  No response is required to the allegations in Paragraph 172 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To extent the allegations in Paragraph 172 purport to characterize or rely on NAPCO's November 7, 2022 Form 10-Q or the Prospectus, Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Defendants otherwise deny the allegations in Paragraph 172, except admit that, on November 7, 2022, the Company filed a Form 10-Q, and the Prospectus incorporated the November 7, 2022 Form 10-Q by reference.

173.    The statements referenced above in ¶172 were untrue statements of material fact because—as NAPCO has now admitted: (i) its financial statements were presented in violation of GAAP; and (ii) for 1Q23, its actual financial results were as follows:

- Total inventory (current and non-current) was $60,236,000 as of September 30, 2022, and had been overstated by *5.98%*;

- Cost of goods sold was $24,927,000, and had been understated by *14.45%*;

- Net income was $3,084,000, and had been overstated by *107.59%*;

- Income per share was $0.08, and had been overstated by *112.5%*;

- Operating income was $3,648,000, and had been overstated by *98.71%*;

- Gross profit was $14,566,000, and had been overstated by *24.72%*; and

- 80 -

- Gross margins were approximately 36.9%, and had been overstated by ***24.72%***.

**ANSWER:** No response is required to the allegations in Paragraph 173 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants. Further, Paragraph 173 purports to state legal conclusions to which no response is required. To the extent the allegations in Paragraph 173 purport to characterize or rely on NAPCO's November 7, 2022 Form 10-Q or September 1, 2023 Form 10-Q/A for Q1 2023, Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Defendants otherwise deny the allegations in Paragraph 173.

174. In addition, the 1Q23 Form 10-Q represented that NAPCO had two preexisting "material weaknesses in internal control." One material weakness "related to ineffective information technology general controls (ITGCs) in the area of user access and lack of effective program change-management over certain information technology (IT) systems that support the Company's financial reporting processes." The second material weakness "related to the reserve for excess and slow-moving inventory" and "was a result of a lack of effective review and reconciliation controls over [] forecasted sales and usage data." The 1Q23 Form 10-Q further stated that, although "the Company's internal controls over financial reporting were not effective" as a result of these material weaknesses, the material weaknesses had "not result[ed] in any identified misstatements to [NAPCO's] financial statements and there were no changes to [its] previously released financial results."

**ANSWER:** No response is required to the allegations in Paragraph 174 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants. To the extent the allegations in Paragraph 174 purport to characterize, rely on, or quote NAPCO's November 7, 2022 Form 10-Q, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Defendants otherwise deny the allegations in Paragraph 174.

175. The statements referenced above in ¶174 were untrue statements of material fact because—as NAPCO has now admitted: (i) it suffered from additional material weaknesses in

internal controls over financial reporting; and (ii) those additional material weaknesses in internal controls *had* "result[ed] in . . . misstatements to the [Company's] financial statements" for 1Q23.

**ANSWER:**  No response is required to the allegations in Paragraph 175 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent the allegations in Paragraph 175 purport to characterize or rely on NAPCO's September 1, 2023 Form 10-Q/A for Q3 2023, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Defendants otherwise deny the allegations in Paragraph 175.

### 3. The Materially Inaccurate 2Q23 Form 10-Q Was Incorporated in the Offering Materials

176.    The Offering Materials also incorporated by reference the 2Q23 Form 10-Q, which NAPCO had filed with the SEC on February 6, 2023. For the quarter, the 2Q23 Form 10-Q reported:

- Total inventory (current and non-current) of $64,192,000 as of December 31, 2022;

- Cost of goods sold of $22,852,000;

- Net income of $8,446,000;

- Income per share of $0.23;

- Operating income of $9,436,000;

- Gross profit of $19,462,000; and

- Gross margins of approximately 46%.

**ANSWER:**  No response is required to the allegations in Paragraph 176 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent the allegations in Paragraph 176 purport to characterize or rely on NAPCO's February 6, 2023 Form 10-Q or the Prospectus, Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Defendants otherwise deny the allegations in Paragraph 176, except admit that, on

February 6, 2023, the Company filed a Form 10-Q and the Prospectus incorporated the February 6, 2023 Form 10-Q by reference.

177.    The statements referenced above in ¶176 were untrue statements of material fact because—as NAPCO has now admitted: (i) its financial statements were presented in violation of GAAP; and (ii) for 2Q23, its actual financial results were as follows:

- Total inventory (current and non-current) was $55,483,000 as of December 31, 2022, and had been overstated by *15.7%*;

- Cost of goods sold was $27,960,000, and had been understated by *18.27%*;

- Net income was $3,929,000, and had been overstated by *114.97%*;

- Income per share was $0.11, and had been overstated by *109.1%*;

- Operating income was $4,328,000, and had been overstated by *118.02%*;

- Gross profit was $14,354,000, and had been overstated by *35.59%*; and

- Gross margins were approximately 33.9%, and had been overstated by *35.59%*.

**ANSWER:** No response is required to the allegations in Paragraph 177 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants. Further, Paragraph 177 purports to state legal conclusions to which no response is required. To the extent the allegations in Paragraph 177 purport to characterize or rely on NAPCO's February 6, 2023 Form 10-Q or September 1, 2023 Form 10-Q/A for Q2 2023, Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein. Defendants otherwise deny the allegations in Paragraph 177.

178.    In addition, for the first six months of fiscal 2023, ended December 31, 2022, the 2Q23 Form 10-Q reported:

- Cost of goods sold of $44,178,000;

- Net income of $14,848,000;

- Income per share of $0.40;

- Operating income of $16,685,000;

- Gross profit of $37,629,000; and

- Gross margins of 46%.

**ANSWER:**  No response is required to the allegations in Paragraph 178 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent the allegations in Paragraph 178 purport to characterize or rely on NAPCO's February 6, 2023 Form 10-Q, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Defendants otherwise deny the allegations in Paragraph 178.

179.    The statements referenced above in ¶178 were untrue statements of material fact because—as NAPCO has now admitted: (i) its financial statements were presented in violation of GAAP; and (ii) for the first six months of fiscal 2023, its actual financial results were as follows:

- Cost of goods sold was $52,887,000, and had been understated by ***16.47%***;

- Net income was $7,013,000, and had been overstated by ***111.72%***;

- Income per share was $0.19, and had been overstated by ***110.53%***;

- Operating income was $7,976,000, and had been overstated by ***109.2%***;

- Gross profit was $28,920,000, and had been overstated by ***30.11%***; and

- Gross margins were approximately 35.4%, and had been overstated by ***30.11%***.

**ANSWER:**  No response is required to the allegations in Paragraph 179 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  Further, Paragraph 179 purports to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 179 purport to characterize or rely on NAPCO's February 6, 2023 Form 10-Q or September 1, 2023 Form 10-Q/A for Q2 2023, Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Defendants otherwise deny the allegations in Paragraph 179.

180.    In addition, the 2Q23 Form 10-Q reiterated that NAPCO had two preexisting "material weaknesses in internal control." One material weakness "related to ineffective information technology general controls (ITGCs) in the area of user access and lack of effective

program change-management over certain information technology (IT) systems that support the Company's financial reporting processes." The second material weakness "related to the reserve for excess and slow-moving inventory" and "was a result of a lack of effective review and reconciliation controls over [] forecasted sales and usage data." The 2Q23 Form 10-Q further stated that, although "the Company's internal controls over financial reporting were not effective" as a result of these material weaknesses, the material weaknesses had "not result[ed] in any identified misstatements to [NAPCO's] financial statements and there were no changes to [its] previously released financial results."

**ANSWER:**   No response is required to the allegations in Paragraph 180 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  To the extent the allegations in Paragraph 180 purport to characterize, rely on, or quote NAPCO's February 6, 2023 Form 10-Q, Defendants respectfully refer to such document for its complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Defendants otherwise deny the allegations in Paragraph 180.

181.   The statements referenced above in ¶180 were untrue statements of material fact because—as NAPCO has now admitted: (i) it suffered from additional material weaknesses in internal controls over financial reporting; and (ii) those additional material weaknesses in internal controls ***had*** "result[ed] in . . . misstatements to the [Company's] financial statements" for 1Q23.

**ANSWER:**   No response is required to the allegations in Paragraph 181 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Counts III and IV as to the Individual Defendants.  Further, Paragraph 181 purports to state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 181 purport to characterize or rely on NAPCO's September 1, 2023 Form 10-Q/A for Q1 or Q2 2023, Defendants respectfully refer to such documents for their complete and accurate contents, deny any allegations inconsistent with them, and deny any characterization of the content contained therein.  Defendants otherwise deny the allegations in Paragraph 181.

**C.      Securities Act Counts**

## COUNT III

### For Violations of Section 11 of the Securities Act
### Against All Defendants

182.    For purposes of this Count, Plaintiff City of Warren Police and Fire Retirement System repeats, incorporates, and realleges each and every allegation set forth above relating to the Securities Act claims as if fully set forth herein, and expressly disclaims each and every allegation relating to the Exchange Act claims, including any allegation or implication of fraud, recklessness, or intentional misconduct.

**ANSWER:** No response is required to the allegations in Paragraph 182 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count III as to the Individual Defendants.  Additionally, Paragraph 182 contains Plaintiffs' characterization of their complaint to which no response is required.  To the extent a response is required, Defendants repeat and incorporate their answers to the paragraphs realleged therein.

183.    For avoidance of doubt, the only allegations that Plaintiff incorporates by reference in this Count are those pertaining to the Securities Act claims set forth in: the preamble paragraph; ¶1, ¶¶3-4, and ¶13 (Introduction); ¶¶14-17 (Jurisdiction and Venue); ¶¶10-22 and ¶¶24-29 (Parties); ¶¶30-35 (Class Action Allegations); ¶¶36-38 (The Company and Its Business); and §VII (Allegations Under the Securities Act, ¶¶149-181). Plaintiff expressly disclaims all allegations above pertaining to the Exchange Act claims, including the allegations in ¶2 and ¶¶4-12, and in §VI.

**ANSWER:**  No response is required to the allegations in Paragraph 183 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count III as to the Individual Defendants.  Further, Paragraph 183 contains Plaintiffs' characterization of their claims to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 183, except admit that Plaintiffs purport to describe the Securities Act claims asserted in the Amended Complaint.

- 86 -

184.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants. This Count does not allege, and does not intend to allege, fraud or scienter, which are not elements of a Section 11 claim, and any implication of fraud or scienter is expressly disclaimed.

**ANSWER:**  No response is required to the allegations in Paragraph 184 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count III as to the Individual Defendants.  Further, Paragraph 184 purports to state legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 184.

185.    The Registration Statement, which was incorporated in and formed part of the Offering Materials, contained inaccurate and misleading statements of material fact, omitted facts necessary to render statements therein non-misleading, and omitted to state material facts required to be stated therein.

**ANSWER:**  No response is required to the allegations in Paragraph 185 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count III as to the Individual Defendants.  Further, Paragraph 185 purports to state legal conclusions to which no response is required.  To the extent a response is required, the Defendants deny the allegations in Paragraph 185.

186.    NAPCO was the registrant for the Offering. As an issuer of securities to the public, NAPCO is strictly liable to Plaintiff and the Class for the misstatements and omissions.

**ANSWER:**  No response is required to the allegations in Paragraph 186 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count III as to the Individual Defendants.  Further, the second sentence of Paragraph 186 purports to state legal conclusions to which no response is required.  To the extent a response is required, the Defendants deny the allegations in Paragraph 186, except admit that the Company was the registrant for the Offering.

187.    The Individual Defendants each signed and/or authorized the signing of the Registration Statement. Each of the Individual Defendants had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the

- 87 -

Registration Statement. They had a duty to ensure that such statements were true and accurate, that there were no omissions of material fact that would make the statements misleading, and that the Registration Statement contained all facts required to be stated therein. By virtue of the Individual Defendants' failure to exercise reasonable care, the Registration Statement contained material misstatements and/or omissions of material facts. As such, the Individual Defendants are strictly liable to Plaintiff and the Class.

**ANSWER:** No response is required to the allegations in Paragraph 187 by the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count III as to the Individual Defendants. Further, Paragraph 187 purports to state legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 187, except admit that Individual Defendants signed the September 12, 2022 Registration Statement.

188.    The Underwriter Defendants failed to perform adequate due diligence in connection with their role as underwriters and were negligent in failing to ensure that the Registration Statement for the Offering was prepared properly and accurately. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein. As such, the Underwriter Defendants are strictly liable to Plaintiff and the Class.

**ANSWER:** The allegations in Paragraph 188 are not directed at Defendants. To the extent a response is required, Defendants deny the allegations in Paragraph 188.

189.    Defendants were responsible for the contents and dissemination of the Registration Statement. None of the Defendants made a reasonable investigation or possessed reasonable grounds to believe that the statements in the Offering Materials were complete, accurate or non-misleading.

**ANSWER:** No response is required to the allegations in Paragraph 189 by the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count III as to the Individual Defendants. Further, the allegations in Paragraph 189 purport to state legal

- 88 -

conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 189.

190.    By reason of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

**ANSWER:**  No response is required to the allegations in Paragraph 190 by the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count III as to the Individual Defendants.  Further, the allegations in Paragraph 190 purport to state legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 190.

191.    Plaintiff and the other members of the Class purchased NAPCO common stock pursuant or traceable to the Registration Statement for the Offering and have sustained damages as a result. The price of the stock has declined substantially subsequent and due to Defendants' violations.

**ANSWER:**  No response is required to the allegations in Paragraph 191 by the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count III as to the Individual Defendants. Further, Paragraph 191 purports to state legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 191.

192.    At the time of their purchases of NAPCO common stock, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein, and could not have reasonably discovered those facts prior to the disclosures herein.

**ANSWER:**  No response is required to the allegations in Paragraph 192 by the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count III as to the Individual Defendants.  Further, the allegations in Paragraph 192 purport to state legal conclusions to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 192 and on that basis deny them.

193.    Less than one year has elapsed from the time that Plaintiff discovered, or reasonably could have discovered, the facts upon which this claim is based to the time this action was filed.

Less than three years has elapsed between the time the securities were offered to the public and the time this action was filed.

**ANSWER:**  No response is required to the allegations in Paragraph 193 by the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count III as to the Individual Defendants.  Further, Paragraph 193 purports to state legal conclusions to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 193 and on that basis deny them on.  Defendants otherwise deny the allegations in Paragraph 193, except admit that less than three years has elapsed between the time the securities were offered to the public and the time this action was filed.

## COUNT IV

### For Violations of Section 12(a)(2) of the Securities Act
### Against All Defendants

194.    For purposes of this Count, Plaintiff City of Warren Police and Fire Retirement System repeats, incorporates, and realleges each and every allegation set forth above relating to the Securities Act claims as if fully set forth herein, and expressly disclaims each and every allegation relating to the Exchange Act claims, including any allegation or implication of fraud, recklessness, or intentional misconduct.

**ANSWER:** No response is required to the allegations in Paragraph 194 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count IV as to the Individual Defendants.  Additionally Paragraph 194 contains Plaintiffs' characterization of their complaint to which no response is required.  To the extent a response is required, Defendants repeat and incorporate their answers to the paragraphs realleged therein.

195.    For avoidance of doubt, the only allegations that Plaintiff incorporates by reference in this Count are those pertaining to the Securities Act claims set forth in: the preamble paragraph; ¶1, ¶¶3-4, and ¶13 (Introduction); ¶¶14-17 (Jurisdiction and Venue); ¶¶10-22 and ¶¶24-29 (Parties); ¶¶30-35 (Class Action Allegations); ¶¶36-38 (The Company and Its Business); §VII (Allegations Under the Securities Act, ¶¶149-181); and ¶¶182-193 (Count III). Plaintiff expressly

disclaims all allegations above pertaining to the Exchange Act claims, including the allegations in ¶2 and ¶¶4-12, and in §VI.

**ANSWER:**   No response is required to the allegations in Paragraph 195 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count IV as to the Individual Defendants.   Further, Paragraph 195 contains Plaintiffs' characterization of their claims to which no response is required.   To the extent a response is required, Defendants deny the allegations in Paragraph 195, except admit that Plaintiffs purport to describe the Securities Act claims asserted in the Amended Complaint.

196.   This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l, on behalf of the Class, against all Defendants. This Count does not allege, and does not intend to allege, fraud or scienter, which are not elements of a Section 12(a)(2) claim, and any implication of fraud or scienter is expressly disclaimed.

**ANSWER:**   No response is required to the allegations in Paragraph 196 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count IV as to the Individual Defendants.   Further, Paragraph 196 purports to state legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations in Paragraph 196.

197.   Defendants were sellers and offerors and/or solicitors of purchasers of the common stock offered pursuant to the Offering Materials and issued in connection with the Offering. Plaintiff and other members of the Class purchased or otherwise acquired NAPCO common stock pursuant to the Offering. The Offering Materials contained a defective and inaccurate Prospectus that Defendants used to induce Plaintiff and the other members of the Class to purchase the common stock registered in the Offering.

**ANSWER:**   No response is required to the allegations in Paragraph 197 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count IV as to the Individual Defendants.  To the extent a response is required, Defendants deny the allegations in the first and third sentence of Paragraph 197 and lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 197 and on that basis deny them.

- 91 -

198. The Underwriter Defendants participated in the preparation and dissemination of the defective and inaccurate Prospectus for their own financial benefit. But for their participation in the Offering, including their solicitation, the Offering could not, and would not, have been accomplished. Specifically, the Underwriter Defendants:

(a) made the decision to conduct the Offering and do it at the price set forth in the Prospectus. The Underwriter Defendants drafted, revised and/or approved the Prospectus. The Prospectus was calculated to create interest in NAPCO common stock and was widely distributed by, or on behalf of, the Underwriter Defendants for that purpose; and

(b) conceived and planned the Offering and orchestrated all activities necessary to affect the sale of NAPCO common stock to the investing public by issuing, promoting and supervising the distribution and ultimate sale of NAPCO common stock to the investing public.

**ANSWER:** The allegations in Paragraph 198 are not directed at Defendants and therefore no response is required. To extent a response is required, Defendants deny the allegations in Paragraph 198.

199. The Prospectus contained untrue statements of material fact, and/or concealed or failed to disclose material facts, as detailed above. Defendants owed Plaintiff and the other members of the Class who purchased NAPCO common stock pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.

**ANSWER:** No response is required to the allegations in Paragraph 199 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count IV as to the Individual Defendants. Further, Paragraph 199 purports to state legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 199.

200.     Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus at the time Plaintiff acquired NAPCO common stock.

**ANSWER:**  No response is required to the allegations in Paragraph 200 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count IV as to the Individual Defendants.  Further, the allegations in Paragraph 200 purport to state legal conclusions to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 200 and on that basis deny them.

201.     By reason of the conduct alleged herein, Defendants violated Section 12(a)(2) of the Securities Act. As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased NAPCO common stock pursuant to the Prospectus sustained damages in connection with their purchases. Accordingly, Plaintiff and the other members of the Class who hold the common stock issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their shares to the defendants sued herein. Class members who have sold their common stock seek damages to the extent permitted by law.

**ANSWER:**  No response is required to the allegations in Paragraph 201 against the Individual Defendants by virtue of the Court's Order dismissing certain allegations, including Count IV as to the Individual Defendants.  Further, Paragraph 201 purports to state legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 201.  To the extent a response is required, Defendants deny the allegations in Paragraph 201.

## COUNT V

### For Violations of Section 15 of the Securities Act
### Against the Individual Defendants

202.     For purposes of this Count, Plaintiff City of Warren Police and Fire Retirement System repeats, incorporates, and realleges each and every allegation set forth above relating to the Securities Act claims as if fully set forth herein, and expressly disclaims each and every

allegation relating to the Exchange Act claims, including any allegation or implication of fraud, recklessness, or intentional misconduct.

**ANSWER:** In answering Paragraph 202, Individual Defendants repeat and incorporate their answers to the paragraphs realleged therein. Paragraph 202 contains Plaintiffs' characterization of their complaint to which no response is required. To the extent a response is required, Individual Defendants repeat and incorporate their answers to the paragraphs realleged therein and otherwise deny the allegations in Paragraph 202. The allegations in Paragraph 202 are not directed at NAPCO and therefore no response is required. To the extent a response is required, NAPCO incorporates Individual Defendants' response to Paragraph 202.

203. For avoidance of doubt, the only allegations that Plaintiff incorporates by reference in this Count are those pertaining to the Securities Act claims set forth in: the preamble paragraph; ¶1, ¶¶3-4, and ¶13 (Introduction); ¶¶14-17 (Jurisdiction and Venue); ¶¶10-22 and ¶¶24-29 (Parties); ¶¶30-35 (Class Action Allegations); ¶¶36-38 (The Company and Its Business); §VII (Allegations Under the Securities Act, ¶¶149-181); ¶¶182-193 (Count III); and ¶¶194-201 (Count IV). Plaintiff expressly disclaims all allegations above pertaining to the Exchange Act claims, including the allegations in ¶2 and ¶¶4-12, and in §VI.

**ANSWER:** Paragraph 203 purports to state legal conclusions and Plaintiffs' characterization of their claims to which no response is required. To the extent a response is required, Individual Defendants deny the allegations in Paragraph 203, except admit that Plaintiffs purport to describe the Securities Act claims asserted in the Amended Complaint. The allegations in Paragraph 203 are not directed at NAPCO and therefore no response is required. To the extent a response is required, NAPCO incorporates Individual Defendants' response to Paragraph 203.

204. This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. §77o, on behalf of the Class, against the Individual Defendants. This Count does not allege, and does not intend to allege, fraud or scienter, which are not elements of a Section 15 claim, and any implication of fraud or scienter is expressly disclaimed.

**ANSWER:** Paragraph 204 purports to state legal conclusions to which no response is required. To the extent a response is required, Individual Defendants deny the allegations in Paragraph 204. The allegations in Paragraph 204 are not directed at NAPCO and therefore no

- 94 -

response is required. To the extent a response is required, NAPCO incorporates Individuals Defendants' response to Paragraph 204.

205. The Individual Defendants each were control persons of NAPCO by virtue of their positions as directors and/or senior officers of NAPCO. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of NAPCO.

**ANSWER:** The allegations in the first sentence of Paragraph 205 purport to state legal conclusions to which no response is required. To the extent a response is required, Individual Defendants deny the allegations in Paragraph 205, except admit that they were each a Director of the Company during the Class Period. The allegations in Paragraph 205 are not directed at NAPCO and therefore no response is required. To the extent a response is required, NAPCO incorporates Individuals Defendants' response to Paragraph 205.

206. The Individual Defendants each were culpable participants in the primary violations of Sections 11 and 12(a)(2) of the Securities Act alleged herein, based on their having signed or authorized the signing of the Offering Materials and having otherwise participated in the process which allowed the Offering to be successfully completed.

**ANSWER:** The Individual Defendants deny the allegations in Paragraph 206, except admit that they signed the Registration Statements and were involved in the process in connection with the Offering. The allegations in Paragraph 206 are not directed at NAPCO and therefore no response is required. To the extent a response is required, NAPCO incorporates Individuals Defendants' response to Paragraph 206.

## VIII. RESPONSE TO PLAINTIFFS' PRAYER FOR RELIEF

Defendants deny that Plaintiffs are entitled to the relief requested at the conclusion of the Amended Complaint or to any relief.

## AFFIRMATIVE DEFENSES

The fact that Defendants have responded to all allegations set forth herein should not be construed as a waiver of any argument that Plaintiffs' claims are barred, in whole or in part, by the Court's Order granting Defendants' Motion to Dismiss in part, and Defendants expressly reserve all rights thereunder.

## FIRST AFFIRMATIVE DEFENSE

The Amended Complaint fails to state a claim upon which relief may be granted, and fails to establish a legally cognizable injury.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that they cannot demonstrate any damages, including to the extent that any damages asserted are too speculative to be recoverable at law and because of the impossibility of the ascertainment and allocation of alleged damages.

## THIRD AFFIRMATIVE DEFENSE

By its Order granting in part Defendants' Motion to Dismiss, the Court has dismissed Count III and Count IV of the Amended Complaint against all Individual Defendants.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that the alleged misstatements or omissions were not material to the investment decisions of a reasonable investor in view of the total mix of information available to investors.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that Defendants' alleged misstatements are inactionable statements containing publicly available information, forward-looking statements, statements accompanied by meaningful cautionary language, statements of opinion, statements of puffery, inactionable statements under the bespeaks

- 96 -

caution doctrine, and/or inactionable statements that otherwise fall within the Safe Harbor provisions of the Private Securities Litigation Reform Act of 1995, including without limitation 15 U.S.C. §§ 78u-4 and 78u-5.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, for lack of loss causation to the extent that an act or omission attributed to Defendants in the Amended Complaint was not the actual or proximate cause of any alleged injury suffered by Plaintiffs and the putative class, or did not cause the alleged loss for which Plaintiffs and the putative class seek damages.  Moreover, Defendants are not liable for any alleged damages suffered by Plaintiffs and the putative class to the extent that (i) the negligent, reckless, or willful acts of others constituted independent, intervening, and superseding causes, (ii) Plaintiffs' and the putative class's purported injuries and damages, if any, were caused or contributed to, in whole or in part, by Plaintiffs and the putative class themselves, or (iii) Plaintiffs' and the putative class's purported injuries and damages, if any, were caused or contributed to, in whole or in part, by the policies, practices, acts, or omissions of independent persons or entities other than Defendants and over which Defendants have no control.  The liability of all parties, named or unnamed, if any, should be apportioned according to their relative degrees of fault and Defendants' alleged liability, if any, should be reduced accordingly.  Defendants may recover contribution from others for any liability they incur as a result of any of the alleged misrepresentations, omissions, and conduct alleged in the Amended Complaint, to the extent Defendants are permitted to do so under the law.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that they did not rely on the market price of NAPCO's securities in making their investment decisions, and to the extent that the market price of NAPCO's securities was not

inflated as a result of any alleged representation or omission made by Defendants, thus making the "fraud on the market" presumption inappropriate in this case.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that there was no actual and/or justifiable reliance on Defendants' alleged misstatements and omissions.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that Plaintiffs and the putative class relied exclusively upon their own reasonable judgment and decisions, independent investigations, and the advice of their professional investment advisors in making their alleged purchase or sale of NAPCO securities during the Class Period.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that Defendants neither owed nor breached any duty to Plaintiffs and the putative class to disclose information allegedly omitted in any relevant public disclosure, and to the extent that Defendants were under no duty to revise, update, or correct any previously made statements.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that the Individual Defendants did not have "control" over any person or entity primarily liable, as the term "control" is defined in the federal securities law.

## TWELFTH AFFIRMATIVE DEFENSE

Defendants acted, at all times, in good faith and had no knowledge of, or reasonable grounds, to believe that any alleged statement or omission made by any person over whom they allegedly exercised control was false or misleading.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, because Plaintiffs and the putative class have failed to establish a primary violation of either the '33 Act or '34 Act as required by Sections 15, 20, and 20A.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that  Plaintiffs and the putative class failed to establish any strong inference of scienter or actual knowledge on the part of any Defendant and as to each alleged misstatement with the particularity required by the PSLRA, Federal Rule of Civil Procedure 9(b), or otherwise.

### FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that Defendants acted with reasonable care and due diligence, and/or relied on the authority of experts retained to assist Defendants, with respect to the matters alleged in the Amended Complaint to have been misrepresented in or misleadingly omitted from any relevant public disclosures.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that Defendants at all times acted in good faith conformity with applicable rules, statutes, regulations, orders, or other laws in effect at the time of the conduct alleged in the Amended Complaint, and therefore are not subject to liability under the federal securities laws.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that the doctrines of laches, waiver, unclean hands, estoppel, ratification, or any other related equitable doctrines apply.

### EIGHTEENTH AFFIRMATIVE DEFENSE

This case cannot be maintained as a class action because the class as alleged by Plaintiffs does not satisfy the requirements of Federal Rule of Civil Procedure 23.

### NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs had a duty to take reasonable action to minimize any damage allegedly sustained as a result of the conduct alleged in the Amended Complaint, and to the extent Plaintiffs and the putative class failed to minimize, or otherwise mitigate any damage they allege to have suffered, they are barred, in whole or in part, from recovering damages.

### TWENTIETH AFFIRMATIVE DEFENSE

To the extent that any injuries to Plaintiffs and the putative class were caused by any action on the part of Defendants, which Defendants expressly deny, such action was not intentional or willful.

### TWENTY- FIRST AFFIRMATIVE DEFENSE

To the extent Plaintiffs and the putative class attempt to seek equitable relief, they are not entitled to such relief because they have an adequate remedy at law.

### TWENTY- SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class against Defendants are barred, in whole or in part, to the extent that the relief sought by Plaintiffs and the putative class is broader than what is necessary to remedy the alleged harm.

### TWENTY- THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that Defendants did not engage in acts, practices, or a course of business that operated as a fraud or deceit upon Plaintiffs and the putative class.

**TWENTY- FOURTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent the claims asserted in the Amended Complaint are contradicted by documentary evidence.

**TWENTY- FIFTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that they are beyond the applicable statute(s) of limitations and/or repose.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

Plaintiffs and the putative class are limited to those damages, if any, that are authorized by the Securities Act, the PSLRA, the Exchange Act, and/or any other applicable laws, and therefore may not recover damages in excess of those authorized by the statutes or regulations promulgated pursuant to these statutes and/or laws.  Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that they held, disposed of, or could have disposed of the securities at issue at a price in excess of the offering price.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that they were not purchasers of NAPCO stock during the Class Period, thus lacking standing.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent they did not purchase shares in the Offering, did not purchase shares traceable to the Offering, or purchased shares not subject to a prospectus covered by the Securities Act of 1933, thus lacking standing.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that any purportedly material information alleged in the Amended Complaint to have been

- 101 -

omitted from the Offering Materials was not firm-specific information and therefore not required to be disclosed.

## THIRTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that (i) they cannot demonstrate the direct purchase of the securities at issue in the Offering; (ii) they purchased the securities at issue in a private placement; and/or (iii) they otherwise cannot demonstrate that any of the Defendants is a statutory seller.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent the purchases at issue were not domestic transactions as required by *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010).

## THIRTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent they knew or should have known the risk associated with their securities investments, including but not limited to the stock market, industry and business factors, and assumed those risks when they purchased stock.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that they failed to use due diligence to protect their own interests.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs and the putative class are not entitled to recovery to the extent that they would have acquired NAPCO stock, even if, when they acquired their stock, they had known of the allegedly untrue statements of material fact, omissions of material fact, misleading statements, or other wrongful conduct upon which Plaintiffs and the putative class purport liability rests.

## ADDITIONAL DEFENSES RESERVED

In addition to the defenses described above, Defendants specifically reserves all rights to all other defenses that become known through the course of discovery or further investigation in this action or that they may otherwise be entitled to assert by law for any reason whatsoever.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendants demands judgment dismissing the Amended Complaint in its entirety, together with costs and disbursements of this action, and for any expenses incurred in the defense thereof, including attorneys' fees.  Defendants further demands such other relief, both general and specific, at law or in equity, to which it is justly entitled.

Dated:  May 12, 2025
        New York, New York

Respectfully submitted,

**SIMPSON THACHER & BARTLETT LLP**

 */s/ Jonathan Youngwood*
Jonathan K. Youngwood
Janet Gochman
425 Lexington Avenue
New York, NY 10017
Tel: 212-455-3539
Fax: 212-455-2502
jyoungwood@stblaw.com
j.gochman@stblaw.com

*Counsel for Defendants NAPCO Securities Technologies, Inc., Richard L. Soloway, Kevin  S. Buchel, Paul Stephen Beeber, Rick Lazio,  Donna Soloway, Robert Ungar, and Andrew J.  Wilder*

- 103 -