UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| RANDY ZORNBERG, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:23-cv-06465-BMC |
| Plaintiff, | : | CLASS ACTION |
|  | : | Hon. Brian M. Cogan |
| vs. | : |  |
| NAPCO SECURITY TECHNOLOGIES, INC., RICHARD L. SOLOWAY, KEVIN S. BUCHEL, PAUL STEPHEN BEEBER, RICK LAZIO, DONNA SOLOWAY, ROBERT UNGAR, ANDREW J. WILDER, NEEDHAM & COMPANY, LLC, and WILLIAM BLAIR & COMPANY, L.L.C., | : | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL** |
| Defendants. | : |  |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  FACTUAL OVERVIEW AND PROCEDURAL BACKGROUND ...............................3

III. THE PROPOSED CLASS REPRESENTATIVES .....................................................5

IV.  ARGUMENT ........................................................................................................6

  A.   Legal Standards on a Motion for Class Certification...............................6

  B.   The Proposed Class Satisfies the Requirements of Rule 23(a)................6

    1.   The Proposed Class Is So Numerous that Joinder Is Impracticable ............6

    2.   Common Questions of Law and Fact Exist ...................................7

    3.   Plaintiffs' Claims are Typical of Those of the Class ..................................8

    4.   Plaintiffs Will Fairly and Adequately Protect the Interests of the Class ....................................................................................................9

  C.   The Proposed Class Satisfies the Requirements of Rule 23(b)(3).........10

    1.   Common Questions of Law and Fact Predominate ...................................11

      a.   The Fraud-on-the Market Presumption of Reliance Applies to the Exchange Act Claims............................................................12

      b.   NAPCO Common Stock Traded in an Efficient Market During the Class Period ................................................................13

      c.   The *Cammer* and *Krogman* Factors Support a Finding of Market Efficiency ........................................................................14

        (1)   *Cammer* Factor 1: NAPCO's High Weekly Trading Volume Supports a Finding of Market Efficiency.............14

        (2)   *Cammer* Factor 2: Analyst and Media Coverage of NAPCO Supports a Finding of Market Efficiency............15

        (3)   *Cammer* Factor 3: The Presence of Market Makers and Institutional Investors Indicates Market Efficiency........................................................................16

**Page**

(4)    *Cammer* Factor 4: NAPCO's Eligibility to File a
Form S-3 Registration Statement Supports a
Finding of Market Efficiency................................................16

(5)    *Cammer* Factor 5: NAPCO Common Stock Reacted
to Unexpected Company-Specific Information,
Demonstrating a Cause-and-Effect Relationship...............17

(6)    The *Krogman* Factors Also Support a Finding of
Market Efficiency ..............................................................18

d.    Damages Can Be Calculated on a Class-Wide Basis Using
a Common Methodology ...............................................................19

(1)    Exchange Act Damages ....................................................20

(2)    Securities Act Damages ....................................................21

2.    A Class Action Is Superior to Other Methods of Adjudication.................21

D.    The Proposed Class Is Ascertainable.....................................................................22

E.    The Court Should Appoint Robbins Geller and Johnson Fistel as Class
Counsel ..................................................................................................................23

V.    CONCLUSION....................................................................................................................23

## TABLE OF AUTHORITIES

**Page**

### CASES

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997)......................................................................................................11

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)......................................................................................................13

*Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
955 F.3d 254 (2d Cir. 2020), *vacated on other grounds*, 594 U.S. 113 (2021)......................13

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)..........................................................................................2, 12, 13, 17

*Billhofer v. Flamel Techs., S.A.*,
281 F.R.D. 150 (S.D.N.Y. 2012) .......................................................................................7

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) .............................................................................. *passim*

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) .....................................................................15, 16, 20, 21

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)....................................................................................................19, 20

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)......................................................................................................11

*Erickson v. Jernigan Cap., Inc.*,
692 F. Supp. 3d 114 (S.D.N.Y. 2023)....................................................................6, 11, 20, 22

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017)..............................................................................12, 13

*Gruber v. Gilbertson*,
2019 WL 4439415
(S.D.N.Y. Sep. 17, 2019) ...............................................................................................3

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)..............................................................................................2, 12, 13

*Hasthantra v. CleanSpark, Inc.*,
2025 WL 2717308
(S.D.N.Y. Sep. 24, 2025) ...............................................................................................7

**Page**

*Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*,
338 F.R.D. 205 (S.D.N.Y. 2021) ........................................................................................12

*In re Allergan PLC Sec. Litig.*,
2021 WL 4077942
(S.D.N.Y. Sep. 8, 2021) ...................................................................................1, 6, 15, 17

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
281 F.R.D. 134 (S.D.N.Y. 2012) .........................................................................................9

*In re Credit Suisse Sec. Fraud Class Actions*,
2025 WL 1866293
(S.D.N.Y. July 7, 2025) .......................................................................................................1

*In re Deutsche Bank AG Sec. Litig.*,
328 F.R.D. 71 (S.D.N.Y. 2018) .......................................................................................11

*In re DiDi Glob. Inc. Sec. Litig.*,
2025 WL 1909295
(S.D.N.Y. July 7, 2025) ...................................................................................8, 9, 22, 23

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015) .......................................................................................22

*In re Glob. Brokerage, Inc.*,
2021 WL 1160056
(S.D.N.Y. Mar. 18, 2021) ...............................................................................................15

*In re IndyMac Mortg.-Backed Sec. Litig.*,
286 F.R.D. 226 (S.D.N.Y. 2012) .......................................................................................11

*In re JPMorgan Chase & Co. Sec. Litig.*,
2015 WL 10433433
(S.D.N.Y. Sep. 29, 2015) .........................................................................................18, 20

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
310 F.R.D. 230 (S.D.N.Y. 2015) .................................................................................10, 21

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
982 F. Supp. 2d 277 (S.D.N.Y. 2013)................................................................................11

*In re NIO, Inc. Sec. Litig.*,
2023 WL 5048615
(E.D.N.Y. Aug. 8, 2023)................................................................................... *passim*

**Page**

*In re: Petrobras Sec. Litig.*,
312 F.R.D. 354 (S.D.N.Y. 2016), *aff'd in part, vacated in part sub nom.*,
*In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) ..............................................16, 22

*In re Signet Jewelers Ltd. Sec. Litig.*,
2019 WL 3001084
(S.D.N.Y. July 10, 2019) ...............................................................................8, 20

*In re SunEdison, Inc. Sec. Litig.*,
329 F.R.D. 124 (S.D.N.Y. 2019) ...........................................................................22

*In re Vale S.A. Sec. Litig.*,
2022 WL 122593
(E.D.N.Y. Jan. 11, 2022) ..................................................................17, 21, 22

*In re Vitamin C Antitrust Litig.*,
279 F.R.D. 90 (E.D.N.Y. 2012)..................................................................7, 8, 9

*In re Waste Mgmt. Sec. Litig.*,
775 F. Supp. 3d 742 (S.D.N.Y. 2025)..............................................10, 12, 14, 18

*In re Winstar Commc'n Sec. Litig.*,
290 F.R.D. 437 (S.D.N.Y. 2013) .........................................................................15

*Krogman v. Sterritt*,
202 F.R.D. 467 (N.D. Tex. 2001) .............................................13, 14, 17, 18

*Martínek v. AmTrust Fin. Servs., Inc.*,
2022 WL 326320
(S.D.N.Y. Feb. 3, 2022) .....................................................................................14

*McIntire v. China MediaExpress Holdings, Inc.*,
38 F. Supp. 3d 415 (S.D.N.Y. 2014)........................................................15, 18, 19

*Nayani v. LifeStance Health Grp., Inc.*,
2023 WL 6311475
(S.D.N.Y. Sep. 28, 2023) ..................................................................................11

*Pearlstein v. BlackBerry Ltd.*,
2021 WL 253453
(S.D.N.Y. Jan. 26, 2021).......................................................................9, 10, 17, 22

*Pirnik v. Fiat Chrysler Autos., N.V.*,
327 F.R.D. 38 (S.D.N.Y. 2018) ...........................................................................14

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015)...........................................................................11, 19

**Page**

*S.E.C. v. MiMedx Grp., Inc.*,
2022 WL 902784
(S.D.N.Y. Mar. 28, 2022) ...................................................................................................13

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
349 F.R.D. 606 (S.D.N.Y. 2025) ...............................................................................6, 9, 10

*Scheufele v. Tableau Software, Inc.*,
2020 WL 2553100
(S.D.N.Y. Feb. 13, 2020) ....................................................................................................20

*Set Cap. LLC v. Credit Suisse Grp. AG*,
2023 WL 2535175
(S.D.N.Y. Mar. 16, 2023), *reconsideration denied*,
2024 WL 895084 (S.D.N.Y. Mar. 1, 2024) ..........................................................9, 22, 23

*Set Cap. LLC v. Credit Suisse Grp. AG*,
2025 WL 486254
(S.D.N.Y. Feb. 11, 2025) ..................................................................................................6, 8

*Sjunde Ap-Fonden v. Goldman Sachs Grp., Inc.*,
2025 WL 2554474
(S.D.N.Y. Sep. 4, 2025) ......................................................................................................12

*Strougo v. Barclays PLC*,
312 F.R.D. 307 (S.D.N.Y. 2016) ...............................................................................13, 18, 19

*Sykes v. Mel S. Harris & Assocs. LLC*,
780 F.3d 70 (2d Cir. 2015) ............................................................................................19, 20

*Venkataraman v. Kandi Techs. Grp., Inc.*,
2024 WL 4345571
(S.D.N.Y. Sep. 30, 2024) ..................................................................................................8, 10

*Villella v. Chem. & Mining Co. of Chile Inc.*,
333 F.R.D. 39 (S.D.N.Y. 2019) ......................................................................................18, 19

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017) ..............................................................................................11, 13

*Yi Xiang v. Inovalon Holdings, Inc.*,
327 F.R.D. 510 (S.D.N.Y. 2018) ..........................................................................................6

**Page**

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §77k..................................................................................................................10
   §77k(e) ............................................................................................................21
   §77l(a)(2) .........................................................................................................21
   §77o..................................................................................................................10

17 C.F.R.
   §239.13.............................................................................................................16

Federal Rules of Civil Procedure
   Rule 23 ..............................................................................................................6
   Rule 23(a)...................................................................................................*passim*
   Rule 23(a)(1)......................................................................................................6
   Rule 23(a)(2)......................................................................................................7
   Rule 23(a)(3)......................................................................................................8
   Rule 23(a)(4)......................................................................................................9
   Rule 23(b)(3)...............................................................................................*passim*
   Rule 23(g) ......................................................................................................1, 23
   Rule 23(g)(1).....................................................................................................23
   Rule 23(g)(1)(A)(i) ..........................................................................................23
   Rule 23(g)(1)(A)(ii) .........................................................................................23
   Rule 23(g)(1)(A)(iii) ........................................................................................23
   Rule 23(g)(1)(A)(iv) .........................................................................................23

Private Securities Litigation Reform Act of 1995 .......................................................10

Lead plaintiff Donald W. Hutchings, individually and as trustee of several trusts ("Lead Plaintiff" or "Hutchings"), and additional plaintiff City of Warren Police and Fire Retirement System ("City of Warren" and, together with Lead Plaintiff, "Plaintiffs"), respectfully submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. ("Rule") 23(a), (b)(3), and (g), for an order: (i) certifying this action as a class action; (ii) appointing Plaintiffs as Class Representatives; and (iii) appointing Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Johnson Fistel, PLLP ("Johnson Fistel") as Class Counsel.  In further support of the motion, Plaintiffs submit the Declaration of Erin W. Boardman, dated September 29, 2025 (the "Boardman Decl."), attaching, *inter alia*, the Expert Report of Bjorn I. Steinholt, CFA (the "Steinholt Rpt.") as Ex. A.[1]

## I.    INTRODUCTION

"Courts have long recognized that class actions are a desirable means for resolving claims based on securities laws." *In re Credit Suisse Sec. Fraud Class Actions*, 2025 WL 1866293, at *11 (S.D.N.Y. July 7, 2025); *see also In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at *5 (S.D.N.Y. Sep. 8, 2021) (noting that "the Second Circuit's general preference is for granting rather than denying class certification").  This securities class action, arising from NAPCO's restatement of its financial results for the first three quarters of fiscal year 2023 and Defendants' class-wide misstatements and omissions related thereto, is no exception.  It is ideally suited for class treatment.

---

[1]    Capitalized terms not defined herein have the meanings given in the Amended Complaint for Violations of the Federal Securities Laws (the "Amended Complaint"), filed on February 16, 2024. ECF 40. Unless otherwise noted, "¶" or "¶¶" are references to paragraphs of the Amended Complaint.  References to the exhibits attached to the Boardman Decl. appear herein as "Ex." Citations are omitted from quoted material, and emphasis is added.

"Defendants" refers to NAPCO Security Technologies, Inc. ("NAPCO" or the "Company"), Richard L. Soloway, Kevin S. Buchel, Paul Stephen Beeber, Rick Lazio, Donna Soloway, Robert Ungar, Andrew J. Wilder, Needham & Company, LLC and William Blair & Company, L.L.C.

Rule 23(a)'s prerequisites of numerosity, commonality, typicality, and adequacy are easily satisfied. The proposed Class (defined below) consists of Plaintiffs and hundreds, if not thousands, of investors nationwide, all harmed by the same materially false and misleading statements. Plaintiffs also meet Rule 23's criteria for adequacy: one is a Harvard-educated, retired businessman and Certified Public Accountant ("CPA") with nearly thirty-five years of investing experience, and the other is a sophisticated institutional investor. Both have vigorously represented the Class's interests for nearly two years, possess substantial financial stakes in the litigation, and have no conflicts with other Class members. These are precisely the types of investors Congress intended to oversee securities class actions. Plaintiffs' chosen Class Counsel—Robbins Geller and Johnson Fistel—are among the nation's most experienced and successful securities litigation firms, further underscoring Plaintiffs' adequacy.

Rule 23(b)(3) is likewise satisfied. The core questions in this case—including whether Defendants' statements were materially false or misleading and the extent of the resulting damages—are common to all Class members, can be established through common proof, and plainly predominate over any individualized issues. With respect to the Securities Exchange Act of 1934 ("Exchange Act") claims, individual issues of reliance will not predominate because the market for NAPCO common stock was efficient during the Class Period, and therefore Class members are entitled to the "fraud-on-the-market" presumption of reliance articulated in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) and reaffirmed in *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) ("*Halliburton II*"). Finally, class treatment is unquestionably the superior method of adjudication. Because many investors sustained relatively modest losses, individual suits would be economically unfeasible. By contrast, resolving all claims together in a single proceeding promotes efficiency, ensures consistent results, and provides a manageable framework for the litigation.

For these reasons, as discussed in more detail below, the Court should appoint Hutchings and City of Warren as Class Representatives, appoint Robbins Geller and Johnson Fistel as Class Counsel, and certify a Class consisting of:

> Those who purchased or otherwise acquired NAPCO common stock: (i) between November 7, 2022 and August 18, 2023, inclusive (the "Class Period") and were damaged thereby; and/or (ii) pursuant or traceable to the registration statement and prospectuses issued in connection with the offering of NAPCO common stock on or about February 13, 2023 (the "Offering"), and were damaged thereby.[2]

## II.    FACTUAL OVERVIEW AND PROCEDURAL BACKGROUND

Headquartered in Amityville, New York, NAPCO designs and manufactures a range of security technologies, including access control devices, intrusion and fire alarm systems, and video surveillance products. ¶4.[3]  Its fiscal year runs from July 1 to June 30. ¶¶4, 38.

On August 18, 2023, NAPCO disclosed that it would restate its financial results for the first three quarters of fiscal year 2023—ending September 30, 2022, December 31, 2022, and March 31, 2023. ¶¶5, 39, 105, 159.  NAPCO admitted that it overstated its inventory at the end of each affected quarter, thereby understating the Company's cost of goods sold ("COGS") and inflating income-related figures. ¶¶5, 40, 105, 160.  Additionally, the Company revealed previously undisclosed material weaknesses in internal controls. ¶¶5, 56, 106, 165.  On this news, NAPCO's stock price plummeted 45%, falling from $38.41 per share on August 18, 2023 to close at $21.11 per share the next trading day. ¶¶105-108.

---

[2]    Excluded from the Class are: (i) Defendants and members of their immediate families; (ii) the officers and directors of NAPCO, at all relevant times, and members of their immediate families; (iii) the legal representatives, heirs, successors, or assigns of any of the foregoing; and (iv) any entity in which any Defendant has or had a controlling interest. *See* ¶30.

[3]    The allegations in the Amended Complaint are accepted as true for purposes of this motion. *See Gruber v. Gilbertson*, 2019 WL 4439415, at *1 (S.D.N.Y. Sep. 17, 2019) ("When considering a class certification motion, courts accept the allegations in the complaint as true.").

On September 1, 2023, NAPCO filed amended Forms 10-Q/A with the SEC, restating its financial results. ¶¶6, 39, 109, 159. The Restatement confirmed that the Company had substantially overstated income-related metrics during the affected quarters. ¶109. NAPCO inflated net income by as much as 115%, operating income by as much as 118%, and understated COGS by 6% to 18%. ¶¶65-69, 80, 109.

NAPCO's false financial statements had been included in the Offering Materials for the Company's February 13, 2023 Offering, whereby defendants Soloway and Buchel offered and sold 2.4 million shares of their NAPCO common stock to the public for $74 million. ¶¶151-156. The inflated financials had further enabled NAPCO to meet and exceed market expectations that it otherwise would not have met. ¶¶11, 51, 70.

This action was initiated on August 29, 2023. On November 14, 2023, the Court appointed Hutchings as Lead Plaintiff and designated Robbins Geller and Johnson Fistel as Lead Counsel. ECF 31.

On February 16, 2024, Plaintiffs filed the Amended Complaint jointly asserting Exchange Act claims, with City of Warren additionally asserting Securities Act of 1933 ("Securities Act") claims. ECF 40. On April 11, 2025, this Court denied, in substantial part, Defendants' motion to dismiss. ECF 59. Defendants answered the Amended Complaint on May 12, 2025. ECF 61, 64.

On June 17, 2025, the Court entered a Civil Case Management Plan and Scheduling Order. ECF 69. The parties have begun discovery in accordance with the scheduling order, which contemplates, among other things, the filing of this motion for class certification.

## III.    THE PROPOSED CLASS REPRESENTATIVES

Mr. Hutchings was appointed Lead Plaintiff in his individual capacity and as Trustee of several Trusts.[4]  ECF 31.  He is a retired businessman and former CPA, a Harvard University MBA graduate, and a seasoned investor with nearly thirty-five years of experience.  *See* Hutchings Decl., ¶2; *see also* ECF 22-4.  As set forth in the certification previously filed with the Court, Mr. Hutchings purchased NAPCO common stock during the Class Period and was damaged as a result of Defendants' materially false and misleading statements, suffering significant Class Period losses.  *See id.*, ¶3; ECF 22-2.  Mr. Hutchings has actively overseen this action for nearly two years and is committed to continuing to do so.  *See* Hutchings Decl., ¶¶4-7.

Plaintiff City of Warren is a governmental defined benefit pension plan based in Warren, Michigan, serving police and fire department personnel.[5]  City of Warren has approximately $315 million in assets under management and is operated for the benefit of hundreds of participants, pensioners, and beneficiaries.  *Id.*  As set forth in its certification previously filed with the Court, City of Warren purchased NAPCO common stock during the Class Period and pursuant to the Offering, and suffered substantial losses as a result of Defendants' materially false and misleading statements.  *See* ECF 40.  City of Warren has, and will continue to, actively monitor and participate in the prosecution of this action.  *See* Essenmacher Decl., ¶¶3, 6-8, 10.

---

[4]    Mr. Hutchings is the Trustee of the Trusts and oversees their operations.  *See* Ex. B, ¶2, Declaration of Donald W. Hutchings in Support of Plaintiffs' Motion for Class Certification ("Hutchings Decl.").

[5]    *See* Ex. C, ¶2, Declaration of Jennifer Essenmacher in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel ("Essenmacher Decl.").

## IV.   ARGUMENT

### A.   Legal Standards on a Motion for Class Certification

To obtain class certification, Plaintiffs must show that the proposed Class meets the "numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule 23(b)(3)." *Set Cap. LLC v. Credit Suisse Grp. AG*, 2025 WL 486254, at *4 (S.D.N.Y. Feb. 11, 2025).   While Plaintiffs must demonstrate compliance with the requirements of Rule 23 "by a preponderance of the evidence," *id.*, courts have cautioned against viewing a request for certification as a "minitrial of the merits." *Erickson v. Jernigan Cap., Inc.*, 692 F. Supp. 3d 114, 125 (S.D.N.Y. 2023).   Thus, "[t]he question before the Court is whether the plaintiff meets Rule 23's requirements, not whether the plaintiff will prevail on the merits." *Id*.  Any "[d]oubts concerning the propriety of class certification should be resolved in favor of class certification." *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 519 (S.D.N.Y. 2018); *see also Allergan*, 2021 WL 4077942, at *5 ("the requirements of Rule 23 must be construed liberally").

### B.   The Proposed Class Satisfies the Requirements of Rule 23(a)

#### 1.   The Proposed Class Is So Numerous that Joinder Is Impracticable

Under Rule 23(a)(1), a proposed class must be "so numerous that joinder of all members is impracticable." Rule 23(a)(1).  "It is not necessary that Lead Plaintiffs provide evidence of the exact size of the proposed class, nor the identity of all class members[.]" *Set Cap.*, 2025 WL 486254, at *5.  In securities cases, "the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 349 F.R.D. 606, 609 (S.D.N.Y. 2025); *see also*

*Hasthantra v. CleanSpark, Inc.*, 2025 WL 2717308, at *4 (S.D.N.Y. Sep. 24, 2025) ("numerosity is presumed where a putative class has forty or more members").

During the Class Period, the average reported daily trading volume for NAPCO was 364,000 shares, with an average daily dollar volume of more than $12.2 million. *See* Steinholt Rpt., ¶27. Though the exact number of Class members is unknown, there are, at a minimum, hundreds and perhaps thousands of investors that purchased NAPCO common stock during the Class Period and/or in or traceable to the Offering. *See id.*, ¶31. Indeed, over 300 institutional investors invested in NAPCO during the Class Period and there were 36.7 million shares of NAPCO common stock outstanding. *See id.*, ¶35; *CleanSpark*, 2025 WL 2717308, at *4 (finding numerosity where there was an "average of 30.3 million shares outstanding"); *see also Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 153 (S.D.N.Y. 2012) (finding numerosity where the company had 23 million outstanding ADRs and 71 to 82 institutional investors). Additionally, 2.4 million shares of NAPCO common stock were sold in the Offering (¶155), which easily satisfies numerosity for Class members seeking to recover under the Securities Act. *See In re NIO, Inc. Sec. Litig.*, 2023 WL 5048615, at *5 (E.D.N.Y. Aug. 8, 2023) (numerosity met where "[m]illions of ADS were sold" in a public offering).

### 2.    Common Questions of Law and Fact Exist

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This "is a low bar, especially in securities-fraud actions." *CleanSpark*, 2025 WL 2717308, at *4. As this Court has held, "[a] single common question of law or fact may suffice to satisfy this requirement if the question is capable of giving rise to a common answer through a class action." *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 99 (E.D.N.Y. 2012) (Cogan, J.).

Here, commonality is satisfied because there are common questions of both law and fact regarding whether Defendants violated the Exchange Act and/or the Securities Act, whether

Defendants misrepresented and/or omitted material facts, and whether and to what extent Class members have sustained damages. ¶34; *see In re DiDi Glob. Inc. Sec. Litig.*, 2025 WL 1909295, at *9 (S.D.N.Y. July 7, 2025) ("'[W]here putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied.'"); *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *8 (S.D.N.Y. July 10, 2019) ("This case—as is typical of most securities fraud putative class actions . . . raises common questions of law and fact[.]").

### 3. Plaintiffs' Claims are Typical of Those of the Class

Rule 23(a)(3) requires that the class representatives' claims or defenses be "typical of the claims or defenses of the class[.]" Rule 23(a)(3). "[T]ypicality is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability[.]" *DiDi*, 2025 WL 1909295, at *10. Notably, the plaintiff's "claims need not be 'identical' to class members' claims[.]" *Set Cap.*, 2025 WL 486254, at *5; *see also Vitamin C*, 279 F.R.D. at 105 ("The typicality criterion does not require complete symmetry between the class representative's claims and those of the absent class members.").[6] "In a securities case, where as here, the plaintiff[s] [are] 'alleging dissemination of allegedly false or misleading statements, the nature of the common injury generally satisfies typicality.'" *Venkataraman v. Kandi Techs. Grp., Inc.*, 2024 WL 4345571, at *2 (S.D.N.Y. Sep. 30, 2024).

Here, Plaintiffs' Exchange Act claims are typical of other Class members' claims because all Class members were similarly damaged by purchasing NAPCO common stock during the Class Period at prices artificially inflated by the same false and misleading statements and omissions. *See*

---

[6]   "[Courts] in this Circuit have repeatedly emphasized that '[t]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members.'" *NIO*, 2023 WL 5048615, at *6.

¶33; *see also Dentsply*, 349 F.R.D. at 610 (typicality met where "[c]lass members' claims are based on defendants' allegedly deceptive conduct, and each class member alleges that defendants' scheme and misrepresentation propped up Dentsply stock prices, in violation of the securities laws"); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012) (typicality met where "class plaintiffs assert that they acquired BofA securities at prices allegedly inflated by defendants' misstatements and/or omissions"). In addition, City of Warren's Securities Act claims based on Defendants' material misrepresentations in the Offering Materials are typical of other Class members who also purchased NAPCO common stock pursuant to the Offering. *See Set Cap. LLC v. Credit Suisse Grp. AG*, 2023 WL 2535175, at *9 (S.D.N.Y. Mar. 16, 2023), *reconsideration denied*, 2024 WL 895084 (S.D.N.Y. Mar. 1, 2024) (typicality satisfied where "Plaintiffs and the remaining class members all allege that Defendants misstated and omitted material facts in the Offering Documents").

### 4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(4). "'[A]dequacy is evaluated in two ways: (1) by looking to the qualifications of plaintiffs' counsel; and (2) by examining the interests of the named plaintiffs.'" *DiDi*, 2025 WL 1909295, at *10. "[A] conflict undermines adequacy only if it presents antagonistic interests which 'go to the heart of the litigation, relating to the subject matter of the suit.'" *Vitamin C*, 279 F.R.D. at 113.

There are no fundamental conflicts here between Plaintiffs and members of the putative Class. Plaintiffs are adequate representatives because they suffered losses from purchasing NAPCO common stock at artificially inflated prices during the Class Period and/or pursuant to materially misleading Offering Materials, just like other members of the proposed Class. *See Pearlstein v.*

*BlackBerry Ltd.*, 2021 WL 253453, at *11 (S.D.N.Y. Jan. 26, 2021) (finding adequacy where "all members of the proposed class allege claims arising from the same wrongful conduct"); *Venkataraman*, 2024 WL 4345571, at *3 ("Plaintiff's interests are aligned with those of the proposed class members, who were all injured by the same misleading statements."); *see also* §III, above (discussing Plaintiffs' ongoing commitment to vigorous prosecution of this action).[7]

Plaintiffs have also retained highly qualified and experienced counsel to vigorously prosecute this action on behalf of the Class. *See In re Waste Mgmt. Sec. Litig.*, 775 F. Supp. 3d 742, 766 (S.D.N.Y. 2025) ("Robbins Geller has substantial experience in prosecuting securities fraud class actions, having served as lead or co-lead counsel in many securities class actions."); *Dentsply*, 349 F.R.D. at 611 (noting "plaintiffs' counsel [Robbins Geller] are highly experienced and successful securities-fraud litigators"); *Gerneth v. Chiasma, Inc.*, No. 1:16-cv-11082-DJC (D. Mass.) (Johnson Fistel, acting as co-lead counsel with Robbins Geller, secured an $18.75 million class-wide settlement in a securities class action alleging, in part, violations of §§11 and 15 of the Securities Act).

## C.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3)

In addition to satisfying the requirements of Rule 23(a), the Class meets the requirements of Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3).

---

[7]    City of Warren is particularly well-suited to serve as a class representative because it is an institutional investor. *See In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 237 (S.D.N.Y. 2015) ("institutional investor of the type 'unequivocally' preferred as lead plaintiff by the [PSLRA]" was an adequate class representative).

### 1.    Common Questions of Law and Fact Predominate

"'Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017) (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)). "In determining whether common questions of fact predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class. Where issues of liability are common to the class, common questions are held to predominate over individual questions." *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 236 (S.D.N.Y. 2012). As the Supreme Court noted in *Amchem Products, Inc. v. Windsor*, "[p]redominance is a test readily met in certain cases alleging . . . securities fraud[.]" 521 U.S. 591, 625 (1997).

The predominance analysis "'begins . . . with the elements of the underlying cause of action.'" *Erickson*, 692 F. Supp. 3d at 129-30 (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809-10 (2011) ("*Halliburton I*")). In this case, to prevail on both the Securities Act claims and the Exchange Act claims, Plaintiffs must establish that: (i) Defendants misrepresented or omitted material facts in the Offering Materials and/or during the Class Period; and (ii) Class members sustained damages, as well as the appropriate measure of damages. ¶34.

The Securities Act claims "have no requirements of 'scienter, reliance, or loss causation.'" *NIO*, 2023 WL 5048615, at *10; *accord In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 308 (S.D.N.Y. 2013). Instead, the "common class-wide issues of [falsity and materiality] 'are central to claims under . . . the Securities Act and 'predominate over any individual questions.'" *Nayani v. LifeStance Health Grp., Inc.*, 2023 WL 6311475, at *3 (S.D.N.Y. Sep. 28, 2023) (quoting *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 86 (S.D.N.Y. 2018)). Furthermore, they are

- 11 -

"issues that require only generalized proof." *Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 214 (S.D.N.Y. 2021). Thus, the question of whether NAPCO's financial results that were incorporated into the Offering Materials constitute material misrepresentations actionable under the Securities Act predominates over any individual questions, satisfying the first prong of Rule 23(b)(3).

Individual issues of reliance will not predominate for the Exchange Act claims because Plaintiffs are entitled to a presumption of class-wide reliance under the fraud-on-the-market theory set forth in *Basic*, as discussed below.

Finally, damages for both sets of claims can be determined on a Class-wide basis using a uniform method for all Class members.

### a.    The Fraud-on-the Market Presumption of Reliance Applies to the Exchange Act Claims

For the Exchange Act claims, "[p]laintiffs demonstrating reliance in a securities class action typically do so by invoking the fraud-on-the-market theory and the accompanying presumption of reliance established in *Basic*." *Sjunde Ap-Fonden v. Goldman Sachs Grp., Inc.*, 2025 WL 2554474, at *4 (S.D.N.Y. Sep. 4, 2025). To invoke this presumption of reliance, a plaintiff must show that: (1) the alleged misrepresentations were publicly known; (2) they were material; (3) the stock traded in an efficient market; and (4) the plaintiff traded the stock between the time of the misrepresentations and when the truth was revealed. *Halliburton II*, 573 U.S. at 268, 277-78; *Waste Mgmt.*, 775 F. Supp. 3d at 753. Plaintiffs have satisfied these prerequisites.

Defendants' alleged misrepresentations were publicly known, as they were made to the investing public via NAPCO's press releases, earnings calls, and SEC filings. ¶¶71, 73, 76-77, 79, 81, 83, 86-88, 90, 92, 94, 96, 99-101, 103. Next, NAPCO's Restatement was an admission that the alleged misrepresentations were material. *See Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268

- 12 -

F. Supp. 3d 526, 544 (S.D.N.Y. 2017) ("Under GAAP, 'previously issued financial statements should be restated only to correct material accounting errors that existed at the time the statements were originally issued.'"); *see also S.E.C. v. MiMedx Grp., Inc.*, 2022 WL 902784, at *9 (S.D.N.Y. Mar. 28, 2022) (same). In any event, "[e]ven though materiality is a prerequisite for invoking the *Basic* presumption, [the Supreme Court has] held that it should be left to the merits stage, because it does not bear on the predominance requirement of Rule 23(b)(3)." *Halliburton II*, 573 U.S. at 282 (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466-67 (2013)). And, like other members of the proposed Class, Plaintiffs purchased NAPCO common stock between the time when the misrepresentations were made and the end of the Class Period. *See* ECF 22-2 and 40.

**b.      NAPCO Common Stock Traded in an Efficient Market During the Class Period**

The final requirement for invoking the presumption of reliance—a finding of market efficiency—is also readily met. "An efficient market is 'one in which the prices of the [stock] incorporate most public information rapidly.'" *Waggoner*, 875 F.3d at 94. The burden for establishing market efficiency "is not an onerous one." *NIO*, 2023 WL 5048615, at *11. As a threshold matter, courts have found the fact that a company's stock trades on the NASDAQ, a major national exchange, to be enough to establish a presumption of efficiency. *See, e.g.*, *Strougo v. Barclays PLC*, 312 F.R.D. 307, 318 (S.D.N.Y. 2016), *aff'd sub nom.*, *Waggoner*, 875 F.3d 79 ("most courts in this Circuit agree that" a listing on the NYSE or NASDAQ "is a good indicator of efficiency"). In fact, the Second Circuit has described the NASDAQ as a "theoretically efficient market[]." *Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 955 F.3d 254, 261 (2d Cir. 2020), *vacated on other grounds*, 594 U.S. 113 (2021). While NAPCO's listing on the NASDAQ presumptively establishes market efficiency, the *Cammer* and *Krogman* factors (discussed below) provide further evidence of efficiency. These factors overwhelmingly weigh in favor of finding that

- 13 -

the market for NAPCO common stock was efficient, entitling Plaintiffs and the Class to rely on the

fraud-on-the-market presumption of reliance.

### c.     The *Cammer* and *Krogman* Factors Support a Finding of Market Efficiency

Although the "Second Circuit has declined to adopt a particular test for market efficiency,"

"the Circuit and many district courts within the Circuit" have used the following factors from

*Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989):

> '(1) the average weekly trading volume of the security; (2) the number of analysts
> following the security; (3) the extent to which market makers traded in the security;
> (4) the eligibility of the issuer to file an SEC Form S-3 or F-3; and (5) a
> demonstrated cause and effect relationship between unexpected, material disclosures
> about the company and changes in the security's price.'

*NIO*, 2023 WL 5048615, at *11.  District courts are required to conduct "'a holistic analysis based

on the totality of the evidence presented' rather than a check-the-box approach to the various

factors" in assessing market efficiency.  *Id*. at *13.  It follows that "market efficiency does not turn

on whether any one or combination of factors is satisfied, but rather on whether the evidence *as a*

*whole* makes it more likely than not" that the stock traded efficiently.  *Martínek v. AmTrust Fin.*

*Servs., Inc.*, 2022 WL 326320, at *10 (S.D.N.Y. Feb. 3, 2022).

### (1)     *Cammer* Factor 1: NAPCO's High Weekly Trading Volume Supports a Finding of Market Efficiency

High trading volume "suggests an efficient market because it implies significant investor

interest in the company, which implies . . . that many investors are executing trades on the basis of

newly available or disseminated corporation information.'" *Waste Mgmt.*, 775 F. Supp. 3d at 756.

"[A]verage weekly trading of 2% or more" creates a "strong presumption" of market efficiency.

*Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 44 (S.D.N.Y. 2018).  The average weekly

trading volume of NAPCO common stock during the Class Period was 5.0% (*see* Steinholt Rpt.,

- 14 -

¶28), comfortably exceeding the 2% threshold that courts have found sufficient to establish a strong presumption of market efficiency. *See, e.g.*, *Allergan*, 2021 WL 4077942, at \*10 (weekly trading volume of 3.9% supports market efficiency).

### (2) *Cammer* Factor 2: Analyst and Media Coverage of NAPCO Supports a Finding of Market Efficiency

Analyst coverage "supports a finding of market efficiency" because it shows that "investment professionals" were "inject[ing] their views on the . . . security into the market." *In re Glob. Brokerage, Inc.*, 2021 WL 1160056, at \*13 (S.D.N.Y. Mar. 18, 2021). "This factor is commonly met where multiple large brokerage firms produce . . . reports on the financial condition of a company." *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 431 (S.D.N.Y. 2014). Here, NAPCO was covered during the Class Period by at least eight analyst firms. Steinholt Rpt., ¶¶30-31. Such widespread coverage provides strong evidence of an efficient market and readily satisfies *Cammer* Factor 2. *See e.g.*, *NIO*, 2023 WL 5048615, at \*11 (coverage by five analysts supports efficiency); *In re Winstar Commc'n Sec. Litig.*, 290 F.R.D. 437, 446 (S.D.N.Y. 2013) (finding market efficient with three analysts).

The extensive press coverage of NAPCO provides additional evidence of market efficiency. Over 500 media accounts (including Company press releases, earnings announcements, conference calls, articles, and other notifications) were available on Bloomberg during the Class Period. Steinholt Rpt., ¶30. *See Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 92 (S.D.N.Y. 2015) ("regular press coverage throughout the Class Period" weighed in favor of finding market efficiency).

- 15 -

**(3)    *Cammer* Factor 3: The Presence of Market
Makers and Institutional Investors Indicates
Market Efficiency**

Market makers are significant to the market efficiency analysis because they "react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level," thereby enabling public companies to immediately deliver information to the market, which is immediately incorporated into the price of a security. *Cammer*, 711 F. Supp. at 1286-87. "Courts in this Circuit have found that anywhere between six and twenty market makers is sufficient to support a finding of market efficiency." *Carpenters*, 310 F.R.D. at 92. NAPCO easily exceeded this amount, as there were at least 98 market makers for its common stock (including 36 firms with volume of at least 100,000 shares) during the Class Period. Steinholt Rpt., ¶¶32-35.

Additionally, during the Class Period, there were over 300 institutional investors with ownership of 85% of the Company's outstanding shares. *Id.*, ¶35. The presence of institutional investors in NAPCO, who were able to evaluate and trade NAPCO shares based on new, material information, strongly supports a finding of market efficiency. *See id.*; *see also Carpenters*, 310 F.R.D. at 92 (*Cammer* 3 satisfied where between 55% and 97% of outstanding ADSs were held by institutional investors); *In re: Petrobras Sec. Litig.*, 312 F.R.D. 354, 366 (S.D.N.Y. 2016), *aff'd in part, vacated in part sub nom.*, *In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) (crediting expert opinion that wide institutional ownership indicates market efficiency).

**(4)    *Cammer* Factor 4: NAPCO's Eligibility to File a
Form S-3 Registration Statement Supports a
Finding of Market Efficiency**

"[T]he existence of Form S-3 status is an important factor weighing in favor of a finding that a market is efficient." *Cammer*, 711 F. Supp. at 1285. A company is generally eligible to file a Form S-3 registration statement if it has filed reports with the SEC for 12 consecutive months and has $75 million in stock held by non-affiliates. *See* 17 C.F.R. §239.13; Steinholt Rpt., ¶37.

- 16 -

Throughout the Class Period, NAPCO surpassed the S-3 registration threshold by regularly filing with the SEC, maintaining an average float of 28.8 million outstanding shares, and having over $837 million in common stock held by non-affiliates as of December 31, 2022.  Steinholt Rpt., ¶¶37, 52.

> **(5)** ***Cammer* Factor 5: NAPCO Common Stock Reacted to Unexpected Company-Specific Information, Demonstrating a Cause-and-Effect Relationship**

The fifth *Cammer* factor tests whether there is a causal connection between the disclosure of material information and stock price movement.  *See Cammer*, 711 F. Supp. at 1287.  "'[A]n event study that correlates . . . disclosures of [unanticipated,] material information [about a security] with corresponding fluctuations in price has been considered *prima facie* evidence of a causal relationship under the fifth *Cammer* factor.'"  *In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *10 (E.D.N.Y. Jan. 11, 2022).

Here, because Plaintiffs have already established the first four *Cammer* factors as well as all *Krogman* factors (discussed below), further analysis of the fifth *Cammer* factor is unnecessary.  In fact, Courts in this District have cautioned that direct proof of causality "would place an unnecessarily unrealistic evidentiary burden on the Rule 10b-5 plaintiff who has traded on an impersonal market."  *Allergan*, 2021 WL 4077942, at *9 (citing *Basic*); *see also BlackBerry*, 2021 WL 253453, at *16 ("As the Second Circuit noted in *Waggoner*, where the remaining four *Cammer* factors and the three *Krogman* factors all point toward market efficiency, a court can dispense with the fifth *Cammer* factor completely.").

Nevertheless, Plaintiffs have gone further by submitting an event study that provides empirical evidence of causality.  The first step in Mr. Steinholt's event study was to compare NAPCO's stock price returns against industry indices using a regression analysis for a control period.  Steinholt Rpt., ¶¶39-40.  Next, Mr. Steinholt ran a regression analysis on "event days"

- 17 -

(earnings day announcements) to quantify the "abnormal return." *Id.* Based on this analysis, Mr. Steinholt concluded that, during the Class Period, there was a statistically significant relationship between the market index (S&P 500) and the price of NAPCO common stock, demonstrating that new and material market information was quickly incorporated into NAPCO's share price. *Id.*, ¶41. In sum, Mr. Steinholt's event study provides compelling supplemental evidence of a cause-and-effect relationship between the dissemination of unexpected NAPCO-related news and movement in NAPCO's share price. *See id.*, ¶¶39-46.

### (6) The *Krogman* Factors Also Support a Finding of Market Efficiency

In assessing market efficiency, courts often consider the following additional factors outlined in *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001): "'(1) the capitalization of the company; (2) the bid-ask spread of the stock; and (3) the percentage of stock not held by insiders (the "float").'" *Id.* at 474; *Waste Mgmt.*, 775 F. Supp. 3d at 754 n.2; *see also In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at \*5-\*7 (S.D.N.Y. Sep. 29, 2015) (analyzing *Krogman* factors). Here, all three *Krogman* factors support a finding of market efficiency. *See* Steinholt Rpt., ¶¶47-52.

*First*, NAPCO's large market capitalization—*i.e.*, the total value of all outstanding shares (ranging from $923 million to $1.48 billion)—demonstrates market efficiency. *See Strougo*, 312 F.R.D. at 315 ("investors tend to be more interested in companies with higher market capitalizations, thus leading to more efficiency"); *Villella v. Chem. & Mining Co. of Chile Inc.*, 333 F.R.D. 39, 54 (S.D.N.Y. 2019) (market capitalization of $1 billion supports market efficiency); *McIntire*, 38 F. Supp. 3d at 433 ($292 million to $585 million market capitalization weighs in favor of a finding of market efficiency).

*Second*, the narrow bid-ask spread for NAPCO common stock during the Class Period demonstrates efficiency. *See* Steinholt Rpt., ¶¶49-50; *Strougo*, 312 F.R.D. at 316 ("[A] small bid-

ask spread indicate[s] that trading in the stock [is] inexpensive, suggesting efficiency."); *see also Villella*, 333 F.R.D. at 54 (finding a 0.06% bid-ask spread narrow).  The average bid-ask spread for NAPCO common stock during the Class Period was less than 0.1% (Steinholt Rpt., ¶50), which evidences market efficiency.  *See NIO*, 2023 WL 5048615, at \*12 (bid-ask spread of 0.17% showed efficiency).

*Third*, NAPCO's sizeable public float during the Class Period—which had a market value of over $760 million and represented more than 78% of NAPCO's outstanding shares—provides additional evidence of market efficiency.  *See* Steinholt Rpt., ¶52; *Strougo*, 312 F.R.D. at 316-17 ("[t]he percentage of shares available to the public generally bears a direct relationship to efficiency" because when insiders with private information hold large portions of the security, "the price is less likely to reflect only the total of all public information"); *see also McIntire*, 38 F. Supp. 3d at 433 (finding that float of between 57% and 69% of shares outstanding supported efficiency).

*        *        *

As set forth in the Steinholt Rpt. and summarized above, Plaintiffs have demonstrated that NAPCO common stock traded in an efficient market during the Class Period.  Accordingly, Plaintiffs are entitled to a fraud-on-the-market presumption of reliance with respect to the Exchange Act claims.

**d.       Damages Can Be Calculated on a Class-Wide Basis<br>Using a Common Methodology**

In *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), the Supreme Court held that "a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class'[] asserted theory of injury[.]" *Roach*, 778 F.3d at 407.  The Second Circuit, however, has consistently acknowledged that *Comcast* does not require "a finding that damages are capable of measurement on a classwide basis." *Id*. at 402.  "All that is

- 19 -

required at class certification is that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 88 (2d Cir. 2015).

### (1)      Exchange Act Damages

Damages for the Exchange Act claims can be calculated by a common methodology, utilizing the event study.  As Mr. Steinholt explained, the event study tests whether the alleged misrepresentations caused NAPCO's stock price to be artificially inflated, and whether corrective disclosures caused the inflation to dissipate. *See* Steinholt Rpt., ¶57.  Damages-per-share will be measured by the difference between inflation on the share purchase date and inflation on the share sale date. *Id*., ¶¶58-59; *see also Erickson*, 692 F. Supp. 3d at 131 ("[t]he out-of-pocket" method is the "typical measure of damages" in securities fraud class actions).  Accordingly, Exchange Act damages would be determined through "a mechanical arithmetic exercise, applying the results of the class-wide analyses . . . to each Class member's trading data."  Steinholt Rpt., ¶61.  This methodology ensures that the Exchange Act damages "would appl[y] equally to all shareholders regardless of the number of shares they held." *Erickson*, 692 F. Supp. 3d at 123.

Courts have consistently found that utilizing an event study to calculate damages under the Exchange Act satisfies *Comcast*. *See, e.g.*, *Scheufele v. Tableau Software, Inc.*, 2020 WL 2553100, at *5 (S.D.N.Y. Feb. 13, 2020) (crediting Steinholt's application of the out-of-pocket damages methodology where "each class member's damages could be calculated based on the calculated inflation at the time of their sales and purchases"); *Signet*, 2019 WL 3001084, at *20 (event study satisfied *Comcast* by "provid[ing] a class-wide model for calculating damages arising from [plaintiff's] theory of liability"); *JPMorgan*, 2015 WL 10433433, at *7 (accepting expert's "propos[al] to calculate classwide, per-share damages through an event study analysis"); *Carpenters*, 310 F.R.D. at 99 ("Plaintiffs' model survives the minimal scrutiny required under *Comcast* and

- 20 -

Rule 23(b)(3)—their theory of liability matches their theory of damages and individualized damages issues will not predominate.").

### (2)      Securities Act Damages

Damages for Securities Act claims will be calculated in accordance with formulas set forth in the relevant statutory provisions. *See* 15 U.S.C. §77k(e); 15 U.S.C. §77l(a)(2). As described in the Steinholt Rpt., these formulas "are based on objective metrics—such as trading dates, prices, and volumes," and applying them to calculate damages on a class-wide basis is "straightforward." Steinholt Rpt., ¶62. Because damages for the Securities Act claims are based on the application of statutory formulas, individual damages issues do not undermine predominance. *See NIO*, 2023 WL 5048615, at *16 (existence of individualized damages "is an insufficient basis on which to deny class certification").

### 2.      A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) also requires that class treatment be "superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). It is widely recognized that "[s]ecurities suits easily satisfy the [s]uperiority [r]equirement of Rule 23(b)(3)." *MF Glob.*, 310 F.R.D. at 239; *see also NIO*, 2023 WL 5048615, at *17 ("this case, like many other securities actions, would be best adjudicated as a class action"). When assessing superiority, courts consider: (1) class members' interests in individually controlling separate actions; (2) whether other litigation has already commenced; (3) the desirability of concentrating claims in one forum; and (4) the likely difficulties in managing a class action. Rule 23(b)(3)(A)-(D). Here, each factor weighs strongly in favor of class certification.

*First*, the proposed Class consists of a large number of geographically dispersed purchasers of NAPCO common stock whose individual damages are likely too small to incentivize individual litigation. *See Vale*, 2022 WL 122593, at *21 (noting that "[m]ost violations of the federal securities

laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible"); *Erickson*, 692 F. Supp. 3d at 134 (finding superiority met based on "economies of scale in proceeding as a class"). *Second*, Plaintiffs are not aware of any other securities litigation commenced by Class members seeking redress for the false and misleading statements alleged in the Amended Complaint. *Third*, class treatment of this action removes the "risk of inconsistent judgments" emanating from other proceedings. *See id. Finally*, this case does not pose any management difficulties that will preclude this action from being maintained as a class action. *See In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 144 (S.D.N.Y. 2019) (superiority requirement met where "[t]he alternatives are either no recourse for thousands of stockholders or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake"). In short, a class action is superior to a multiplicity of individual suits.

### D. The Proposed Class Is Ascertainable

The "Second Circuit has [also] recognized an implied requirement that the class be 'ascertainable.'" *BlackBerry*, 2021 WL 253453, at \*5 (quoting *Petrobras*, 862 F.3d at 264). Ascertainability "does not demand that a court determine whether the proposed class is administratively feasible," but instead "only asks whether the class can be 'defined using objective criteria that establish a membership with definite boundaries.'" *Set Cap.*, 2023 WL 2535175, at \*11 (citing *Petrobras*, 862 F.3d at 264). The requirement "is not demanding," and is meant "only to prevent the certification of a class whose membership is truly indeterminable." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 353 (S.D.N.Y. 2015).

The proposed Class here is readily ascertainable because it is defined by objective criteria that clearly establishes membership within fixed boundaries. *See DiDi*, 2025 WL 1909295, at \*9 ("class membership is readily ascertainable because it includes purchasers of DiDi ADS during a

specific time period, and class membership can be determined by looking at trading records"); *Set Cap.*, 2023 WL 2535175, at \*11 (finding that "'all persons and entities that purchased or acquired [securities] pursuant to or traceable to [the] Offering documents, and were damaged thereby'— satisfies the ascertainability requirement").

E.  **The Court Should Appoint Robbins Geller and Johnson Fistel as Class Counsel**

Rule 23(g)(1) requires that "a court that certifies a class must appoint class counsel." Rule 23(g)(1).  In appointing class counsel, courts consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Rule 23(g)(1)(A)(i)-(iv).  Both Robbins Geller and Johnson Fistel satisfy these factors and have prosecuted numerous securities class actions successfully.  *See* Ex. D (Robbins Geller firm résumé); Ex. E (Johnson Fistel firm résumé).  In addition, Robbins Geller and Johnson Fistel have vigorously litigated this case for nearly two years—conducting an extensive investigation, drafting a detailed Amended Complaint, defeating Defendants' motion to dismiss, engaging in discovery, and moving for class certification.  Accordingly, this Court should appoint Robbins Geller and Johnson Fistel as Class Counsel.

V.  **CONCLUSION**

Plaintiffs respectfully request that the Court: (1) certify this action as a class action pursuant to Rule 23(a) and (b)(3); (2) appoint Mr. Hutchings and City of Warren as Class Representatives; and (3) appoint Robbins Geller and Johnson Fistel as Class Counsel.

DATED: September 29, 2025

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
ERIN W. BOARDMAN
AVITAL O. MALINA


*/s/ Erin W. Boardman*
ERIN W. BOARDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
eboardman@rgrdlaw.com
amalina@rgrdlaw.com

JOHNSON FISTEL, PLLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA 30064
Telephone: 470/632-6000
michaelf@johnsonfistel.com

JOHNSON FISTEL, PLLP
JEFFREY A. BERENS
2373 Central Park Boulevard, Suite 100
Denver, CO 80238
Telephone: 303/861-1764
jeffb@johnsonfistel.com

JOHNSON FISTEL, PLLP
RALPH M. STONE
620 Fifth Avenue, 2nd Floor
New York, NY 10020
Telephone: 212/292-5690
ralphs@johnsonfistel.com

*Lead Counsel for Plaintiffs*

VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
tmichaud@vmtlaw.com

*Counsel for City of Warren Police and Fire
Retirement System*

**CERTIFICATE OF WORD COUNT**

I hereby certify that the foregoing memorandum of law complies with the formatting and word-count limitations pursuant to Rule 7.1 of the United States District Court for the Eastern District of New York because it does not exceed 8,750 words.

*/s/ Erin W. Boardman*
ERIN W. BOARDMAN
