# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————————x

RANDY ZORNBERG, Individually and on   :   Civil Action No. 1:23-cv-06465-BMC
Behalf of All Others Similarly Situated,   :

  :

                Plaintiff,   :

  :

     vs.   :

  :

NAPCO SECURITY TECHNOLOGIES, INC., :
RICHARD L. SOLOWAY, KEVIN S.   :
BUCHEL, PAUL STEPHEN BEEBER, RICK :
LAZIO, DONNA SOLOWAY, ROBERT   :
UNGAR, ANDREW J. WILDER, NEEDHAM :
& COMPANY, LLC, and WILLIAM BLAIR  :
& COMPANY, L.L.C.,   :

  :

             Defendants.   :

——————————————————————x

 

 

### EXPERT REPORT OF BJORN I. STEINHOLT, CFA

September 29, 2025

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION AND QUALIFICATIONS ...................................................1

II.    OVERVIEW OF ASSIGNMENT ....................................................................4

III.   MARKET EFFICIENCY IN A FRAUD-ON-THE-MARKET CONTEXT .......................6

IV.    ANALYSIS OF MARKET EFFICIENCY ..........................................................11

    A.     Trading on NASDAQ Supports My Conclusion that NAPCO Common Stock Traded in an Efficient Market ..................................................12

    B.     *Cammer* Factor 1: Large Trading Volume Supports My Conclusion that NAPCO Common Stock Traded in an Efficient Market ........................................13

    C.     *Cammer* Factor 2: Substantial Analyst Coverage Supports My Conclusion that NAPCO Common Stock Traded in an Efficient Market ...............................14

    D.     *Cammer* Factor 3: The Significant Number of Liquidity Providers and Institutional Investors in NAPCO Supports My Conclusion that NAPCO Common Stock Traded in an Efficient Market ........................................16

    E.     *Cammer* Factor 4: NAPCO Was Eligible to File on Form S-3 .............................17

    F.     *Cammer* Factor 5: NAPCO's Stock Price Reaction to Material Market, Industry, and Company-Specific Information Supports My Conclusion that NAPCO Common Stock Traded in an Efficient Market ...............................18

    G.     *Krogman* Factor 1: Large Market Capitalization Is Satisfied ...............................24

    H.     *Krogman* Factor 2: Small Bid-Ask Spread Is Satisfied ........................................24

    I.     *Krogman* Factor 3: Large Float Is Satisfied .........................................................25

    J.     Conclusion: The *Cammer* and *Krogman* Factors Demonstrate that NAPCO Common Stock Traded in an Efficient Market ........................................26

V.     USING THE EVENT-STUDY FRAMEWORK TO CALCULATE CLASS-WIDE DAMAGES .......................................................................................26

    A.     Class-Wide Exchange Act Damages ......................................................................26

    B.     Class-Wide Securities Act Damages ......................................................................29

VI.    CONCLUSION ...................................................................................................31

## I.    INTRODUCTION AND QUALIFICATIONS

1.    I am a Managing Director at Caliber Advisors, Inc., a full-service financial valuation and economic consulting firm with offices in San Diego, California and Chicago, Illinois. I have more than 35 years of experience providing capital markets consulting, including analyzing and valuing investments. A summary of my background and qualifications is attached as Exhibit A to this report.

2.    Over the past 25 years, I have been retained on numerous occasions to provide expert opinions relating to market efficiency, price impact, materiality, loss causation and damages in securities class actions similar to this litigation. I am frequently asked to analyze market efficiency in a reliance context and have submitted many reports to various federal courts outlining my findings, including in the following cases:

- *Luna v. Carbonite, Inc., et al.*, No. 1:19-cv-11662 (D. Mass. July 14, 2023);

- *Purple Mountain Tr. v. Wells Fargo & Co., et al.*, No. 3:18-cv-03948 (N.D. Cal. Aug. 15, 2022);

- *Plymouth Cnty. Ret. Sys., et al. v. Patterson Co., Inc., et al.*, No. 0:18-cv-00871 (D. Minn. Sep. 28, 2020);

- *Chabot, et al. v. Walgreens Boots Alliance, Inc., et al.*, No. 1:18-cv-02118 (M.D. Pa. Jan. 21, 2020);

- *Scheufele, et al. v. Tableau Software, Inc., et al.*, No. 1:17-cv-05753 (S.D.N.Y. Jan. 16, 2020);

- *In re Sandridge Energy, Inc. Sec. Litig.*, No. 5:12-cv-01341 (W.D. Okla. Sep. 30, 2019);

- *Villella, et al. v. Chem. & Mining Co. of Chile, Inc., et al.*, No. 1:15-cv-02106 (S.D.N.Y. Sep. 24, 2019);

- *In re LendingClub Sec. Litig.*, No. 3:16-cv-02627 (N.D. Cal. Oct. 20, 2017);

- *Willis v. Big Lots, Inc., et al.*, No. 2:12-cv-00604 (S.D. Ohio Mar. 17, 2017);

- *Marcus v. J.C. Penney Co. Inc., et al.*, No. 6:13-cv-00736 (E.D. Tex. Mar. 8, 2017);

- 1 -

- *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc., et al.*, No. 5:12-cv-05162 (W.D. Ark. Sep. 20, 2016);

- *In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604 (N.D. Cal. Feb. 25, 2014);

- *Smilovits v. First Solar Inc., et al.*, No. 2:12-cv-00555 (D. Ariz. Oct. 8, 2013);

- *T Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp., et al.*, No. 2:10-cv-02847 (N.D. Ala. June 14, 2012);

- *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp., et al.*, No. 1:11-cv-05026 (S.D.N.Y. Dec. 14, 2012);

- *Siracusano v. Matrixx Initiatives, et al.*, No. 2:04-cv-00886 (D. Ariz. Feb. 27, 2012);

- *Luman v. Anderson, et al.*, No. 4:08-cv-00514 (W.D. Mo. Feb. 10, 2012);

- *McGuire v. Dendreon Corp., et al.*, No. 2:07-cv-00800 (W.D. Wash. May 27, 2010);

- *In re Novatel Wireless Sec. Litig.*, No. 3:08-cv-01689 (S.D. Cal. May 12, 2010);

- *In re Healthsouth Corp. Sec. Litig.*, No. 2:03-cv-01501 (N.D. Ala. Mar. 31, 2009);

- *Kelleher v. ADVO, Inc., et al.*, No. 3:06-cv-01422 (D. Conn. Mar. 30, 2009); and

- *In re Sonus Networks, Inc. Litig., et al.*, No. 1:04-cv-10294 (D. Mass. Sep. 25, 2007).[1]

3.      Furthermore, I have provided expert testimony explaining how to calculate class-wide damages using the event-study framework for purposes of class certification. For example, in *J.C. Penney*, the court rejected defendants' criticism of my proposed class-wide damages methodology, agreed it was consistent with plaintiffs' theory of liability, and certified the class.[2] In *Big Lots*, the court found that my damages methodology was "both relevant and reliable," determined that I had "explained how it is both workable and consistent with [p]laintiffs' theory

---

[1]      In each of these matters listed above, the respective courts granted class certification, consistent with my opinions. The date that class certification was granted is noted in the parentheses.

[2]      *See Marcus v. J.C. Penney Co., Inc.*, 2016 WL 8604331, at *10 (E.D. Tex. Aug. 29, 2016).

- 2 -

of liability in this particular case," and certified the class.[3] In *Carbonite*, *Patterson*, *Wells Fargo* and *Sandridge*, the courts also found my damages models based on the event-study framework sufficiently reliable and certified the respective classes.[4]

4.       I have also prepared class-wide damages under §10(b) of the Securities Exchange Act of 1934 ("Exchange Act") in cases going to trial. In *Novatel*, the court undertook a rigorous *Daubert* analysis of every element of my comprehensive loss causation and damages methodology and found that "Steinholt's testimony on loss causation and damages, based on his event study analysis, is reasonable and reliable."[5] Other courts have similarly credited my damages testimony for trial, including in *Chabot v. Walgreens Boots Alliance, Inc.*, No. 1:18-cv-02118 (M.D. Pa.); *Employer-Teamsters Joint Council No. 84 Pension Tr. Fund, et al. v. Am. W. Holdings Corp., et al.*, No. 2:99-cv-00399 (D. Ariz.); *Nursing Home Pension Fund, et al. v. Oracle Corp., et al.*, No. 3:01-cv-00988 (N.D. Cal.); and *In re Neopharm, Inc. Sec. Litig.*, No. 1:02-cv-02976 (N.D. Ill.). In *Gruber v. Gilbertson*, No. 1:16-cv-09727 (S.D.N.Y. 2019) my trial testimony on loss causation and damages was found admissible, resulting in a judgment against defendant.

5.       I have also testified on numerous occasions regarding the quantification of damages for violations of §§11 and/or 12 of the Securities Act of 1933 ("Securities Act").[6]

---

[3]       *See Willis v. Big Lots, Inc.*, 2017 WL 1074048, at *7 (S.D. Ohio Mar. 17, 2017).

[4]       *See Luna v. Carbonite, Inc.*, 2023 WL 4539855, at *10 (D. Mass. July 14, 2023); *Plymouth Cnty. Ret. Sys. v. Patterson Co., Inc.*, 2020 WL 5757695, at *14 (D. Minn. Sep. 28, 2020); *Purple Mountain Tr. v. Wells Fargo & Co.*, 2022 WL 3357835, at *4-*7 (N.D. Cal. Aug. 15, 2022); and *In re Sandridge Energy, Inc., Sec. Litig.*, 2019 WL 4752268, *6 (W.D. Okla. Sep. 30, 2019).

[5]       *See In re Novatel Wireless Sec. Litig.*, 2013 WL 12144150, at *13 (S.D. Cal. Oct. 25, 2013).

[6]       My opinions relating to the quantification of §11 damages listed on my CV include: (a) *In re New Eng. Health, et al. v. Qwest Commc'n Int'l Inc.* (Ex. A, at 3); (b) *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., Consol. Opt-Out Action* (*id.*); (c) *In re Ohio Pub. Emps. Ret. Sys. v. Richard Parsons et al.* (*id.* at 4); (d) *United Food & Com. Workers Union et al. v. Chesapeake*

6.      I received a Master of International Business degree from the University of San Diego and a Bachelor of Science degree in Computer Science and Engineering from California State University, Long Beach. In addition to my graduate business degree and my engineering degree, I have earned the professional designation of Chartered Financial Analyst ("CFA") awarded by the CFA Institute, and I participate in its continuing education program. The CFA designation is a qualification for finance and investment professionals focusing on investment management and securities analyses of common stock, fixed income and other investments.

7.      My billable rate is currently $575 per hour. My compensation is not contingent on the outcome of this case or my findings.

## II.      OVERVIEW OF ASSIGNMENT

8.      Counsel for lead plaintiff Donald W. Hutchings, individually and as trustee of several trusts, and additional plaintiff City of Warren Police and Fire Retirement System ("Plaintiffs") have requested that I determine whether the market in which NAPCO Security Technologies, Inc. ("NAPCO" or the "Company") common stock traded during the period between November 7, 2022 and August 18, 2023, inclusive (the "Class Period"), was open, developed, and efficient, in that the market prices quickly changed to reflect new and material information concerning NAPCO as such information became publicly available.[7]

_____

*Energy Corp. et al.* (*id*. at 5); (e) *In re Beaver Cnty. Emps. Ret. Fund v. Cyan, Inc. et al.* (*id*. at 7); (f) *Gary Curran, et al. v. Freshpet, Inc.* (*id*.); (g) *In re Cloudera, Inc. Sec. Litig.* (*id*. at 9); (h) *In re Funko, Inc. Sec. Litig.* (*id*.); and (i) *In re The RealReal, Inc. Sec. Litig.* (*id*.).

[7]      Throughout this report, I use the term "material information" to refer to the definition used by investors and securities analysts, rather than the legal term. From an economic point of view, the value of an investment is based on the expected future cash flows of that investment, *i.e.*, the amount, timing and associated risk of those cash flows. Material information, therefore, is information that impacts the future cash flows or the timing or riskiness of the future cash flows. *See* Jerald E. Pinto, Elaine Henry, Thomas R. Robinson & John D. Stove, *Equity Asset Valuation*, John Wiley & Sons, 2, 18 (2d ed. 2010) ("The most important type of equity valuation models are present value models. In finance theory, present value models are considered the fundamental

9.      In addition, Plaintiffs' counsel have asked me to determine whether damages can be calculated on a class-wide basis in this case, using a common damages methodology for the class members under §10(b) of the Exchange Act.

10.     Plaintiffs' counsel have also asked me to explain how class-wide damages under §§11 and 12 of the Securities Act can be calculated for NAPCO common stock traceable to the registration statement and prospectuses issued in connection with the offering of NAPCO common stock on or about February 13, 2023 (the "Offering").

11.     My opinions in this matter are based on my professional experience, as well as my review of a substantial amount of information, including: (a) the Amended Complaint for Violations of the Federal Securities Laws, dated February 16, 2024 (the "Complaint") (ECF 40); (b) Memorandum Decision and Order, dated April 11, 2025 (ECF 59); (c) public filings by NAPCO with the SEC during 2022 and 2023, including filings on Form 10-K, Form 10-Q, Form 8-K, Proxy Statements and Prospectuses; (d) NAPCO press releases and conference call transcripts from November 2022 through August 2023; (e) securities analyst reports relating to NAPCO and its industry from November 2022 through August 2023; (f) media reports regarding NAPCO and its industry from November 2022 through August 2023; (g) price, volume and other trading information for NAPCO common stock, market and industry indices; and (h) articles, court decisions, and other relevant information cited in this report.

12.     Based on my review and analysis of the above information, as well as a careful consideration of the market efficiency factors discussed below, it is my opinion that the market in which NAPCO common stock traded throughout the Class Period was impersonal, open, well

---

approach to equity valuation. ... A present value model or discounted cash flow model applied to equity valuation derives the value of the common stock as the present or discounted value of its expected future cash flows.").

developed, and efficient in that the market prices quickly responded to incorporate and reflect new, material information as it became publicly available. Consequently, it is my opinion that it was reasonable for investors to rely on the integrity of the market prices of NAPCO's common stock throughout the Class Period as reflecting all publicly available information about the Company.

13. Furthermore, based on my experience as a damages expert and consultant in numerous other securities cases similar to this one, it is my opinion that class-wide §10(b) damages can be calculated in this case using the event-study damages framework, as further explained in Section V below. As also explained below, the Securities Act provides a specific framework for measuring §§11 and 12 damages that can be applied here to quantify damages on a class-wide basis.

14. This report is based on the information I have reviewed to date. I understand that discovery is still ongoing and that additional information may become available. As a result, I reserve the right to amend, refine, or modify my opinion and report, including in the event any additional information or analysis becomes available to me.

## III. MARKET EFFICIENCY IN A FRAUD-ON-THE-MARKET CONTEXT

15. An efficient market is one that efficiently processes new and material information. In an efficient market, new and material information is quickly incorporated into the stock price as different investors buy and sell based on their respective evaluations of the new information disclosed.[8] This also means that the resulting stock price will reflect the investors' consensus

---

[8] How quickly it takes for new information to be incorporated into the stock price depends, in part, on how unexpected and complex the information is. Generally, it is reasonable to assume that new and material information is incorporated into a stock price within one day, although there is also some evidence that it may take longer to become fully incorporated, particularly if the information is complex and there is subsequent analyst and media commentary. *See* Dmitry Krivin, Robert Patton, Erica Rose & David Tabak, *Determination of the Appropriate Event Window Length in Individual Stock Event Studies* 20 (NERA Working Paper, Nov. 4, 2003).

regarding the stock's value given the available public mix of information.[9] The driving force that causes markets to be efficient is the competition amongst investors to quickly analyze and trade on new information as it becomes publicly available. As a result of this competition, riskless profit opportunities are short-lived and do not persist in efficient markets. As set forth further below, this concept has broad empirical support.[10]

16.    Perhaps the most compelling evidence demonstrating that open and developed securities markets are efficient is the academic research that, time and time again, has shown that professional fund managers are unable to consistently beat the market. For example, a study by Nobel Laureate Eugene Fama (who is generally credited with coining the term "market efficiency") and Kenneth French found that actively traded U.S. mutual funds in the aggregate underperformed the market portfolio after costs.[11] The difficulty of outperforming the market is also illustrated by the following frequently cited statement by economist Richard Roll:[12]

---

[9]    That the price of a given share reflects investors' consensus does not mean that all market participants agree on the true value of the stock, as evidenced by the fact that some investors sell as others buy.  Rather, it means that the respective investors' views of the stock's true value drives their purchases and sales (*i.e.*, the demand and supply for the stock), which, in turn, becomes the basis for the consensus price set by the overall market.

[10]    *See, e.g.*, Burton G. Malkiel, *Rethinking the Financial Crisis* 75, Russell Sage Found (2012) ("At its core, EMH [the Efficient Market Hypothesis] implies that arbitrage opportunities for riskless gains do not exist in an efficiently functioning market and that, if they do appear from time to time, they do not persist. The evidence is clear that this version of EMH is strongly supported by the data.").

[11]    *See* Eugene F. Fama & Kenneth R. French, *Luck Versus Skill in the Cross-Section of Mutual Fund Returns*, 65 J. of Fin. 1915 (2010) ("The aggregate portfolio of actively managed U.S. equity mutual funds is close to the market portfolio, but the high costs of active management show up intact as lower returns to investors. Bootstrap simulations suggest that few funds produce benchmark-adjusted expected returns sufficient to cover their costs.").

[12]    According to one common finance text-book, Richard Roll is characterized as someone who "probably knows as much as anyone about market anomalies." Richard Brealey, Stewart Myers & Franklin Allen, *Principles of Corporate Finance* 329 (11th ed. 2014).

Over the past decade, I have attempted to exploit many of the seemingly most promising "inefficiencies" by actually trading significant amounts of money according to a trading rule suggested by the "inefficiencies." . . .

. . . I have never yet found one that worked in practice, in the sense that it returned more after cost than a buy-and-hold strategy.[13]

17.     While financial economists may hold different views regarding various aspects of market efficiency, they generally agree that securities traded in open and developed markets quickly incorporate and reflect new information as it becomes available. As noted in one academic article:

Financial economists have shown repeatedly that stock prices react quickly to the release of important new information; though they may differ in their interpretations of this evidence, they do agree it exists. Even prominent financial economists with divergent interpretations of the evidence on market efficiency share similar views on how stock prices react to new information.[14]

18.     An efficient market has two important implications for securities class actions. First, in an efficient market it is reasonable for investors to rely on the integrity of the market price. As explained in a commonly used finance textbook, "[i]n an efficient market you can trust prices," because they quickly impound new and material information, meaning that "in an efficient market, there is no way for most investors to achieve consistently superior rates of return."[15] This implication is important for the fraud-on-the-market presumption. In *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455 (2013), the U.S. Supreme Court explained:

The fraud-on-the-market theory rests on the premise that certain well developed markets are efficient processors of public information. In such markets, the "market price of shares" will "reflec[t] all publicly available information." Few

---

[13]     Richard Roll, *What Every CFO Should Know About Scientific Progress in Financial Economics: What Is Known and What Remains to be Resolved*, 23 Fin. Mgmt. 69, 71 (1994).

[14]     Jonathan Macey, Geoffrey Miller, Mark Mitchell & Jeffry Netter, *Lessons From Financial Economics: Materiality, Reliance, and Extending the Reach of Basic v. Levinson*, 77 Va. L. Rev. 1017, 1026 (1991).

[15]     Brealey, Myers & Allen (2014), *supra* n.12, at 337.

investors in such markets, if any, can consistently achieve above-market returns by trading based on publicly available information alone, for if such above-market returns were readily attainable, it would mean that market prices were not efficiently incorporating the full supply of public information. *See* R. Brealey, S. Myers, & F. Allen, Principles of Corporate Finance 330 (10th ed. 2011) ("[I]n an efficient market, there is no way for most investors to achieve consistently superior rates of return.").

In *Basic*, we held that if a market is shown to be efficient, courts may presume that investors who traded securities in that market relied on public, material misrepresentations regarding those securities. This presumption springs from the very concept of market efficiency. If a market is generally efficient in incorporating publicly available information into a security's market price, it is reasonable to presume that a particular public, material misrepresentation will be reflected in the security's price. Furthermore, it is reasonable to presume that most investors—knowing that they have little hope of outperforming the market in the long run based solely on their analysis of publicly available information—will rely on the security's market price as an unbiased assessment of the security's value in light of all public information.[16]

19.    In its 2014 opinion in *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) ("*Halliburton II*"), the U.S. Supreme Court reaffirmed the fraud-on-the-market presumption, explained that "public information generally affects stock prices," and stated:

[T]he *Basic* Court acknowledged [debate amongst academics] and declined to enter the fray, declaring that "[w]e need not determine by adjudication what economists and social scientists have debated through the use of sophisticated statistical analysis and the application of economic theory." To recognize the presumption of reliance, the Court explained, was not "conclusively to adopt any particular theory of how quickly and completely publicly available information is reflected in market price." The Court instead based the presumption on the fairly modest premise that "market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices." . . .

The academic debates discussed by Halliburton have not refuted the modest premise underlying the presumption of reliance. Even the foremost critics of the efficient-capital-markets hypothesis acknowledge that public information generally affects stock prices.[17]

---

[16]    *Amgen*, 568 U.S. at 461-62 (citations omitted and alteration in original).

[17]    *Halliburton II*, 573 U.S. at 271-72 (citations omitted and some alteration in original).

- 9 -

20.     Second, in an efficient market, the impact of the alleged misrepresentations or omissions can be estimated, and class-wide damages quantified, based on an analysis of the market prices using an event study.[18] This is because the "alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class," and thus, the Class "will prevail or fail in unison."[19] I will explain in greater detail how §10(b) damages can be quantified on a class-wide basis in this case in Section V below.

21.     In *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), the court analyzed the criteria that should be evaluated in determining whether a market is efficient. The *Cammer* court addressed the evidence needed to establish that the stock traded in an open and developed market, and provided five factors to assess market efficiency, including evidence showing that the market participants had the sophistication to understand the economic implications of new and material information (market makers/institutions); that market participants analyzed the information (analyst coverage); and that market participants traded on the information (trading volume). In my experience, and from an economic point of view, these factors are useful in determining whether a market was open and developed, and would be expected to efficiently process new, material information. As discussed above, academic research has shown that equity securities that trade in such markets react to new and material information so that it is extremely difficult, if not impossible, for investors to consistently outperform the overall market.[20] Consequently, for efficient markets, it is reasonable to rely on the integrity of the market prices. *Cammer* also

---

[18]     *See, e.g.*, Mark L. Mitchell & Jeffry M. Netter, *The Role of Financial Economics in Securities Fraud Cases: Applications at the Securities and Exchange Commission*, 49 Bus. Law 545 (1994).

[19]     *Amgen*, 568 U.S. at 459-60.

[20]     *See* Malkiel (2012), *supra* n.10; Fama & French (2010), *supra* n.11; and Macey, Miller, Mitchell & Netter (1991), *supra* n.14.

explained that it would be "helpful" to demonstrate that the stock price in question quickly reacted to new and material company-specific information, as this provides direct evidence of market efficiency. Below, I analyze the *Cammer* factors used to assess market efficiency and explain how each supports a finding of market efficiency for NAPCO's common stock throughout the Class Period.

## IV.   ANALYSIS OF MARKET EFFICIENCY

22.   In *Cammer*, the court provided some general guidelines on how to analyze market efficiency in a fraud-on-the-market context and provided five specific factors to analyze. The first four factors are generally referred to as indirect factors, as they provide indirect evidence that the competitive environment which facilitates market efficiency was in place. From an economic perspective, the indirect factors are commonly viewed to be sufficient to establish market efficiency in a reliance context.[21] Courts have also recognized this economic reality.[22]

23.   *Cammer* also explained that a fifth factor demonstrating "cause and effect" would be "helpful" because it provides direct evidence of market efficiency.[23] Below, I will discuss the

---

[21]   *See* Bradford Cornell & James C. Rutten, *Market Efficiency, Crashes, and Securities Litigation*, 81 Tulane L. Rev. 443, 457 (2006) ("There is almost no dispute, however, that for securities traded in 'open and developed' markets as measured by the *Cammer* and *Krogman* criteria, it is reasonable for all but the most sophisticated investors to rely on the market prices. There is thus little dispute that with respect to such securities, reliance on the integrity of the market prices (and thus on the defendants' statements) is appropriately presumed.") (footnote omitted).

[22]   For example, the Second Circuit has stated that "district courts in this and other Circuits regularly consider five factors first set forth in *Cammer v. Bloom*," with the "first four *Cammer* factors '[being] particularly valuable in situations where direct evidence does ***not*** entirely resolve the question' of market efficiency." *Waggoner v. Barclays PLC*, 875 F.3d 79, 94, 97 (2d Cir. 2017) (citation omitted and emphasis in original). The *Waggoner* court further explained that: "a plaintiff seeking to demonstrate market efficiency need not always present direct evidence of price impact through event studies [*i.e.*, the fifth *Cammer* factor]." *Id*.

[23]   *Cammer* does not appear to require that *Cammer* factor five necessarily be satisfied, stating: "As previously noted, one of the most convincing ways to demonstrate efficiency would be to illustrate, over time, a cause and effect relationship between company disclosures and

- 11 -

*Cammer* factors in the context of the price of NAPCO's common stock during the Class Period. In addition, I will discuss three additional factors set forth in *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001) that some courts also consider relevant when assessing market efficiency.[24]

### A.    Trading on NASDAQ Supports My Conclusion that NAPCO Common Stock Traded in an Efficient Market

24.    During the entire Class Period, NAPCO's common stock was listed on the NASDAQ Stock Market LLC ("NASDAQ") and traded on the highest and most stringent tier of the exchange, the NASDAQ Global Select Market, under the ticker symbol "NSSC."[25] NASDAQ is one of the largest and most sophisticated securities markets in the world. As of December 31, 2023, there were 4,044 total NASDAQ listings with a combined market capitalization of $27.2 trillion.[26] Market efficiency is commonly presumed for securities that trade on NASDAQ.[27]

---

resulting movements in stock price.  However, as mentioned, such a showing . . . would be difficult because it would require exploration of materiality and causation issues. . . .  [P]laintiffs will not be required to delve into such issues at this early stage."  *Cammer*, 711 F. Supp. at 1291-92.

[24]    These additional factors are: (a) market capitalization, which for NAPCO ranged from $923 million to $1.48 billion during the Class Period; (b) bid-ask spread, which for NAPCO common stock averaged $0.03 per share, or less than 0.1% of the closing price, during the Class Period; and (c) the public float, or the Company's common stock in public hands (*i.e.*, excluding shares owned by insiders), which for NAPCO exceeded 28.8 million shares and ranged from $760 million to $1.3 billion during the Class Period. As explained below, all of these additional factors are also consistent with NAPCO common stock trading in an efficient market during the Class Period. *Krogman*, 202 F.R.D. 467.

[25]    During the Class Period, NASDAQ had three listing tiers.  NAPCO traded on the highest and most stringent tier, The Nasdaq Global Select Market. *See* Nasdaq, Inc. 2023 Form 10-K filed with the SEC on February 21, 2024, page 2. ("Companies seeking to list securities on The Nasdaq Stock Market may do so on one of the three market tiers: The Nasdaq Global Select Market, The Nasdaq Global Market, or The Nasdaq Capital Market. To qualify, companies must meet minimum listing requirements, including specified financial and corporate governance criteria. Once listed, companies must maintain rigorous listing and corporate governance standards.").

[26]    *Id.* at page F-9.

[27]    *Cammer*, 711 F. Supp. at 1292 (quoting Bromberg & Lowenfels, 4 *Securities Fraud and Commodities Fraud* §8.6 (1988)) ("'We think that, at a minimum, there should be a presumption

25. Although it is not explicitly a *Cammer* factor, in analyzing market efficiency, the *Cammer* court discussed the importance of a security being listed and traded on a national exchange.[28] In this case, the fact that NAPCO's common stock traded on NASDAQ supports my opinion that it traded in an efficient market. This is consistent with empirical evidence that few, if any, professional fund managers investing in the U.S stock market (NYSE and NASDAQ) are able to outperform the market on a consistent basis.[29]

**B.      *Cammer* Factor 1: Large Trading Volume Supports My Conclusion that NAPCO Common Stock Traded in an Efficient Market**

26. The first *Cammer* factor relates to NAPCO's trading volume.[30] The *Cammer* court explained:

> The reason the existence of an actively traded market, as evidenced by a large weekly volume of stock trades, suggests there is an efficient market is because it implies significant investor interest in the company. Such interest, in turn, implies a likelihood that many investors are executing trades on the basis of newly available or disseminated corporate information.[31]

27. During the Class Period, NAPCO had a total reported trading volume of 71.4 million shares with a dollar trading volume of almost $2.4 billion.[32] During this same time period,

---

– probably conditional for class determination – that certain markets are developed and efficient for virtually all the securities traded there: the New York and American Stock Exchanges, the Chicago Board Options Exchange and the NASDAQ National Market System," now the NASDAQ Global Select Market.).

[28]      *Id.*

[29]      *Supra* n.11.

[30]      Academic research has found that trading volume is one factor "that systematically differentiate[s] between efficiently and inefficiently priced stocks." Brad M. Barber, Paul A. Griffin & Baruch Lev, *The Fraud-on-the-Market Theory and the Indicators of Common Stocks' Efficiency*, 19 J. of Corp. L. 285 (1994).

[31]      *Cammer*, 711 F. Supp. at 1286.

[32]      *See* Ex. B, at 4, attached hereto.

- 13 -

the average reported daily trading volume for NAPCO was 364,000 shares, with an average daily dollar volume of more than $12.1 million.[33] This demonstrates that there was "significant investor interest" in NAPCO's common stock, and that there were willing buyers and sellers who provided liquidity for the stock. The substantial amount of daily trading supports my opinion that NAPCO common stock traded in an efficient market throughout the Class Period.

28.     According to *Cammer*, "'[t]urnover measured by average weekly trading of 2% or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one; 1% would justify a substantial presumption.'"[34] During the Class Period, NAPCO's average weekly turnover was approximately 5.0%, exceeding the benchmark used by some courts to justify a "strong presumption" of market efficiency.[35] NAPCO's high share turnover also supports my opinion that its common stock traded in an efficient market throughout the Class Period.

**C.      *Cammer* Factor 2: Substantial Analyst Coverage Supports My Conclusion that NAPCO Common Stock Traded in an Efficient Market**

29.     The second *Cammer* factor relates to the number of securities analysts that followed and reported on NAPCO during the Class Period.[36] The *Cammer* court explained:

> The existence of such analysts would imply, for example, the [Company] reports were closely reviewed by investment professionals, who would in turn make buy/sell recommendations to client investors. In this way the market price of the

---

[33]     *Id.*

[34]     *Cammer*, 711 F. Supp. at 1293 (quoting Bromberg & Lowenfels (1988)).

[35]     *See* Ex. B, at 5, attached hereto.

[36]     Academic research has found that analyst coverage is another factor "that systematically differentiate[s] between efficiently and inefficiently priced stocks." Barber, Griffin & Lev (1994), *supra* n.30.

stock would be bid up or down to reflect the financial information contained in the [Company] reports, as interpreted by the securities analysts.[37]

30.        Analyst coverage refers to securities analysts who follow, analyze and report on a company to their clients and the market.[38] Many firms do not have any analyst coverage and are, therefore, more likely to trade in less efficient markets than firms with analyst coverage.[39] According to Bloomberg (a major data and news source to the investment industry), NAPCO had at least 8 analyst firms that followed the Company during the Class Period, including: B Riley Securities Inc., Canaccord Genuity, Craig-Hallum, Imperial Capital, Lake Street Capital Markets, Needham, Sadif Investment Analytics and William Blair.[40] There were at least 28 analyst reports covering NAPCO during the relevant time period from November 2022 through August 2023. Furthermore, there were also more than 500 media accounts (including Company press releases, earnings announcements, conference calls, articles and other notifications) available on *Bloomberg* (NSSC US EQUITY, CN) during this same time period. This demonstrates that Company news and related information was widely available and discussed. The availability of such relevant Company-specific information facilitates market efficiency.

---

[37]        *Cammer*, 711 F. Supp. at 1286 (footnote omitted).

[38]        Analysts providing analysis and recommendations to their clients are commonly referred to as sell-side analysts. Public companies are also followed by a presumably much larger number of buy-side analysts who work for investment firms and whose research is generally used internally by these firms to make investment decisions. Information on the number of buy-side analysts following a particular publicly-traded company is not publicly available.

[39]        *See supra* n.36.  One academic study found that approximately 35% of a large sample of publicly traded firms in the United States did not have any analyst coverage.  Fang (Frank) Yu, *Analyst Coverage and Earnings Management*, 88 J. of Fin. Econ. 245 (2008).  Another study found that the median and mean number of analysts covering a company was one and five, respectively. Pandej Chintrakarn, Pornsit Jiraporn, Young S. Kim & Jang-Chul Kim, *Does Corporate Governance Quality Affect Analyst Coverage? Evidence from the Institutional Shareholder Services (ISS)*, SSRN Working Paper, http://ssrn.com/abstract=2458841.

[40]        Bloomberg: NSSC US EQUITY ANR; Thomson Reuters.

- 15 -

31.     The information above about the analyst and news coverage of the Company during the Class Period supports my opinion that NAPCO's common stock traded in an efficient market throughout the Class Period.

### D.      *Cammer* Factor 3: The Significant Number of Liquidity Providers and Institutional Investors in NAPCO Supports My Conclusion that NAPCO Common Stock Traded in an Efficient Market

32.     The third *Cammer* factor relates to the number of arbitrageurs, market makers and/or other sophisticated investors, such as institutional investors, who traded NAPCO common stock during the Class Period. The *Cammer* court explained:

> Third, it could be alleged the stock had numerous market makers. The existence of market makers and arbitrageurs would ensure completion of the market mechanism; these individuals would react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level.[41]

33.     For shares traded on NASDAQ, the matching of buy and sell orders are made by market makers. When an order imbalance occurs, market makers may increase the demand for a stock by lowering the ask price or increase the supply of a stock by increasing the bid price. As investors react to new information, this mechanism ensures that the price of the security changes to reflect investors' collective interpretation of the new information. Consequently, market makers serve a key function in facilitating market efficiency.

34.     According to *Bloomberg*, during the relevant period, out of 98 market makers or supplemental liquidity providers for NAPCO stock, there were 36 firms with volumes of at least 100,000 shares.[42] The presence of numerous market makers supports my opinion that NAPCO common stock traded in an efficient market during the Class Period.

---

[41]     *Cammer*, 711 F. Supp. at 1287-88.

[42]     Source: Bloomberg (NSSC US EQUITY BAS) from November 2022 through August 2023.

35.    The sophisticated investors discussed in *Cammer* are investors who are able to quickly evaluate new information and understand its potential impact on the value of a security, and who then take appropriate investment actions causing the new information to become reflected in the price of the security. The presence of sophisticated investors is an important factor ensuring that a security is traded in an efficient market.[43] Institutional investors are examples of such sophisticated investors. Consequently, I examined the available information on institutional ownership of NAPCO's common stock on December 31, 2022; March 31, 2023; and June 30, 2023 (*i.e.*, the three quarterly reporting dates for institutional investors during the Class Period). Because information regarding institutional ownership is generally only available on a quarterly basis, my analysis is not based on a complete list of all sophisticated investors who may have owned NAPCO common stock during the Class Period. According to the available information, there were more than 300 institutional investors that reportedly owned more than 31.3 million NAPCO shares during the Class Period, making up at least 85% of the Company's 36.7 million shares outstanding.[44] Out of these shares, at least 11 million unique NAPCO shares were purchased during the Class Period, representing the minimum number of potentially damaged shares in this case. The presence of a substantial number of sophisticated institutional investors in NAPCO supports my opinion that NAPCO's common stock traded in an efficient market.

### E.    *Cammer* Factor 4: NAPCO Was Eligible to File on Form S-3

36.    The fourth *Cammer* factor relates to NAPCO's eligibility to file on Form S-3. The *Cammer* court stated:

> Fourth, as discussed, it would be helpful to allege the Company was entitled to file an S-3 Registration Statement in connection with public offerings or, if

---

[43]    Academic research has shown that efficiently traded firms tend to have higher institutional ownership than inefficiently traded firms.  Barber, Griffin & Lev (1994), *supra* n.30.

[44]    *See* Ex. C, at 6, attached hereto.

ineligible, such ineligibility was only because of timing factors rather than because the minimum stock requirements set forth in the instructions to Form S-3 were not met. Again, it is the number of shares traded and value of shares outstanding that involve the facts which imply efficiency.[45]

37.      To be eligible to file on Form S-3, a company has to be an SEC reporting company for at least 12 months and have $75 million in voting stock held by non-affiliates (average during 60-day period prior to filing).[46] NAPCO met both of these requirements. In fact, in the Company's filings with the SEC, NAPCO reported that "[a]s of December 31, 2022, the aggregate market value of the common stock of [NAPCO] held by non-affiliates based upon the last sale price of the stock on such date was $837,189,247," far exceeding the $75 million benchmark.[47] Consequently, the Company also satisfies *Cammer* factor four.

### F.      *Cammer* Factor 5: NAPCO's Stock Price Reaction to Material Market, Industry, and Company-Specific Information Supports My Conclusion that NAPCO Common Stock Traded in an Efficient Market

38.      The direct test of market efficiency relates to whether a stock price quickly reacts to unexpected new material information. While *Cammer* factors one through four, discussed above, provide evidence that the competitive environment that facilitates market efficiency was in place during the Class Period, the last *Cammer* factor calls for some empirical evidence that NAPCO's common stock price quickly incorporated new and material information. The *Cammer* court explained:

> Finally, it would be helpful to a plaintiff seeking to allege an efficient market to allege empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the

---

[45]      *Cammer*, 711 F. Supp. at 1287.

[46]      General Instruction I.B.1 to Form S-3, https://www.sec.gov/files/forms-3.pdf.

[47]      NAPCO Form 10-K for the fiscal year ended June 30, 2023, filed with the SEC on September 8, 2023, cover page.

stock price. This, after all, is the essence of an efficient market and the foundation for the fraud on the market theory.[48]

39.    The analysis of the impact of new information (the event, such as a financial release) on securities prices is generally performed using an event study.[49] The event study *first* determines the statistical relationship between the stock price returns of the company and the returns on market and/or industry indices during a control period using a regression analysis.[50] In this case, I used the S&P 500 index to control for market factors and the Craig-Hallum Peers Group to control for industry factors.[51]

40.    *Second*, the actual stock price return on the event day analyzed is compared to the return predicted by the event study regression to determine the excess return (also known as the residual or abnormal return), *i.e.*, the stock's return on the event day net of market and/or industry

---

[48]    *Cammer*, 711 F. Supp. at 1287.

[49]    An event study is a statistical tool that first determines the normal statistical relationship between the stock price and that of market and industry indices; and then, second, uses this statistical relationship to quantify the residual return (*i.e.*, the price reaction net of market and industry factors). If the magnitude of the price reaction is statistically significant, or unlikely to have occurred simply by chance, the residual return is commonly attributed to the new information disclosed and is viewed as proof of cause and effect. For an explanation of the event-study methodology that I applied in this case, and which is commonly used in securities fraud cases, *see* Mitchell & Netter (1994), *supra* n.18.

[50]    For the purpose of analyzing market efficiency relating to NAPCO's financial releases, I used an in Class Period control period that excluded the financial release dates being analyzed. For the purpose of quantifying damages, or the impact of the alleged fraud, it may be necessary to modify the event study somewhat to properly isolate the fraud-related component of the price movement (a slightly different purpose than the more general market efficiency analysis).

[51]    The Craig-Hallum Peer Group includes the following seven companies, equally weighted: SmartRent (SMRT), Arlo Technologies (ARLO), Alarm.com (ALRM), Allegion (ALLE), ASSA ABLOY (ASAZY), ADT (ADT) and Resideo Technologies (REZI). August 7, 2023, Craig-Hallum analyst report on NAPCO, "EBITDA Poised To Nearly Triple Over Next Three Years As NSSC Enables Alarm Systems To Transition From POTS Lines To Cellular And Benefits From Commercial & School Security Tailwinds." For the purpose of quantifying damages, the event study can be further refined to isolate the fraudulent event, if such refinement is deemed necessary.

factors. The excess return is frequently used to (1) quantify the impact of a Company-specific event, and (2) assess statistical significance.[52] To assess statistical significance, the so-called p-value, or the probability of an equal or greater excess return occurring randomly, is quantified. A price movement with a p-value of 5% or less is defined as being statistically significant at the 5% level. This is the most common benchmark used to assess statistical significance.[53] Attached as Exhibit D are the statistical results of my event study regressions for each day during the Class Period.[54]

41.     *Cammer* factor five calls for empirical evidence that shows that new and material information was quickly incorporated into NAPCO's stock price throughout the Class Period. To analyze whether new and material *market* information was quickly (within one day) incorporated into NAPCO's stock price, I ran a regression of NAPCO's returns against a market index (S&P 500) during the Class Period. The t-statistic associated with the S&P 500 in the regression analysis

---

[52]     A statistically significant price movement is one that is unlikely to have occurred simply by chance, and, consequently, is a price movement that was likely caused by the event (new information revealed on the event day analyzed).

[53]     Other commonly used benchmarks are the 10% and 1% levels. A price movement with a p-value of 10% or less is defined as being statistically significant at the 10% level, while a p-value of 1% or less is defined as being statistically significant at the 1% level. Richard A. DeFusco, *et al.*, *Quantitative Investment Analysis*, John Wiley & Sons, Inc., at 248-49 (2d ed. 2007) ("Qualitatively, if we can reject a null hypothesis at the [10%] level of significance, we have **some evidence** that the null hypothesis is false. If we can reject a null hypothesis at the [5%] level, we have **strong evidence** that the null hypothesis is false. And if we can reject a null hypothesis at the [1%] level, we have **very strong evidence** that the null hypothesis is false.") (emphasis in original).

[54]     The daily statistical analysis determines the so-called "t-statistic," or the abnormal return on a particular day divided by the standard deviation (or standard error) during the control period. The t-statistic can then be translated into a p-value, or probability of an equal or greater absolute return occurring randomly. A t-statistic with an absolute value greater than 1.96 is defined as being statistically significant at the 5% level, using a two-tailed test (testing for large negative *and* large positive returns). A t-statistic with a value greater than 1.645 (or less than -1.645) is defined as being a statistically significant price increase (or decrease) at the 5% level, using a one-tailed test (testing either for large positive *or* for large negative returns, but not both).

was 5.4, far exceeding the 1.96 benchmark for statistical significance at the 5% level (two-tailed), meaning that there was a statistically significant relationship between the market index (S&P 500) and NAPCO. This evidence demonstrates that new and material *market* information was quickly incorporated into the Company's stock price during the Class Period.

42.    Similarly, there was a statistically significant relationship between NAPCO and the industry index (Craig-Hallum Peer Group residual returns net of market) as well, as evidenced by the t-statistic associated with the Craig-Hallum residual return in the regression of 2.0, again exceeding the 1.96 value for statistical significance at the 5% level (two-tailed). This demonstrates that new and material *industry* information was also quickly incorporated into the Company's stock price during the Class Period.

43.    To assess "cause and effect" relating to *Company-specific* information, I analyzed whether the information disclosed in NAPCO's "financial releases" impacted the Company's stock price, as suggested by *Cammer*. Financial releases generally provide new information to investors and, therefore, they have a greater likelihood of materially altering the public mix of information, as noted in *Cammer* above.[55] For purposes of my analysis, I examined the price reaction (or absence thereof) following each of NAPCO's financial releases announced during the Class Period, a total of four financial releases. In a random sample, there is one in 100 chance of a statistically significant price reaction at the 1% level occurring randomly (1 / 100 = 0.01 = 1%). In this case, each of the four financial releases during the Class Period were followed by statistically

_____

[55]    A Company's announcement of earnings does not mean, by itself, that one would necessarily expect there to be a statistically significant price movement because the totality of the information disclosed could still be interpreted by the market as being neutral, or the correct impact of the disclosure could fail to meet the benchmark for statistical significance.

significant price movements at the 1% level.[56] The cumulative probability of all four financial releases being statistically significant at the 1% level simply by chance is one in 100 million (far exceeding any of the commonly used benchmarks for assessing statistical significance).[57] Consequently, the statistical evidence is very strong that new and material *Company-specific* information was quickly incorporated into NAPCO's stock price.[58]

44.    Finally, to assess "cause and effect" relating to *Company-specific* information, I also examined the alleged corrective disclosure ending the Class Period in this case.[59] This evidence, on its own, is sometimes viewed as the only evidence needed to prove market efficiency in a reliance context. For example, Fisher explains: "If an event study shows that a … corrective disclosure had a statistically significant effect on the price of a stock, then the market may be said to have 'relied' on the misrepresentation."[60] Similarly, Macey, *et al*. explain: "A plaintiff need show only that the misstatement affected the security return – by testing for an abnormal return … when the fact that it was a misstatement became known to the public – and that the abnormal return was statistically significant. If the abnormal return is found statistically significant, we suggest that

---

[56]    *See* Ex. D, at 1-2, 4, 6, attached hereto, showing the price reactions following the four earnings announcements in bold.

[57]    The cumulative probability can be determined using the binomial distribution, and in this case it can be calculated as one in 100^4, or one in 100 million. Richard A. DeFusco, Dennis W. McLeavey, Jerald E. Pinto & David E. Runkle, *Quantitative Investment Analysis*, John Wiley & Sons, Inc. (2nd ed. 2007), at 178-179.

[58]    I also reviewed the media and analyst reports concerning NAPCO's earnings announcements to confirm that, on days with statistically significant price declines, there was negative information disclosed that could explain the price declines, and on days with statistically significant price increases, there was positive information disclosed that could explain the price increases.

[59]    Complaint, ¶¶105-108.

[60]    William O. Fisher, *Does the Efficient Market Theory Help Us Do Justice in a Time of Madness?*, 54 Emory L.J. 843, 874 (2005).

a court should consider the misstatement material and presume reliance by a plaintiff on the integrity of the market price."[61]

45.     Here, the Class Period ends on August 18, 2023, following a NAPCO press release reporting preliminary financial results for the Company's 4Q2023, announcing an increase in dividends, and stating that its previously issued financial statements for 1Q2023, 2Q2023 and 3Q2023 should no longer be relied upon as they would have to be restated.[62] According to the press release, NAPCO's net income for the three quarters, or $16.1 million, had been previously overstated by 59%, or $9.5 million. Following the Company's press release, NAPCO's stock price declined from a closing price of $38.41 per share on Friday August 18, 2023, to a closing price of $21.11 per share on Monday August 21, 2023, a decline of $17.30 per share, or 45%, on volume of more than 16 million shares, or approximately 55 times the daily median during the Class Period. The August 21, 2023, residual decline in NAPCO's stock price was statistically significant at the 1% level.[63] The evidence above shows that investors quickly analyzed and traded on the new and material information disclosed, and that the negative economic implication of the information was quickly incorporated into NAPCO's stock price, as one would expect in an efficient market.

46.     Based on the above, it is my opinion that new and material (1) *market*, (2) *industry*, and (3) *Company-specific* information was quickly analyzed by market participants, who then traded on the information, resulting in the information efficiently becoming reflected in NAPCO's stock price throughout the Class Period.

---

[61]     Macey, Miller, Mitchell & Netter (1991), *supra* n.14, at 1029.

[62]     August 18, 2023, NAPCO press release, issued after the close of the market, "NAPCO Reports Preliminary Fourth Quarter Fiscal 2023 Net Sales and Net Income, Restatement of Prior Three Quarters and Declaration of Increased Dividend."

[63]     *See* Ex. D, at 6, attached hereto.

**G.**     ***Krogman* Factor 1: Large Market Capitalization Is Satisfied**

47.     The first *Krogman* factor[64] relates to the total market capitalization of NAPCO's equity. The *Krogman* court stated:

> Market capitalization, calculated as the number of shares multiplied by the prevailing share price, may be an indicator of market efficiency because there is a greater incentive for stock purchasers to invest in more highly capitalized corporations.[65]

48.     During the Class Period, the Company's market capitalization ranged from $923 million to $1.48 billion.[66] This market capitalization is significantly greater than the $75 million benchmark in *Cammer* factor four and would provide a sufficient economic incentive for the Company's common stock purchasers to invest in and monitor NAPCO. Based on the above, it is my opinion that *Krogman* factor one has been satisfied.

**H.**     ***Krogman* Factor 2: Small Bid-Ask Spread Is Satisfied**

49.     The second *Krogman* factor relates to NAPCO's bid-ask spread. The *Krogman* court stated:

> The bid-ask spread is the difference between the price at which investors are willing to buy the stock and the price at which current stockholders are willing to sell their shares. A large bid-ask spread is indicative of an inefficient market, because it suggests that the stock is too expensive to trade.[67]

50.     During the Class Period, the average bid-ask spread for NAPCO's common stock averaged $0.03 per share, or less than 0.1% of the closing price.[68] By comparison, in 1991, two

---

[64]     *See supra* n.24 (list of *Krogman* factors).

[65]     *Krogman*, 202 F.R.D. at 478.

[66]     *Bloomberg* NSSC US EQUITY.

[67]     *Krogman*, 202 F.R.D. at 478 (citation omitted).

[68]     *Bloomberg* NSSC US EQUITY.

years following the *Cammer* decision (1989), the vast majority of dollar spreads on the NASDAQ exceeded one-quarter ($0.25), and were significantly larger than the average $0.03 per share dollar spread for NAPCO.[69] In other words, the bid-ask spread for NAPCO's common stock during the Class Period was so low that it would not make its common stock "too expensive" for investors to trade. Based on the above, it is my opinion that *Krogman* factor two has been satisfied.

## I.   *Krogman* **Factor 3: Large Float Is Satisfied**

51.     The third *Krogman* factor relates to NAPCO's float, *i.e.*, shares in public hands.  In its opinion, the *Krogman* court stated:

> In determining efficiency, courts also consider the percentage of shares held by the public, rather than insiders. "Because insiders may have private information that is not yet reflected in stock prices, the prices of stocks that have greater holdings by insiders are less likely to accurately reflect all available information about the security."[70]

52.     According to *Bloomberg*, NAPCO's public float during the Class Period, or the Company's common stock held in public hands (*i.e.*, excluding shares owned by insiders), exceeded 28.8 million shares, representing more than 78% of NAPCO's 36.7 million shares outstanding. Furthermore, the market value of the Company's public float (more than $760 million) was significantly above the $75 million benchmark in *Cammer* factor four, thereby providing sufficient economic incentive for NAPCO common stockholders to invest in the Company.[71] Based on the above, it is my opinion that *Krogman* factor three has been satisfied.

---

[69]     William G. Christie & Paul H. Schultz, *Why do NASDAQ Market Makers Avoid Odd-Eighth Quotes?*, 49 J. of Fin. 1819 (1994).

[70]     *Krogman*, 202 F.R.D. at 478 (citation omitted and quoting defendants' expert).

[71]     *Bloomberg* NSSC US EQUITY.

**J.    Conclusion: The *Cammer* and *Krogman* Factors Demonstrate that NAPCO Common Stock Traded in an Efficient Market**

53.    The various analyses discussed above demonstrate that new and material (1) *market*, (2) *industry*, and (3) *Company-specific* information was incorporated into NAPCO's stock price during the Class Period, as one would expect in an efficient market. Specifically, the evidence I reviewed shows that new and material information about NAPCO was widely disseminated to the market, analyzed by market participants and traded on, causing the information to be quickly reflected in the Company's stock price. Consequently, it is my opinion that it was reasonable for investors to rely on the integrity of the market price of NAPCO common stock during the Class Period as reflecting all publicly available information.

**V.    USING THE EVENT-STUDY FRAMEWORK TO CALCULATE CLASS-WIDE DAMAGES**

54.    I have also been asked to explain how class-wide damages can be calculated in this case using a common damages methodology, consistent with Plaintiffs' theory of liability. In this case, Plaintiffs bring claims pursuant to both the Exchange Act (§10(b) damages) and the Securities Act (§§11 and 12 damages). The methodology used to quantify Exchange Act damages is different from the methodologies used to quantify Securities Act damages. Below I discuss both methodologies.

**A.    Class-Wide Exchange Act Damages**

55.    The quantification of Exchange Act damages will ultimately depend on the full factual record and on the actual evidence presented at trial, including evidence obtained from fact discovery that has yet to be completed. It is important to note that I have not yet reviewed all of this evidence, and that I have yet to conduct a loss causation analysis. I therefore reserve the right to address any such issues at the appropriate stage of this case. However, based on my understanding of Plaintiffs' allegations, it is my opinion that Exchange Act damages can be

- 26 -

calculated on a class-wide basis in this case using the standard event study framework explained in greater detail below.

56. Securities fraud cases filed pursuant to the Exchange Act generally involve allegations that defendants engaged in a fraudulent scheme, made untrue or misleading statements, concealed material information, and/or engaged in a deceitful business practice. The information defendants concealed during the Class Period is commonly referred to as the alleged truth, or relevant truth. In an efficient market, the concealment of an alleged truth that is materially different from the public mix of information will distort the stock price and (assuming the concealed truth is negative) cause it to trade at artificially inflated prices. Investors who overpaid for their shares as a result of the artificially inflated prices are then damaged when the alleged truth is disclosed (or partially disclosed) and the stock price declines as a result. Consequently, quantifying the fraud-related portion of the price decline caused by the disclosure of the alleged truth is key to quantifying class-wide damages.

57. The event-study framework is a well-accepted framework for calculating class-wide damages in class action securities cases.[72] First, the fraud-related impact of the disclosure of the alleged truth (*i.e.*, the event) on the stock price is quantified using an event study, which is sometimes also refined using fundamental valuation tools. The event-study methodology is discussed in greater detail above.[73] The fundamental valuation tools are based on the premise that the present value of an investment is a reflection of its future cash flows, *i.e.*, the amount, timing

---

[72] *See* Marge S. Thorsen, Richard A. Kaplan & Scott Hakala, *Rediscovering the Economics of Loss Causation*, 6 J. Bus. & Sec. L. 93, 109 (2006) ("Forensic experts agree generally on the techniques to be used to show inflation and dissipation in stock prices. The gold standard, which is accepted by both courts and economists, is the event study. Other tools such as valuation analyses often aid the event study.").

[73] *See supra* ¶¶39-40; *see also* Mitchell & Netter (1994), *supra* n.18.

and riskiness of these cash flows, generally using the income approach (discounted cash flow approach) and/or the market approach (market multiples on various financial metrics).[74] These are the same valuation tools commonly used by investors when making buy or sell decisions and securities analysts when making investment recommendations.

58.     Second, this fraud-related impact is then used as the inflation from the first misrepresentation concealing the alleged truth until its disclosure, known as an inflation ribbon. If there are multiple partial disclosures of the alleged truth, then multiple inflation ribbons are used. Similarly, multiple misleading statements and/or omissions may also result in multiple inflation ribbons, depending on whether such statements or omissions introduce additional inflation, or just maintain the level of inflation that already existed in the stock.

59.     Third, because each class member purchased and/or sold their shares at market prices, each class member's individual damages can be calculated based on the inflation (quantified the same for all class members) at the time of their respective purchases and sales. In other words, the above event-study framework provides a methodology that can be used to quantify class-wide damages in this case.

60.     Finally, to the extent applicable, damages will be limited to: (a) the purchase price per share less the average closing price from the day after the Class Period through the day of the sale, if the shares were sold during the 90-day period following the end of the Class Period, or (b) the purchase price less the 90-day average closing price after the Class Period, if the shares were still retained at the end of the 90-day period.[75]

---

[74]     For more detailed information regarding the commonly used financial valuation tools, *see, e.g.*, Shannon Pratt & Alina Niculita, *Valuing a Business: Part III – Business Valuation Approaches and Methods* 171-380 (McGraw-Hill, 5th ed. 2008). *See also supra* n.7.

[75]     *See* 15 U.S.C. § 78u-4(e)(1), (2).

61.     While the actual damages analysis may ultimately have to be modified as a result of additional information, such as information obtained through discovery or future legal rulings, and may even be modified by a jury to fit its interpretation of the evidence presented at trial, the calculation of each Class member's damages will be a mechanical arithmetic exercise, applying the results of the class-wide analyses described above to each Class member's trading data. Accordingly, in my opinion, the above methodology can be used to calculate class-wide damages in this matter, as it has been used in hundreds of other similar securities class actions I have worked on.

### B.     Class-Wide Securities Act Damages

62.     The quantification of Securities Act damages is different than the above methodology because the statute provides formulas which, I understand, must (at least partly) be applied in every case to calculate damages under §§11 and 12. The statutory formulas are based on objective metrics – such as trading dates, prices, and volumes. For this reason, calculating statutory damages on a class-wide basis is straightforward arithmetic exercise.

63.     With respect to §11 damages, for example, the Securities Act states:[76]

> The suit authorized under subsection (a) may be to recover such damages as shall represent the difference between the **amount paid** for the security (**not exceeding the price at which the security was offered to the public**) and (1) the **value thereof as of the time such suit was brought**, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought . . . .
> (Emphasis added).

---

[76]     *See* 15 U.S.C. § 77k(e). Section 12(a)(2) of the Securities Act provides a similar measure equal to "the **consideration paid** for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."  15 U.S.C. § 77l(a)(2) (emphasis added).

64.    First, the "amount paid" for the security, "not exceeding the price at which the security was offered to the public," has to be determined. The "amount paid" is the purchase price per share and is simply obtained from each Class members' trading records. The "price at which the security was offered to the public" is simply the offer price found in the prospectus, or in this case, $31.50 per NAPCO share.[77] In other words, the "amount paid," limited by offering price, is calculated based on the relevant prospectus and the trading data for each Class member.

65.    Second, for §11 claims (but not for §12 claims), the "value" per share at the time the suit was brought has to be determined. In this case, it is my understanding that the Securities Act claims were first filed on February 16, 2024. This date is after the August 18, 2023, press release ending the Class Period. I am not aware of any allegation that NAPCO's common stock continued to be inflated following the publication of this article. The "value" at the time the suit was brought may therefore be calculated based on the closing price of NAPCO common stock on February 16, 2024, which was $43.97 per share. Because this is greater than the offering price, a Class member who sold their shares at the time this action was filed will not have recoverable §11 damages.

66.    It should be noted that §11(e) of the Securities Act also allows Defendants to reduce the §11 presumptive statutory damages based on the formula above if Defendants can prove that a portion, or all, of the decline in the prices of NAPCO common stock was caused by factors unrelated to the alleged misrepresentations and omissions, also commonly referred to as negative causation. The relevant portion of §11(e) states:[78]

---

[77]    February 8, 2023, NAPCO Prospectus, cover page.

[78]    *See* 15 U.S.C. § 77k(e). Section 12(b) of the Securities Act includes similar language: "In an action described in subsection (a)(2), if the person who offered or sold such security proves that any portion or all of the amount recoverable under subsection (a)(2) represents other than the depreciation in value of the subject security resulting from such part of the prospectus or oral

Provided, That if the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable.

67. Importantly, the issue of negative causation, *i.e.*, whether factors unrelated to the alleged misrepresentations or omissions caused NAPCO's common stock price to decline, is also a common issue for all the potential class members. Furthermore, the burden to prove negative causation is on Defendants. If they fail to do so, then there is simply no basis to reduce the damages quantified using the statutory formula provided in §§11 or 12.

68. Ultimately, at the appropriate time (after settlement or judgment), a retained claims administrator will review each potential class members' trading information and calculate statutory §§11 and 12 damages based on the formulas above, less any portion of the price decline Defendants may be able to prove was caused by factors unrelated to the alleged misrepresentations or omissions. Importantly, all the analyses performed to quantify §§11 and 12 damages will be the same for all potential class members and will be applied to each potential class member's individual purchases and sales.

## VI.   CONCLUSION

69. Based on my review and analysis of the available information, including a careful consideration of the market efficiency factors discussed above, it is my opinion that the market in which NAPCO's common stock traded throughout the Class Period was impersonal, open, well developed, and efficient in that the prices reflected new, material information as it became publicly available. Consequently, it is my opinion that it was reasonable for investors to rely on the integrity

---

communication, with respect to which the liability of that person is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statement not misleading, then such portion or amount, as the case may be, shall not be recoverable."

of the market price of NAPCO common stock during the Class Period as reflecting all publicly available information.

70.    Furthermore, based on my experience as a damages expert and consultant in numerous other securities cases similar to this one, it is my opinion that class-wide damages pursuant to the Exchange Act can be calculated in this case using the event-study damages framework explained above, and that class-wide damages pursuant to the Securities Act can be calculated based on the statutory formulas provided in the statute itself.

Executed this 29th day of September, 2025.

Respectfully submitted,

Bjorn I. Steinholt, CFA

# EXHIBIT A

# Bjorn I. Steinholt, CFA

**Caliber Advisors, Inc.**
10620 Treena Street, Suite 230, San Diego, CA 92131
Telephone: (858) 549-4900 • Facsimile: (858) 549-9317
Bjorn@CaliberAdvisors.com

---

## Employment History

**Caliber Advisors, Inc.**
*Managing Director* (2014 to present)

Caliber Advisors is a full-service valuation and economic consulting firm. Mr. Steinholt provides a broad range of capital markets consulting, including financial and economic analyses relating to mergers and acquisitions, initial public offerings, fairness opinions, structured finance, portfolio risk management, market structure, securities analysis and financial valuations, including litigation consulting and expert testimony relating to the economic issues that arise in large complex securities fraud cases.

**Financial Markets Analysis, LLC**
*Principal* (2000 to 2014)

Financial Markets Analysis was a financial valuation and economic consulting firm that primarily focused on providing economic analyses and expert testimony relating to securities analysis and financial economics. Mr. Steinholt provided capital markets consulting, financial valuation services, and various litigation consulting and expert testimony in large complex securities fraud cases.

**Business Valuation Services, Inc. (subsidiary of CBIZ, Inc.)**
*Principal* (1999 -2000)
*Vice President* (1998-1999)

Business Valuation Services was a national full-service financial valuation firm. Mr. Steinholt provided valuations of businesses and financial securities, including common stock, warrants, options, preferred stock, debt instruments and partnership interests, as well as intangible assets such as patents, trademarks, software, customer lists, work-force and licensing agreements. Mr. Steinholt also provided litigation support in shareholder disputes.

**Princeton Venture Research, Inc.**
*Senior Vice President* (1996-1998)
*Vice President* (1993-1996)
*Financial Analyst* (1990-1993)

Princeton Venture Research was a venture capital, investment banking and economic consulting firm. Mr. Steinholt provided various financial and economic analyses for venture capital, investment banking and consulting assignments, including shareholder disputes. Among other things, he helped identify and evaluate prospective emerging technology companies in need of venture capital funding.

**University of San Diego**
*Research Assistant, Graduate Fellow* (1988-1989)

Mr. Steinholt assisted with research regarding the performance of international equity markets following the 1987 stock market crash. He also developed computer programs related to the portfolio theory, including risk minimization and portfolio optimization based on quadratic programming techniques.

### Educational Background

- **Chartered Financial Analyst**
  CFA Institute, 1997

- **Master of International Business**
  University of San Diego, 1989

- **Sivilingeniør** - (Norwegian graduate level engineering designation)
  University of Trondheim, Norway, 1987

- **Bachelor of Science in Computer Science,**
  **Computer Science and Engineering**
  California State University, Long Beach, 1987

### Professional Affiliations

- **Member, CFA Institute**

- **Member, Financial Analysts Society of San Diego**

## Publications

"Price Impact Analysis – Where The Halliburton Court Erred," Expert Analysis Section, *Law360* (August 25, 2015).

## Testimony

*In re: New England Health, et al v. Qwest Comm Intl Inc, et al.,* Case No. 1:01-cv-01451 (United States District Court for the District of Colorado).  QwestDex Hearing Testimony relating to Section 11 damages: January 28, 2003.  Mr. Steinholt was retained to opine on potential Section 11 damages.

*In re: King, et al v. CBT Group PLC, et al.,* Case No. 98-cv-21014 (United States District Court, Northern District of California, San Jose Division).  Deposition Testimony: November 5, 2003.  Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and Section 10(b) damages.

*In re: Employer-Teamsters Joint Council Pension Trust Fund v. America West Holding, et al.,* Case No. 99-cv-399 (United States District Court, District of Arizona).  Deposition Testimony: October 28, 2004.  Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and Section 10(b) damages.

*In re: Howard Yue vs. New Focus,* Case No. CV808031 (Superior Court of the State of California, County of Santa Clara).  Deposition Testimony: July 28, 2005.  Mr. Steinholt was retained to opine on the potential damages and other economic issues relating to the defendants' acquisition of Globe Y.Technology, Inc.

*In re: Howard Yue vs. New Focus,* Case No. CV808031 (Superior Court of the State of California, County of Santa Clara).  Deposition Testimony: August 9, 2005.  Mr. Steinholt was retained to opine on the potential damages and other economic issues relating to the defendants' acquisition of Globe Y.Technology, Inc.

*In re: AB Liquidating Corp., fka Adaptive Broadband Corporation v. Ernst & Young, LLP* (American Arbitration Association).  Arbitration, March 23, 2006.  Mr. Steinholt was retained to analyze the share turnover in Adaptive Broadband Corporation in connection with the liquidation of the company's assets.

*In re: AOL Time Warner, Inc. Securities and "ERISA" Litigation, Consolidated Opt-Out Action*, Case No. 1:06-cv-00695 (United States District Court, Southern District of New York).  Deposition Testimony: September 28, 2006.  Mr. Steinholt was retained to opine on materiality and loss causation in a Section 11 context.

*In re: Ohio Public Employees Retirement System vs. Richard Parsons, et al.,* Case No. 03-CVH07-7932 (Court of Common Pleas of Franklin County, Ohio). Deposition Testimony: March 22, 2007. Mr. Steinholt was retained to quantify Section 11 damages for various institutional investors.

*In re: Ryan v. Flowserve Corporation et al.,* Case No. 3:03-cv-01769 (United States District Court, Northern District of Texas, Dallas Division). Deposition Testimony: June 15, 2007. Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and Section 10(b) damages.

*In re: Nursing Home Pension Fund et al v. Oracle Corporation et al.,* Case No. 3:01-cv-00988 (United States District Court, Northern District of California). Deposition Testimony: July 2, 2007. Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and Section 10(b) damages.

*In re: Carson, et al v. Neopharm Inc, et al.,* Case No. 1:02-cv-02976 (United States District Court, Northern District of Illinois, Eastern Division). Deposition Testimony: January 22, 2008. Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and Section 10(b) damages.

*In re: HealthSouth Corporation Securities Litigation,* Case No. 2:03-cv-01501-S (United States District Court, Northern District of Alabama, Southern Division). Deposition Testimony: February 1, 2008. Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality and loss causation.

*In re: Robert Kelleher, et al. v. ADVO, Inc., et al.,* Case No. 3:06-cv-01422 (United States District Court, District of Connecticut). Deposition Testimony: September 16, 2008. Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality and loss causation in a class certification context.

*In re: HealthSouth Corporation Securities Litigation,* Case No. 2:03-cv-01501-S (United States District Court, Northern District of Alabama, Southern Division). Deposition Testimony: January 30, 2009. Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality and loss causation.

*In re: Huffy Corporation Securities Litigation,* Case No. 3:05-cv-00028 (United States District Court, Southern District of Ohio, Western Division (at Dayton)). Deposition Testimony: November 12, 2009. Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and potential damages for lead plaintiff.

*Lori Weinrib v. The PMI Group, Inc. et al.*, Case No. 3:08-cv-01405, (United States District Court for the Northern District of California).  Deposition Testimony: June 14, 2010.  Mr. Steinholt was retained to opine on economic issues relating to market efficiency in a class certification context.

*Kenneth McGuire, et al. v. Dendreon Corporation, et al.*, Case No. 2:07-cv-00800 (United States District Court, Western District of Washington at Seattle).  Deposition Testimony: June 18, 2010.  Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and Section 10(b) damages.

*City of Livonia Employees' Retirement System v. The Boeing Company et al.*, Case No. 1:09-cv-07143, (United States District Court, Northern District of Illinois, Eastern Division).  Deposition Testimony: November 5, 2010.  Mr. Steinholt was retained to opine on economic issues relating to market efficiency in a class certification context.

*Maureen Backe, et al. v. Novatel Wireless, Inc., et al.*, Case No.08-cv-1689 (United States District Court, Southern District of California).  Deposition Testimony: February 1, 2011.  Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and Section 10(b) damages.

*Paul Luman, et al. v. Paul G. Anderson, et al.* (*FCStone Group Securities Litigation*), Case No. 4:08-cv-00514 (United States District Court, Western District of Missouri, Western Division).  Deposition Testimony: January 5, 2012.  Mr. Steinholt was retained to opine on economic issues relating to market efficiency in a class certification context.

*T Grocery & Food Employees Welfare Fund v. Regions Financial Corporation et al.*, Case No. 2:10-cv-02847 (United States District Court, Northern District of Alabama).  Deposition Testimony: May 8, 2012.  Mr. Steinholt was retained to opine on economic issues relating to market efficiency in a class certification context.

*City of Pontiac General Employee's Retirement System v. Lockheed Martin Corporation et al.*, Case No. 1:11-cv-05026, (United States District Court, Southern District of New York).  Deposition Testimony: May 18, 2012.  Mr. Steinholt was retained to opine on economic issues relating to market efficiency in a class certification context.

*United Food and Commercial Workers Union et al v. Chesapeake Energy Corporation et al.*, Case No. 5:09-cv-01114 (United States District Court, Western District of Oklahoma).  Deposition Testimony: August 14, 2012.  Mr. Steinholt was retained to opine on loss causation in a Section 11 context.

*Bjorn Steinholt, CFA*                                                                                  Page   5

*City of Pontiac General Employee's Retirement System v. Lockheed Martin Corporation et al.*, Case No. 1:11-cv-05026, (United States District Court, Southern District of New York). Deposition Testimony: October 4, 2012. Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and Section 10(b) damages.

*Western Pennsylvania Electrical Employees Pension Fund, et al. v. Dennis Alter, et al.*, (*Advanta International Inc. Securities Litigation*) Case No. 2:09-cv-04730 (United States District Court, Eastern District of Pennsylvania). Deposition Testimony: May 1, 2013. Mr. Steinholt was retained to opine on economic issues relating to market efficiency in a class certification context.

*Southern Avenue Partners LP v. The Perot Family Trust et al.*, (*Parkcentral Global Litigation*) Case No. 3:09-cv-00765 (United States District Court, Northern District of Texas, Dallas Division). Deposition Testimony: May 6, 2013. Mr. Steinholt was retained to opine on the calculation of potential damages.

*Maureen Backe, et al. v. Novatel Wireless, Inc., et al.*, Case No. 08-cv-1689 (United States District Court, Southern District of California). Deposition Testimony: June 25, 2013. Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and Section 10(b) damages.

*Garden City Employees' Retirement System v. Psychiatric Solutions, Inc. et al.*, Civil Action No. 3:09-cv-00882 (United States District Court, Middle District of Tennessee, Nashville Division). Deposition Testimony: June 6, 2014. Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and Section 10(b) damages.

*City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc. et al.*, Case No. 12-cv-05162 (United States District Court, Western District of Arkansas (Fayetteville)). Deposition Testimony: November 9, 2015. Mr. Steinholt was retained to opine on economic issues relating to market efficiency and the calculation of class-wide damages in a class certification context.

*Alan B. Marcus, et al. v. J.C. Penney Company, Inc., et al.*, Case No. 13-cv-00736 (United States District Court, Eastern District of Texas (Tyler Division)). Deposition Testimony: March 4, 2016. Mr. Steinholt was retained to opine on economic issues relating to market efficiency and the calculation of class-wide damages in a class certification context.

*Basis Yield Alpha Fund (Master) v. Goldman Sachs Group, Inc., et al.*, Index No: 652996/2011 (Supreme Court of the State of New York, County of New York). Deposition Testimony: April 1, 2016. Mr. Steinholt was retained to analyze loss causation related to two CDO-squared securities purchased by Basis Yield Alpha Fund (Master) from Goldman Sachs.

*John Sender v. Franklin Resources, Inc.*, Case No. 11-cv-03828 (United States District Court, Northern District of California). Deposition Testimony: June 17, 2016. Mr. Steinholt was retained to analyze ERISA damages related to plaintiff's participation in defendant's Employee Stock Ownership Plan.

*Alan Willis, et al. v. Big Lots, Inc., et al.*, Case No. 12-cv-00604 (United States District Court, Southern District of Ohio (Columbus)). Deposition Testimony: July 21, 2016. Mr. Steinholt was retained to opine on economic issues relating to market efficiency and the calculation of class-wide damages in a class certification context.

*In re: Beaver County Employees Retirement Fund vs. Cyan, Inc., et al.,* Lead Case No. CGC-14-538355 (Superior Court of the State of California, County of San Francisco). Deposition Testimony: October 14, 2016. Mr. Steinholt was retained to opine on potential damages pursuant to §§11 and 12 of the Securities Act of 1933.

*In Re Willbros Group, Inc. Securities Litigation*, Case No. 14-cv-3084 (United States District Court, Southern District of Texas, Houston Division). Deposition Testimony: April 14, 2017. Mr. Steinholt was retained to opine on economic issues relating to market efficiency and the calculation of class-wide damages in a class certification context.

*Shankar v. Imperva, Inc. et al.*, Case No. 14-cv-01680 (United States District Court, Northern District of California (Oakland)). Deposition Testimony: May 5, 2017. Mr. Steinholt was retained to opine on economic issues relating to market efficiency and the calculation of class-wide damages in a class certification context.

*Glitz et al. v. Sandridge Energy Inc et al.*, Case No. 12-cv-01341 (United States District Court, Western District of Oklahoma). Deposition Testimony: May 3, 2018. Mr. Steinholt was retained to opine on economic issues relating to market efficiency and the calculation of class-wide damages in a class certification context.

*Gary Curran, et al. v. Freshpet, Inc., et al.*. Case No. 16-cv-02263 (United States District Court, District of New Jersey). Deposition Testimony: July 25, 2018. Mr. Steinholt was retained to opine on economic issues relating to market efficiency and the calculation of class-wide damages in a class certification context.

*Megan Villella , et al. v. Chemical & Mining Co. of Chile, Inc., et al.*, Case No. 15-cv-02106 (United States District Court, Southern District of New York). Deposition Testimony: November 9, 2018. Mr. Steinholt was retained to opine on economic issues relating to market efficiency and the calculation of class-wide damages in a class certification context.

*Glitz et al. v. Sandridge Energy Inc et al.*, Case No. 12-cv-01341 (United States District Court, Western District of Oklahoma). Deposition Testimony: June 12, 2019. Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and Section 10(b) damages.

*Gary Curran, et al. v. Freshpet, Inc., et al.*. Case No. 16-cv-02263 (United States District Court, District of New Jersey). Deposition Testimony: June 27, 2019. Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and Section 10(b) and Section 11 damages.

*Scheufele et al v. Tableau Software, Inc. et al.*, Case No. 17-cv-05753 (United States District Court, Southern District of New York). Deposition Testimony: September 24, 2019. Mr. Steinholt was retained to opine on economic issues relating to market efficiency and the calculation of class-wide damages in a class certification context.

*Douglas S. Chabot, et al. v. Walgreens Boots Alliance, Inc., et al.*, Case No. 18-cv-02118 (United States District Court, Middle District of Pennsylvania). Deposition Testimony: October 11, 2019. Mr. Steinholt was retained to opine on economic issues relating to market efficiency and the calculation of class-wide damages in a class certification context.

*Jon D. Gruber, et al. v. Dakota Plains Holdings, Inc., et al.*, Case No. 16-cv-09727 (United States District Court, Southern District of New York). Deposition Testimony: July 2, 2020. Mr. Steinholt was retained to opine on economic issues relating to materiality, loss causation and Section 10(b) damages.

*Scheufele et al v. Tableau Software, Inc. et al.*, Case No. 17-cv-05753 (United States District Court, Southern District of New York). Deposition Testimony: July 28, 2020. Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and Section 10(b) damages.

*Purple Mountain Trust v. Wells Fargo & Company et al.*, Case No. 18-cv-03948 (United States District Court, Northern District of California). Deposition Testimony: November 13, 2020. Mr. Steinholt was retained to opine on economic issues relating to market efficiency and the calculation of class-wide damages in a class certification context.

*Gordon v. Vanda Pharmaceuticals Inc. et al*, Case No. 19-cv-01108 (United States District Court, Eastern District of New York). Deposition Testimony: November 5, 2021. Mr. Steinholt was retained to opine on economic issues relating to market efficiency and the calculation of class-wide damages in a class certification context.

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corporation et al.*, Case No. 20-cv-00576 (United States District Court, Southern District of Texas). Deposition Testimony: November 17, 2021. Mr. Steinholt was retained to opine on economic issues relating to market efficiency and the calculation of class-wide damages in a class certification context.

*Bjorn Steinholt, CFA*                                                                          Page    8

*Douglas S. Chabot, et al. v. Walgreens Boots Alliance, Inc., et al.*, Case No. 18-cv-02118 (United States District Court, Middle District of Pennsylvania). Deposition Testimony: January 14, 2022. Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and Section 10(b) damages.

*Jon D. Gruber, et al. v. Dakota Plains Holdings, Inc., et al.*, Case No. 16-cv-09727 (United States District Court, Southern District of New York). Trial Testimony: June 9-10, 2022. Mr. Steinholt provided trial testimony on economic issues relating to loss causation and Section 10(b) damages.

*In re: Cloudera, Inc. Securities Litigation,* Lead Case No. CV348674 (Superior Court of the State of California, County of Santa Clara). Deposition Testimony: September 22, 2022. Mr. Steinholt was retained to opine on potential damages pursuant to §§11 and 12 of the Securities Act of 1933.

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corporation et al.*, Case No. 20-cv-00576 (United States District Court, Southern District of Texas). Deposition Testimony: December 21, 2022. Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and Section 10(b) damages.

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corporation et al.*, Case No. 20-cv-00576 (United States District Court, Southern District of Texas). Deposition Testimony: March 13, 2023. Mr. Steinholt was retained to review and critique opinions by opposing expert.

*Luna v. Carbonite, Inc. et al.*, Case No. 19-cv-11662 (United States District Court, District of Massachusetts). Deposition Testimony: May 8, 2023. Mr. Steinholt was retained to opine on economic issues relating to market efficiency, materiality, loss causation and Section 10(b) damages.

*In re: Funko, Inc. Securities Litigation,* Case No. 17-2-29838-7 SEA (Superior Court of Washington in and for King County). Deposition Testimony: August 1, 2023. Mr. Steinholt provided testimony regarding the quantification of class wide damages under §§11 and 12 of the Securities Act of 1933.

*In re: The RealReal, Inc. Securities Litigation,* Lead Case No. CIV 1903516 (Superior Court of the State of California, County of Marin). Deposition Testimony: March 20, 2024. Mr. Steinholt provided testimony regarding the quantification of class wide damages under §§11 and 12 of the Securities Act of 1933.

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corporation et al.*, Case No. 20-cv-00576 (United States District Court, Southern District of Texas). Class Certification Hearing: May 12, 2025.

*Bjorn Steinholt, CFA*                                                                                           Page   9

# EXHIBIT B

## NAPCO Securities Litigation

*NAPCO Daily Trading Volume*

| Date | Reported Volume (PX_VOLUME) (1) | Closing Price (PX_LAST) (1) | Dollar Volume (2) | Shares Outstanding (EQY_SH_OUT) (1) | Daily Share Turnover (3) |
|---|---|---|---|---|---|
| 11/7/2022 | 682,455 | $28.20 | $19,245,231 | 36,744,760 | 1.86% |
| 11/8/2022 | 315,664 | $26.89 | $8,488,205 | 36,744,760 | 0.86% |
| 11/9/2022 | 163,170 | $26.32 | $4,294,634 | 36,744,760 | 0.44% |
| 11/10/2022 | 230,941 | $27.94 | $6,452,492 | 36,744,760 | 0.63% |
| 11/11/2022 | 264,856 | $27.90 | $7,389,482 | 36,744,760 | 0.72% |
| 11/14/2022 | 132,472 | $27.81 | $3,684,046 | 36,744,760 | 0.36% |
| 11/15/2022 | 163,650 | $28.17 | $4,610,021 | 36,744,760 | 0.45% |
| 11/16/2022 | 268,948 | $27.25 | $7,328,833 | 36,744,760 | 0.73% |
| 11/17/2022 | 390,425 | $25.12 | $9,807,476 | 36,744,760 | 1.06% |
| 11/18/2022 | 275,296 | $26.00 | $7,157,696 | 36,744,760 | 0.75% |
| 11/21/2022 | 252,555 | $26.40 | $6,667,452 | 36,744,760 | 0.69% |
| 11/22/2022 | 147,929 | $25.68 | $3,798,817 | 36,744,760 | 0.40% |
| 11/23/2022 | 127,036 | $26.22 | $3,330,884 | 36,744,760 | 0.35% |
| 11/25/2022 | 92,905 | $26.45 | $2,457,337 | 36,744,760 | 0.25% |
| 11/28/2022 | 182,438 | $25.78 | $4,703,252 | 36,744,760 | 0.50% |
| 11/29/2022 | 199,689 | $25.87 | $5,165,954 | 36,744,760 | 0.54% |
| 11/30/2022 | 336,783 | $26.38 | $8,884,336 | 36,744,760 | 0.92% |
| 12/1/2022 | 147,486 | $26.58 | $3,920,178 | 36,744,760 | 0.40% |
| 12/2/2022 | 211,037 | $26.66 | $5,626,246 | 36,744,760 | 0.57% |
| 12/5/2022 | 138,129 | $26.07 | $3,601,023 | 36,744,760 | 0.38% |
| 12/6/2022 | 217,797 | $25.86 | $5,632,230 | 36,744,760 | 0.59% |
| 12/7/2022 | 206,224 | $25.92 | $5,345,326 | 36,744,760 | 0.56% |
| 12/8/2022 | 190,141 | $26.64 | $5,065,356 | 36,744,760 | 0.52% |
| 12/9/2022 | 186,702 | $26.23 | $4,897,193 | 36,744,760 | 0.51% |
| 12/12/2022 | 176,811 | $26.35 | $4,658,970 | 36,744,760 | 0.48% |
| 12/13/2022 | 140,896 | $27.02 | $3,807,010 | 36,744,760 | 0.38% |
| 12/14/2022 | 213,590 | $27.27 | $5,824,599 | 36,744,760 | 0.58% |
| 12/15/2022 | 195,175 | $26.63 | $5,197,510 | 36,744,760 | 0.53% |
| 12/16/2022 | 309,084 | $26.96 | $8,332,905 | 36,744,760 | 0.84% |
| 12/19/2022 | 226,785 | $26.07 | $5,912,285 | 36,744,760 | 0.62% |
| 12/20/2022 | 215,911 | $26.06 | $5,626,641 | 36,744,760 | 0.59% |
| 12/21/2022 | 110,903 | $26.50 | $2,938,930 | 36,744,760 | 0.30% |
| 12/22/2022 | 277,911 | $26.82 | $7,453,573 | 36,744,760 | 0.76% |
| 12/23/2022 | 135,941 | $26.39 | $3,587,483 | 36,744,760 | 0.37% |
| 12/27/2022 | 183,728 | $26.99 | $4,958,819 | 36,744,760 | 0.50% |
| 12/28/2022 | 139,671 | $26.29 | $3,671,951 | 36,744,760 | 0.38% |
| 12/29/2022 | 152,313 | $27.29 | $4,156,622 | 36,744,760 | 0.41% |
| 12/30/2022 | 184,781 | $27.48 | $5,077,782 | 36,744,760 | 0.50% |
| 1/3/2023 | 133,059 | $27.09 | $3,604,568 | 36,744,760 | 0.36% |
| 1/4/2023 | 136,598 | $26.23 | $3,582,966 | 36,744,760 | 0.37% |
| 1/5/2023 | 75,446 | $26.00 | $1,961,596 | 36,744,760 | 0.21% |
| 1/6/2023 | 81,071 | $26.66 | $2,161,353 | 36,744,760 | 0.22% |
| 1/9/2023 | 103,311 | $27.41 | $2,831,755 | 36,744,760 | 0.28% |
| 1/10/2023 | 128,109 | $27.30 | $3,497,376 | 36,744,760 | 0.35% |
| 1/11/2023 | 259,670 | $27.98 | $7,265,567 | 36,744,760 | 0.71% |
| 1/12/2023 | 169,106 | $28.83 | $4,875,326 | 36,744,760 | 0.46% |
| 1/13/2023 | 154,213 | $29.45 | $4,541,573 | 36,744,760 | 0.42% |
| 1/17/2023 | 236,027 | $30.91 | $7,295,595 | 36,744,760 | 0.64% |
| 1/18/2023 | 261,360 | $28.78 | $7,521,941 | 36,744,760 | 0.71% |
| 1/19/2023 | 109,974 | $29.22 | $3,213,440 | 36,744,760 | 0.30% |
| 1/20/2023 | 103,931 | $29.84 | $3,101,301 | 36,744,760 | 0.28% |
| 1/23/2023 | 240,129 | $30.39 | $7,297,520 | 36,744,760 | 0.65% |
| 1/24/2023 | 102,547 | $29.97 | $3,073,334 | 36,744,760 | 0.28% |
| 1/25/2023 | 188,780 | $30.34 | $5,727,585 | 36,744,760 | 0.51% |
| 1/26/2023 | 154,557 | $29.51 | $4,560,977 | 36,744,760 | 0.42% |
| 1/27/2023 | 104,406 | $29.26 | $3,054,920 | 36,744,760 | 0.28% |
| 1/30/2023 | 132,505 | $28.74 | $3,808,194 | 36,744,760 | 0.36% |

## NAPCO Securities Litigation

*NAPCO Daily Trading Volume*

| Date | Reported Volume (PX_VOLUME) (1) | Closing Price (PX_LAST) (1) | Dollar Volume (2) | Shares Outstanding (EQY_SH_OUT) (1) | Daily Share Turnover (3) |
|---|---|---|---|---|---|
| 1/31/2023 | 237,169 | $28.97 | $6,870,786 | 36,744,760 | 0.65% |
| 2/1/2023 | 170,305 | $29.58 | $5,037,622 | 36,744,760 | 0.46% |
| 2/2/2023 | 186,212 | $30.71 | $5,718,571 | 36,744,760 | 0.51% |
| 2/3/2023 | 299,725 | $31.14 | $9,333,437 | 36,744,760 | 0.82% |
| 2/6/2023 | 1,523,462 | $34.37 | $52,361,389 | 36,745,720 | 4.15% |
| 2/7/2023 | 400,141 | $35.58 | $14,237,017 | 36,745,720 | 1.09% |
| 2/8/2023 | 342,840 | $34.24 | $11,738,842 | 36,745,720 | 0.93% |
| 2/9/2023 | 1,144,090 | $31.61 | $36,164,685 | 36,745,720 | 3.11% |
| 2/10/2023 | 280,639 | $31.65 | $8,882,224 | 36,745,720 | 0.76% |
| 2/13/2023 | 785,616 | $33.42 | $26,255,287 | 36,745,720 | 2.14% |
| 2/14/2023 | 478,649 | $32.12 | $15,374,206 | 36,745,720 | 1.30% |
| 2/15/2023 | 371,320 | $32.78 | $12,171,870 | 36,745,720 | 1.01% |
| 2/16/2023 | 383,419 | $32.87 | $12,602,983 | 36,745,720 | 1.04% |
| 2/17/2023 | 235,932 | $32.70 | $7,714,976 | 36,745,720 | 0.64% |
| 2/21/2023 | 249,082 | $31.68 | $7,890,918 | 36,745,720 | 0.68% |
| 2/22/2023 | 359,336 | $31.86 | $11,448,445 | 36,745,720 | 0.98% |
| 2/23/2023 | 343,870 | $31.81 | $10,938,505 | 36,745,720 | 0.94% |
| 2/24/2023 | 260,940 | $31.69 | $8,269,189 | 36,745,720 | 0.71% |
| 2/27/2023 | 277,507 | $31.67 | $8,788,647 | 36,745,720 | 0.76% |
| 2/28/2023 | 545,369 | $31.60 | $17,233,660 | 36,745,720 | 1.48% |
| 3/1/2023 | 276,089 | $31.81 | $8,782,391 | 36,745,720 | 0.75% |
| 3/2/2023 | 421,995 | $32.25 | $13,609,339 | 36,745,720 | 1.15% |
| 3/3/2023 | 349,927 | $32.74 | $11,456,610 | 36,745,720 | 0.95% |
| 3/6/2023 | 451,556 | $32.46 | $14,657,508 | 36,745,720 | 1.23% |
| 3/7/2023 | 313,764 | $33.02 | $10,360,487 | 36,745,720 | 0.85% |
| 3/8/2023 | 464,797 | $33.87 | $15,742,674 | 36,745,720 | 1.26% |
| 3/9/2023 | 264,365 | $32.51 | $8,594,506 | 36,745,720 | 0.72% |
| 3/10/2023 | 510,417 | $30.39 | $15,511,573 | 36,745,720 | 1.39% |
| 3/13/2023 | 346,686 | $30.37 | $10,528,854 | 36,745,720 | 0.94% |
| 3/14/2023 | 340,828 | $31.47 | $10,725,857 | 36,745,720 | 0.93% |
| 3/15/2023 | 525,282 | $32.37 | $17,003,378 | 36,745,720 | 1.43% |
| 3/16/2023 | 517,433 | $34.38 | $17,789,347 | 36,745,720 | 1.41% |
| 3/17/2023 | 1,178,628 | $33.54 | $39,531,183 | 36,745,720 | 3.21% |
| 3/20/2023 | 423,654 | $34.00 | $14,404,236 | 36,745,720 | 1.15% |
| 3/21/2023 | 760,623 | $35.12 | $26,713,080 | 36,745,720 | 2.07% |
| 3/22/2023 | 518,522 | $35.99 | $18,661,607 | 36,745,720 | 1.41% |
| 3/23/2023 | 821,876 | $37.42 | $30,754,600 | 36,745,720 | 2.24% |
| 3/24/2023 | 792,415 | $37.81 | $29,961,211 | 36,745,720 | 2.16% |
| 3/27/2023 | 601,624 | $38.34 | $23,066,264 | 36,745,720 | 1.64% |
| 3/28/2023 | 351,838 | $37.71 | $13,267,811 | 36,745,720 | 0.96% |
| 3/29/2023 | 575,579 | $37.13 | $21,371,248 | 36,745,720 | 1.57% |
| 3/30/2023 | 652,144 | $37.07 | $24,174,978 | 36,745,720 | 1.77% |
| 3/31/2023 | 719,085 | $37.58 | $27,023,214 | 36,745,720 | 1.96% |
| 4/3/2023 | 476,198 | $36.97 | $17,605,040 | 36,745,720 | 1.30% |
| 4/4/2023 | 407,138 | $36.72 | $14,950,107 | 36,745,720 | 1.11% |
| 4/5/2023 | 603,103 | $34.85 | $21,018,140 | 36,745,720 | 1.64% |
| 4/6/2023 | 605,846 | $33.69 | $20,410,952 | 36,745,720 | 1.65% |
| 4/10/2023 | 551,296 | $33.98 | $18,733,038 | 36,745,720 | 1.50% |
| 4/11/2023 | 346,727 | $33.51 | $11,618,822 | 36,745,720 | 0.94% |
| 4/12/2023 | 265,679 | $34.23 | $9,094,192 | 36,745,720 | 0.72% |
| 4/13/2023 | 279,730 | $33.57 | $9,390,536 | 36,745,720 | 0.76% |
| 4/14/2023 | 351,728 | $33.40 | $11,747,715 | 36,745,720 | 0.96% |
| 4/17/2023 | 183,726 | $33.70 | $6,191,566 | 36,745,720 | 0.50% |
| 4/18/2023 | 236,651 | $34.08 | $8,065,066 | 36,745,720 | 0.64% |
| 4/19/2023 | 197,529 | $34.03 | $6,721,912 | 36,745,720 | 0.54% |
| 4/20/2023 | 272,230 | $34.01 | $9,258,542 | 36,745,720 | 0.74% |
| 4/21/2023 | 363,521 | $34.66 | $12,599,638 | 36,745,720 | 0.99% |

## NAPCO Securities Litigation

*NAPCO Daily Trading Volume*

| Date | Reported Volume (PX_VOLUME) (1) | Closing Price (PX_LAST) (1) | Dollar Volume (2) | Shares Outstanding (EQY_SH_OUT) (1) | Daily Share Turnover (3) |
|---|---|---|---|---|---|
| 4/24/2023 | 298,367 | $34.47 | $10,284,710 | 36,745,720 | 0.81% |
| 4/25/2023 | 402,258 | $33.14 | $13,330,830 | 36,745,720 | 1.09% |
| 4/26/2023 | 743,085 | $30.72 | $22,827,571 | 36,745,720 | 2.02% |
| 4/27/2023 | 468,168 | $30.99 | $14,508,526 | 36,745,720 | 1.27% |
| 4/28/2023 | 431,757 | $31.00 | $13,384,467 | 36,745,720 | 1.17% |
| 5/1/2023 | 528,360 | $31.99 | $16,902,236 | 36,745,720 | 1.44% |
| 5/2/2023 | 1,260,115 | $29.11 | $36,681,948 | 36,745,720 | 3.43% |
| 5/3/2023 | 633,241 | $28.25 | $17,889,058 | 36,745,720 | 1.72% |
| 5/4/2023 | 967,824 | $26.77 | $25,908,648 | 36,745,720 | 2.63% |
| 5/5/2023 | 773,135 | $27.38 | $21,168,436 | 36,745,720 | 2.10% |
| 5/8/2023 | 1,618,215 | $33.85 | $54,776,578 | 36,767,780 | 4.40% |
| 5/9/2023 | 681,331 | $33.10 | $22,552,056 | 36,767,780 | 1.85% |
| 5/10/2023 | 338,705 | $33.18 | $11,238,232 | 36,767,780 | 0.92% |
| 5/11/2023 | 416,313 | $33.61 | $13,992,280 | 36,767,780 | 1.13% |
| 5/12/2023 | 243,149 | $33.63 | $8,177,101 | 36,767,780 | 0.66% |
| 5/15/2023 | 448,591 | $34.60 | $15,521,249 | 36,767,780 | 1.22% |
| 5/16/2023 | 471,545 | $34.58 | $16,306,026 | 36,767,780 | 1.28% |
| 5/17/2023 | 659,047 | $34.20 | $22,539,407 | 36,767,780 | 1.79% |
| 5/18/2023 | 539,245 | $35.03 | $18,889,752 | 36,767,780 | 1.47% |
| 5/19/2023 | 302,545 | $35.38 | $10,704,042 | 36,767,780 | 0.82% |
| 5/22/2023 | 734,020 | $38.69 | $28,399,234 | 36,767,780 | 2.00% |
| 5/23/2023 | 674,694 | $37.44 | $25,260,543 | 36,767,780 | 1.84% |
| 5/24/2023 | 544,030 | $36.88 | $20,063,826 | 36,767,780 | 1.48% |
| 5/25/2023 | 324,706 | $36.27 | $11,777,087 | 36,767,780 | 0.88% |
| 5/26/2023 | 291,823 | $37.78 | $11,025,073 | 36,767,780 | 0.79% |
| 5/30/2023 | 379,302 | $37.75 | $14,318,651 | 36,767,780 | 1.03% |
| 5/31/2023 | 882,572 | $37.19 | $32,822,853 | 36,767,780 | 2.40% |
| 6/1/2023 | 413,707 | $36.92 | $15,274,062 | 36,767,780 | 1.13% |
| 6/2/2023 | 361,632 | $36.46 | $13,185,103 | 36,767,780 | 0.98% |
| 6/5/2023 | 273,118 | $37.42 | $10,220,076 | 36,767,780 | 0.74% |
| 6/6/2023 | 300,924 | $37.97 | $11,426,084 | 36,767,780 | 0.82% |
| 6/7/2023 | 308,359 | $38.11 | $11,751,561 | 36,767,780 | 0.84% |
| 6/8/2023 | 252,436 | $38.11 | $9,620,336 | 36,767,780 | 0.69% |
| 6/9/2023 | 279,886 | $37.97 | $10,627,271 | 36,767,780 | 0.76% |
| 6/12/2023 | 665,369 | $40.23 | $26,767,795 | 36,767,780 | 1.81% |
| 6/13/2023 | 391,207 | $40.01 | $15,652,192 | 36,767,780 | 1.06% |
| 6/14/2023 | 387,176 | $38.59 | $14,941,122 | 36,767,780 | 1.05% |
| 6/15/2023 | 210,874 | $38.13 | $8,040,626 | 36,767,780 | 0.57% |
| 6/16/2023 | 402,837 | $36.27 | $14,610,898 | 36,767,780 | 1.10% |
| 6/20/2023 | 589,976 | $37.00 | $21,829,112 | 36,767,780 | 1.60% |
| 6/21/2023 | 291,179 | $36.30 | $10,569,798 | 36,767,780 | 0.79% |
| 6/22/2023 | 330,018 | $36.20 | $11,946,652 | 36,767,780 | 0.90% |
| 6/23/2023 | 598,687 | $35.45 | $21,223,454 | 36,767,780 | 1.63% |
| 6/26/2023 | 301,976 | $35.31 | $10,662,773 | 36,767,780 | 0.82% |
| 6/27/2023 | 332,947 | $35.23 | $11,729,723 | 36,767,780 | 0.91% |
| 6/28/2023 | 309,202 | $34.86 | $10,778,782 | 36,767,780 | 0.84% |
| 6/29/2023 | 274,627 | $35.70 | $9,804,184 | 36,767,780 | 0.75% |
| 6/30/2023 | 529,960 | $34.65 | $18,363,114 | 36,767,780 | 1.44% |
| 7/3/2023 | 338,523 | $34.27 | $11,601,183 | 36,767,780 | 0.92% |
| 7/5/2023 | 599,849 | $34.50 | $20,694,791 | 36,767,780 | 1.63% |
| 7/6/2023 | 246,752 | $33.86 | $8,355,023 | 36,767,780 | 0.67% |
| 7/7/2023 | 365,283 | $33.58 | $12,266,203 | 36,767,780 | 0.99% |
| 7/10/2023 | 376,317 | $33.98 | $12,787,252 | 36,767,780 | 1.02% |
| 7/11/2023 | 379,894 | $34.04 | $12,931,592 | 36,767,780 | 1.03% |
| 7/12/2023 | 223,027 | $33.93 | $7,567,306 | 36,767,780 | 0.61% |
| 7/13/2023 | 282,160 | $35.25 | $9,946,140 | 36,767,780 | 0.77% |
| 7/14/2023 | 472,115 | $36.11 | $17,048,073 | 36,767,780 | 1.28% |

Exhibit B                                                                                                                                    Page 3

## NAPCO Securities Litigation

*NAPCO Daily Trading Volume*

| Date | Reported Volume (PX_VOLUME) (1) | Closing Price (PX_LAST) (1) | Dollar Volume (2) | Shares Outstanding (EQY_SH_OUT) (1) | Daily Share Turnover (3) |
|---|---|---|---|---|---|
| 7/17/2023 | 348,811 | $36.97 | $12,895,543 | 36,767,780 | 0.95% |
| 7/18/2023 | 275,724 | $37.26 | $10,273,476 | 36,767,780 | 0.75% |
| 7/19/2023 | 300,121 | $37.10 | $11,134,489 | 36,767,780 | 0.82% |
| 7/20/2023 | 492,495 | $37.06 | $18,251,865 | 36,767,780 | 1.34% |
| 7/21/2023 | 229,872 | $36.47 | $8,383,432 | 36,767,780 | 0.63% |
| 7/24/2023 | 180,520 | $35.91 | $6,482,473 | 36,767,780 | 0.49% |
| 7/25/2023 | 205,191 | $36.39 | $7,466,900 | 36,767,780 | 0.56% |
| 7/26/2023 | 149,073 | $36.51 | $5,442,655 | 36,767,780 | 0.41% |
| 7/27/2023 | 188,878 | $36.05 | $6,809,052 | 36,767,780 | 0.51% |
| 7/28/2023 | 154,597 | $36.40 | $5,627,331 | 36,767,780 | 0.42% |
| 7/31/2023 | 240,693 | $37.48 | $9,021,174 | 36,767,780 | 0.65% |
| 8/1/2023 | 168,514 | $37.34 | $6,292,313 | 36,767,780 | 0.46% |
| 8/2/2023 | 176,455 | $36.49 | $6,438,843 | 36,767,780 | 0.48% |
| 8/3/2023 | 166,150 | $36.50 | $6,064,475 | 36,767,780 | 0.45% |
| 8/4/2023 | 217,320 | $35.48 | $7,710,514 | 36,767,780 | 0.59% |
| 8/7/2023 | 257,100 | $36.70 | $9,435,570 | 36,767,780 | 0.70% |
| 8/8/2023 | 211,345 | $36.36 | $7,684,504 | 36,767,780 | 0.57% |
| 8/9/2023 | 231,042 | $36.49 | $8,430,723 | 36,767,780 | 0.63% |
| 8/10/2023 | 188,518 | $36.85 | $6,946,888 | 36,767,780 | 0.51% |
| 8/11/2023 | 365,292 | $38.27 | $13,979,725 | 36,767,780 | 0.99% |
| 8/14/2023 | 256,340 | $38.32 | $9,822,949 | 36,767,780 | 0.70% |
| 8/15/2023 | 263,473 | $38.25 | $10,077,842 | 36,767,780 | 0.72% |
| 8/16/2023 | 258,473 | $38.40 | $9,925,363 | 36,767,780 | 0.70% |
| 8/17/2023 | 579,484 | $38.20 | $22,136,289 | 36,767,780 | 1.58% |
| 8/18/2023 | 899,256 | $38.41 | $34,540,423 | 36,767,780 | 2.45% |
| Total | 71,409,776 | | $2,386,613,652 | | |
| Average | 364,336 | | $12,176,600 | | |

| | |
|---|---|
| Average Daily Share Turnover | 0.99% |
| Average Weekly Share Turnover (Daily Turnover x 5) | 4.96% |

(1) Source: Bloomberg (NSSC US Equity)
(2) Calculated: Daily Reported Volume times Closing Price
(3) Calculated: Daily Reported Volume divided by Shares Outstanding

# EXHIBIT C

## NAPCO Securities Litigation

Quarterly Share Ownership for Reporting Institutions

| # | Investor Name | 12/31/2022 | 3/31/2023 | 6/30/2023 | Minimum Shares Purchased |
|---|---|---|---|---|---|
| 1 | Aberdeen Group PLC | 0 | 0 | 620,392 | 620,392 |
| 2 | Acuitas Investments LLC | 4,400 | 4,520 | 5,515 | 1,115 |
| 3 | Advisorshares Investments LLC | 0 | 0 | 9,039 | 9,039 |
| 4 | Advisory Research Inc | 47,743 | 73,371 | 105,424 | 57,681 |
| 5 | Advisory Services Network LLC | 1,213 | 1,268 | 0 | 0 |
| 6 | Aegon Ltd | 0 | 7,556 | 48,494 | 48,494 |
| 7 | Algert Global LLC | 75,421 | 106,863 | 93,613 | 18,192 |
| 8 | AllianceBernstein Holding LP | 27,800 | 27,800 | 27,800 | 0 |
| 9 | Allianz SE | 543,751 | 510,110 | 79,986 | 0 |
| 10 | Allspring Global Investments Holdings LLC | 3,711 | 2,634 | 3,373 | 739 |
| 11 | Allworth Financial LP | 3,565 | 2,765 | 2,765 | 0 |
| 12 | Alpha Paradigm Partners LLC | 30,781 | 30,781 | 30,781 | 0 |
| 13 | ALPS Advisors Inc | 33,571 | 10,370 | 10,450 | 80 |
| 14 | Alta Capital Management LLC | 313,521 | 310,229 | 300,790 | 0 |
| 15 | Altshuler Shaham Ltd | 1,316 | 892 | 0 | 0 |
| 16 | Amalgamated Bank | 4,688 | 4,272 | 4,702 | 430 |
| 17 | American Century Cos Inc | 1,777 | 125 | 138 | 13 |
| 18 | American Family Insurance Co | 1,736 | 905 | 773 | 0 |
| 19 | American International Group Inc | 24,422 | 26,793 | 26,788 | 2,366 |
| 20 | Ameriprise Financial Inc | 0 | 15,117 | 26,937 | 26,937 |
| 21 | Ameritas Investment Partners Inc | 2,090 | 2,529 | 2,529 | 439 |
| 22 | Annex Advisory Services LLC | 0 | 0 | 7,676 | 7,676 |
| 23 | AQR Capital Management LLC | 12,648 | 14,096 | 18,110 | 5,462 |
| 24 | Aquatic Capital Management LLC | 1,100 | 0 | 3,800 | 3,800 |
| 25 | Arcadia Investment Management Corp | 756 | 2,000 | 865 | 109 |
| 26 | Arizona State Retirement System | 8,810 | 9,049 | 9,289 | 479 |
| 27 | Arrowstreet Capital LP | 14,412 | 0 | 7,462 | 7,462 |
| 28 | AssetMark Inc | 3,428 | 3,428 | 3,428 | 0 |
| 29 | Ausbil Investment Management Ltd/Australia | 0 | 0 | 19,379 | 19,379 |
| 30 | Aviva PLC | 38,173 | 0 | 37,674 | 37,674 |
| 31 | Axiom Investors LLC | 0 | 97,740 | 100,385 | 100,385 |
| 32 | Ayalon Holdings Ltd | 0 | 0 | 4,019 | 4,019 |
| 33 | B Riley Wealth Advisors Inc | 18,373 | 9,695 | 8,971 | 0 |
| 34 | Bain Capital Private Equity LP | 55,086 | 55,086 | 65,399 | 10,313 |
| 35 | Balyasny Asset Management LP | 16,827 | 0 | 30,703 | 30,703 |
| 36 | Bank of America Corp | 87,705 | 115,936 | 113,895 | 26,190 |
| 37 | Bank of Montreal | 99,060 | 100,353 | 0 | 0 |
| 38 | Bank of New York Mellon Corp/The | 136,737 | 146,195 | 146,210 | 9,473 |
| 39 | Bank of Nova Scotia/The | 0 | 5,689 | 0 | 0 |
| 40 | Barclays PLC | 8,279 | 16,734 | 13,111 | 4,832 |
| 41 | Barrett & Co | 6,498 | 3,998 | 4,003 | 5 |
| 42 | Bayesian Capital Management LP | 0 | 0 | 7,853 | 7,853 |
| 43 | Beacon Pointe Advisors LLC | 0 | 14,470 | 0 | 0 |
| 44 | Belpointe Asset Management LLC | 0 | 245 | 0 | 0 |
| 45 | Betashares Capital Ltd | 148,627 | 150,710 | 176,025 | 27,398 |
| 46 | BFC Fund Management AG/Liechtenstein | 0 | 0 | 3,150 | 3,150 |
| 47 | Blackrock Inc | 1,979,520 | 1,979,520 | 1,979,520 | 0 |
| 48 | Blue Trust Inc | 10 | 0 | 0 | 0 |
| 49 | BNP Paribas SA | 14,612 | 38,996 | 149,606 | 134,994 |
| 50 | Boothbay Fund Management LLC | 0 | 0 | 15,688 | 15,688 |
| 51 | Brinker Capital LLC | 0 | 41,607 | 66,337 | 66,337 |
| 52 | Brown Brothers Harriman & Co | 0 | 0 | 229 | 229 |
| 53 | BTG Pactual Holding SA | 0 | 1,130 | 420 | 420 |
| 54 | Calamos Partners LLC | 286,232 | 515,468 | 248,061 | 0 |
| 55 | Cambridge Investment Research Advisors Inc | 20,696 | 21,427 | 21,192 | 496 |
| 56 | Campbell & Co Investment Adviser LLC | 0 | 0 | 27,908 | 27,908 |
| 57 | Canadian Imperial Bank of Commerce | 1,103 | 1,103 | 990 | 0 |
| 58 | Candoris ICAV | 6,889 | 8,212 | 11,241 | 4,352 |
| 59 | Capital CS Group LLC | 0 | 8,469 | 0 | 0 |
| 60 | Capital Impact Advisors LLC | 35,993 | 20,786 | 20,786 | 0 |
| 61 | Captrust Financial Advisors LLC | 0 | 0 | 12,774 | 12,774 |
| 62 | Caxton Associates USA LLC | 0 | 8,841 | 0 | 0 |
| 63 | CenterBook Partners LP | 0 | 55,013 | 0 | 0 |
| 64 | Centiva Capital LP | 0 | 0 | 11,628 | 11,628 |

Exhibit C | Page 1

## NAPCO Securities Litigation

Quarterly Share Ownership for Reporting Institutions

| # | Investor Name | 12/31/2022 | 3/31/2023 | 6/30/2023 | Minimum Shares Purchased |
|---|---|---|---|---|---|
| 65 | Central Mutual Insurance Co | 0 | 540 | 1,475 | 1,475 |
| 66 | Charles Schwab Corp/The | 216,647 | 221,203 | 222,778 | 6,131 |
| 67 | Chase Investment Counsel Corp | 0 | 0 | 6,664 | 6,664 |
| 68 | Choreo LLC | 0 | 0 | 12,000 | 12,000 |
| 69 | CI Financial Corp | 33,165 | 33,165 | 17,165 | 0 |
| 70 | CIM LLC | 11,738 | 11,451 | 11,456 | 5 |
| 71 | Cipher Capital LP | 0 | 0 | 22,617 | 22,617 |
| 72 | Citadel Advisors LLC | 203,082 | 270,844 | 228,819 | 25,737 |
| 73 | Citigroup Inc | 2,224 | 4,742 | 16,788 | 14,564 |
| 74 | City National Bank/Los Angeles CA | 0 | 0 | 515 | 515 |
| 75 | ClariVest Asset Management LLC | 28,730 | 28,750 | 35,045 | 6,315 |
| 76 | Clearwater Management Co Inc | 34,977 | 32,853 | 21,700 | 0 |
| 77 | CM Bidwell & Associates Ltd | 0 | 0 | 3,560 | 3,560 |
| 78 | CM Wealth Advisors LLC | 0 | 13,128 | 0 | 0 |
| 79 | Commonwealth Bank of Australia | 0 | 0 | 2,052 | 2,052 |
| 80 | Commonwealth Equity Services LLC | 18,334 | 19,879 | 6,540 | 0 |
| 81 | Congress Asset Management Co LLP | 0 | 77,088 | 77,562 | 77,562 |
| 82 | Consulting Group Advisory Services LLC | 1,304 | 1,065 | 1,247 | 182 |
| 83 | Covestor Ltd | 18 | 18 | 15 | 0 |
| 84 | Creativeone Wealth LLC | 0 | 6,562 | 0 | 0 |
| 85 | Credit Agricole Group | 1,350 | 1,350 | 1,350 | 0 |
| 86 | Credit Suisse Group AG | 26,540 | 26,548 | 34,584 | 8,044 |
| 87 | Cubist Systematic Strategies LLC | 40,087 | 14,235 | 80,261 | 66,026 |
| 88 | CWM LLC | 0 | 0 | 99 | 99 |
| 89 | Danske Bank A/S | 530 | 530 | 530 | 0 |
| 90 | Dark Forest Capital Management LP | 18,067 | 23,593 | 21,788 | 3,721 |
| 91 | DE Shaw & Co LP | 189,567 | 119,764 | 74,906 | 0 |
| 92 | Denali Advisors LLC | 0 | 0 | 7,500 | 7,500 |
| 93 | Deutsche Bank AG | 13,780 | 22,774 | 47,566 | 33,786 |
| 94 | Dimensional Fund Advisors LP | 1,242,654 | 1,211,763 | 1,223,334 | 11,571 |
| 95 | Divisadero Street Capital Management LP | 0 | 35,000 | 450,000 | 450,000 |
| 96 | Dorsey Wright & Associates LLC | 0 | 0 | 1 | 1 |
| 97 | Driehaus Capital Management LLC | 0 | 245,549 | 428,749 | 428,749 |
| 98 | Dynamic Technology Lab Pte Ltd | 0 | 0 | 23,260 | 23,260 |
| 99 | EARNEST Partners LLC | 9,600 | 9,600 | 9,600 | 0 |
| 100 | Edmond de Rothschild Group/Private Equity | 0 | 2,395 | 2,159 | 2,159 |
| 101 | Emerald Advisers Inc | 0 | 297,181 | 573,474 | 573,474 |
| 102 | Empowered Funds LLC | 32 | 0 | 0 | 0 |
| 103 | Engineers Gate Manager LP | 0 | 0 | 12,924 | 12,924 |
| 104 | Epic Trust Investment Advisors LLC | 11,373 | 7,706 | 6,069 | 0 |
| 105 | Equitable Holdings Inc | 171,483 | 171,664 | 160,475 | 0 |
| 106 | ERShares Global Entrepreneurs | 35,993 | 20,786 | 20,786 | 0 |
| 107 | ETF Series Solutions | 153 | 164 | 164 | 11 |
| 108 | ExodusPoint Capital Management LP | 28,719 | 51,200 | 54,355 | 25,636 |
| 109 | Federated Hermes Inc | 60 | 102 | 373 | 313 |
| 110 | FIL Ltd | 1,469,270 | 1,468,328 | 1,468,328 | 0 |
| 111 | First Horizon Advisors Inc | 424 | 405 | 140 | 0 |
| 112 | FMR LLC | 2,432,510 | 2,432,510 | 2,432,510 | 0 |
| 113 | Franklin Resources Inc | 261,401 | 521,418 | 625,609 | 364,208 |
| 114 | Friess Associates LLC | 96,000 | 0 | 0 | 0 |
| 115 | G2 Investment Partners Management LLC | 604,000 | 290,024 | 136,312 | 0 |
| 116 | GAM Holding AG | 0 | 2,023 | 2,023 | 2,023 |
| 117 | Generali | 0 | 53,982 | 53,982 | 53,982 |
| 118 | Geode Capital Management LLC | 611,997 | 629,890 | 658,939 | 46,942 |
| 119 | GGCP Inc | 49,800 | 37,800 | 37,800 | 0 |
| 120 | Global IMC LLC | 42,612 | 110,163 | 0 | 0 |
| 121 | Goldman Sachs Group Inc/The | 146,709 | 88,489 | 150,063 | 61,574 |
| 122 | Gotham Asset Management LLC | 0 | 0 | 8,416 | 8,416 |
| 123 | Grace Partners of DuPage LP | 0 | 0 | 255 | 255 |
| 124 | Graham Capital Management LP | 0 | 32,611 | 0 | 0 |
| 125 | Granite Investment Partners LLC | 0 | 329,844 | 557,317 | 557,317 |
| 126 | Group One Trading Lp/Chicago | 0 | 2,672 | 0 | 0 |
| 127 | GSA Capital Partners LLP | 0 | 8,006 | 28,188 | 28,188 |
| 128 | Guardian Capital Group Ltd | 33,800 | 39,800 | 54,100 | 20,300 |

Exhibit C                                                                                                     Page 2

## NAPCO Securities Litigation

Quarterly Share Ownership for Reporting Institutions

| # | Investor Name | 12/31/2022 | 3/31/2023 | 6/30/2023 | Minimum Shares Purchased |
|---|---|---|---|---|---|
| 129 | Guggenheim Partners LLC | 422 | 434 | 450 | 28 |
| 130 | GW&K Investment Management LLC | 1,080,302 | 1,033,905 | 1,006,755 | 0 |
| 131 | Hantz Financial Services Inc | 91,709 | 98,471 | 98,512 | 6,803 |
| 132 | Harvest Investment Services LLC | 0 | 0 | 11,779 | 11,779 |
| 133 | Healthcare of Ontario Pension Plan Trust Fund | 0 | 0 | 22,000 | 22,000 |
| 134 | Healthcare Providers Insurance Co | 7,150 | 7,150 | 7,150 | 0 |
| 135 | Heptagon Capital LLP | 0 | 93,958 | 168,082 | 168,082 |
| 136 | Heritage Investors Management | 29,814 | 29,812 | 29,112 | 0 |
| 137 | HighTower Advisors LLC | 130,187 | 129,945 | 130,636 | 691 |
| 138 | Hillsdale Investment Management Inc | 25,200 | 23,200 | 70 | 0 |
| 139 | HNW Performa Investment Advisory SA | 0 | 2,163 | 3,596 | 3,596 |
| 140 | HRT Financial LP | 11,621 | 0 | 63,829 | 63,829 |
| 141 | HSBC Holdings PLC | 0 | 8,632 | 8,876 | 8,876 |
| 142 | Huntington National Bank/The | 1 | 1 | 1 | 0 |
| 143 | IFP Advisors Inc | 0 | 0 | 280 | 280 |
| 144 | Impax Asset Management Group PLC | 255,000 | 0 | 0 | 0 |
| 145 | Informed Momentum Co LLC/The | 66,954 | 71,734 | 48,393 | 0 |
| 146 | Insignia Financial Ltd | 2,345 | 2,345 | 1,337 | 0 |
| 147 | Intrinsic Edge Capital Management LLC | 0 | 0 | 199,280 | 199,280 |
| 148 | Invesco Ltd | 19,484 | 132,109 | 158,320 | 138,836 |
| 149 | Investment Fund Services Ltd | 0 | 0 | 1,055 | 1,055 |
| 150 | Israel Brokerage & Investments IBI Ltd | 404 | 404 | 388 | 0 |
| 151 | Isthmus Partners LLC | 89,611 | 89,963 | 86,366 | 0 |
| 152 | Jackson National Asset Management LLC | 0 | 0 | 1,958 | 1,958 |
| 153 | Jane Street Group LLC | 11,926 | 10,176 | 22,845 | 12,669 |
| 154 | Janus Henderson Group PLC | 1,576,172 | 1,247,908 | 912,214 | 0 |
| 155 | Jefferies Financial Group Inc | 0 | 0 | 32,780 | 32,780 |
| 156 | JPMorgan Chase & Co | 36,990 | 39,300 | 45,041 | 8,051 |
| 157 | Jump Financial LLC | 27,200 | 0 | 59,716 | 59,716 |
| 158 | Kennedy Capital Management Inc | 231,488 | 279,233 | 366,529 | 135,041 |
| 159 | Kestra Advisory Services LLC | 10,679 | 5,895 | 0 | 0 |
| 160 | Knights of Columbus Asset Advisors LLC | 57 | 57 | 83 | 26 |
| 161 | Kommunal Landspensjonskasse Gjensidig Forsikring… | 5,700 | 5,700 | 5,700 | 0 |
| 162 | Lazard Inc | 0 | 0 | 2,091 | 2,091 |
| 163 | Legal & General Group PLC | 12,294 | 16,650 | 30,605 | 18,311 |
| 164 | Legato Capital Management LLC | 0 | 0 | 6,870 | 6,870 |
| 165 | Lincoln Financial Investments Corp | 0 | 25,500 | 41,658 | 41,658 |
| 166 | Lindbrook Capital LLC | 24 | 24 | 24 | 0 |
| 167 | Linden Thomas Advisory Services LLC | 0 | 5,491 | 8,048 | 8,048 |
| 168 | Lisanti Capital Growth LLC | 0 | 0 | 63,615 | 63,615 |
| 169 | Livforsakringsbolaget Skandia OFB | 0 | 0 | 14,700 | 14,700 |
| 170 | Longboard Asset Management LLC | 0 | 0 | 6,312 | 6,312 |
| 171 | Loomis Sayles & Co LP | 708,008 | 710,764 | 687,047 | 0 |
| 172 | Lord Abbett & Co LLC | 456,280 | 474,221 | 530,987 | 74,707 |
| 173 | Los Angeles Capital Management LLC | 0 | 14,026 | 34,007 | 34,007 |
| 174 | LPL Financial LLC | 0 | 0 | 26,579 | 26,579 |
| 175 | LWI Financial Inc | 5,355 | 5,355 | 5,355 | 0 |
| 176 | M&G Luxembourg SA | 67,851 | 0 | 0 | 0 |
| 177 | M&G PLC | 99,269 | 0 | 0 | 0 |
| 178 | MacroView Investment Management LLC | 0 | 0 | 147 | 147 |
| 179 | Man Group PLC/Jersey | 8,000 | 0 | 0 | 0 |
| 180 | Manchester Capital Management LLC | 475 | 475 | 0 | 0 |
| 181 | Manulife Financial Corp | 11,492 | 11,492 | 12,408 | 916 |
| 182 | Markel Group Inc | 55,860 | 55,860 | 55,860 | 0 |
| 183 | Marsh & McLennan Cos Inc | 219,259 | 216,359 | 215,645 | 0 |
| 184 | Marshall Wace Asset Management Ltd | 0 | 128,080 | 412,664 | 412,664 |
| 185 | MCF Advisors LLC | 741 | 770 | 770 | 29 |
| 186 | McMorgan & Co LLC | 95,663 | 87,246 | 93,031 | 5,785 |
| 187 | Mesirow Financial Holdings Inc | 15,184 | 15,184 | 8,734 | 0 |
| 188 | MetLife Inc | 16,829 | 18,205 | 18,205 | 1,376 |
| 189 | Millennium Management LLC/NY | 766,498 | 427,939 | 358,435 | 0 |
| 190 | Mirae Asset Financial Group | 25,434 | 27,740 | 27,740 | 2,306 |
| 191 | MML Investment Advisers LLC | 0 | 7,771 | 10,889 | 10,889 |
| 192 | Montagu Private Equity LLP | 102,291 | 72,081 | 66,966 | 0 |

Exhibit C                                                                                                              Page 3

## NAPCO Securities Litigation

Quarterly Share Ownership for Reporting Institutions

| # | Investor Name | 12/31/2022 | 3/31/2023 | 6/30/2023 | Minimum Shares Purchased |
|---|---|---|---|---|---|
| 193 | Morgan Stanley | 393,278 | 438,817 | 421,105 | 27,827 |
| 194 | Mount Capital Ltd | 0 | 74,471 | 0 | 0 |
| 195 | Nationwide Fund Advisors | 8,533 | 9,639 | 14,232 | 5,699 |
| 196 | Navellier & Associates Inc | 0 | 34,106 | 36,285 | 36,285 |
| 197 | Nebula Research & Development LLC | 0 | 0 | 18,187 | 18,187 |
| 198 | Newbridge Financial Services Group Inc | 300 | 200 | 115 | 0 |
| 199 | Next Century Growth Investors LLC | 581,081 | 599,953 | 609,427 | 28,346 |
| 200 | NinePointTwo Capital LLC | 0 | 0 | 7,095 | 7,095 |
| 201 | NISA Investment Advisors LLC | 35 | 35 | 35 | 0 |
| 202 | Nordea Bank Abp | 210,264 | 201,664 | 192,172 | 0 |
| 203 | Norges Bank | 270,442 | 308,600 | 0 | 0 |
| 204 | North Square Investments LLC | 1,810 | 11,793 | 9,433 | 7,623 |
| 205 | North Star Investment Management Corp | 117,550 | 99,550 | 99,550 | 0 |
| 206 | Northern Trust Corp | 287,632 | 414,448 | 503,877 | 216,245 |
| 207 | Numerai GP LLC | 21,350 | 10,560 | 0 | 0 |
| 208 | Numeric Investors LLC/Hedge Funds | 27,700 | 0 | 0 | 0 |
| 209 | NVWM LLC | 0 | 562 | 562 | 562 |
| 210 | Oberweis Asset Management Inc | 0 | 0 | 59,300 | 59,300 |
| 211 | Occudo Quantitative Strategies LP | 0 | 0 | 51,097 | 51,097 |
| 212 | Olive Street Investment Advisers LLC | 4,350 | 4,612 | 5,531 | 1,181 |
| 213 | Omnis Investments Ltd | 0 | 7,917 | 7,917 | 7,917 |
| 214 | Optimize Investment Partners - SGOIC SA | 0 | 0 | 900 | 900 |
| 215 | Orion Capital Management LLC | 1,000 | 500 | 0 | 0 |
| 216 | Osaic Holdings Inc | 20,334 | 47,601 | 27,700 | 7,366 |
| 217 | Parallel Advisors LLC | 5 | 5 | 20 | 15 |
| 218 | Perennial Value Management Ltd | 2,182 | 2,182 | 2,182 | 0 |
| 219 | Perritt Capital Management Inc | 10,500 | 6,000 | 6,000 | 0 |
| 220 | Pictet & Cie Group SCA | 1,818 | 1,818 | 1,818 | 0 |
| 221 | PNC Financial Services Group Inc/The | 305 | 14 | 5,117 | 5,103 |
| 222 | Point72 Asset Management LP | 0 | 38 | 3,790 | 3,790 |
| 223 | Power Corp of Canada | 86,980 | 86,995 | 89,187 | 2,207 |
| 224 | Principal Financial Group Inc | 9,207 | 8,025 | 10,901 | 2,876 |
| 225 | Private Advisor Group LLC/NJ | 0 | 5,402 | 0 | 0 |
| 226 | ProFund Advisors LLC | 486 | 485 | 400 | 0 |
| 227 | ProShare Advisors LLC | 3,716 | 3,707 | 4,107 | 400 |
| 228 | Prudential Financial Inc | 1,820 | 53,549 | 62,083 | 60,263 |
| 229 | QSV Equity Investors LLC | 1,326 | 1,326 | 0 | 0 |
| 230 | Quadrant Capital Group LLC | 124 | 124 | 124 | 0 |
| 231 | Quadrature Capital Ltd | 0 | 15,659 | 0 | 0 |
| 232 | Quantbot Technologies LP | 12,207 | 6,098 | 8,917 | 2,819 |
| 233 | Quarry LP/The | 0 | 0 | 416 | 416 |
| 234 | Qube Research & Technologies Ltd | 67,157 | 14,858 | 14,858 | 0 |
| 235 | Raffles Associates LP | 33,424 | 33,424 | 33,424 | 0 |
| 236 | Raleigh Capital Management Inc | 0 | 99 | 0 | 0 |
| 237 | Ranger Investment Management LP | 319,034 | 306,257 | 717,077 | 410,820 |
| 238 | Raymond James Financial Inc | 14,500 | 15,276 | 12,386 | 0 |
| 239 | Redmond Asset Management LLC | 93,855 | 93,895 | 93,855 | 0 |
| 240 | Redwood Investments LLC | 340,118 | 388,440 | 325,128 | 0 |
| 241 | Renaissance Technologies LLC | 46,068 | 0 | 94,100 | 94,100 |
| 242 | Rhumbline Advisers LP | 40,308 | 44,329 | 44,213 | 3,905 |
| 243 | Rice Hall James & Associates LLC | 0 | 0 | 156,239 | 156,239 |
| 244 | Robeco Institutional Asset Management BV/Netherla… | 0 | 0 | 69 | 69 |
| 245 | Robeco Schweiz AG | 0 | 0 | 69 | 69 |
| 246 | Rockefeller Capital Management LP | 156 | 0 | 0 | 0 |
| 247 | ROSENBERG MATTHEW HAMILTON | 7 | 7 | 7 | 0 |
| 248 | Roubaix Capital LLC | 267,757 | 154,040 | 127,505 | 0 |
| 249 | Royal Bank of Canada | 44,626 | 529,540 | 572,247 | 527,621 |
| 250 | Russell Investments Group Ltd | 385,039 | 472,479 | 411,578 | 26,539 |
| 251 | S Squared Technology LLC | 131,409 | 120,632 | 135,749 | 15,117 |
| 252 | Sandia Investment Management LP | 0 | 5,000 | 5,000 | 5,000 |
| 253 | Schonfeld Strategic Advisors LLC | 0 | 0 | 46,900 | 46,900 |
| 254 | Schweizerische Nationalbank | 75,400 | 67,400 | 72,000 | 4,600 |
| 255 | SEI Investments Co | 116,541 | 182,463 | 148,996 | 32,455 |
| 256 | Seven Eight Capital LP | 0 | 0 | 6,122 | 6,122 |

Exhibit C                                                                                          Page 4

## NAPCO Securities Litigation

Quarterly Share Ownership for Reporting Institutions

| # | Investor Name | 12/31/2022 | 3/31/2023 | 6/30/2023 | Minimum Shares Purchased |
|---|---|---|---|---|---|
| 257 | SG Americas Securities LLC | 7,459 | 0 | 0 | 0 |
| 258 | SIG Holding LLC | 206,283 | 303,663 | 38,725 | 0 |
| 259 | SignatureFD LLC | 419 | 423 | 40 | 0 |
| 260 | Silvercrest Asset Management Group LLC | 234,724 | 234,724 | 207,360 | 0 |
| 261 | SILVERCROSS INVESTMENT MANAGEMEN | 1,195,863 | 1,195,863 | 1,195,863 | 0 |
| 262 | Simplex Trading LLC | 147 | 6,253 | 5,287 | 5,140 |
| 263 | Skandinaviska Enskilda Banken AB | 0 | 0 | 38,500 | 38,500 |
| 264 | Societe de Gestion Prevoir SGP SA | 0 | 49,100 | 61,100 | 61,100 |
| 265 | Sparinvest Fondsmaeglerselskab A/S | 0 | 0 | 425 | 425 |
| 266 | Squarepoint Ops LLC | 39,747 | 85,346 | 163,127 | 123,380 |
| 267 | State Board Of Administration Of Florida Retirement… | 0 | 0 | 8,960 | 8,960 |
| 268 | State Farm Mutual Automobile Insurance Co | 5,608 | 0 | 0 | 0 |
| 269 | State of California | 38,861 | 39,148 | 39,603 | 742 |
| 270 | State of New York | 21,050 | 42,048 | 96,211 | 75,161 |
| 271 | State of Wisconsin Investment Board | 0 | 0 | 11,214 | 11,214 |
| 272 | State of Wyoming | 5,266 | 0 | 368 | 368 |
| 273 | State Street Corp | 568,298 | 627,261 | 634,603 | 66,305 |
| 274 | Stifel Financial Corp | 23,728 | 18,888 | 18,758 | 0 |
| 275 | Summit Creek Advisors LLC | 555,789 | 436,735 | 398,987 | 0 |
| 276 | Susquehanna Fundamental Investments LLC | 14,426 | 14,426 | 0 | 0 |
| 277 | Svenska Handelsbanken AB | 929,905 | 929,905 | 846,000 | 0 |
| 278 | T Rowe Price Group Inc | 18,851 | 1,345,252 | 1,683,787 | 1,664,936 |
| 279 | Talcott Resolution Life Insurance Co | 1,772 | 1,772 | 1,772 | 0 |
| 280 | Taylor Frigon Capital Management LLC | 254,593 | 150,083 | 118,819 | 0 |
| 281 | Teacher Retirement System of Texas | 20,606 | 9,003 | 7,678 | 0 |
| 282 | Teachers Insurance & Annuity Association of America | 122,284 | 359,153 | 360,423 | 238,139 |
| 283 | Thomson Horstmann & Bryant Inc | 55,720 | 25,250 | 5,280 | 0 |
| 284 | Tiff Advisory Services LLC | 0 | 11,956 | 0 | 0 |
| 285 | Timothy Partners Ltd | 5,184 | 4,996 | 0 | 0 |
| 286 | Toronto Dominion Bank | 0 | 34,420 | 39,438 | 39,438 |
| 287 | Toth Financial Advisory Corp | 50 | 50 | 0 | 0 |
| 288 | Tower Research Capital LLC | 363 | 862 | 2,564 | 2,201 |
| 289 | Townsquare Capital LLC | 19,457 | 19,033 | 26,130 | 7,097 |
| 290 | Trexquant Investment LP | 21,238 | 8,758 | 75,506 | 66,748 |
| 291 | TriaGen Wealth Management LLC | 0 | 0 | 11,916 | 11,916 |
| 292 | Truist Bank | 0 | 1,537 | 2,962 | 2,962 |
| 293 | Truist Financial Corp | 13,251 | 17,803 | 18,881 | 5,630 |
| 294 | Trustee for AWARE SUPER/The | 40,804 | 40,804 | 321 | 0 |
| 295 | Tucker Asset Management LLC | 0 | 66 | 0 | 0 |
| 296 | Tudor Investment Corp | 0 | 15,401 | 61,130 | 61,130 |
| 297 | Two Sigma Investments LP | 0 | 0 | 121,305 | 121,305 |
| 298 | UBS AG | 13,968 | 39,573 | 54,878 | 40,910 |
| 299 | Uniplan Investment Counsel Inc | 297,071 | 225,560 | 224,698 | 0 |
| 300 | US Bancorp | 609 | 609 | 444 | 0 |
| 301 | USA Financial Portformulas Corp | 0 | 0 | 81 | 81 |
| 302 | VAM Advisory SA | 0 | 3,295 | 5,025 | 5,025 |
| 303 | Vanguard Group Inc/The | 1,887,476 | 1,868,657 | 2,278,254 | 409,597 |
| 304 | Vantagepoint Investment Advisers LLC | 4,578 | 4,578 | 5,219 | 641 |
| 305 | Venturi Wealth Management LLC | 0 | 66 | 44 | 44 |
| 306 | Versant Capital Management Inc | 0 | 0 | 18 | 18 |
| 307 | Victory Capital Management Inc | 227,691 | 104,531 | 73,278 | 0 |
| 308 | Virginia Retirement Systems Et Al | 0 | 0 | 10,800 | 10,800 |
| 309 | Virtu Financial LLC | 0 | 11,157 | 0 | 0 |
| 310 | Virtus Investment Partners Inc | 4,792 | 0 | 0 | 0 |
| 311 | Visionary Wealth Advisors LLC | 283,404 | 279,229 | 278,069 | 0 |
| 312 | Voloridge Investment Management LLC | 0 | 17,814 | 0 | 0 |
| 313 | Voya Investment Management LLC | 454,274 | 420,378 | 12,841 | 0 |
| 314 | Wallace Advisory Group LLC | 7,963 | 7,624 | 7,624 | 0 |
| 315 | Walleye Trading LLC | 0 | 0 | 3,197 | 3,197 |
| 316 | Wambolt & Associates LLC | 0 | 7,087 | 6,318 | 6,318 |
| 317 | Wasatch Advisors Inc | 948,670 | 776,464 | 451,215 | 0 |
| 318 | WBC Holdings LP | 19,290 | 13,430 | 13,430 | 0 |
| 319 | Webster Bank NA | 0 | 0 | 135 | 135 |
| 320 | Wellington Management Group LLP | 0 | 127,092 | 110,957 | 110,957 |

Exhibit C                                                                                                      Page 5

## NAPCO Securities Litigation

Quarterly Share Ownership for Reporting Institutions

| # | Investor Name | 12/31/2022 | 3/31/2023 | 6/30/2023 | Minimum Shares Purchased |
|---|---|---|---|---|---|
| 321 | Wells Fargo & Co | 46,878 | 49,902 | 66,890 | 20,012 |
| 322 | West Tower Group LLC | 0 | 0 | 1,469 | 1,469 |
| 323 | White Pine Capital LLC | 74,401 | 73,201 | 73,158 | 0 |
| 324 | Wilshire Advisors LLC | 177 | 2,049 | 5,187 | 5,010 |
| 325 | WisdomTree Inc | 11,490 | 10,174 | 9,906 | 0 |
| 326 | Wolff Wiese Magana LLC | 0 | 200 | 200 | 200 |
| 327 | XTX Topco Ltd | 0 | 0 | 15,392 | 15,392 |
| 328 | Yarra Funds Management Ltd | 0 | 0 | 131 | 131 |
| 329 | Zuercher Kantonalbank | 4,343 | 4,343 | 24,374 | 20,031 |
| | | 31,349,588 | 34,211,370 | 36,430,267 | 11,089,189 |
| | Shares Outstanding | 36,744,760 | 36,745,720 | 36,767,780 | |
| | Institutional Ownership as % of Shares Outstanding | 85.3% | 93.1% | 99.1% | |

Exhibit C                                                                                      Page 6

# EXHIBIT D

## NAPCO Securities Litigation

| Date | NAPCO Financial Services, Inc. Reported Volume | xM (1) | Closing Price | Return | Market/Industry Indices (2) S&P 500 | Craig-Hallum Peer Group | Event Study Regressions (3) Predicted Return | Abnormal Return | t-statistic (4) |
|------|-------|------|-------|-------|-------|-------|-------|-------|-------|
| 11/1/2022 | 188,627 | 0.6 | $27.39 | -3.62% | -0.41% | -0.22% | -0.21% | -3.41% | (1.73) * |
| 11/2/2022 | 204,967 | 0.7 | $26.91 | -1.75% | -2.50% | -7.75% | -3.32% | 1.57% | 0.79 |
| 11/3/2022 | 217,964 | 0.7 | $25.73 | -4.39% | -1.05% | -1.85% | -1.01% | -3.37% | (1.70) * |
| 11/4/2022 | 361,365 | 1.2 | $24.69 | -4.04% | 1.38% | 2.49% | 1.63% | -5.67% | (2.85) ** |
| **11/7/2022** | **682,455** | **2.3** | **$28.20** | **14.22%** | **0.96%** | **0.74%** | **0.93%** | **13.28%** | **6.57** ** |
| 11/8/2022 | 315,664 | 1.1 | $26.89 | -4.65% | 0.56% | -0.10% | 0.48% | -5.12% | (2.53) ** |
| 11/9/2022 | 163,170 | 0.6 | $26.32 | -2.12% | -2.06% | -7.92% | -3.04% | 0.92% | 0.45 |
| 11/10/2022 | 230,941 | 0.8 | $27.94 | 6.16% | 5.55% | 10.10% | 6.07% | 0.08% | 0.04 |
| 11/11/2022 | 264,856 | 0.9 | $27.90 | -0.14% | 0.92% | 3.71% | 1.51% | -1.65% | (0.81) |
| 11/14/2022 | 132,472 | 0.4 | $27.81 | -0.32% | -0.87% | -1.86% | -0.92% | 0.60% | 0.29 |
| 11/15/2022 | 163,650 | 0.6 | $28.17 | 1.29% | 0.88% | 2.44% | 1.17% | 0.12% | 0.06 |
| 11/16/2022 | 268,948 | 0.9 | $27.25 | -3.27% | -0.80% | -2.37% | -0.98% | -2.29% | (1.15) |
| 11/17/2022 | 390,425 | 1.3 | $25.12 | -7.82% | -0.29% | -2.28% | -0.63% | -7.19% | (3.62) ** |
| 11/18/2022 | 275,296 | 0.9 | $26.00 | 3.50% | 0.48% | 0.14% | 0.39% | 3.12% | 1.53 |
| 11/21/2022 | 252,555 | 0.9 | $26.40 | 1.54% | -0.38% | -0.53% | -0.32% | 1.86% | 0.91 |
| 11/22/2022 | 147,929 | 0.5 | $25.68 | -2.73% | 1.36% | -0.80% | 0.72% | -3.44% | (1.69) * |
| 11/23/2022 | 127,036 | 0.4 | $26.22 | 2.10% | 0.60% | 0.24% | 0.47% | 1.63% | 0.80 |
| 11/25/2022 | 92,905 | 0.3 | $26.45 | 0.88% | -0.03% | -0.27% | -0.04% | 0.92% | 0.45 |
| 11/28/2022 | 182,438 | 0.6 | $25.78 | -2.53% | -1.54% | -2.34% | -1.57% | -0.97% | (0.48) |
| 11/29/2022 | 199,689 | 0.7 | $25.87 | 0.35% | -0.15% | 0.38% | 0.06% | 0.29% | 0.14 |
| 11/30/2022 | 336,783 | 1.1 | $26.38 | 1.97% | 3.12% | 2.01% | 2.49% | -0.52% | (0.25) |
| 12/1/2022 | 147,486 | 0.5 | $26.58 | 0.76% | -0.07% | 0.67% | 0.19% | 0.57% | 0.28 |
| 12/2/2022 | 211,037 | 0.7 | $26.66 | 0.30% | -0.11% | 0.09% | 0.00% | 0.31% | 0.15 |
| 12/5/2022 | 138,129 | 0.5 | $26.07 | -2.21% | -1.79% | -3.28% | -1.92% | -0.29% | (0.15) |
| 12/6/2022 | 217,797 | 0.7 | $25.86 | -0.81% | -1.44% | -2.03% | -1.36% | 0.55% | 0.28 |
| 12/7/2022 | 206,224 | 0.7 | $25.92 | 0.23% | -0.18% | 1.52% | 0.37% | -0.14% | (0.07) |
| 12/8/2022 | 190,141 | 0.6 | $26.64 | 2.78% | 0.77% | 2.06% | 1.08% | 1.70% | 0.85 |
| 12/9/2022 | 186,702 | 0.6 | $26.23 | -1.54% | -0.73% | -0.67% | -0.57% | -0.97% | (0.49) |
| 12/12/2022 | 176,811 | 0.6 | $26.35 | 0.46% | 1.43% | 1.94% | 1.47% | -1.02% | (0.51) |
| 12/13/2022 | 140,896 | 0.5 | $27.02 | 2.54% | 0.73% | -0.19% | 0.44% | 2.10% | 1.05 |
| 12/14/2022 | 213,590 | 0.7 | $27.27 | 0.93% | -0.59% | -0.60% | -0.47% | 1.39% | 0.70 |
| 12/15/2022 | 195,175 | 0.7 | $26.63 | -2.35% | -2.49% | -3.45% | -2.42% | 0.07% | 0.04 |
| 12/16/2022 | 309,084 | 1.0 | $26.96 | 1.24% | -1.11% | -0.58% | -0.79% | 2.02% | 1.02 |
| 12/19/2022 | 226,785 | 0.8 | $26.07 | -3.30% | -0.89% | -1.51% | -0.91% | -2.39% | (1.21) |
| 12/20/2022 | 215,911 | 0.7 | $26.06 | -0.04% | 0.11% | 1.04% | 0.41% | -0.45% | (0.22) |
| 12/21/2022 | 110,903 | 0.4 | $26.50 | 1.69% | 1.50% | 1.15% | 1.26% | 0.43% | 0.21 |
| 12/22/2022 | 277,911 | 0.9 | $26.82 | 1.21% | -1.45% | -0.71% | -1.02% | 2.23% | 1.12 |
| 12/23/2022 | 135,941 | 0.5 | $26.39 | -1.60% | 0.59% | -0.72% | 0.19% | -1.79% | (0.90) |
| 12/27/2022 | 183,728 | 0.6 | $26.99 | 2.27% | -0.40% | -0.59% | -0.35% | 2.62% | 1.32 |
| 12/28/2022 | 139,671 | 0.5 | $26.29 | -2.59% | -1.20% | 0.50% | -0.46% | -2.13% | (1.07) |

Exhibit D                                                                                                    Page 1

## NAPCO Securities Litigation

| Date | NAPCO Financial Services, Inc. Reported Volume | xM (1) | Closing Price | Return | Market/Industry Indices (2) S&P 500 | Craig-Hallum Peer Group | Event Study Regressions (3) Predicted Return | Abnormal Return | t-statistic (4) |
|---|---|---|---|---|---|---|---|---|---|
| 12/29/2022 | 152,313 | 0.5 | $27.29 | 3.80% | 1.76% | 2.19% | 1.75% | 2.06% | 1.03 |
| 12/30/2022 | 184,781 | 0.6 | $27.48 | 0.70% | -0.25% | 0.42% | 0.06% | 0.64% | 0.32 |
| 1/3/2023 | 133,059 | 0.5 | $27.09 | -1.42% | -0.40% | 1.17% | 0.20% | -1.62% | (0.81) |
| 1/4/2023 | 136,598 | 0.5 | $26.23 | -3.17% | 0.76% | 2.06% | 1.12% | -4.29% | (2.15) ** |
| 1/5/2023 | 75,446 | 0.3 | $26.00 | -0.88% | -1.15% | -1.03% | -0.93% | 0.05% | 0.03 |
| 1/6/2023 | 81,071 | 0.3 | $26.66 | 2.54% | 2.29% | 3.37% | 2.36% | 0.18% | 0.09 |
| 1/9/2023 | 103,311 | 0.4 | $27.41 | 2.81% | -0.06% | 1.15% | 0.36% | 2.45% | 1.22 |
| 1/10/2023 | 128,109 | 0.4 | $27.30 | -0.40% | 0.70% | 2.13% | 1.10% | -1.50% | (0.75) |
| 1/11/2023 | 259,670 | 0.9 | $27.98 | 2.49% | 1.29% | -0.99% | 0.54% | 1.95% | 0.97 |
| 1/12/2023 | 169,106 | 0.6 | $28.83 | 3.04% | 0.35% | 1.28% | 0.66% | 2.38% | 1.19 |
| 1/13/2023 | 154,213 | 0.5 | $29.45 | 2.15% | 0.40% | 0.63% | 0.52% | 1.63% | 0.82 |
| 1/17/2023 | 236,027 | 0.8 | $30.91 | 4.96% | -0.20% | -0.93% | -0.28% | 5.24% | 2.63 ** |
| 1/18/2023 | 261,360 | 0.9 | $28.78 | -6.89% | -1.56% | -0.56% | -0.96% | -5.93% | (2.94) ** |
| 1/19/2023 | 109,974 | 0.4 | $29.22 | 1.53% | -0.75% | -2.97% | -1.16% | 2.69% | 1.31 |
| 1/20/2023 | 103,931 | 0.4 | $29.84 | 2.12% | 1.89% | 2.12% | 1.88% | 0.25% | 0.12 |
| 1/23/2023 | 240,129 | 0.8 | $30.39 | 1.84% | 1.19% | 1.49% | 1.27% | 0.58% | 0.28 |
| 1/24/2023 | 102,547 | 0.3 | $29.97 | -1.38% | -0.07% | -1.10% | -0.20% | -1.18% | (0.57) |
| 1/25/2023 | 188,780 | 0.6 | $30.34 | 1.23% | -0.02% | -0.50% | -0.02% | 1.25% | 0.61 |
| 1/26/2023 | 154,557 | 0.5 | $29.51 | -2.74% | 1.11% | 1.27% | 1.17% | -3.90% | (1.90) * |
| 1/27/2023 | 104,406 | 0.4 | $29.26 | -0.85% | 0.25% | -0.17% | 0.23% | -1.08% | (0.52) |
| 1/30/2023 | 132,505 | 0.4 | $28.74 | -1.78% | -1.29% | -1.00% | -0.95% | -0.83% | (0.40) |
| 1/31/2023 | 237,169 | 0.8 | $28.97 | 0.80% | 1.47% | 2.56% | 1.70% | -0.89% | (0.43) |
| 2/1/2023 | 170,305 | 0.6 | $29.58 | 2.11% | 1.05% | 2.75% | 1.47% | 0.64% | 0.31 |
| 2/2/2023 | 186,212 | 0.6 | $30.71 | 3.82% | 1.48% | 3.51% | 1.94% | 1.88% | 0.91 |
| 2/3/2023 | 299,725 | 1.0 | $31.14 | 1.40% | -1.03% | -0.48% | -0.63% | 2.03% | 0.98 |
| **2/6/2023** | **1,523,462** | **5.2** | **$34.37** | **10.37%** | **-0.61%** | **-1.91%** | **-0.72%** | **11.10%** | **5.37 **** |
| 2/7/2023 | 400,141 | 1.4 | $35.58 | 3.52% | 1.29% | 0.60% | 1.09% | 2.43% | 1.17 |
| 2/8/2023 | 342,840 | 1.2 | $34.24 | -3.77% | -1.11% | -2.10% | -1.07% | -2.69% | (1.30) |
| 2/9/2023 | 1,144,090 | 3.9 | $31.61 | -7.68% | -0.87% | -1.69% | -0.83% | -6.85% | (3.30) ** |
| 2/10/2023 | 280,639 | 1.0 | $31.65 | 0.13% | 0.23% | -0.93% | 0.01% | 0.12% | 0.05 |
| 2/13/2023 | 785,616 | 2.7 | $33.42 | 5.59% | 1.16% | 1.14% | 1.16% | 4.43% | 2.11 ** |
| 2/14/2023 | 478,649 | 1.6 | $32.12 | -3.89% | -0.02% | 0.23% | 0.17% | -4.06% | (1.92) * |
| 2/15/2023 | 371,320 | 1.3 | $32.78 | 2.05% | 0.30% | 2.27% | 0.84% | 1.21% | 0.57 |
| 2/16/2023 | 383,419 | 1.3 | $32.87 | 0.27% | -1.37% | -1.33% | -1.14% | 1.41% | 0.66 |
| 2/17/2023 | 235,932 | 0.8 | $32.70 | -0.52% | -0.26% | 0.82% | 0.13% | -0.65% | (0.30) |
| 2/21/2023 | 249,082 | 0.8 | $31.68 | -3.12% | -2.00% | -4.72% | -2.33% | -0.79% | (0.37) |
| 2/22/2023 | 359,336 | 1.2 | $31.86 | 0.57% | -0.16% | -0.96% | -0.22% | 0.79% | 0.37 |
| 2/23/2023 | 343,870 | 1.2 | $31.81 | -0.16% | 0.54% | 0.14% | 0.52% | -0.67% | (0.32) |
| 2/24/2023 | 260,940 | 0.9 | $31.69 | -0.38% | -1.05% | -1.14% | -0.87% | 0.50% | 0.23 |
| 2/27/2023 | 277,507 | 0.9 | $31.67 | -0.06% | 0.32% | 0.51% | 0.44% | -0.51% | (0.24) |

Exhibit D

## NAPCO Securities Litigation

| | NAPCO Financial Services, Inc. | | | | Market/Industry Indices (2) | | Event Study Regressions (3) | | |
|---|---|---|---|---|---|---|---|---|---|
| Date | Reported Volume | xM (1) | Closing Price | Return | S&P 500 | Craig-Hallum Peer Group | Predicted Return | Abnormal Return | t-statistic (4) |
| 2/28/2023 | 545,369 | 1.8 | $31.60 | -0.22% | -0.29% | -1.27% | -0.40% | 0.18% | 0.08 |
| 3/1/2023 | 276,089 | 0.9 | $31.81 | 0.66% | -0.47% | -0.74% | -0.40% | 1.07% | 0.50 |
| 3/2/2023 | 421,995 | 1.4 | $32.25 | 1.38% | 0.77% | 0.94% | 0.85% | 0.53% | 0.25 |
| 3/3/2023 | 349,927 | 1.2 | $32.74 | 1.52% | 1.62% | 2.14% | 1.71% | -0.19% | (0.09) |
| 3/6/2023 | 451,556 | 1.5 | $32.46 | -0.86% | 0.07% | -1.57% | -0.21% | -0.65% | (0.31) |
| 3/7/2023 | 313,764 | 1.1 | $33.02 | 1.73% | -1.53% | -2.36% | -1.50% | 3.22% | 1.52 |
| 3/8/2023 | 464,797 | 1.6 | $33.87 | 2.57% | 0.15% | 9.16% | 2.36% | 0.22% | 0.10 |
| 3/9/2023 | 264,365 | 0.9 | $32.51 | -4.02% | -1.83% | -0.35% | -1.21% | -2.80% | (1.32) |
| 3/10/2023 | 510,417 | 1.7 | $30.39 | -6.52% | -1.44% | -4.47% | -1.95% | -4.57% | (2.15) ** |
| 3/13/2023 | 346,686 | 1.2 | $30.37 | -0.07% | -0.15% | 0.23% | 0.05% | -0.12% | (0.06) |
| 3/14/2023 | 340,828 | 1.2 | $31.47 | 3.62% | 1.67% | 1.46% | 1.58% | 2.04% | 0.96 |
| 3/15/2023 | 525,282 | 1.8 | $32.37 | 2.86% | -0.70% | -0.69% | -0.57% | 3.43% | 1.61 |
| 3/16/2023 | 517,433 | 1.8 | $34.38 | 6.21% | 1.77% | 0.71% | 1.49% | 4.72% | 2.20 ** |
| 3/17/2023 | 1,178,628 | 4.0 | $33.54 | -2.44% | -1.10% | -2.17% | -1.21% | -1.23% | (0.57) |
| 3/20/2023 | 423,654 | 1.4 | $34.00 | 1.37% | 0.89% | 0.52% | 0.89% | 0.48% | 0.22 |
| 3/21/2023 | 760,623 | 2.6 | $35.12 | 3.29% | 1.31% | 1.86% | 1.53% | 1.76% | 0.82 |
| 3/22/2023 | 518,522 | 1.8 | $35.99 | 2.48% | -1.64% | -1.92% | -1.52% | 4.00% | 1.85 * |
| 3/23/2023 | 821,876 | 2.8 | $37.42 | 3.97% | 0.31% | -0.93% | 0.12% | 3.86% | 1.77 * |
| 3/24/2023 | 792,415 | 2.7 | $37.81 | 1.04% | 0.56% | 0.22% | 0.61% | 0.43% | 0.20 |
| 3/27/2023 | 601,624 | 2.0 | $38.34 | 1.40% | 0.16% | 0.26% | 0.34% | 1.06% | 0.49 |
| 3/28/2023 | 351,838 | 1.2 | $37.71 | -1.64% | -0.16% | -0.81% | -0.15% | -1.49% | (0.68) |
| 3/29/2023 | 575,579 | 2.0 | $37.13 | -1.54% | 1.42% | 1.74% | 1.59% | -3.13% | (1.43) |
| 3/30/2023 | 652,144 | 2.2 | $37.07 | -0.16% | 0.59% | 0.80% | 0.76% | -0.92% | (0.42) |
| 3/31/2023 | 719,085 | 2.4 | $37.58 | 1.38% | 1.45% | 3.25% | 1.96% | -0.59% | (0.27) |
| 4/3/2023 | 476,198 | 1.6 | $36.97 | -1.62% | 0.37% | -0.60% | 0.23% | -1.85% | (0.85) |
| 4/4/2023 | 407,138 | 1.4 | $36.72 | -0.68% | -0.57% | -1.47% | -0.62% | -0.06% | (0.03) |
| 4/5/2023 | 603,103 | 2.0 | $34.85 | -5.09% | -0.24% | -1.60% | -0.41% | -4.68% | (2.14) ** |
| 4/6/2023 | 605,846 | 2.1 | $33.69 | -3.33% | 0.38% | 0.58% | 0.53% | -3.86% | (1.75) * |
| 4/10/2023 | 551,296 | 1.9 | $33.98 | 0.86% | 0.10% | 0.66% | 0.35% | 0.51% | 0.23 |
| 4/11/2023 | 346,727 | 1.2 | $33.51 | -1.38% | 0.00% | 0.86% | 0.33% | -1.71% | (0.77) |
| 4/12/2023 | 265,679 | 0.9 | $34.23 | 2.15% | -0.41% | -0.83% | -0.38% | 2.53% | 1.14 |
| 4/13/2023 | 279,730 | 0.9 | $33.57 | -1.93% | 1.34% | 0.82% | 1.24% | -3.17% | (1.42) |
| 4/14/2023 | 351,728 | 1.2 | $33.40 | -0.51% | -0.21% | -0.71% | -0.21% | -0.30% | (0.13) |
| 4/17/2023 | 183,726 | 0.6 | $33.70 | 0.90% | 0.33% | 0.99% | 0.57% | 0.33% | 0.15 |
| 4/18/2023 | 236,651 | 0.8 | $34.08 | 1.13% | 0.09% | 0.33% | 0.25% | 0.88% | 0.39 |
| 4/19/2023 | 197,529 | 0.7 | $34.03 | -0.15% | -0.01% | 0.14% | 0.15% | -0.30% | (0.13) |
| 4/20/2023 | 272,230 | 0.9 | $34.01 | -0.06% | -0.58% | -0.67% | -0.43% | 0.37% | 0.17 |
| 4/21/2023 | 363,521 | 1.2 | $34.66 | 1.91% | 0.09% | 0.26% | 0.25% | 1.66% | 0.75 |
| 4/24/2023 | 298,367 | 1.0 | $34.47 | -0.55% | 0.09% | -1.05% | -0.06% | -0.49% | (0.22) |
| 4/25/2023 | 402,258 | 1.4 | $33.14 | -3.86% | -1.58% | -3.05% | -1.66% | -2.20% | (0.98) |

Exhibit D

Page 3

## NAPCO Securities Litigation

| Date | Reported Volume | xM (1) | Closing Price | Return | S&P 500 | Craig-Hallum Peer Group | Predicted Return | Abnormal Return | t-statistic (4) |
|---|---|---|---|---|---|---|---|---|---|
| | NAPCO Financial Services, Inc. | | | | Market/Industry Indices (2) | | Event Study Regressions (3) | | |
| 4/26/2023 | 743,085 | 2.5 | $30.72 | -7.30% | -0.38% | 0.67% | 0.02% | -7.32% | (3.28) ** |
| 4/27/2023 | 468,168 | 1.6 | $30.99 | 0.88% | 1.96% | 3.33% | 2.24% | -1.36% | (0.59) |
| 4/28/2023 | 431,757 | 1.5 | $31.00 | 0.03% | 0.84% | 1.14% | 0.94% | -0.91% | (0.40) |
| 5/1/2023 | 528,360 | 1.8 | $31.99 | 3.19% | -0.04% | 0.22% | 0.11% | 3.08% | 1.35 |
| 5/2/2023 | 1,260,115 | 4.3 | $29.11 | -9.00% | -1.16% | -3.47% | -1.48% | -7.52% | (3.28) ** |
| 5/3/2023 | 633,241 | 2.1 | $28.25 | -2.95% | -0.70% | -0.80% | -0.60% | -2.36% | (1.01) |
| 5/4/2023 | 967,824 | 3.3 | $26.77 | -5.24% | -0.71% | -1.80% | -0.86% | -4.37% | (1.87) * |
| 5/5/2023 | 773,135 | 2.6 | $27.38 | 2.28% | 1.85% | 2.99% | 2.09% | 0.19% | 0.08 |
| **5/8/2023** | **1,618,215** | **5.5** | **$33.85** | **23.63%** | **0.05%** | **1.03%** | **0.38%** | **23.25%** | **9.88 ** |
| 5/9/2023 | 681,331 | 2.3 | $33.10 | -2.22% | -0.45% | 0.14% | -0.19% | -2.02% | (0.86) |
| 5/10/2023 | 338,705 | 1.1 | $33.18 | 0.24% | 0.45% | 1.47% | 0.74% | -0.50% | (0.21) |
| 5/11/2023 | 416,313 | 1.4 | $33.61 | 1.30% | -0.15% | 3.21% | 0.76% | 0.54% | 0.23 |
| 5/12/2023 | 243,149 | 0.8 | $33.63 | 0.06% | -0.14% | 3.39% | 0.83% | -0.77% | (0.33) |
| 5/15/2023 | 448,591 | 1.5 | $34.60 | 2.88% | 0.31% | 2.93% | 1.02% | 1.87% | 0.80 |
| 5/16/2023 | 471,545 | 1.6 | $34.58 | -0.06% | -0.63% | -1.64% | -0.78% | 0.72% | 0.31 |
| 5/17/2023 | 659,047 | 2.2 | $34.20 | -1.10% | 1.21% | 2.19% | 1.49% | -2.58% | (1.10) |
| 5/18/2023 | 539,245 | 1.8 | $35.03 | 2.43% | 0.96% | 0.56% | 0.89% | 1.54% | 0.65 |
| 5/19/2023 | 302,545 | 1.0 | $35.38 | 1.18% | -0.14% | -1.32% | -0.34% | 1.52% | 0.65 |
| 5/22/2023 | 734,020 | 2.5 | $38.69 | 9.36% | 0.03% | 1.01% | 0.31% | 9.04% | 3.87 ** |
| 5/23/2023 | 674,694 | 2.3 | $37.44 | -3.23% | -1.12% | -1.17% | -0.97% | -2.26% | (0.94) |
| 5/24/2023 | 544,030 | 1.8 | $36.88 | -1.50% | -0.73% | -1.57% | -0.79% | -0.71% | (0.29) |
| 5/25/2023 | 324,706 | 1.1 | $36.27 | -1.65% | 0.88% | -1.58% | 0.38% | -2.03% | (0.84) |
| 5/26/2023 | 291,823 | 1.0 | $37.78 | 4.16% | 1.31% | 1.08% | 1.28% | 2.88% | 1.20 |
| 5/30/2023 | 379,302 | 1.3 | $37.75 | -0.08% | 0.01% | 1.20% | 0.37% | -0.44% | (0.18) |
| 5/31/2023 | 882,572 | 3.0 | $37.19 | -1.48% | -0.59% | -0.76% | -0.51% | -0.98% | (0.41) |
| 6/1/2023 | 413,707 | 1.4 | $36.92 | -0.73% | 1.00% | -0.97% | 0.66% | -1.38% | (0.57) |
| 6/2/2023 | 361,632 | 1.2 | $36.46 | -1.25% | 1.46% | 4.01% | 2.09% | -3.33% | (1.39) |
| 6/5/2023 | 273,118 | 0.9 | $37.42 | 2.63% | -0.20% | -1.07% | -0.30% | 2.94% | 1.24 |
| 6/6/2023 | 300,924 | 1.0 | $37.97 | 1.47% | 0.24% | 2.05% | 0.62% | 0.85% | 0.36 |
| 6/7/2023 | 308,359 | 1.0 | $38.11 | 0.37% | -0.38% | 1.28% | 0.02% | 0.35% | 0.15 |
| 6/8/2023 | 252,436 | 0.9 | $38.11 | 0.00% | 0.63% | -1.37% | 0.26% | -0.26% | (0.11) |
| 6/9/2023 | 279,886 | 0.9 | $37.97 | -0.37% | 0.12% | -1.34% | -0.12% | -0.25% | (0.11) |
| 6/12/2023 | 665,369 | 2.3 | $40.23 | 5.95% | 0.93% | 0.97% | 0.92% | 5.03% | 2.13 ** |
| 6/13/2023 | 391,207 | 1.3 | $40.01 | -0.55% | 0.70% | 1.83% | 0.93% | -1.48% | (0.62) |
| 6/14/2023 | 387,176 | 1.3 | $38.59 | -3.55% | 0.11% | -1.17% | -0.08% | -3.47% | (1.46) |
| 6/15/2023 | 210,874 | 0.7 | $38.13 | -1.19% | 1.24% | 0.12% | 1.00% | -2.19% | (0.92) |
| 6/16/2023 | 402,837 | 1.4 | $36.27 | -4.88% | -0.37% | 0.03% | -0.23% | -4.65% | (1.95) * |
| 6/20/2023 | 589,976 | 2.0 | $37.00 | 2.01% | -0.47% | 0.29% | -0.29% | 2.30% | 0.96 |
| 6/21/2023 | 291,179 | 1.0 | $36.30 | -1.89% | -0.52% | -0.17% | -0.41% | -1.49% | (0.62) |
| 6/22/2023 | 330,018 | 1.1 | $36.20 | -0.28% | 0.38% | -0.65% | 0.17% | -0.44% | (0.18) |

## NAPCO Securities Litigation

| Date | NAPCO Financial Services, Inc. | | | | Market/Industry Indices (2) | | Event Study Regressions (3) | | |
| | Reported Volume | xM (1) | Closing Price | Return | S&P 500 | Craig-Hallum Peer Group | Predicted Return | Abnormal Return | t-statistic (4) |
|---|---|---|---|---|---|---|---|---|---|
| 6/23/2023 | 598,687 | 2.0 | $35.45 | -2.07% | -0.77% | -2.35% | -1.07% | -1.00% | (0.42) |
| 6/26/2023 | 301,976 | 1.0 | $35.31 | -0.39% | -0.45% | -0.21% | -0.40% | 0.01% | 0.00 |
| 6/27/2023 | 332,947 | 1.1 | $35.23 | -0.23% | 1.15% | 2.07% | 1.27% | -1.49% | (0.62) |
| 6/28/2023 | 309,202 | 1.0 | $34.86 | -1.05% | -0.04% | 1.10% | 0.16% | -1.21% | (0.51) |
| 6/29/2023 | 274,627 | 0.9 | $35.70 | 2.41% | 0.46% | 3.26% | 0.94% | 1.47% | 0.61 |
| 6/30/2023 | 529,960 | 1.8 | $34.65 | -2.94% | 1.23% | 1.50% | 1.20% | -4.14% | (1.72) * |
| 7/3/2023 | 338,523 | 1.1 | $34.27 | -1.10% | 0.12% | -0.32% | -0.02% | -1.08% | (0.45) |
| 7/5/2023 | 599,849 | 2.0 | $34.50 | 0.67% | -0.18% | -1.70% | -0.55% | 1.22% | 0.51 |
| 7/6/2023 | 246,752 | 0.8 | $33.86 | -1.86% | -0.78% | -1.70% | -0.94% | -0.91% | (0.38) |
| 7/7/2023 | 365,283 | 1.2 | $33.58 | -0.83% | -0.27% | 1.90% | 0.15% | -0.98% | (0.41) |
| 7/10/2023 | 376,317 | 1.3 | $33.98 | 1.19% | 0.24% | 1.58% | 0.44% | 0.75% | 0.31 |
| 7/11/2023 | 379,894 | 1.3 | $34.04 | 0.18% | 0.68% | 1.64% | 0.76% | -0.58% | (0.24) |
| 7/12/2023 | 223,027 | 0.8 | $33.93 | -0.32% | 0.74% | 1.49% | 0.78% | -1.10% | (0.46) |
| 7/13/2023 | 282,160 | 1.0 | $35.25 | 3.89% | 0.86% | 1.20% | 0.79% | 3.10% | 1.29 |
| 7/14/2023 | 472,115 | 1.6 | $36.11 | 2.44% | -0.10% | -1.11% | -0.35% | 2.79% | 1.16 |
| 7/17/2023 | 348,811 | 1.2 | $36.97 | 2.38% | 0.39% | 1.89% | 0.57% | 1.81% | 0.75 |
| 7/18/2023 | 275,724 | 0.9 | $37.26 | 0.78% | 0.71% | -0.78% | 0.32% | 0.47% | 0.20 |
| 7/19/2023 | 300,121 | 1.0 | $37.10 | -0.43% | 0.24% | -0.31% | 0.04% | -0.46% | (0.20) |
| 7/20/2023 | 492,495 | 1.7 | $37.06 | -0.11% | -0.67% | -1.95% | -0.96% | 0.85% | 0.36 |
| 7/21/2023 | 229,872 | 0.8 | $36.47 | -1.59% | 0.03% | 0.10% | -0.04% | -1.55% | (0.65) |
| 7/24/2023 | 180,520 | 0.6 | $35.91 | -1.54% | 0.41% | 0.69% | 0.35% | -1.88% | (0.79) |
| 7/25/2023 | 205,191 | 0.7 | $36.39 | 1.34% | 0.28% | 0.58% | 0.21% | 1.12% | 0.48 |
| 7/26/2023 | 149,073 | 0.5 | $36.51 | 0.33% | -0.01% | -0.55% | -0.21% | 0.54% | 0.23 |
| 7/27/2023 | 188,878 | 0.6 | $36.05 | -1.26% | -0.64% | -0.97% | -0.74% | -0.52% | (0.22) |
| 7/28/2023 | 154,597 | 0.5 | $36.40 | 0.97% | 1.00% | 1.05% | 0.82% | 0.15% | 0.06 |
| 7/31/2023 | 240,693 | 0.8 | $37.48 | 2.97% | 0.15% | 0.92% | 0.17% | 2.80% | 1.19 |
| 8/1/2023 | 168,514 | 0.6 | $37.34 | -0.37% | -0.26% | -0.49% | -0.37% | -0.01% | (0.00) |
| 8/2/2023 | 176,455 | 0.6 | $36.49 | -2.28% | -1.38% | -1.54% | -1.35% | -0.93% | (0.39) |
| 8/3/2023 | 166,150 | 0.6 | $36.50 | 0.03% | -0.25% | -1.41% | -0.55% | 0.58% | 0.25 |
| 8/4/2023 | 217,320 | 0.7 | $35.48 | -2.79% | -0.52% | -2.28% | -0.91% | -1.88% | (0.80) |
| 8/7/2023 | 257,100 | 0.9 | $36.70 | 3.44% | 0.91% | 0.38% | 0.62% | 2.82% | 1.20 |
| 8/8/2023 | 211,345 | 0.7 | $36.36 | -0.93% | -0.42% | -1.08% | -0.60% | -0.32% | (0.14) |
| 8/9/2023 | 231,042 | 0.8 | $36.49 | 0.36% | -0.70% | -2.37% | -1.09% | 1.44% | 0.62 |
| 8/10/2023 | 188,518 | 0.6 | $36.85 | 0.99% | 0.04% | 4.47% | 0.84% | 0.14% | 0.06 |
| 8/11/2023 | 365,292 | 1.2 | $38.27 | 3.85% | -0.09% | 0.74% | 0.00% | 3.86% | 1.65 * |
| 8/14/2023 | 256,340 | 0.9 | $38.32 | 0.13% | 0.58% | -1.53% | 0.02% | 0.12% | 0.05 |
| 8/15/2023 | 263,473 | 0.9 | $38.25 | -0.18% | -1.14% | -1.31% | -1.15% | 0.97% | 0.41 |
| 8/16/2023 | 258,473 | 0.9 | $38.40 | 0.39% | -0.74% | -0.03% | -0.58% | 0.98% | 0.42 |
| 8/17/2023 | 579,484 | 2.0 | $38.20 | -0.52% | -0.75% | -1.29% | -0.84% | 0.32% | 0.13 |
| 8/18/2023 | 899,256 | 3.0 | $38.41 | 0.55% | -0.01% | 0.36% | 0.02% | 0.53% | 0.23 |

Exhibit D

## NAPCO Securities Litigation

| Date | NAPCO Financial Services, Inc. | | | | Market/Industry Indices (2) | | Event Study Regressions (3) | | |
|---|---|---|---|---|---|---|---|---|---|
| | Reported Volume | xM (1) | Closing Price | Return | S&P 500 | Craig-Hallum Peer Group | Predicted Return | Abnormal Return | t-statistic (4) |
| **8/21/2023** | **16,185,535** | **54.8** | **$21.11** | **-45.04%** | **0.69%** | **-0.88%** | **0.27%** | **-45.31%** | **(19.35) \*\*** |
| 8/22/2023 | 3,242,609 | 11.0 | $23.24 | 10.09% | -0.28% | 0.49% | -0.14% | 10.23% | 4.37 \*\* |
| 8/23/2023 | 1,116,194 | 3.8 | $23.55 | 1.33% | 1.11% | 1.85% | 1.13% | 0.21% | 0.09 |
| 8/24/2023 | 1,096,673 | 3.7 | $22.68 | -3.69% | -1.34% | -1.51% | -1.21% | -2.48% | (1.03) |
| 8/25/2023 | 884,213 | 3.0 | $22.69 | 0.04% | 0.68% | 0.05% | 0.39% | -0.35% | (0.14) |
| 8/28/2023 | 649,936 | 2.2 | $22.78 | 0.40% | 0.63% | 0.50% | 0.48% | -0.08% | (0.03) |
| 8/29/2023 | 1,623,681 | 5.5 | $24.50 | 7.55% | 1.45% | 1.30% | 1.17% | 6.38% | 2.64 \*\* |
| 8/30/2023 | 1,321,869 | 4.5 | $24.80 | 1.22% | 0.40% | 0.72% | 0.42% | 0.80% | 0.33 |
| 8/31/2023 | 991,576 | 3.4 | $24.78 | 0.24% | -0.14% | -0.38% | -0.21% | 0.45% | 0.18 |

(1) Multiple of Class Period median daily volume (*i.e.* , x times median volume)

(2) S&P 500 used as proxy for  market factors and Craig-Hallum Peer Group used as proxy for industry factors.
   The Craig-Hallum Peer Group is an equally weighted index composed of: SmartRent (SMRT), Arlo Technologies (ARLO), Alarm.com (ALRM), Allegion (ALLE),
   ASSA ABLOY (ASAZY), ADT (ADT) and Resideo Technologies (REZI). August 7, 2023, Craig-Hallum analyst report, page 12.

(3) Control period one year (252-trading days) prior to day analyzed, excluding days following earnings releases (in bold).

(4)   \*\*  t-statistic > |1.96|, indicates statistical significance at the 5% level (two tailed test)
   \*   t-statistic > |1.645|, indicates statistical significance at the 10% level (two tailed test)