# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————————— x

RANDY ZORNBERG, Individually and on
Behalf of All Others Similarly Situated,

                     Plaintiff,

      vs.

NAPCO SECURITY TECHNOLOGIES, INC.,
RICHARD L. SOLOWAY and KEVIN S.
BUCHEL,

                 Defendants.

——————————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:23-cv-06465-BMC

<u>CLASS ACTION</u>

**[PROPOSED] SECOND AMENDED
COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

<u>DEMAND FOR JURY TRIAL</u>

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ....................................................................................................1

II.   JURISDICTION AND VENUE ...............................................................................5

III.  PARTIES ..................................................................................................................6

IV.   THE COMPANY AND ITS BUSINESS ................................................................6

V.    SUBSTANTIVE ALLEGATIONS ..........................................................................7

      A.    NAPCO's Restatement of Its 1Q23, 2Q23, and 3Q23 Financials ...........7

      B.    Defendants Knew or Recklessly Disregarded that NAPCO's Reported Inventory was Materially Overstated During Fiscal 2023 ..........................9

           1.    Defendants' Pandemic-Related Purchasing Strategy Inflated NAPCO's Inventory Value ..................................................................9

           2.    ██████████████████████████ ..........................9

           3.    ██████████████████████████ ..........................13

      C.    Soloway and Buchel's Suspicious Stock Sales.......................................15

      D.    The Restatement Is an Admission that NAPCO's Interim Financial Statements for Fiscal 2023 Violated GAAP and Were Materially Inaccurate .................................................................................................19

      E.    NAPCO's Fraudulent Financial Reporting of Inventory, Cost of Goods Sold, and Income-Related Metrics.................................................22

      F.    Materially False and Misleading Statements Made During the Class Period........24

           1.    1Q23 Financial Results .................................................................24

           2.    2Q23 Financial Results .................................................................27

           3.    3Q23 Financial Results .................................................................32

      G.    NAPCO Announces the Restatement ......................................................37

**Page**

H.      Post-Class Period Events ..................................................................38

VI.     ADDITIONAL SCIENTER ALLEGATIONS......................................................40

VII.    LOSS CAUSATION AND ECONOMIC LOSS..................................................45

VIII.   NO SAFE HARBOR ........................................................................46

IX.     A PRESUMPTION OF RELIANCE APPLIES ................................................46

X.      CLASS ACTION ALLEGATIONS ..........................................................48

XI.     COUNTS....................................................................................50

COUNT I ..............................................................................................50

For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Against All
    Defendants ............................................................................50

COUNT II .............................................................................................51

For Violations of Section 20(a) of the Exchange Act Against the Individual
    Defendants ............................................................................51

XII.    PRAYER FOR RELIEF .....................................................................52

XIII.   JURY DEMAND ...........................................................................53

Class Representatives Donald W. Hutchings, individually and as trustee of several trusts,[1] and City of Warren Police and Fire Retirement System ("Plaintiffs"), individually and on behalf of all others similarly situated, by their undersigned attorneys, allege the following based upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters based upon the investigation undertaken by counsel, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Napco Security Technologies, Inc. ("NAPCO" or the "Company"), press releases, analyst and media reports, and other public reports and information about the Company, and documents produced by Defendants (defined below) and third parties during fact discovery to date.  Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after further fact discovery and expert discovery.

## I.    INTRODUCTION

1.    This is a federal securities class action on behalf of those who purchased or otherwise acquired NAPCO common stock between November 7, 2022 and August 18, 2023, inclusive (the "Class Period") and were damaged thereby, seeking to pursue claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

---

[1]    The trusts are: the Brady Adams Hutchings Irrevocable Trust U/A DTD 12/18/2012; the Caroline Hutchings Morin Irrevocable Trust U/A DTD 12/30/2014; the Donald W Hutchings Living Trust U/A DTD 09/19/1994; the Donald W Hutchings Principal Residence Trust U/A DTD 09/19/1994; the Hutchings Community Property Trust U/A DTD 05/20/2015; the Jay Whitney Hutchings Irrevocable Trust, Grantors Donald W. Hutchings and Pamela Paul Hutchings, dated December 18, 2012; the Julie Renee Hutchings Irrevocable Trust U/A DTD 12/18/12; the Kyle Hutchings Morin Irrevocable Trust U/A DTD 12/30/2014; the Pamela Paul Hutchings Living Trust U/A DTD 09/19/1994; and the Pamela Paul Hutchings Principal Residence Trust U/A DTD 09/19/1994.

2.    Headquartered in Amityville, New York, defendant NAPCO designs and manufactures security solutions, including access control devices, intrusion and fire alarm systems, and video surveillance products.  Its fiscal year ends on June 30.

3.    On August 18, 2023, NAPCO announced that it would need to restate its interim financial statements for the first three quarters of fiscal 2023, ended September 30, 2022 ("1Q23"), December 31, 2022 ("2Q23"), and March 31, 2023 ("3Q23"), and that its previously-issued financials for those quarters "should no longer be relied upon" (the "Restatement").  The Company explained that, for those quarters, its inventories had been overstated and its cost of goods sold ("COGS") had been understated, "resulting in *overstated gross profit, operating income and net income*," and gave preliminary estimates of its overstatement of net income.  NAPCO also admitted that a previously-undisclosed material weakness existed in its internal controls over financial reporting.

4.    Shortly thereafter, on September 1, 2023, the Company filed amended quarterly reports, which confirmed the severity of its financial misstatements.  The Restatement showed that during the Class Period, NAPCO's net income had been overstated by as much as *114.97%*, its income per share had been overstated by as much as *112.5%*, its operating income had been overstated by as much as *118.02%*, and its gross profit and gross margins had been overstated by as much as *35.59%*.

5.    When NAPCO revealed that it would need to restate its financial results and provided preliminary estimates for restated net income at the end of the Class Period, the price of its common stock fell more than *45%*.

6.      Although NAPCO attempted to characterize the Restatement as stemming from innocent accounting "errors," in fact, it was the product of a fraudulent scheme to inflate NAPCO's income-related metrics, orchestrated by Defendants.

7.      ████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████  █████████████████

NAPCO's inventory had risen sharply as a result of Defendants' decision to purchase components used in NAPCO's products at high costs in the wake of COVID-related supply chain shortages.

8.      ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████

9.      ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



10.

11.     By maintaining inflated inventory values for three consecutive quarters, defendants Soloway and Buchel caused NAPCO to report inflated income metrics—which enabled them to cash out their stock holdings as the Company's share price reached all-time highs. Defendants Soloway and Buchel each sold nearly half of their NAPCO stock during the Class Period, with Soloway selling *48.5%* of his shares for proceeds of approximately *$104 million*, and Buchel selling *45.5%* of his shares for proceeds of approximately *$4.5 million*—at a time when NAPCO's inflated income metrics enabled the Company to meet (and exceed) market expectations, when it otherwise would not have.

12.     Defendants Soloway and Buchel's first round of sales occurred shortly after Defendants announced inflated results for 1Q23, and the next round of sales occurred in a precisely-

timed secondary offering, shortly after Defendants announced inflated results for 2Q23. █

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████    ████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

## II.    JURISDICTION AND VENUE

13.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

14.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

15.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act.  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.  In addition, the Company's principal executive offices are located in this District.

16.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mail, interstate telephone communications, and the facilities of the NASDAQ Global Select Market ("NASDAQ"), a national securities exchange.

## III.    PARTIES

17.    As set forth in his certification previously filed with the Court and incorporated herein by reference, Lead Plaintiff Donald W. Hutchings purchased NAPCO common stock during the Class Period, and was damaged thereby.  *See* ECF 22-2.

18.    As set forth in its certification previously filed with the Court and incorporated herein by reference, Plaintiff City of Warren Police and Fire Retirement System purchased NAPCO common stock during the Class Period, and was damaged thereby.  *See* ECF 40 at 65-66.

19.    Defendant NAPCO provides security devices and systems.  The Company's principal executive offices are located at 333 Bayview Avenue, Amityville, New York 11701.  NAPCO's common stock is listed and trades on the NASDAQ, an efficient market, under the symbol "NSSC."

20.    Defendant Soloway—NAPCO's founder—is, and was at all relevant times, the Company's CEO, President, Secretary, and Chairman of the Board of Directors.

21.    Defendant Buchel is, and was at all relevant times, NAPCO's CFO, Executive Vice President of Operations, Treasurer, and a Director.

22.    Defendants Soloway and Buchel are collectively referred to as the "Individual Defendants" and, together with NAPCO, as "Defendants."

## IV.    THE COMPANY AND ITS BUSINESS

23.    Defendant NAPCO designs and manufactures electronic security devices, provides wireless communication services for intrusion and fire alarm systems, and offers school safety solutions.  The security systems it provides include access control, door-locking, intrusion and fire alarm, and video surveillance.  The Company sells its products primarily to independent distributors, dealers, and installers of security equipment.

24.     Approximately two-thirds of NAPCO's revenues are generated by equipment sales. The remainder are recurring revenues from monthly subscription fees it charges to provide wireless services for communicating security breaches and fire alarms.

25.     The Company is headquartered in Amityville, New York, and manufactures its products in the Dominican Republic.  NAPCO's fiscal year begins on July 1 and ends on June 30. Accordingly, its first quarter ("1Q") ends on September 30, its second quarter ("2Q") ends on December 31, its third quarter ("3Q") ends on March 31, and its fourth quarter ("4Q") ends on June 30.

## V.     SUBSTANTIVE ALLEGATIONS

### A.     NAPCO's Restatement of Its 1Q23, 2Q23, and 3Q23 Financials

26.     On August 18, 2023, NAPCO announced that it would restate its financial statements for the first three quarters of fiscal 2023, ended September 30, 2022 (1Q23), December 31, 2022 (2Q23), and March 31, 2023 (3Q23), and that its previously issued financials for those quarters should no longer be relied upon.  The Company explained that, for those quarters, its inventories had been overstated and COGS had been understated, resulting in overstated gross profit, operating income, and net income, and gave the following preliminary estimates of its overstatement of net income:

| Quarter | Net Income - Previous | Net Income – Restated (Estimate) | Difference |
|---|---|---|---|
| 1Q23 | $6.4 million | $2.9 million | ($3.5 million) |
| 2Q23 | $8.4 million | $3.7 million | ($4.7 million) |
| 3Q23 | $10.8 million | $9.5 million | ($1.3 million) |

NAPCO also admitted that a previously undisclosed material weakness existed in its internal controls over financial reporting.  Defendants explained the "errors" in NAPCO's financial statements as follows:

> During the preparation of the Company's consolidated financial statements for the fiscal year ended June 30, 2023, management of the Company identified certain errors related to the Company's calculation of cost of goods sold ("COGS") and inventory for each of the first three quarters of fiscal 2023.  Specifically, although the costs of several components fluctuated substantially during fiscal 2023, the Company's costing procedures did not appropriately account for such fluctuations.  As a result, inventories were overstated and COGS was understated, resulting in overstated gross profit, operating income and net income for each period.

27.    On September 1, 2023, NAPCO confirmed the severity of its financial misstatements, when it filed with the SEC amended quarterly reports on Form 10-Q/A that restated its financial results for 1Q23, 2Q23, and 3Q23.  For 1Q23, NAPCO's net income had been overstated by 107.6%, income per share by 112.5%, operating income by 98.7%, and gross profit and gross margins by 24.72%.  For 2Q23, NAPCO's net income had been overstated by 115%, income per share by 109%, operating income by 118%, and gross profit and gross margins by 35.6%.  For 3Q23, NAPCO's net income had been overstated by 13.5%, income per share by 11.5%, operating income by 13.2%, and gross profit and gross margins by 6.54%.

28.    Despite Defendants' efforts to characterize the Restatement as being the result of innocent errors in calculating inventory and COGS (which would not affect quarterly net sales), these announcements caused NAPCO's share price to plummet more than 45%, from $38.41 per share on August 18, 2023, to $21.11 per share on August 21, 2023.

29.    ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████

30.    ███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

**B.    Defendants Knew or Recklessly Disregarded that NAPCO's Reported Inventory was Materially Overstated During Fiscal 2023**

**1.    Defendants' Pandemic-Related Purchasing Strategy Inflated NAPCO's Inventory Value**

31.    Before the Class Period, in response to global COVID-related supply-chain disruptions, Defendants had adopted an aggressive purchasing strategy, whereby NAPCO acquired critical components used to manufacture its products without regard to pricing or actual production needs—wagering that this approach would pay off in the long run. Defendants disclosed this strategy to investors, explaining that it was partly responsible for NAPCO's inventory growing to $50 million for fiscal 2022 (ended June 30, 2022), from about $32 million a year earlier.

**2.    ████████████████████████████████**
████████████████████

32.    ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



33.

---

[2]    "Inventory on hand" is the physical count and value of goods currently available for sale, while "ending inventory" is the specific accounting figure representing the total value of all unsold goods at the end of a financial period, calculated using beginning inventory, purchases, and COGS.

[3]



34.

35.



36.

37.

██████████████████████████████████████████████████

████████████████████████████████████

38.     By the beginning of calendar 2023, Defendants publicly acknowledged the falling component costs.  On the Company's February 6, 2023 earnings call (for 2Q23)—which occurred just a week before the secondary offering—defendant Buchel described the "increased availability and lower cost of certain components and transportation costs as compared to the same period last year . . . as a result of improvements within the company's supply chain."  Still, Defendants made no effort to adjust quarterly inventory in light of these developments.

**3.**     ████████████████████████████████████████

39.     ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████

40.    Earlier in 2022, before the Class Period, NAPCO had encountered a strikingly similar issue.  On May 10, 2022, the Company announced that it was delaying the filing of its Form 10-Q for 3Q22 to reevaluate its inventory reserves.  On May 17, 2022, NAPCO restated its previous reserves for inventory obsolescence for fiscal 2019 to fiscal 2021, admitting that a "material weakness in internal control over financial reporting existed . . . related to a lack of an effectively designed control activity over the reserve for obsolete inventory."  For fiscal 2022, the Company, in its Form 10-K (dated August 29, 2022, and signed by defendants Soloway and Buchel), identified the continuing material weakness as "related to the reserve for excess and slow-moving inventory," which "was a result of a lack of effective review and reconciliation controls over the forecasted sales and usage data."

41.    ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████

42.    ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ ██████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

- 14 -

43. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

44. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████ ████████████████

████████████████████████████████████████████

████████████████████████████

**C.    Soloway and Buchel's Suspicious Stock Sales**

45.    After the close of fiscal 2022 (*i.e.*, June 30, 2022), with NAPCO stock trading around $25 per share, defendants Soloway and Buchel ██████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

- 15 -



46.     And while the Company filed a shelf registration statement on September 12, 2022,

defendant ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████ ██ ███ ██ ███ ██ ███ ██ ███ ██ ███ ██ ███ ██████████

████████████████████████████████████

47.     ███████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████

48.     On November 15, 2022, just eight days after NAPCO reported its purportedly "record

breaking" 1Q23 financial results, with net income, operating income, and gross profit actually

overstated by 107%, 98%, and 24%, respectively—████████████████████████████

████████████████████████████████████████████—defendants

Soloway and Buchel sold more than 1.3 million NAPCO shares pursuant to a Form 144 filing at

$24.79 per share, realizing proceeds of nearly $33 million. Had NAPCO accurately reported its

1Q23 results, instead of exceeding analysts' $0.13 EPS expectations by 31% ($0.04 per share), *it*

*would have missed expectations by 38% ($0.05 per share)*.

49.

50.     Soloway and Buchel's secondary offering closed on February 13, 2023, at $31.50 per share, raising another $75.6 million, only days after the February 6, 2023 announcement of NAPCO's "largest quarterly net income in the Company's history"—which was actually overstated by 115%—an even larger amount than in 1Q23. Had NAPCO correctly reported these results, its earnings would have *missed analyst expectations by 21% ($0.03 per share)*—upending the Company's growth narrative and causing its stock price to crash, as it later did when the Restatement was announced.

---

51. ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████

52. ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

53. ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

[REDACTED]

54.    Thus motivated to continue pushing NAPCO's stock price higher, Defendants reported another quarter of inflated income metrics, announcing on May 8, 2023 that NAPCO's 3Q23 "net income of $10.8 million" was "the largest quarterly net income in the Company's history."

55.    In total, during the Class Period, defendant Soloway sold 48.5% of his NAPCO stock for proceeds of approximately $104 million, and defendant Buchel sold 45.5% of his stock for proceeds of approximately $4.5 million (excluding exercised options), at times when they knew or recklessly disregarded that [REDACTED]

[REDACTED]

**D.    The Restatement Is an Admission that NAPCO's Interim Financial Statements for Fiscal 2023 Violated GAAP and Were Materially Inaccurate**

56.    Generally Accepted Accounting Principles ("GAAP") generally encompasses those conventions, rules and procedures necessary to define accepted accounting practices at a particular time.  SEC Regulation S-X states that financial statements filed with the SEC that are not prepared in compliance with GAAP are "presumed to be misleading or inaccurate."  17 C.F.R. §210.4-01(a)(1).  Regulation S-X also requires that interim financial statements filed with the SEC comply with GAAP.  17 C.F.R. §210.10-01(a).

57.    NAPCO has now admitted that the interim financial statements it issued to investors and filed with the SEC for the first three quarters of fiscal 2023 were materially inaccurate, presented in violation of GAAP, and "should no longer be relied upon."  Accordingly, each of the interim

- 19 -

financial statements for those quarters is presumed to be misleading and inaccurate pursuant to the SEC's Regulation S-X.

58.    By virtue of the Restatement, ***NAPCO itself*** has concluded that the now-restated interim financial statements for 1Q23, 2Q23, and 3Q23 that the Company issued during the Class Period were materially misstated—since only materially misstated financial statements are to be corrected and re-reported on a retroactive basis.[6]

59.    Thus, there is no dispute that NAPCO's financial statements and financial disclosures were materially inaccurate throughout the Class Period.

60.    Defendants have also admitted that, in addition to NAPCO's preexisting internal control deficiencies, the Restatement "demonstrated an additional material weakness in [its] internal controls over financial reporting."[7]

61.    GAAP, as set forth in ASC Topic No. 250, *Accounting Changes and Error Corrections*, provides that errors in previously-issued financial statements are to be corrected via a restatement of the previously-issued financial statements.  Adjustments related thereto are to be reported in the restatement as "error corrections."

62.    When NAPCO issued the Restatement on September 1, 2023, after the Class Period, it filed with the SEC amended quarterly reports on Form 10-Q/A that restated NAPCO's interim financial statements for 1Q23, 2Q23 and 3Q23 to correct errors related to the Company's reported

---

[6]    *See, e.g.*, Financial Accounting Standards Board's ("FASB") Accounting Standards Codification ("ASC") Topic 250, *Accounting Changes and Error Corrections*, SEC Codification of Staff Accounting Bulletins ("CSAB") Topic 1M *Financial Statements, Materiality* and Topic 1-N, *Considering the Effects of Prior Year Misstatements When Quantifying Misstatements in Current Year Financial Statements*.  According to the FASB, ASC is the source of authoritative GAAP to be applied to nongovernmental entities.

[7]    A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement in an entity's financial statements will not be prevented or detected on a timely basis.

inventory, cost of goods sold, net income, income per share, operating income, gross profit, and gross margins.

63.     Throughout the Class Period, Defendants knew, or recklessly disregarded, that they had caused NAPCO to issue interim financial statements for 1Q23, 2Q23, and 3Q23 that were not presented in accordance with GAAP because those financial statements overstated NAPCO's net income and related metrics, by improperly overstating the Company's inventory and understating its cost of goods sold.

64.     By doing so, Defendants violated the provisions set forth in Section 13 of the Exchange Act, which required them to: (i) present NAPCO's business activities in a manner that accurately and fairly reflected its transactions; and (ii) maintain a system of internal accounting controls sufficient to provide reasonable assurances that NAPCO's financial statements conformed to GAAP, as follows:

> Every issuer which has a class of securities registered pursuant to Section 78I of this title and every issuer which is required to file reports pursuant to Section 78o(d) of this title shall --
>
>> A.     make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer;
>>
>> B.     devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that --
>>
>>> (I)     transactions are executed in accordance with management's general or specific authorization;
>>>
>>> (II)     transactions are recorded as necessary (I) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (II) to maintain accountability for assets;
>>>
>>> (III)     access to assets is permitted only in accordance with management's general or specific authorization; and

(IV)   the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences[.]  15 U.S.C. §77m(2)(A)-(B)(i)-(iv).

65.   Defendants knew, or recklessly ignored, that NAPCO's interim financial statements for 1Q23, 2Q23, and 3Q23 were presented in violation of GAAP, and were materially false and misleading.

### E.   NAPCO's Fraudulent Financial Reporting of Inventory, Cost of Goods Sold, and Income-Related Metrics

66.   Defendants' fraud had the intended effect of overstating NAPCO's income-related metrics for 1Q23, 2Q23, and 3Q23.  The quantitative impact of Defendants' scheme is set forth below.

67.   For 1Q23, ended September 30, 2022, NAPCO's cost of goods sold was understated by *14.45%*, which in turn, overstated its income-related metrics as follows:

- Net income was overstated by *107.59%*;

- Income per share was overstated by *112.5%*;

- Operating income was overstated by *98.71%*; and

- Gross profit and gross margins were each overstated by *24.72%*.

68.   For 2Q23, ended December 31, 2022, NAPCO's cost of goods sold was understated by *18.27%*, which in turn, overstated its income-related metrics as follows:

- Net income was overstated by *114.97%*;

- Income per share was overstated by *109.1%*;

- Operating income was overstated by *118.02%*; and

- Gross profit and gross margins were each overstated by *35.59%*.

69.    In addition, for the first six months of fiscal 2023, ended December 31, 2022, NAPCO's cost of goods sold was understated by *16.47%*, which in turn, overstated its income-related metrics as follows:

- Net income was overstated by *111.72%*;

- Income per share was overstated by *110.53%*;

- Operating income was overstated by *109.2%*; and

- Gross profit and gross margins were each overstated by *30.11%*.

70.    For 3Q23, ended March 31, 2023, NAPCO's cost of goods sold was understated by *6.26%*, which in turn, overstated its income-related metrics as follows:

- Net income was overstated by *13.52%*;

- Income per share was overstated by *11.5%*;

- Operating income was overstated by *13.21%*; and

- Gross profit and gross margins were each overstated by *6.54%*.

71.    In addition, for the first nine months of fiscal 2023, ended March 31, 2023, NAPCO's cost of goods sold was understated by *13.44%*, which in turn, overstated its income-related metrics as follows:

- Net income was overstated by *55.1%*;

- Income per share was overstated by *55.56%*;

- Operating income was overstated by *54.55%*; and

- Gross profit and gross margins were each overstated by *20.12%*.

72.    As planned, Defendants' fraud enabled NAPCO to meet—and even exceed—analysts' estimates during the Class Period. For example, as Defendant Soloway highlighted in the Company's press release for 1Q23, NAPCO had "easily exceed[ed] published street consensus

estimates" by reporting EPS of $0.17.[8]   In reality, NAPCO would not have met—let alone exceeded—the analysts' consensus estimate of 1Q23 EPS of $0.13, since its actual EPS for 1Q23 was just $0.08.  Likewise, when discussing NAPCO's financial results for 2Q23 during its February 6, 2023 conference call, Defendant Soloway stated that NAPCO had been "able to beat published Street consensus estimates" by reporting EPS of $0.23.  As with the previous quarter, NAPCO would not have met or exceeded the analysts' consensus estimate of 2Q23 EPS of $0.14, since its actual EPS for 2Q23 was $0.11.

F.     **Materially False and Misleading Statements Made During the Class Period**

1.     **1Q23 Financial Results**

73.     The Class Period begins on November 7, 2022, when NAPCO filed with the SEC its quarterly report on Form 10-Q for the first quarter of fiscal 2023, September 30, 2022 (the "1Q23 Form 10-Q"), which was signed by defendants Soloway and Buchel.  For the quarter, the 1Q23 Form 10-Q reported:

- Total inventory (current and non-current) of $63,837,000 as of September 30, 2022;

- Cost of goods sold of $21,326,000;

- Net income of $6,402,000;

- Income per share of $0.17;

- Operating income of $7,249,000;

- Gross profit of $18,167,000; and

- Gross margins of 46%.

74.     The statements referenced above in ¶73 were materially false and misleading when made because Defendants knew, or recklessly disregarded, that NAPCO's inventory was overstated

---

[8]     EPS is equivalent to income per share.

███████████████████████████████████████████████

which in turn inflated the Company's income. As a result—as the Company has now admitted—(i)

NAPCO's financial results were presented in violation of GAAP and were materially inaccurate; and

(ii) for 1Q23, NAPCO's actual financial results were as follows:

- Total inventory (current and non-current) was $60,236,000 as of September 30, 2022, and had been overstated by *5.98%*;

- Cost of goods sold was $24,927,000, and had been understated by *14.45%*;

- Net income was $3,084,000, and had been overstated by *107.59%*;

- Income per share was $0.08, and had been overstated by *112.5%*;

- Operating income was $3,648,000, and had been overstated by *98.71%*;

- Gross profit was $14,566,000, and had been overstated by *24.72%*; and

- Gross margins were approximately 36.9%, and had been overstated by *24.72%*.

75.     In addition, the 1Q23 Form 10-Q represented that NAPCO had two preexisting

"material weaknesses in internal control." One material weakness "related to ineffective information

technology general controls (ITGCs) in the area of user access and lack of effective program change-

management over certain information technology (IT) systems that support the Company's financial

reporting processes." The second material weakness "related to the reserve for excess and slow-

moving inventory" and "was a result of a lack of effective review and reconciliation controls over []

forecasted sales and usage data." The 1Q23 Form 10-Q further stated that, although "the Company's

internal controls over financial reporting were not effective" as a result of these material weaknesses,

the material weaknesses had "not result[ed] in any identified misstatements to [NAPCO's] financial

statements and there were no changes to [its] previously released financial results."

76.     The statements referenced above in ¶75 were materially false and misleading when

made because Defendants knew, or recklessly disregarded, that: (i) NAPCO suffered from additional

- 25 -

material weaknesses in internal controls over financial reporting related to its inventory costing procedures; (ii) those material weaknesses had allowed NAPCO's inventory to remain overstated ███████████████████████████, which in turn inflated the Company's income; and (iii) as a result, NAPCO's material weaknesses in internal controls *had* "result[ed] in . . . misstatements to the [Company's] financial statements" for 1Q23.

77.     Also on November 7, 2022, NAPCO issued a press release announcing its financial results for 1Q23.  The Company filed the press release with the SEC as an exhibit to a Current Report on Form 8-K, which was signed by Defendant Buchel.

78.     The press release reported the same metrics for the quarter as the 1Q23 Form 10-Q with respect to inventory, cost of goods sold, net income, income per share, operating income, gross profit, and gross margins.  Those reported results were materially false and misleading for the reasons set forth above in ¶74.

79.     In the press release, Defendant Soloway commented that "***NAPCO executed exceptionally well in the first quarter, easily exceeding published street consensus estimates for Q1 on*** . . . ***Net Income[] [and] EPS*** . . . ."  During a conference call held later in the day on November 7, 2022, Defendant Soloway described NAPCO's "fiscal first quarter [of] 2023" as "***a record breaking successful one***."

80.     The statements referenced above in ¶79 were materially false and misleading when made because Defendants knew, or recklessly disregarded, that NAPCO's inventory was overstated ██████████████████████████████████████████████, which in turn inflated the Company's income.  As a result—as the Company has now admitted— NAPCO's financial results for 1Q23 were presented in violation of GAAP and were materially inaccurate, as set forth above in ¶74.  In truth, NAPCO had not merely "executed exceptionally well

in the first quarter," but had also benefited from Defendants' fraud.  In addition, 1Q23 had not been "a record breaking successful" quarter, and NAPCO had only been able to "easily exceed[] published street consensus estimates for Q1 on" net income and EPS because of Defendants' fraud.

### 2. 2Q23 Financial Results

81.    On February 6, 2023, NAPCO filed with the SEC its quarterly report on Form 10-Q for the second quarter of fiscal 2023, ended December 31, 2022 (the "2Q23 Form 10-Q"), which was signed by defendants Soloway and Buchel.  For the quarter, the 2Q23 Form 10-Q reported:

- Total inventory (current and non-current) of $64,192,000 as of December 31, 2022;

- Cost of goods sold of $22,852,000;

- Net income of $8,446,000;

- Income per share of $0.23;

- Operating income of $9,436,000;

- Gross profit of $19,462,000; and

- Gross margins of 46%.

82.    The statements referenced above in ¶81 were materially false and misleading when made because Defendants knew, or recklessly disregarded, that NAPCO's inventory was overstated ██████████████████████████████████████████████████████████, which in turn inflated the Company's income.  As a result—as the Company has now admitted—(i) NAPCO's financial results were presented in violation of GAAP and were materially inaccurate; and (ii) for 2Q23, NAPCO's actual financial results were as follows:

- Total inventory (current and non-current) was $55,483,000 as of December 31, 2022, and had been overstated by *15.7%*;

- Cost of goods sold was $27,960,000, and had been understated by *18.27%*;

- Net income was $3,929,000, and had been overstated by *114.97%*;

- Income per share was $0.11, and had been overstated by *109.1%*;

- Operating income was $4,328,000, and had been overstated by *118.02%*;

- Gross profit was $14,354,000, and had been overstated by *35.59%*; and

- Gross margins were approximately 33.9%, and had been overstated by *35.59%*.

83. In addition, for the first six months of fiscal 2023, ended December 31, 2022, the 2Q23 Form 10-Q reported:

- Cost of goods sold of $44,178,000;

- Net income of $14,848,000;

- Income per share of $0.40;

- Operating income of $16,685,000;

- Gross profit of $37,629,000; and

- Gross margins of 46%.

84. The statements referenced above in ¶83 were materially false and misleading when made because Defendants knew, or recklessly disregarded, that NAPCO's inventory was overstated ███████████████████████████████████████████████, which in turn inflated the Company's income. As a result—as the Company has now admitted—(i) NAPCO's financial results were presented in violation of GAAP and were materially inaccurate; and (ii) for the first six months of fiscal 2023, NAPCO's actual financial results were as follows:

- Cost of goods sold was $52,887,000, and had been understated by *16.47%*;

- Net income was $7,013,000, and had been overstated by *111.72%*;

- Income per share was $0.19, and had been overstated by *110.53%*;

- Operating income was $7,976,000, and had been overstated by *109.2%*;

- Gross profit was $28,920,000, and had been overstated by *30.11%*; and

- Gross margins were approximately 35.4%, and had been overstated by *30.11%*.

- 28 -

85.    In addition, the 2Q23 Form 10-Q reiterated that NAPCO had two preexisting "material weaknesses in internal control." One material weakness "related to ineffective information technology general controls (ITGCs) in the area of user access and lack of effective program change-management over certain information technology (IT) systems that support the Company's financial reporting processes." The second material weakness "related to the reserve for excess and slow-moving inventory" and "was a result of a lack of effective review and reconciliation controls over [] forecasted sales and usage data." The 2Q23 Form 10-Q further stated that, although "the Company's internal controls over financial reporting were not effective" as a result of these material weaknesses, the material weaknesses had "not result[ed] in any identified misstatements to [NAPCO's] financial statements and there were no changes to [its] previously released financial results."

86.    The statements referenced above in ¶85 were materially false and misleading when made because Defendants knew, or recklessly disregarded, that: (i) NAPCO suffered from additional material weaknesses in internal controls over financial reporting related to its inventory costing procedures; (ii) those material weaknesses had allowed NAPCO's inventory to remain overstated ████████████████████████████, which in turn inflated the Company's income; and (iii) as a result, NAPCO's material weaknesses in internal controls *had* "result[ed] in . . . misstatements to the [Company's] financial statements" for 2Q23.

87.    Also on February 6, 2023, NAPCO issued a press release announcing its financial results for 2Q23. The Company filed the press release with the SEC as an exhibit to a Current Report on Form 8-K, which was signed by Defendant Buchel.

88.    The press release reported the same metrics for the quarter as the 2Q23 Form 10-Q with respect to inventory, cost of goods sold, net income, income per share, operating income, gross

- 29 -

profit, and gross margins.  Those reported results were materially false and misleading for the reasons set forth above in ¶82.

89.     The press release also reported the same metrics for the first six months of fiscal 2023 as the 2Q23 Form 10-Q with respect to inventory, cost of goods sold, net income, income per share, operating income, and gross profit.  Those reported results were materially false and misleading for the reasons set forth above in ¶84.

90.     In addition, the press release emphasized that NAPCO's "[n]et income for the quarter *was a quarterly record $8.4 million or $0.23 per diluted share*."  Commenting on the quarterly results, Defendant Soloway likewise highlighted that "*net income of $8.4 million [was] the largest quarterly net income in the Company's history*."  He further stated that "*[o]verall gross margins were 46%*," representing "*a significant increase over last year's Q2 gross margin of 34%*." Defendant Soloway emphasized that "*NAPCO continued to execute exceptionally well in the second quarter, with strong growth in Q2 on*" metrics including "*Net Income*" and "*EPS*," and attributed "*NAPCO's outstanding record breaking results for the first half of fiscal 2023*" to "*the strong demand [for] each of our product lines* . . . ."

91.     The statements referenced above in ¶90 were materially false and misleading when made because Defendants knew, or recklessly disregarded, that NAPCO's inventory was overstated ████████████████████████████████████████████████████████████████████, which in turn inflated the Company's income.  As a result—as the Company has now admitted— NAPCO's financial results for 2Q23 and for the first six months of fiscal 2023 were presented in violation of GAAP and were materially inaccurate, as set forth above in ¶82 and ¶84.  Because of Defendants' fraud, NAPCO's 2Q23 "net income" was not "$8.4 million," but was actually $3.9 million, and therefore was not "a quarterly record" or "the largest quarterly net income in the

Company's history." Indeed, NAPCO's actual net income for 2Q23 was far below its quarterly record of $7.8 million, reported in the first quarter of fiscal 2022. Likewise, EPS was not "$0.23 per . . . share," but was actually just $0.11 per share. In addition, "[o]verall gross margins" were not "46%," but were actually 33.9%, and had not "increase[d]" "significant[ly] . . . over last year's Q2 gross margin[s] of 34%." Finally, NAPCO had not "execute[d] exceptionally well in the second quarter," its "strong growth" in net income and EPS was illusory, and its "outstanding record breaking results for the first half of fiscal 2023" were attributable in part to Defendants' fraud, and not solely to "strong demand" for NAPCO's products.

92. Later in the day on February 6, 2023, NAPCO held a conference call to discuss the 2Q23 financial results, during which Defendant Soloway stated that NAPCO had been "*able to beat published Street consensus estimates for . . . EPS[] [and] net income*," and attributed the Company's "*outstanding performance*" to "*the continued strong demand for each of [its] product lines . . . .*" Also during the call, Defendant Buchel attributed "*[t]he significant increase in gross profit dollars as well as gross margin* for equipment sales for both[] the 3 and the 6 months ended December 31, 2022," in part to the "*lower cost of certain components*" due to "*improvements within the company's supply chain*."

93. The statements referenced above in ¶92 were materially false and misleading when made because Defendants knew, or recklessly disregarded, that NAPCO's inventory was overstated █████████████████████████████████████████████████████████████████████████████, which in turn inflated the Company's income. As a result—as the Company has now admitted—NAPCO's financial results for 2Q23 and for the first six months of fiscal 2023 were presented in violation of GAAP and were materially inaccurate, as set forth above in ¶82 and ¶84. In truth, NAPCO had only been "able to beat published Street consensus estimates for" EPS and net income

because of Defendants' fraud. Likewise, NAPCO's "outstanding performance," including "[t]he significant increase in gross profit" and "gross margin[s]" were attributable in part to Defendants' fraud, and not solely to "continued strong demand" for NAPCO's products or "improvements within" its "supply chain."

### 3.    3Q23 Financial Results

94.    On May 8, 2023, NAPCO filed with the SEC its quarterly report on Form 10-Q for the third quarter of fiscal 2023, ended March 31, 2023 (the "3Q23 Form 10-Q"), which was signed by defendants Soloway and Buchel. For the quarter, the 3Q23 Form 10-Q reported:

- Total inventory (current and non-current) of $60,786,000 as of March 31, 2023;

- Cost of goods sold of $20,861,000;

- Net income of $10,840,000;

- Income per share of $0.29;

- Operating income of $11,932,000;

- Gross profit of $22,671,000; and

- Gross margins of 52.1%.

95.    The statements referenced above in ¶94 were materially false and misleading when made because Defendants knew, or recklessly disregarded, that NAPCO's inventory was overstated ██████████████████████████████████████████████████████████████████, which in turn inflated the Company's income. As a result—as the Company has now admitted—(i) NAPCO's financial results were presented in violation of GAAP and were materially inaccurate; and (ii) for 3Q23, NAPCO's actual financial results were as follows:

- Total inventory (current and non-current) was $50,685,000 as of March 31, 2023, and had been overstated by *19.93%*;

- Cost of goods sold was $22,253,000, and had been understated by *6.26%*;

- Net income was $9,549,000, and had been overstated by *13.52%*;

- Income per share was $0.26, and had been overstated by *11.5%*;

- Operating income was $10,540,000, and had been overstated by *13.21%*;

- Gross profit was $21,279,000, and had been overstated by *6.54%*; and

- Gross margins were approximately 48.9%, and had been overstated by *6.54%*.

96.     In addition, for the first nine months of fiscal 2023, ended March 31, 2023, the 3Q23 Form 10-Q reported:

- Cost of goods sold of $65,039,000;

- Net income of $25,688,000;

- Income per share of $0.70 (basic);

- Operating income of $28,617,000;

- Gross profit of $60,300,000; and

- Gross margins of 48.1%.

97.     The statements referenced above in ¶96 were materially false and misleading when made because Defendants knew, or recklessly disregarded, that NAPCO's inventory was overstated ██████████████████████████████████████████████████████, which in turn inflated the Company's income.  As a result—as the Company has now admitted—(i) NAPCO's financial results were presented in violation of GAAP and were materially inaccurate; and (ii) for the first nine months of fiscal 2023, NAPCO's actual financial results were as follows:

- Cost of goods sold was $75,140,000, and had been understated by *13.44%*;

- Net income was $16,562,000, and had been overstated by *55.1%*;

- Income per share was $0.45 (basic), and had been overstated by *55.56%*;

- Operating income was $18,516,000, and had been overstated by *54.55%*;

- Gross profit was $50,199,000, and had been overstated by *20.12%*; and

- 33 -

- Gross margins were approximately 40.1%, and had been overstated by ***20.12%***.

98.    In addition, the 3Q23 Form 10-Q reiterated that NAPCO had two preexisting "material weaknesses in internal control."  One material weakness "related to ineffective information technology general controls (ITGCs) in the area of user access and lack of effective program change-management over certain information technology (IT) systems that support the Company's financial reporting processes."  The second material weakness "related to the reserve for excess and slow-moving inventory" and "was a result of a lack of effective review and reconciliation controls over [] forecasted sales and usage data."  The 3Q23 Form 10-Q further stated that, although "the Company's internal controls over financial reporting were not effective" as a result of these material weaknesses, the material weaknesses had "not result[ed] in any identified misstatements to [NAPCO's] financial statements and there were no changes to [its] previously released financial results."

99.    The statements referenced above in ¶98 were materially false and misleading when made because Defendants knew, or recklessly disregarded, that: (i) NAPCO suffered from additional material weaknesses in internal controls over financial reporting related to its inventory costing procedures; (ii) those material weaknesses had allowed NAPCO's inventory to remain overstated ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, which in turn inflated the Company's income; and (iii) as a result, NAPCO's material weaknesses in internal controls ***had*** "result[ed] in . . . misstatements to the [Company's] financial statements" for 3Q23.

100.    Also on May 8, 2023, NAPCO issued a press release announcing its financial results for 3Q23.  The Company filed the press release with the SEC as an exhibit to a Current Report on Form 8-K, which was signed by Defendant Buchel.

101.    The press release reported the same metrics for the quarter as the 3Q23 Form 10-Q with respect to inventory, cost of goods sold, net income, income per share, operating income, gross

profit, and gross margins. Those reported results were materially false and misleading for the reasons set forth above in ¶95.

102. The press release also reported the same metrics for the first nine months of fiscal 2023 as the 3Q23 Form 10-Q with respect to inventory, cost of goods sold, net income, income per share, operating income, and gross profit. Those reported results were materially false and misleading for the reasons set forth above in ¶97.

103. In addition, the press release highlighted NAPCO's "***Quarterly Record Net Income of $10.8 [million]***," and Defendant Soloway similarly emphasized that "***net income of $10.8 million in Q3 was a record-breaker for any quarter in the Company's history***," and "***the largest quarterly net income in the Company's history . . . .***" Defendant Soloway also attributed "***NAPCO's outstanding record breaking results, for both Q3 and the first nine months of fiscal 2023***" to "***strong sales of each of our product lines . . . .***"

104. The statements referenced above in ¶103 were materially false and misleading when made because Defendants knew, or recklessly disregarded, that NAPCO's inventory was overstated ██████████████████████████████████████████████████████████████, which in turn inflated the Company's income. As a result—as the Company has now admitted—NAPCO's financial results for 3Q23 and for the first nine months of fiscal 2023 were presented in violation of GAAP and were materially inaccurate, as set forth above in ¶95 and ¶97. In truth, NAPCO's 3Q23 "net income" was not "$10.8 million," but was actually $9.5 million, and its "record" and "largest" quarterly net income "in the Company's history" was due in part to Defendants' fraud. Likewise, "NAPCO's outstanding record breaking results, for both Q3 and the first nine months of fiscal 2023" were attributable in part to Defendants' fraud, and not solely to "strong sales of each of [its] product lines. . . ."

- 35 -

105.    During a conference call held later in the day on May 8, 2023, Defendant Soloway reiterated that NAPCO's "*fiscal third quarter 2023 was a record-breaking successful one*," and pointed to "the *10th consecutive quarterly [growth] streak*" that the Company was "now on."  He further stated that NAPCO had "*a pristine balance sheet . . . .*"  During the call, Defendant Buchel represented that "*[t]he significant increase in gross profit dollars* as well as gross margin for equipment sales for both the 3 and the 9 months ended March 31, 2023 *[was] primarily due to . . . increases in equipment revenues*[,]" as well as "*the increased availability and lower costs of certain components, lower transportation expenses*," and "*a favorable shift in product mix . . . .*"

106.    The statements referenced above in ¶105 were materially false and misleading when made because Defendants knew, or recklessly disregarded, that NAPCO's inventory was overstated

███████████████████████████████████████████████████████████████████████████,

which in turn inflated the Company's income.  As a result—as the Company has now admitted—NAPCO's financial results for 3Q23 and for the first nine months of fiscal 2023 were presented in violation of GAAP and were materially inaccurate, as set forth above in ¶95 and ¶97.  In truth, NAPCO's "record-breaking successful" results for 3Q23 were attributable in part to Defendants' fraud.  Likewise, "[t]he significant increase[s] in gross profit dollars as well as gross margin for equipment sales for both the 3 and the 9 months ended March 31, 2023" were attributable in part to Defendants' fraud, and therefore were not "primarily due to . . . increases in equipment revenues," "the increased availability and lower costs of certain components, lower transportation expenses," and "a favorable shift in product mix . . . ."  In addition, NAPCO was not on a "10th consecutive quarterly [growth] streak" because the Company's actual financial results for 1Q23 and 2Q23 had broken any purported growth streak.  Finally, NAPCO's "balance sheet" was not "pristine" because its inventory was materially misstated as a result of Defendants' fraud.

### G.    NAPCO Announces the Restatement

107.    On August 18, 2023, after the close of the markets, NAPCO issued a press release revealing that the Company would need to restate its financial results for 1Q23, 2Q23, and 3Q23, and that its previously-issued interim financial statements for those quarters "***should no longer be relied upon***." The press release disclosed that, for those quarters, "inventories were overstated and COGS [cost of goods sold] was understated, resulting in ***overstated gross profit, operating income and net income for each period***." It further explained that NAPCO was "in the process of preparing amended Forms 10-Q for each of the first three quarters of fiscal 2023," and provided the following "preliminary" estimates of NAPCO's overstatement of net income:

| Period End | Net Income - Previously Reported | Net Income - Restated Estimate | $ Difference |
|---|---|---|---|
| First quarter ended September 30, 2022 | $6.4M | $2.9M | $3.5M |
| Second quarter ended December 31, 2022 | $8.4M | $3.7M | $4.7M |
| Third quarter ended March 31, 2023 | $10.8M | $9.5M | $1.3M |

108.    Finally, the press release revealed that "[d]ue to the . . . restatements, management of the Company has determined that a material weakness existed in the Company's internal controls over financial reporting for each of the first three quarters of fiscal 2023, rendering the Company's disclosure controls and procedures ineffective at the end of each such quarter."

109.    Although the press release attempted to characterize the Restatement as stemming from innocent "errors" in calculating inventory and cost of goods sold, the significant scope of the estimated overstatements of net income, and the disclosure that a number of additional income-related metrics had been overstated during the first three quarters of fiscal 2023, caused the Company's share price to plummet.

- 37 -

110.    In response to the press release, the price of NAPCO common stock fell more than **45%**, from a closing price of $38.41 per share on August 18, 2023, to close at $21.11 per share on Monday, August 21, 2023 (the next trading day), on more than 40 times the previous day's trading volume.

### H.    Post-Class Period Events

111.    On September 1, 2023, NAPCO filed with the SEC amended Forms 10-Q/A containing the restated financial results for 1Q23, 2Q23, and 3Q23.  The Restatement confirmed that NAPCO's income-related metrics had been grossly overstated during the first three quarters of fiscal 2023.  For 1Q23, 2Q23, and 3Q23, respectively: (i) net income had been overstated by 107.59%, 114.97%, and 13.52%; (ii) income per share had been overstated by 109.1%, 112.5%, and 11.5%; (iii) operating income had been overstated by 98.71%, 118.02%, and 13.21%; and (iv) gross profit and gross margins had each been overstated by 24.72%, 35.59%, and 6.54%.

112.    On October 27, 2023, NAPCO announced that it would "dismiss its current independent registered public accounting firm, Baker Tilly US, LLP ('Baker Tilly')"—which had served as NAPCO's auditor since 2008—"effective on the Company's filing of its Form 10-Q for the quarter ending September 30, 2023."  Shortly thereafter, on November 3, 2023, NAPCO announced that Baker Tilly would be replaced by Deloitte & Touche LLP.

113.    ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

114.    In the wake of defendant Soloway's and Buchel's lucrative stock sales and the Restatement, Buchel was promoted to President and Chief Operating Officer effective May 2, 2024,

while initially maintaining his position as CFO. In the press release announcing the promotion, Soloway said it was "well-deserved."

115.

116.

117. On June 25, 2024, the SEC announced that it had settled insider trading charges against Schettino. Among other things, the SEC consent order required that Schettino disgorge $198,566, pay an additional $237,381 in prejudgment interest and penalties, and it barred him from serving as an officer or director of a public company.

118. On March 31, 2025, NAPCO received a subpoena from the SEC. NAPCO publicly disclosed the SEC subpoena in its Form 10-Q filed with the SEC on May 5, 2025, stating that the

- 39 -

SEC's investigation is "principally focused on the Company's previously disclosed restatements and related material weakness determination."  According to NAPCO's most recent 10-Q, filed on November 3, 2025, the SEC investigation remains ongoing, and NAPCO "has produced, and will continue to produce documents, responsive to the SEC subpoena."

## VI.    ADDITIONAL SCIENTER ALLEGATIONS

119.    As alleged herein, Defendants acted with scienter in that Defendants: (i) knew, or at the very least were reckless in not knowing, that the public documents and statements they issued or disseminated in the name of the Company or in their own names during the Class Period were materially false and misleading when made; (ii) knew that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

120.    Defendants, by virtue of their receipt of information reflecting the true facts regarding NAPCO, their control over, and/or receipt and/or modification of NAPCO's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning NAPCO, were active and culpable participants in the fraudulent scheme alleged herein.

121.    Defendants knew and/or recklessly disregarded the false and misleading nature of the information which they caused to be disseminated to the investing public.  The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity or, at least, the reckless disregard of the personnel at the highest levels of the Company, including the Individual Defendants.

122.    The Individual Defendants, by virtue of their high-level positions with the Company, directly participated in the management of the Company, were directly involved in the day-to-day

- 40 -

operations of the Company at the highest levels, and were privy to confidential proprietary information concerning the Company and its business, operations, and prospects, as alleged herein. The Individual Defendants had the ultimate authority over and were involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein; were aware, or recklessly disregarded, that the false and misleading statements regarding the Company were being issued; and approved or ratified these statements, in violation of the federal securities laws.

123.    NAPCO, as an entity, acted with corporate scienter throughout the Class Period because its officers, management, and agents had actual knowledge of the misrepresentations and omissions of material facts set forth herein (for which they had a duty to disclose), or acted with reckless disregard for the truth because they failed to ascertain and disclose such facts, even though such facts were available to them.  Such material misrepresentations and/or omissions were done knowingly or with recklessness, and without a reasonable basis, for the purpose and effect of concealing the true facts from investors.

124.    ████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

125.    ████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████



126.     In addition, Defendants were motivated to engage in the alleged fraudulent course of conduct in order to enable certain Company insiders, including defendants Soloway and Buchel, to collectively sell 3,744,150 shares of their personally-held NAPCO common stock during the Class Period, for proceeds of more than *$108 million*, under circumstances that were unusual and suspicious, as set forth below:

| Insider | Date | Price | Shares Sold | Proceeds | Rule 10b5-1 Plan | % Sold |
|---|---|---|---|---|---|---|
| **Defendant Soloway** (CEO, Chairman) | 11/15/2022<br>02/13/2023<br>02/15/2023 | $24.79<br>$31.50<br>$31.50 | 1,271,442<br>2,012,500<br>287,500<br>**3,571,442** | $31,519,047<br>$63,393,750<br>$9,056,250<br>**$103,969,047** | No<br>No<br>No | **48.5%** |
| **Defendant Buchel** (CFO) | 11/15/2022<br>02/13/2023<br>02/15/2023 | $24.79<br>$31.50<br>$31.50 | 52,977<br>87,500<br>12,500<br>**152,977** | $1,313,300<br>$2,756,250<br>$393,750<br>**$4,463,300** | No<br>No<br>No | **45.5%** |
| **Paul Stephen Beeber** (Director) | 11/23/2022 | $26.10 | **1,731** | **$45,179** | No | **14.6%** |
| **Michael Carrieri** (Senior Vice President of Engineering Development) | 11/23/2022<br>11/30/2022 | $26.45<br>$26.05 | 9,000<br>9,000<br>**18,000** | $238,050<br>$234,450<br>**$472,500** | No<br>No | **29%** |
| | Total: | | **3,744,150** | **$108,950,026** | | |

127.    These insider sales were suspiciously-timed because each of the insiders who sold stock did so in November 2022, shortly after NAPCO's announcement on November 7, 2022 of 1Q23 financial results that were inflated by ███████████████████████████ ████████████████████████    At the time of these sales, NAPCO had recently reported quarterly results that overstated its 1Q23: net income by 107.59%, income per share by 112.5%, operating income by 98.71%, and gross profit and gross margins by 24.72%.

128.    Defendants Soloway and Buchel made substantial sales on November 15, 2022, with Soloway selling 1,271,442 shares of his personally-held NAPCO common stock for proceeds of approximately *$31.5 million*, and Buchel selling 52,997 shares of his personally-held NAPCO common stock for proceeds of approximately *$1.3 million*.

129.    Defendants Soloway and Buchel made even larger insider sales in February 2023— orchestrating an offering in order to enable Soloway to unload an additional 2,300,000 shares of his

personally-held NAPCO common stock for proceeds of approximately *$72.5 million*, and Buchel to unload an additional 100,000 shares of his personally-held NAPCO common stock for proceeds of approximately *$3.2 million*.

130.    These sales insider were suspiciously-timed because they took place on February 13, 2023 and February 15, 2023, shortly after NAPCO's announcement on February 6, 2023 of 2Q23 financial results that were inflated by ███████████████ ████████████████████████████████████ And they were made pursuant to offering materials that incorporated by reference NAPCO's inflated financial results for both 1Q23 and 2Q23.  Indeed, NAPCO announced the Offering on February 8, 2023, almost immediately after it issued the inflated 2Q23 financial results.  At the time of these sales, NAPCO had recently reported quarterly results that overstated its 2Q23: net income by 114.97%, income per share by 109.1%, operating income by 118.02%, and gross profit and gross margins by 35.59%.

131.    In total, defendant Soloway sold *48.5%* of his personally-held NAPCO common stock during the Class Period for proceeds of approximately *$104 million*, and defendant Buchel sold *45.5%* his personally-held NAPCO common stock during the Class Period for proceeds of approximately *$4.5 million*.

132.    By contrast, *none* of the insiders who sold stock during the Class Period made *any* stock sales during the year before the Class Period.

133.    Notably, defendant Buchel—who himself engaged in insider trading during the Class Period while playing a key role in the fraud—is, and was, NAPCO's "Insider Trading Compliance Officer."  In that role, Buchel was required, pursuant to the Company's Insider Trading Policy, to "pre-clear each proposed trade or transfer" of NAPCO securities by its "executive officers and

- 44 -

directors and their [f]amily [m]embers[.]" At the very least, this presented a clear conflict of interest with respect to his own insider sales.

134.    Finally, *none* of the Class Period sales were made pursuant to Rule 10b5-1 trading plans—which underscores the suspicious nature of those sales.

## VII.    LOSS CAUSATION AND ECONOMIC LOSS

135.    During the Class Period, as detailed herein, Defendants made false and misleading statements and/or engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of NAPCO common stock and operated as a fraud or deceit on Class Period purchasers of NAPCO common stock.  As detailed above in ¶¶107-110, when Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of NAPCO common stock fell precipitously as the prior artificial inflation dissipated.  As a result of their purchases of NAPCO common stock during the Class Period, Plaintiffs and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

136.    By failing to disclose to investors the adverse facts detailed herein, Defendants presented a misleading picture of NAPCO's business and prospects.  Defendants' false and misleading statements and omissions had the intended effect and caused NAPCO common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $41.25 per share on June 13, 2023.

137.    The precipitous decline in the price of NAPCO common stock was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market and/or the risks concealed by Defendants' fraud materializing and causing losses to investors.  The timing and magnitude of the decline in the price of NAPCO securities negates any inference that the loss suffered by Plaintiffs and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to Defendants' fraudulent

- 45 -

conduct. The economic loss, *i.e.*, damages, suffered by Plaintiffs and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of NAPCO common stock and the subsequent significant decline in the value of NAPCO common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed and/or the risks concealed by Defendants' fraud materialized.

## VIII. NO SAFE HARBOR

138. NAPCO's "safe harbor" warnings accompanying its purportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. The specific statements pled herein were not FLS or identified as such, but rather were statements of present or historical fact. To the extent any statements can properly be considered forward-looking, such statements were not accompanied by meaningful cautionary language identifying important facts that could cause actual results to differ materially from those in the purportedly FLS.

139. Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and/or the FLS was authorized and approved by an executive officer of the Company who knew that the FLS was false or misleading. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## IX. A PRESUMPTION OF RELIANCE APPLIES

140. Plaintiffs are entitled to a presumption of reliance under the fraud-on-the market doctrine, because the market for NAPCO's publicly-traded stock was open, well-developed, and

- 46 -

efficient at all relevant times.  As a result of the materially false and misleading statements and failures to disclose alleged herein, NAPCO common stock traded at artificially inflated prices during the Class Period.  Plaintiffs and other Class members purchased NAPCO common stock in reliance on the integrity of the market price of the stock and the market information relating to NAPCO, and were damaged thereby.

141.    At all relevant times, the market for NAPCO common stock was efficient for at least the following reasons:

(a)    NAPCO common stock met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient, electronic stock market;

(b)    NAPCO common stock traded at volumes during the Class Period that reflected the impact of available information, and the trading price of the stock reacted promptly to publicly available news and information;

(c)    NAPCO filed periodic public reports with the SEC and otherwise regularly communicated with analysts and investors using established market communication mechanisms, including press releases; and

(d)    securities analysts and investors followed NAPCO and issued reports on its prospects and performance, and information on NAPCO regularly entered the marketplace and was reflected in the trading price of its stock.

142.    As a result, the market for NAPCO common stock promptly digested relevant information from publicly available sources and the trading price of the stock reflected such information.  Under these circumstances, all purchasers of NAPCO common stock during the Class Period suffered similar injury by purchasing NAPCO common stock at artificially inflated prices and a presumption of reliance applies.

143.    A class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). Because the claims alleged are predicated in part upon omissions of material fact for which there was a duty to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of Defendants' material omissions set forth above, that requirement is satisfied here.

## X.      CLASS ACTION ALLEGATIONS

144.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class consisting of all those who purchased or otherwise acquired NAPCO common stock during the Class Period and were damaged thereby (the "Class"). Excluded from the Class are: (i) Defendants and members of their immediate families; (ii) the officers and directors of the Company, at all relevant times, and members of their immediate families; (iii) the legal representatives, heirs, successors, or assigns of any of the foregoing; and (iv) any entity in which any Defendant has or had a controlling interest.

145.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, NAPCO common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, there are likely hundreds, if not thousands, of members in the proposed Class. Record owners and other Class members may be identified from records maintained by NAPCO or its transfer agent and may be notified of the pendency of this action using a form of notice customarily used in securities class actions.

146.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have retained competent counsel experienced in class action litigation under

- 48 -

the federal securities laws to further ensure such protection and intend to prosecute this action vigorously.

147.    Plaintiffs' claims are typical of the claims of the other members of the Class because Plaintiffs and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants.  Plaintiffs do not have any interests antagonistic to, or in conflict with, those of the Class.

148.    Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including:

(a)    whether Defendants violated the Exchange Act;

(b)    whether Defendants misrepresented and/or omitted material facts; and

(c)    whether and to what extent Class members have sustained damages, as well as the appropriate measure of damages.

149.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it exceedingly difficult, if not impossible, for Class members to individually seek redress for the wrongful conduct alleged.  Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## XI.    COUNTS

### COUNT I

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

150.    Plaintiffs repeat, incorporate, and reallege each and every allegation set forth above as if fully set forth herein.

151.    This Count is brought pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5, on behalf of the Class, against all Defendants.

152.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to, and did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other Class members to purchase NAPCO common stock at artificially inflated prices.

153.    During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

154.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

155.    As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements they issued, approved, or otherwise disseminated were materially false

- 50 -

and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

156.    Additionally, Defendants participated in the fraudulent scheme alleged herein by virtue of their receipt of information reflecting the true facts, their control over the allegedly materially false and misleading statements and omissions, and their access to nonpublic information.

157.    Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for NAPCO common stock.  Plaintiffs and the Class would not have purchased NAPCO common stock at the prices they paid, or at all, had they been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements and/or omissions.

158.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of NAPCO common stock during the Class Period.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

159.    Plaintiffs repeat, incorporate, and reallege each and every allegation set forth above as if fully set forth herein.

160.    This Count is brought pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. §78t(a), on behalf of the Class, against the Individual Defendants (*i.e.*, defendants Soloway and Buchel).

161.    The Individual Defendants acted as controlling persons of NAPCO within the meaning of Section 20(a) of the Exchange Act, as alleged herein.  By virtue of their positions as

officers and/or directors of NAPCO, the Individual Defendants had, and exercised, power and authority to cause NAPCO to engage in the wrongful conduct complained of herein.

162.    As set forth above, NAPCO and the Individual Defendants violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  Moreover, by virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for NAPCO's Section 10(b) and Rule 10b-5 violations.  To the extent necessary, each of the Individual Defendants culpably participated in the underlying violations given their knowledge of and/or involvement in the wrongful conduct alleged herein.

163.    As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## XII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

A.    Awarding compensatory damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, together with interest thereon;

B.    Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including, but not limited to, counsel fees and expert fees; and

C.    Granting such other, further, and/or different relief as the Court deems just and proper.

## XIII.  JURY DEMAND

Plaintiffs hereby demand a trial by jury.

DATED:  January __, 2026

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
ERIN W. BOARDMAN
AVITAL O. MALINA
SKYLER JORDAN SANDS
JEREMY YOHANNAN


ERIN W. BOARDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
eboardman@rgrdlaw.com
amalina@rgrdlaw.com
ssands@rgrdlaw.com
jyohannan@rgrdlaw.com

JOHNSON FISTEL, PLLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
michaelf@johnsonfistel.com

JOHNSON FISTEL, PLLP
JEFFREY A. BERENS
2373 Central Park Boulevard, Suite 100
Denver, CO  80238
Telephone:  303/861-1764
jeffb@johnsonfistel.com

*Lead Counsel*

VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.,
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

*Additional Counsel for City of Warren Police and Fire Retirement System*