# Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

Direct Dial Number
+1-212-455-3539

E-mail Address
jyoungwood@stblaw.com

February 2, 2026

VIA ECF

Re:     *Zornberg v. NAPCO Security Technologies, Inc. et al.*,
23-cv-6465 (BMC) (E.D.N.Y.)

Honorable Brian M. Cogan, U.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Cogan:

We write on behalf of Defendants in response to Plaintiffs' letter requesting a pre-motion conference regarding their anticipated motion for leave to file a proposed second amended complaint (the "PSAC"). *See* Dkt. No. 80 ("Pls.' Ltr."). This request—made nearly two-and-a-half years into this case and more than two months after the Court's November 17, 2025 deadline for an amendment—should be rejected. In fact, given that Plaintiffs have now disowned their prior allegations of fraud, it is worth reconsidering whether at this time the entire case should be dismissed.[1]

Plaintiffs' Amended Complaint (the "AC") alleges a purported fraudulent scheme to inflate NAPCO's income-related metrics by halting shipments of already-sold inventory at the end of each fiscal quarter. *See, e.g.*, AC, Dkt. No. 40 ¶¶ 8-11. According to the AC, NAPCO halted such shipments so that it could fraudulently account for sold inventory in its warehouse as unsold inventory, while at the same time recognizing the revenue from these sales. *Id.* ¶¶ 50-51. This alleged scheme was purportedly based on allegations of three former employees (the "FEs") who Plaintiffs say were directed to withhold shipments of such inventory in order to, among other things, "sandbag the numbers." *Id.* ¶¶ 41-51.

After years of litigation and costly (for Defendants) discovery, Plaintiffs now disavow these allegations and propose a new untimely complaint that makes no reference to the alleged fraudulent scheme nor the allegations based on the FEs. Instead, the PSAC alleges that Defendants contemporaneously knew of internal control and inventory costing issues that led

---

[1] The basis for the Court's decision denying Defendants' motion to dismiss was the stock sales. Dkt. No. 59. The PSAC, however, now provides a justification for those sales—*i.e.*, that they were made for estate diversification (PSAC ¶ 45)— which was not previously before the Court. Should the Court permit Plaintiffs' amendment, given this new alleged fact and that there were significant stock sales both prior to the class period (in December 2020) and after the class period (in March 2024) and other factors, the Court's prior decision may warrant revisiting.

to the August 2023 restatement.  Plaintiffs argue that this theory was already included in the AC, rendering amendment unnecessary.  Pls.' Ltr. at 1 (citing to AC ¶¶ 113-114, 138).  This is false.  The cited paragraphs contain nothing more than vague and conclusory allegations of knowledge or recklessness, tied to or based upon Defendants' involvement in the fraudulent scheme and dissemination of the alleged misstatements.  *See, e.g.*, AC ¶ 113 (referring to Defendants' knowing and reckless disregard based on the "[t]he fraudulent scheme described herein.").  Such allegations satisfy neither Rule 8, Rule 9, nor the PSLRA pleading standards. *See Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004).

Plaintiffs rely on *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 242 n. 11 (2d Cir. 2016) for why they do not need to amend, but *Vivendi* concerned the addition of a "small handful" out of 57 total alleged misstatements.  Here, on the other hand, Plaintiffs seek to supplant the entire theory of their case.  And unlike in *Vivendi,* Defendants were not previously on notice through court pleadings or filings of Plaintiffs' newly alleged theory.  Indeed, in connection with Defendants' motion to dismiss, Plaintiffs doubled down on their now discarded theory of fraud, even though Defendants explained that it was entirely illogical as products are not sold and revenue is not recognized until they are shipped.  Dkt. No. 53 at 8-9.  And disregarding the fact that, from an accounting perspective, their theory of fraud could not possibly succeed, after the Court's ruling on the motion to dismiss, Plaintiffs recommitted to their theory by pursuing sweeping discovery regarding the alleged fraudulent scheme including serving subpoenas on NAPCO's top five customers seeking documents about the timing of NAPCO product shipments.

Plaintiffs' motion for leave to amend should also be denied under either Federal Rule 16 or 15(a)(2).[2]  Under Rule 16, Plaintiffs' motion can only be granted for "good cause."  Fed. R. Civ. P. 16(b)(4).  And under Rule 15, the district court may deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *See Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (internal quotation marks omitted).  As the Second Circuit has explained, "[t]he liberality with which a court grants leave to amend does not impart to litigants the privilege of re-shaping their legal theories endlessly."  *See Morency v. NYU Hospitals Center*, 728 F. App'x 75, 76 (2d Cir. 2018) (internal quotation marks omitted).  "Where a party seeks leave to amend after a period of delay, the burden is on the party who wishes to amend to provide a satisfactory explanation of the delay."  *Id.* (cleaned up).

Here, Plaintiffs unduly delayed seeking to file the PSAC, with no good cause, and Defendants would be significantly prejudiced.  In attempting to explain their delay, Plaintiffs make non-specific contentions as to when they received discovery, but this is no excuse.[3]

---

[2] Plaintiffs' reliance on *Sacerdote v. New York Univ.*, 9 F.4th 95 (2d Cir. 2021) and its discussion of the applicability of Rules 15 and 16 is misplaced.  Though there is a reference to leave to amend in the Case Management Plan, Dkt. No. 69, the discovery schedule itself included with the Plan lists "Completion Dates" and does not make such a reference.

[3] By the October 13, 2025 substantial completion date, Defendants produced over 57,000 documents, including nearly all cited in the PSAC.  The few later productions primarily constituted documents that were the subject of the parties' ongoing negotiations regarding two

-3-                                        **February 2,** 2026

Notably, of the 49 documents produced by Defendants and newly cited in the PSAC, 13 were produced on September 23, 2025, 15 were produced on October 2, 2025, 12 were produced on October 11, 2025, 2 were produced on October 17, 2025, and 7 were produced on November 4, 2025.  Courts have found undue delay in similar circumstances.  *See Kiarie v. Dumbstruck, Inc.*, 473 F. Supp. 3d 350, 359 (S.D.N.Y. 2020) (filing motion for leave four months after relevant information was revealed in discovery constituted undue delay); *Werking v. Andrews*, 526 F. App'x 94, 95 (2d Cir. 2013) (affirming denial of leave to amend where plaintiff waited two months after learning new information); *Rhymer v. Philip Morris, Inc.*, 164 F. App'x 268, 269 (3d Cir. 2006) (denying leave to amend where case was pending for two and a half years and most discovery had been completed two months prior).[4]

Further, facts relied on by Plaintiffs outside of the produced documents have been available to Plaintiffs for years.  The PSAC alleges that Defendants knew that high inventory prices caused by the COVID pandemic were falling but intentionally or recklessly failed to adjust NAPCO's inventory costing procedures (which were annual, not quarterly). PSAC ¶¶ 9, 33-38.  Yet, at the time of this lawsuit, NAPCO publicly disclosed that it had purchased component parts at higher prices due to supply chain shortages, that by late 2022/early 2023 prices were falling, and that its inventory costing was based on year-end audited data, which failed to account for the falling prices.  *See, e.g.*, August 2023 Earnings Call Tr. at 5, 10.  And NAPCO's prior internal control deficiencies and material weaknesses related to inventory— facts pled by Plaintiffs to support their new theory (PSAC ¶¶ 40-42) —were also disclosed well before the filing of this case.  *See* Aug. 29, 2022 10-K at 14, 27; *Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*, 148 F. Supp. 2d 321, 329-30 (S.D.N.Y. 2001) (even where plaintiffs pointed to recently-received discovery, denying leave to amend where other facts were available to plaintiffs for over a year and possibly at the time of filing the complaint).

Defendants also will be unduly prejudiced if amendment is permitted. Here, Defendants (and multiple third parties) have already substantively completed their document productions—Defendants alone produced over 75,000 documents at significant time and cost. Permitting Plaintiffs to pursue an entirely new theory will inevitably prejudice Defendants. *See Ong v. Deloitte Consulting, LLP*, 2023 WL 6173504, at *3, *5-6 (S.D.N.Y. Sep. 22, 2023) (denying leave to amend where case was over two years old and parties "ha[d] already conducted months and months of discovery.").

Although Plaintiffs' motion for leave should be denied, if it is not, Defendants respectfully submit that Plaintiffs should be precluded from serving any additional document discovery.

---

search term strings and an additional custodian (not agreed to until October 10 and October 29, respectively).  The few remaining discovery disputes (*see* Pls.' Ltr. n.5) may, on resolution, result in limited further productions, as is customary as discovery completes.

[4] Although Plaintiffs reference "the complexity of accounting issues" to justify their delay, there is nothing complex about the information or documents relied on in the PSAC.

Simpson Thacher & Bartlett LLP

-4-                                                                    **February 2,** 2026


Respectfully submitted,

*/s/ Jonathan Youngwood*
Jonathan Youngwood